SCOTT N. SCHOOLS
United States Attorney
THOMAS MOORE (ASBN 4305-O78T
Assistant United States Attorney
Chief, Tax Division
9th Floor Federal Building
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-6935
HUONG T. BAILIE (NYBN 4035739)
Special Trial Attorney
160 Spear Street, 9th Floor
San Francisco, California 94105
Telephone: (415) 227-5123
ALLYSON B. BAKER (DCBN 478073)
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 202-353-8031
Facsimile: (202) 514-6770
Email: **allyson.b.baker@usdoj.gov**

Attorneys for Plaintiff, the United States of America

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> CHARLES CATHCART *et al.* ) <br> ) <br> ) <br> Defendants. ) | Civil No. 03:07-cv-4762-PJH <br><br> UNITED STATES'S MOTION FOR AN ENLARGEMENT OF TIME IN WHICH TO SERVE CHARLES CATHCART WITH THE COMPLAINT AND PERMISSION TO SERVE BY PUBLICATION <br><br> *Notice*: *No Hearing Requested* |

Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure and Local Rule 6-3, the United States respectfully requests that the Court grant it an additional sixty days in which to serve defendant Charles Cathcart with the complaint. Thus, the United States would be required

to serve Charles Cathcart sixty days from January 15, 2008, which is March 17, 2008, the next business day after the sixty-day extension expires. Discovery has not yet started in this case, and extending the deadline by which to serve Cathcart will not alter the litigation schedule the parties expect to propose to the Court at their initial scheduling conference on January 3, 2008.

The United States further requests that it be permitted to serve Cathcart through publication by publishing the summons in a newspaper, based in or nearby to Santa Barbara, California, where Cathcart is known to reside, in accordance with Rule 415.50 of the California Rules of Civil Procedure.

**Background Facts**

The United States filed its complaint on September 17, 2007, seeking to enjoin Charles Cathcart and his colleagues from promoting two abusive tax shelters.

The Complaint alleges that since 1997, Charles Cathcart has been the principal organizer and promoter of two fraudulent tax schemes. Cathcart and the other defendants promote the 90% Stock Loan program to customers with highly-valued, low-basis stock, and defendants promote the ESOP-QRP program to customers who have sold qualified securities to Employee Stock Ownership Plans (ESOP) and then reinvested the sale proceeds in qualified replacement property (QRP) in stocks or floating rate note loans. Defendants promote these two programs as loans in which customers' securities are transferred to defendants to provide collateral for a loan equal to 90% of the securities' value. Defendants falsely tell customers that (i) this transaction is a loan; (ii) that customers who transfer their securities to defendants will incur no tax liability, because the transfer is collateral for a loan and not a sale of the customers' securities; and (iii) that defendants will help preserve the value of the customers' transferred securities through the use of sophisticated hedging techniques, developed by Charles Cathcart. These transactions are actual sales, disguised as transfers of collateral for purported loans, and these transactions are designed so that a customer can avoid the payment of taxes otherwise incurred from the sale of their securities. Specifically, it is estimated that the tax loss resulting from these programs is as much

as $234,567,700. Compl. ¶85. Indeed, Charles Cathcart has stated that over 1,700 individuals participated in these programs and in transactions totaling more than $1 billion. *Id*. ¶84.

On October 9, the United States sent each defendant a courtesy copy of the complaint, the Court's management order, and a proposed stipulation for entry of final judgment for permanent injunction. *See* Declaration of Allyson B. Baker, ¶3., Ex. A. Cathcart was sent and received these documents at the address where he resided in October. *See id*. Cathcart, through counsel, then sent a counter-offer to counsel for the United States, which included a request that the United States not attempt to serve him with the complaint, pending consideration of his settlement proposal. *See id*. ¶4. The United States rejected Cathcart's settlement proposal; counsel for the United States has spoken with Cathcart's counsel about this rejection, as well. *See id*. ¶¶6-7.

Cathcart continues to willfully evade service. The United States has attempted to serve Cathcart on a total of 24 different occasions at the address where he resided in September and October (and at which he received the United States's proposed stipulation) and at the address where he is known to currently reside. *See* Declaration of Andrew Jones,¶2, Ex. B. Andrew Jones, the process server hired by the United States, attempted to serve Cathcart at different times of the day, including early morning, late morning, afternoon and evening hours. *See id.* Jones also attempted to serve Cathcart on week days and weekends, including on weekend mornings and afternoons, when it is highly probable that Cathcart would be home. *See id.* On almost every occasion when Jones attempted to serve Cathcart, there were lights on in Cathcart's home, noise was coming from inside his house, and there were cars in the house's driveway. *See id.* Either Cathcart or his wife, Evelyn, were likely home on each of these occasions; nevertheless, they always refused to answer the door when Jones approached the home, knocked on the door, and attempted service. *See id*.

During December 18 and 20 telephone conversations with counsel for the United States, Cathcart's attorney, Eric Webb, acknowledged that Cathcart has not yet been served. *See* Baker Decl. ¶¶7-8. Webb told counsel for the United States that Cathcart would not authorize him to accept service of the complaint and that Webb does not know whether Cathcart will authorize

- 3 -

waiver of service of summons. *See id.* ¶7. Webb also claimed during both telephone conversations that he does not know his client's home address. *See id*. ¶¶7-8. Webb further indicated that he expects that his client will voluntarily appear in the case in the middle of January. *See id*. ¶8. However, the 120-day time for serving Cathcart since filing the complaint on September 17, 2007 lapses on January 15, 2008, which is the middle of January, making it possible –if not likely – that Cathcart's strategy is to evade service and then seek dismissal from the litigation.

Because of Cathcart's persistent refusal to accept service at the address where he is known to reside, the United States respectfully requests an enlargement of time in which to serve the complaint, and for permission to serve Cathcart by publication.

**Relevant Law**

**A.   The United States Has Shown Good Cause for Obtaining an Enlargement of Time In Which to Serve Cathcart**

A district court may grant an extension for a party to serve a complaint for good cause shown. *See* Fed. R. Civ. P. 4(m). Good cause is established when a plaintiff shows that "(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Boudette v. Barnette,* 923 F.2d 754, 756 (9th Cir.1991).

The United States has clearly made this showing of good cause.[1] Enlarging the time for service will not prejudice Cathcart. As discussed above, he already has notice of the litigation, a copy of the complaint, and he is willfully evading service. However, if the United States's request for an enlargement of time is not granted, it will suffer substantial prejudice. Cathcart was the principal organizer and promoter of the two abusive tax shelters, alleged in the complaint, and thus, the United States cannot prosecute its case if Cathcart is dismissed from the litigation.

---

[1] Moreover, a district court has broad discretion to enlarge the time for service, even in the absence of good cause. *Mann v. Am. Airlines,* 324 F.3d 1088, 1090 (9th Cir. 2003).

*See* Baker Decl. ¶9.  In addition, because the estimated damage from defendants' abusive tax shelters runs into the hundreds of millions of dollars, it is necessary to halt defendants' unlawful conduct as quickly as possible.  Moreover, there is little reason to think that Cathcart would not continue to willfully evade service in any subsequent suit filed against him.

### B. Service By Publication Is Appropriate

The United States has met all of the requirements for effecting service by publication.  The Federal Rules of Civil Procedure provide that service upon an individual "maybe effected in any judicial district of the United States pursuant to the law of the state in which the district court is located, or in which the service is effected, for the service of summons upon the defendant in an action brought in the courts of general jurisdiction of the State."  Fed. R. Civ. P. 4(e)(q).  California's Code of Civil Procedure, in turn, provides that "a summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified . . . and that . . . [a] cause of action exists against the party upon whom service is to be made."  Cal. Civ. P. Code § 415.50.

Cathcart's persistent refusal to accept service necessitates serving him through publication.  The United States has tried, with reasonable diligence, to serve Cathcart on 24 different occasions over the preceding months, and its efforts in this regard are well-documented.  *See* Jones Decl., Ex. A.  Service by publication through a newspaper based in or nearby to Santa Barbara, California, where Cathcart is known to reside currently, is necessary to ensure that the United States is able to prosecute its case.

### CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court grant it an additional sixty days in which to serve defendant Charles Cathcart with the complaint, extending the time for service until March 17, 2008.  The United States further requests permission to serve Cathcart by publication in accordance with the California Rules of Civil Procedure.

December 21, 2007

                                        Respectfully submitted,

                                        SCOTT N. SCHOOLS
                                        United States Attorney

                                        /s/ Allyson B. Baker
                                        ALLYSON B. BAKER
                                        Trial Attorney, Tax Division
                                        U.S. Department of Justice
                                        Post Office Box 7238
                                        Ben Franklin Station
                                        Washington, D.C.  20044
                                        Telephone: (202) 202-353-8031

**CERTIFICATE OF SERVICE**

     I hereby certify that on December 21, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Farley J. Neuman (fneuman@jgn.com)
Tom Prountzos (tprountzos@jgn.com)
Jenkins Goodman Neuman & Hamilton LLP
417 Montgomery Street, 10th Floor
San Francisco, CA 94104
*Attorneys for Defendant, Robert Nagy*

     I further certify that on December 21, 2007, service of the foregoing was made upon the following by depositing a copy in the United States mail, postage prepaid:

Yuri Debevc (*pro se*)
1483 Burningtree Road
Charleston, SC 29412

                                        /s/ Allyson B. Baker
                                        ALLYSON B. BAKER