IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 03:07-4762-PJH |
| ) | |
| CHARLES CATCHART *et al*. ) | **DECLARATION OF** |
| ) | **ALLYSON B. BAKER** |
| Defendants. ) | |

1. I am over 18 years of age and am competent to testify as to facts stated below.

2. I am an attorney for the United States in the above-captioned action.

3. On October 9, 2007, Thomas Newman, then-counsel for the United States, sent each defendant a courtesy copy of the complaint, the Court's management order, and a proposed stipulation for entry of final judgment for permanent injunction. Cathcart was sent and received these materials at 690 Orchard Avenue, Santa Barbara, California 93108, where he lived in September and October.

4. In a letter dated, November 9, 2007, Eric Webb, counsel for Charles Cathcart, sent counsel for the United States a settlement proposal, which included a transmittal letter with the following statement: "In the meantime, we ask that the United States not seek to personally serve Mr. Cathcart or publish against him. If we are unable to resolve the matter by way of stipulated

1  judgment, my client's present intent is to voluntarily appear in this matter, file an answer in this
2  matter and any appropriate counterclaim."

3      5. On or about December 7, 2007, I tried to reach Webb on the telephone in order to find
4  out whether he would accept service for his client Cathcart. I left a message on his office
5  answering machine, asking that Webb call me back and stating that I was calling about this
6  litigation. He did not return the phone call.

7      6. In a letter dated December 14, 2007, the United States rejected Charles Cathcart's
8  counter-offer to settle this matter.

9      7. On December 18, 2007, I had a telephone conversation with Webb. During that
10 conversation, Webb told me that he had received the United States's letter rejecting Cathcart's
11 counter-offer; that Cathcart was not authorizing Webb to accept service of the complaint; and
12 that Cathcart was intending to wait for the United States to serve him with the complaint. I told
13 Webb that it seemed as if his client was evading service. Webb did not respond. Also, during
14 that conversation, Webb informed me that he does not know Cathcart's home address. In
15 addition, I also asked Webb if Cathcart would agree to a waiver of summons, and Webb told me
16 that he would ask Cathcart this question.

17     8. On December 20, 2007, I called Webb to ascertain whether Cathcart would agree to a
18 waiver of summons. During that telephone conversation, Webb told me that he had sent
19 Cathcart an email asking this question, and that he has not received a response from Cathcart.
20 Webb told me that he expects to enter an appearance in the case in the middle of January on
21 behalf of Cathcart. Webb reiterated that he does not know his client's home address and that he
22 communicates with Cathcart via email.

23     9. The United States will not be able to prosecute its case against defendants if Charles
24 Cathcart is dismissed from the case. Cathcart is the principal organizer and promoter of the 90%
25 Loan programs, including the Stock Loan and ESOP-QRP Loan programs at issue in this
26 litigation.

27     10. There have been no previous time modifications sought in this case.

28

11.  Enlarging the time in which to serve Charles Cathcart will not affect the litigation schedule the parties expect to propose to the Court at their joint scheduling conference on January 3, 2008.

I declare under penalty of perjury, that the foregoing is true and correct.

Executed on the 21st day of December 2007.

/s/ Allyson B. Baker
Allyson B. Baker