Sch A10

Optech Limited
13/F Silver Fortune Plaza
One Wellington Street
Central
Hong Kong
Tel 011-852-2530-9007
Fax 011-852-2530-9100



US Service Center (Veridia Solutions)
One Poston Road, Suite 120
Charleston, SC 29407
Optech

Tel 1-843-725-1120
Fax 1-843-725-1121

---

## ACTIVITY CONFIRMATION   Page 1 of 1



REPORT DATE: 6/21/2005
CLIENT NUMBER:
LOAN NUMBER:

---

### SECURITIES HEDGED to date:

| Date | Symbol | Shares Hedged | Hedged Value Per Share | Shares Remaining to be Hedged | Hedged Value |
|---|---|---|---|---|---|
| 6/21/2005 | UTX | 1,894 | 53.10304 | 0 | $100,577.16 |

**Total Hedged Value of Loan Collateral**                     $100,577.16
**Actual Loan Amount at 90% of Hedged Value**                 $90,519.44

Original Valuation:
$100,808.68

Projected Loan Amount:
$90,727.81

Interest Rate:
9.25%

Loan Term:
40 years

### SUMMARY:

| | |
|---|---|
| Amount advanced to Client to date: | $49,843.71 |
| **Net due Client as a result of hedging activities to date:** | **$40,675.73** |
| Distribution by broker/dealer to Client's broker/dealer account: | $0.00 |
| Distribution by Lender to Client's designated destination: | $40,675.73 |
| **Date scheduled for transfer of amount due** | **6/23/2005** |

**GOVERNMENT EXHIBIT 1**

*This statement reflects the status of your loan transaction as of the date above. Any discrepancy between this statement and your records or your understanding of the provisions of the related Master Loan Financing and Security Agreement, Loan Schedule(s) and/or Rider(s) governing your loan transaction should be reported to Optech in writing as soon as possible, and no later than five days from the date of this statement. If you have any questions regarding this document, please contact Optech US Service Center (Veridia Solutions) at 1-843-725-1120.*

Page 1 of 1

Yuri Debevc

From: charleshsin@aol.com
Sent: Thursday, July 28, 2005 8:41 PM
To: Yuri Debevc
Subject: New Owner of Optech

Yuri,
Effective July 27, 2005, I am the new owner of Optech Limited, Hong Kong. In order to facilitate the business correspondence, please open a P.O. Box on behalf of the company and advise me the number of the Box. Thanks.
Charles Hsin
Director
Optech Limited

GOVERNMENT EXHIBIT 2

7/29/2005

## ACKNOWLEDGMENT OF NOTARY PUBLIC

State of _South Carolina_ )
                          )
County of _Charleston_ )

On _April 30th_, 2007, before me, _Shannon L. Clinton_, a notary public, personally appeared _____ proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his/her authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.



**United States Postal Service®**
**Application for Delivery of Mail Through Agent**
See Privacy Act Statement on Reverse

1. Date: 8-22-06 (handwritten)

In consideration of delivery of my or our (firm) mail to the agent named below, the addressee and agent agree: (1) the addressee or the agent must not file a change of address order with the Postal Service™ upon termination of the agency relationship; (2) the transfer of mail to another address is the responsibility of the addressee and the agent; (3) all mail delivered to the agency under this authorization must be prepaid with new postage when redeposited in the mails; (4) upon request the agent must provide to the Postal Service all addresses to which the agency transfers mail; and (5) when any information required on this form changes or becomes obsolete, the addressee(s) must file a revised application with the Commercial Mail Receiving Agency (CMRA).

**NOTE:** The applicant must execute this form in duplicate in the presence of the agent, his or her authorized employee, or a notary public. The agent provides the original completed signed PS Form 1583 to the Postal Service and retains a duplicate completed signed copy at the CMRA business location. The CMRA copy of PS Form PS 1583 must at all times be available for examination by the postmaster (or designee) and the Postal Inspection Service. The addressee and the agent agree to comply with all applicable Postal Service rules and regulations relative to delivery of mail through an agent. Failure to comply will subject the agency to withholding of mail from delivery until corrective action is taken.

This application may be subject to verification procedures by the Postal Service to confirm that the applicant resides or conducts business at the home or business address listed in boxes 7 or 10, and that the identification listed in box 8 is valid.

2. Name in Which Applicant's Mail Will Be Received for Delivery to Agent (Complete a separate PS Form 1583 for EACH applicant. Spouses may complete and sign one PS Form 1583. Two items of valid identification apply to each spouse. Include dissimilar information for either spouse in appropriate box.)
**OPTECH LIMITED**

3a. Address to be Used for Delivery (No., street, apt./ste. no.)
3b. City | 3c. State | 3d. ZIP + 4

4. Applicant authorizes delivery to and in care of:
a. Name
b. Address (No., street, apt./ste. no.)
c. City | d. State | e. ZIP + 4

5. This authorization is extended to include restricted delivery mail for the undersigned(s):

6. Name of Applicant: **OPTECH LIMITED** (Authorized person signature)

7a. Applicant Home Address (No., street, apt./ste. no.): **1182 BURNING TREE RD**
7b. City: **CHARLESTON** | 7c. State: **SC** | 7d. ZIP + 4: **29412**
7e. Applicant Telephone Number (Use area code): **843-762-6116**

8. Two types of identification are required. One must contain a photograph of the addressee(s). Social Security cards, credit cards, and birth certificates are unacceptable as identification. The agent must write in identifying information. Subject to verification.
a.
b.

9. Name of Firm or Corporation

10a. Business Address (No., street, apt./ste. no.)
10b. City | 10c. State | 10d. ZIP + 4
10e. Business Telephone Number (Include area code)
11. Type of Business

Acceptable identification includes: valid driver's license or state non-driver's identification card; armed forces, government, university, or recognized corporate identification card; passport, alien registration card or certificate of naturalization; current lease, mortgage or Deed of Trust; voter or vehicle registration card, or a home or vehicle insurance policy. A photocopy of your identification may be retained by agent for verification.

12. If applicant is a firm, name each member whose mail is to be delivered. (All names listed must have verifiable identification. A guardian must list the names of minors receiving mail at their delivery address.)

13. If a CORPORATION, Give Names and Addresses of its Officers:
**CHI-HSIO HSIN - DIRECTOR**
**44 CAMPBELL AVE**
**WILSON PARK, NY 11596**

14. If business name (corporation or trade name) has been registered, give name of county and state, and date of registration.
**HONG KONG**
**15/F SILVER FORTUNE PLAZA**
**1 WELLINGTON ST CENTRAL, HONG KONG**

Warning: The furnishing of false or misleading information on this form or omission of material information may result in criminal sanctions (including fines and imprisonment) and/or civil sanctions (including multiple damages and civil penalties). (18 U.S.C. 1001)

15. Signature of Agent/Notary Public: (signature)

16. Signature of Applicant (If firm or corporation, application must be signed by officer. Show title.): (signature) **as Authorized person for Optech Limited**

PS Form 1583, April 2004 (Page 1 of 2) (7530-01-000-9365)
This form on internet at www.usps.com

## Application For Mailbox Rental

This Agreement made (date) _8-1-05_ by and between _____, hereinafter referred to as "Applicant", and _OUTREACH LIMITED_ _____, hereinafter referred to as "Mail Service", shall be governed by these terms to which each party agrees:

1. By completing this form and USPS Form 1583, a copy of which will be made available to the United States Postal Service, applicant appoints Mail Service as agent for the receipt for a period not to exceed that for which rent has been paid in advance. Applicant will pick up mail at least once each month or make other suitable arrangements, in advance, with Mail Service. Mail Service will provide a lockbox key to applicant who may obtain his mail during the business hours posted by Mail Service. Should applicant appoint another person or organization, Mail Service shall assume that possession of a key is evidence of authority to collect mail.

2. The key loaned to applicant shall require a refundable cash deposit, and remains the property of Mail Service and shall not be duplicated or modified by applicant. The key deposit shall be refunded upon return of the key within ten (10) days of termination of service. Applicant understands that the relationship of the parties hereto is one of bailment and not landlord and tenant.

3. Once Mail Service has placed applicant's mail in the assigned lockbox, the mail shall be deemed to have been delivered, and Mail Service shall not be responsible for loss, theft or damage. Mail Service is not engaged in the delivery of mail and cannot be responsible for failure of the United States Postal Service to deliver mail or to deliver it in a timely fashion or undamaged condition.

4. Applicant agrees to use services in accordance with Mail Service rules and in compliance with all U.S. Postal regulations, as well as local, state and federal statutes and regulations. Failure to do so may result in cancellation of service without notice, refund or mail forwarding.

5. Information provided by applicant will be kept confidential and will not knowingly be disclosed without applicant's prior consent, except for law enforcement or postal operation purposes, in which case Mail Service intends to cooperate fully. Law enforcement is further clarified to include all city, county, state or federal agencies or their representatives.

6. Mail will not be accepted for more than three (3) persons or organizations in a single lockbox and each must complete a USPS Form 1583 and provide photo identification. If applicant consistently receives substantially more mail than can be placed in a single lockbox, Mail Service reserves the right to require applicant to rent a larger size box or one or more additional boxes. Charges for service are based upon average daily volume and activity. Special circumstances, e.g. high number of parcels, etc. may require assessment of additional fees. An unusually high volume of mail will result in either a higher fee being charged, or termination of the mail receiving service. Applicant further agrees that parcels delivered to this address for the applicant will be delivered by common carrier only, that no truck line deliveries will be made, that parcels will be retrieved within 24 hours after delivery, and that no hazardous or dangerous material will be delivered to applicant. Failure to adhere to any of these parcel delivery stipulations will result in termination of service.

7. Applicant agrees to protect, indemnify and hold harmless Mail Service from and against any and all claims, demands and causes of action any nature whatsoever relative to use of Mail Service facilities or services.

8. Should Mail Service commit or fail to commit any act which results in disruption of service and applicant thereby suffers a loss, Mail Service's liability shall be limited to not more than the rental fees paid by applicant for service not yet received. Mail Service shall not be liable for incidental or consequential damages.

Privacy Act Statement: Your information will be used to authorize the delivery of your mail to the designated addressee as your agent. Collection is authorized by 39 USC 401, 403, and 404. Providing the information is voluntary, but if not provided, we cannot provide this service to you. We do not disclose your information without your consent to third parties, except for the following limited circumstances: to a congressional office on your behalf; to financial entities regarding financial transaction issues; to a USPS® auditor; to entities, including law enforcement, as required by law or in legal proceedings; to contractors and other entities aiding us to fulfill the service; and for the purpose of identifying an address as an address of an agent who receives mail on behalf of other persons. Information concerning an individual who has filed an appropriate protective court order with the postmaster will not be disclosed except pursuant to court order. For more information on our privacy policies, see our privacy link on usps.com®.

PS Form 1583, April 2006 (Page 2 of 2) (7530-01-000-9365)

9. Per USPS regulations, certified, registered, insured, or C.O.D. mail or parcels will be accepted by Mail Service on the behalf of applicant. Full, advance payment of C.O.D. charges must be made to Mail Service prior to acceptance of C.O.D. packages.

10. Mail Service fees are due and payable in advance and notice thereof will be placed in applicant's lockbox. No other notice will be required. Failure to pay such fees when due may result in disruption or cancellation of services. Mail Service does not prorate fees and does not provide refunds in the event of cancellation by applicant.

11. Applicant shall use only the address designation "PMB" or "#" to designate their address. NO OTHER DESIGNATION IS VALID. Specifically excluded is the use of suite, apt., dept., or other designators. The U.S. Postal service may refuse to deliver any piece of mail that does not include the PMB or # sign designation. Applicant is responsible for notifying correspondents of the above address.

The address to be used by applicant for the purpose of receiving mail is as follows:

Applicant's Name or Business Name:

PMB# _____ or # _____

CNTECH LIMITED

_____

12. Upon termination of services by Mail Service or failure to pay rent in advance by applicant, Mail Service shall not make applicant's mail available without payment theretofore. Applicant understands that the United States Postal Service will not forward or return mail without payment, and will not accept a Change of Address. At termination of service, applicant, if he wishes mail forwarded after that date, shall provide Mail Service with a forwarding address and pay the required fees. In the event applicant fails to do this, Mail Service shall refuse any further mail and, in the case of mail already received handle such mail in accordance with USPS DMM D042.4.6 regulations.

_____      _____
Agent                             Applicant

## Termination Addendum

At termination of service, I hereby instruct Mail Service as follows:

_____ Forward my mail to new address. In consideration thereof, I place $_____ on deposit to be used for this purpose.

_____ Do not forward my mail. I understand that mail will not be forwarded and may be disposed of.



# VERIDIA
SOLUTIONS

Kevin G. Haase
Vice President - Investments
Janney Montgomery Scott
Monarch Plaza
3414 PEACHTREE Road, NE, Suite 1560
Atlanta, GA  30346-2104
Via Facsimile: (404) 233-5580

March 18, 2005

RE: OPTECH LIMITED  Acct. No. to be determined

Trading Authorization

**GOVERNMENT EXHIBIT 3**

Dear Kevin;

Confirming our conversation and pursuant to the authority granted to me by the Written Consent in Lieu of a Meeting of the Board of Directors of Optech Limited, a copy of which you have in your files, I am hereby confirming the list of current authorized individuals empowered to enter orders and to transfer funds for the above captioned account to now read as follows:

Patrick Kelley
Ronald Krauskopf
Carol Lott
Catherine Sandifer
Walter Matkovich
Yurij Debevc

In the same resolution dated January 31, 2005 Optech Limited has granted me the authority to add or remove individuals authorized to enter orders and to transfer funds for the above captioned account. Using this authority effective immediately, we want to **remove Carol Lott** from the list of authorized individuals and **add Diane Valentine** to the list of authorized individuals to enter orders and transfer fund for the above referenced account.

Should you have any questions regarding this matter please feel free to contact me at your convenience at 843-725-1120.

Sincerely,

Yurij Debevc
Managing Director

NOTARY - Patrick Kelley
3/18/05

{ OPERATIONAL INTEGRITY }

TEL | 843 | 725·1120
FAX | 843 | 725·1121
TOLL FREE | 877 | 272·9700

DEBEVC_314_009721

# The State of South Carolina



## Office of Secretary of State Jim Miles
### Certificate of Existence

**I, Jim Miles, Secretary of State of South Carolina Hereby certify that:**

VERIDIA SOLUTIONS, LLC, A Limited Liability Company duly organized under the laws of the State of South Carolina on November 27th, 2002, with a duration that is at will, has as of this date filed all reports due this office, including its most recent annual report as required by section 33-44-211, paid all fees, taxes and penalties owed to the Secretary of State, that the Secretary of State has not mailed notice to the company that it is subject to being dissolved by administrative action pursuant to section 33-44-809 of the South Carolina Code, and that the company has not filed articles of termination as of the date hereof.

Given under my Hand and the Great Seal of the State of South Carolina this 4th day of December, 2002.

*Jim Miles*

Jim Miles, Secretary of State



CERTIFIED TO BE A TRUE AND CORRECT COPY AS TAKEN FROM AND COMPARED WITH THE ORIGINAL ON FILE IN THIS OFFICE

NOV 27 2002

SECRETARY OF SOUTH CAROLINA

**Jim Miles**
SECRETARY OF STATE
**FILED**
NOV 27 2002
AM  PM
7 8 9 10 11 12 1 2 3 4 5 6
4

## STATE OF SOUTH CAROLINA
## SECRETARY OF STATE

### ARTICLES OF ORGANIZATION
### LIMITED LIABILITY COMPANY

**TYPE OR PRINT CLEARLY IN BLACK INK**

The undersigned delivers the following articles of organization to form a South Carolina limited liability company pursuant to Sections 33-44-202 and 33-44-203 of the 1976 South Carolina Code of Laws, as amended.

1. The name of the limited liability company which complies with Section 33-44-105 of the South Carolina Code of 1976, as amended is _VERIDIA SOLUTIONS, LLC_

2. The address of the initial designated office of the Limited Liability Company in South Carolina is

   _ONE POSTON ROAD_       _SUITE 125_
   Street Address
   
   _CHARLESTON_       _SC_       _29407_
   City                          Zip Code

3. The initial agent for service of process of the Limited Liability Company is
   
   _YURI DEBEVC_                    _[signature]_
   Name                              Signature
   
   and the street address in South Carolina for this initial agent for service of process is
   
   _ONE POSTON ROAD_       _SUITE 125_
   Street Address
   
   _CHARLESTON_       _SC_       _29407_
   City                          Zip Code

4. The name and address of each organizer is
   
   (a) _YURI DEBEVC_
       Name
       
       _43 ARABIAN DR._            _CHARLESTON_
       Street Address              City
       
       _S.C._                      _29407_
       State                       Zip Code
   
   (b) _____
       Name
       
       _____   _____
       Street Address              City
       
       _____   _____
       State                       Zip Code
   
   (Add additional lines if necessary)

5. [ ] Check this box only if the company is to be a term company. If so, provide the term specified: _____

DEBEVC_314_009723

_VERIDIA SOLUTIONS, LLC_
Name of Limited Liability Company

6. [✓] Check this box only if management of the limited liability company is vested in a manager or managers. If this company is to be managed by managers, specify the name and address of each initial manager:

(a) _YURI  DEBEVC_
Name

_43 ARABIAN DR._   _CHARLESTON_
Street Address                City

_SOUTH CAROLINA_   _29407_
State                         Zip Code

(b) _____
Name

_____
Street Address    City

_____
State             Zip Code

(c) _____
Name

_____
Street Address    City

_____
State             Zip Code

(d) _____
Name

_____
Street Address    City

_____
State             Zip Code

(Add additional lines if necessary)

7. [ ] Check this box only if one or more of the members of the company are to be liable for its debts and obligations under section 33-44-303(c). If one or more members are so liable, specify which members, and for which debts, obligations or liabilities such members are liable in their capacity as members.

_____
_____
_____

DEBEVC_314_009724

<u>VERIDIA SOLUTIONS LLC</u>
Name of Limited Liability Company

8. Unless a delayed effective date is specified, these articles will be effective when endorsed for filing by the Secretary of State. Specify any delayed effective date and time:

   NOVEMBER 26 2002

9. Set forth any other provisions not inconsistent with law which the organizers determine to include, including any provisions that are required or are permitted to be set forth in the limited liability company operating agreement.

10. Signature of each organizer

    _[signature]_

    Date Nov. 26, 2002

    (Add Additional lines if necessary)

## FILING INSTRUCTIONS

1. File two copies of this form, the original and either a duplicate original or a conformed copy.

2. If space on this form is not sufficient, please attach additional sheets containing a reference to the appropriate paragraph in this form, or prepare this using a computer disk which will allow for expansion of the space on the form.

3. This form must be accompanied by the filing fee of $110.00 payable to the Secretary of State.

   Return to: Secretary of State
   P.O. Box 11350
   Columbia, SC 29211

4. The first annual report for a Limited Liability Company must be delivered to the Secretary of State between January first and April first of the calendar year after which the Limited Liability Company was organized or the foreign company was first authorized to transact business in South Carolina. Subsequent annual reports must be delivered to the Secretary of State on or before the fifteenth day of the fourth month following the close of the limited liability company's taxable year.

## NOTE

THE FILING OF THIS DOCUMENT DOES NOT, IN AND OF ITSELF, PROVIDE AN EXCLUSIVE RIGHT TO USE THIS CORPORATE NAME ON OR IN CONNECTION WITH ANY PRODUCT OR SERVICE. USE OF A NAME AS A TRADEMARK OR SERVICE MARK WILL REQUIRE FURTHER CLEARANCE AND REGISTRATION AND BE AFFECTED BY PRIOR USE OF THE MARK. FOR MORE INFORMATION, CONTACT THE TRADEMARKS DIVISION OF THE SECRETARY OF STATE'S OFFICE AT (803) 734-1728.

LLC-ARTICLES OF ORGANIZATION.doc

Form Revised by South Carolina
Secretary of State, January 2000

DEBEVC_314_009725



**REFERRAL FEE AGREEMENT**                          PAGE 1 OF 7

**This Referral Fee Agreement ("RFA" or "Agreement")** dated April 25, 2005 is between Optech Limited ("OL") and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ("Advisor").

WHEREAS, OL offers access to certain loan transactions and/or introductions to lender services and products (collectively "OL Services"), which transactions, services and products are made available from one or more third-party lenders to appropriate clients in approved states in the United States of America, and in other approved geographies around the world.

WHEREAS, Advisor has a sophisticated understanding of the OL Services offered and has clients and other contacts ("Advisor's Contacts") which may benefit from the OL Services.

WHEREAS, Advisor desires to enter into this RFA with OL, which specifies the terms under which OL will: i) permit Advisor to communicate details of OL Services to Advisor's Contacts; ii) accept the registration of interested and pre-qualified Advisor Contacts who, upon acceptance, then will each become a Registered Contact ("RC"); and iii) pay, or cause to be paid, fees to Advisor during term of this RFA or a successor RFA as RCs conclude loans or transactions through lenders introduced by OL.

NOW, THEREFORE, for and in consideration of the mutual promises and agreements herein contained, it is agreed by and between the parties as follows:

### Article 1
### Terms and Procedures for Determining Registered Contacts

**1.1  Terms.**  To be accepted by OL as an RC of Advisor: i) the entity(s) or person(s) being submitted to OL by Advisor as a potential RC must not have been previously contacted by OL or have previously contacted OL directly or be registered by OL as a "Registered Contact" of any other advisor; and ii) Advisor must provide a signed affidavit to OL confirming that the proposed RC has been contacted at least once by Advisor in person, by phone, or in writing, and that the proposed RC is a bona fide prospect for one or more OL Services in terms of asset holdings and objectives. Once accepted and registered, a RC will be maintained as such by OL as long as Advisor is in existence and has a current RFA in place with OL.

**1.2  Procedures.**  For each proposed RC, Advisor must provide OL with a signed affidavit confirming Advisor's compliance within the terms of Section 1.1 in order to register the contact with OL ("Submission"). Within two business days after receipt of the signed affidavit, OL will notify Advisor that the Contact has been accepted as an RC of Advisor, or provide reasons for disqualification of the Submission.

OL ⟨sig⟩                                         Advisor ⟨sig⟩                  RFA040601-O

13/F SILVER FORTUNE PLAZA   ONE WELLINGTON STREET   CENTRAL   HONG KONG
TEL: (852) 2530.9007   FAX: (852) 2530.9100   info@hk-optech.com   www.hk-optech.com



GOVERNMENT EXHIBIT 4

OPTECH001_005_000376



**REFERRAL FEE AGREEMENT**          PAGE 2 OF 7

### Article 2
### Compensation & Vesting Duties

**2.1 Fees.** OL will remit or cause the lenders or transaction parties to remit directly to Advisor a referral fee for each transaction concluded through OL by Advisor's RCs during the term of this RFA, and subsequent to the expiration of this RFA as long as a valid successor RFA exists, as follows:

a) Except as provided in subparagraphs (d) and (e) below, for stock loan transactions with US-based RCs funded through or in connection with OL Services, a fee shall be paid to Advisor equal to one half percent (50 basis points) of the net loan proceeds disbursed to the RC ("Fee"). The Fee shall be due and payable within thirty (30) days of the remittance of loan proceeds to the RC. If Advisor, in turn, uses the services of other introducing entities, it will be the responsibility of Advisor to compensate these entities out of such Fee, and OL shall have no responsibility for payment of additional fees or the distribution of partial fees to these entities.

b) Except as provided in subparagraphs (d) and (e) below, for floating rate note (FRN) loan transactions with US-based RCs funded through OL Services, a fee shall be paid to Advisor equal to one quarter percent (25 basis points) of the net loan proceeds disbursed to the RC ("Fee"). The Fee shall be due and payable within thirty (30) days of the remittance of loan proceeds to RC. If Advisor, in turn, uses the services of other introducing entities, it will be the responsibility of Advisor to compensate these entities out of such Fee, and OL shall have no responsibility for payment of additional fees or the distribution of partial fees to these entities.

c) Except as provided in subparagraphs (d) and (e) below, for stock loan transactions with non-US based RCs funded through or in connection with OL Services, a fee shall be paid to Advisor equal to one percent (100 basis points) of the net loan proceeds disbursed to the RC ("Fee"). The Fee shall be due and payable within thirty (30) days of the remittance of loan proceeds to the RC. If Advisor, in turn, uses the services of other introducing entities, it will be the responsibility of Advisor to compensate these entities out of such Fee, and OL shall have no responsibility for payment of additional fees or the distribution of partial fees to these entities.

d) Fees payable through OL or the lender(s) to Advisor will be reduced by any fees paid directly by Advisor's RCs to Advisor. In the event Advisor charges Advisor's RCs a fee for a stock loan or floating rate note loan transaction equal to or exceeding fees due from or through OL, OL will be under no obligation to pay any fees to Advisor in connection with that specific transaction.

e) Fees will be paid at the funding of each individual loan transaction. There will be no fees paid at the point of renewal of any previously established transaction, regardless of whether or not there is an increase in the loan amount at renewal.

f) Advisor understands and agrees that no part of any referral fees paid to Advisor by or through OL or any lender will be shared with or diverted to any RC, either directly or indirectly, as a result of concluding a transaction(s) through OL.

OL _____       Advisor _____       RFA040601-O

13/F SILVER FORTUNE PLAZA   ONE WELLINGTON STREET   CENTRAL   HONG KONG
TEL: (852) 2530.9007   FAX: (852) 2530.9100   info@hk-optech.com   www.hk-optech.com

OPTECH001_005_000377



**REFERRAL FEE AGREEMENT**     PAGE 3 OF 7

**2.2 Duties of Advisor.**

a) Advisor, as an independent contractor as to both OL and any lender(s) referred by OL, will be responsible for its own costs and expenses. Advisor is responsible for paying when due all taxes, including without limitation payroll and income taxes, estimated taxes and any other taxes incurred as a result of any fees paid through OL or any lender(s) to Advisor. Advisor agrees to indemnify OL and any lender(s) in a transaction with Advisor's RCs for any claims, costs, losses, fees, penalties, interest, or damages suffered by OL resulting from Advisor's failure to comply with this provision.

b) Other than materials published by OL or any lender(s) referred by OL and provided to Advisor specifically for the purpose of distribution to Advisor's Contacts, Advisor agrees to request and receive prior written approval from OL before publishing, disclosing, distributing or using any public and/or private marketing materials related to OL and/or any OL Services and/or any other products or services similar or related to those offered by OL. Advisor understands that no advertising or marketing materials published by Advisor may refer by name to OL or to any of the OL Services, without OL's prior written consent. The consent required pursuant to this provision may be granted or withheld in OL's sole and absolute discretion.

c) Advisor will provide written notice to each RC of all fees due to Advisor related to that RC's loan(s), and Advisor will provide written notice to OL of all fees due from Advisor's RCs to Advisor as the result of establishing a loan transaction(s) through OL Services.

d) Advisor understands that if any of Advisor's RCs would like Advisor to instruct OL and/or the lender(s) with regard to the RC's loan transaction(s), said RC must submit to OL a Limited Power of Attorney assigning such authority to Advisor, in form and substance acceptable to OL and its counsel.

e) Advisor understands that, in the absence of a Limited Power of Attorney, each RC must provide OL with appropriate written authorization to release information regarding the status and details of said RC's loan transaction(s) before OL will release this information to Advisor.

f) Upon notification by OL that a loan has been funded to an RC, Advisor must submit a written invoice to OL to request remittance of the fees payable. Invoices must identify: i) the RC; ii) the loan amount; iii) the loan number; iv) the loan type and fees payable; and v) any and all fees contractually payable, directly or indirectly, to Advisor (or a related entity) by that RC as a result of the loan transaction through OL Services (or state none if there are no such fees payable).

g) Advisor represents and warrants to OL that Advisor is in compliance, in each place where it does business, with any and all state, federal and local license, regulatory requirements, rules, regulations, statutes and laws that are applicable to Advisor's business related to this Agreement.

OL _GA_     Advisor _[signature]_     RFA040601-O

13/F SILVER FORTUNE PLAZA   ONE WELLINGTON STREET   CENTRAL   HONG KONG
TEL: (852) 2530.9007   FAX: (852) 2530.9100   info@hk-optech.com   www.hk-optech.com



**REFERRAL FEE AGREEMENT**                          PAGE 4 OF 7

2.3 **Duties of OL.** OL will be responsible to remit to Advisor the appropriate fee for each transaction when due, subsequent to receiving an invoice from Advisor in accordance with Section 2.2(f).

### Article 3
### Indemnification and Liability

3.1 **Indemnification.** Advisor agrees to indemnify OL and its owners, officers, managers, employees, members, directors, principals, partners, shareholders, beneficiaries, agents, successors and assigns (the "Indemnified Persons") from and against any and all judgments, settlements, penalties, costs and expenses, which shall include reasonable attorneys' fees, arising out of or related to Advisor's misconduct, malfeasance, misrepresentation or breach of this Agreement. Furthermore, Advisor will indemnify and hold each Indemnified Person harmless from and against any and all expenses, claims, losses, damages, liabilities or actions in respect thereof (including costs of defense and attorney's fees), including any of the foregoing incurred in settlement of any litigation or proceeding, commenced or threatened, arising out of, relating to or based upon any aspect of any RC's loan transaction(s).

3.2 **Limitation of Liability.** Except for an action in breach of this Agreement, neither party will be liable to the other for any indirect, exemplary, incidental or consequential damages, however caused, whether by negligence or otherwise, even if such party has been advised of the possibility of such damages.

### Article 4
### Intellectual Property Rights

4.1 **Copyrights.** Advisor acknowledges that OL or another lender for the transactions own all copyrights in any and all websites and public and/or private written materials ("Marketing Materials") used by OL and/or another lender in the transactions with RCs to market the OL Services. Advisor agrees that it will not reproduce, in whole or in part, any of the Marketing Materials in any form or medium whatsoever (even in temporary digital files) at any time or for any purpose whatsoever without the prior written permission of OL, regardless of whether OL or another lender has applied for or obtained registered copyrights for such works.

4.2 **Trademarks.** Advisor acknowledges that OL or another lender for the transactions is/are the owner(s) of all right and interest in and to OPTECH, OPTECH LIMITED, OPTECHLIMITED.COM, 90% STOCK LOAN, OPTION CONVERSION LOAN, ESOP QRP LOAN, the Optech Limited logos, and any other word, name, symbol or device, or any combination thereof, used by OL to identify or distinguish the OL Services or the products it offers or to indicate source or origin, including without limitation all trademarks and/or service marks designated by OL or another lender with the symbol sm, tm, or ®. Advisor agrees that it will not use any such trademark or service mark without the express prior written consent of OL.

4.3 **Immediate Termination.** Advisor understands that any violation of its obligations under this Article 4 shall be grounds for immediate termination of this RFA by OL, and that any such violation may be cause for OL to pursue appropriate legal remedies. Advisor acknowledges and agrees that any violation or breach of this Article 4 will cause irreparable injury to OL and would cause damages to OL that would be difficult or

OL ___ -                                          Advisor ___              RFA040601-0

13/F SILVER FORTUNE PLAZA   ONE WELLINGTON STREET   CENTRAL   HONG KONG
TEL: (852) 2530.9007   FAX: (852) 2530.9100   info@hk-optech.com   www.hk-optech.com

OPTECH001_005_000379

Case 3:07-cv-04762-PJH   Document 51-2   Filed 04/09/2008   Page 17 of 19

 **REFERRAL FEE AGREEMENT**   PAGE 5 OF 7

impossible to ascertain or quantify. Accordingly, without limiting any other remedies that may be available with respect to any breach of this Article or Agreement, and notwithstanding that all other disputes between the parties must be submitted to arbitration as provided herein, Advisor hereby consents to the entry of an injunction to restrain any breach or threatened breach of this Article 4. Advisor further agrees that, in any action or proceeding relating to a breach of this Article 4, OL and/or the other owner(s) of the infringed property shall recover all reasonable attorneys' fees and costs that are incurred in connection with the enforcement of this Article, including without limitation, costs of investigation, witness fees, court costs, attorneys' fees and expenses.

**Article 5**
**General**

5.1 **Relationship.** The parties acknowledge that Advisor is entering into this Agreement as, and shall continue to be, an independent contractor. Under no circumstances shall Advisor become an employee, partner, agent or principal of OL while this Agreement is in effect. Advisor understands and agrees that Advisor is not entitled to the rights or benefits afforded to OL's employees, including disability or unemployment insurance, worker's compensation, medical insurance, sick leave, or any other employment benefit. Advisor is responsible for providing, at its own expense, disability, worker's compensation, unemployment and other insurance, as well as all licenses and permits usual or necessary for Advisor and its employees and/or subcontractors to perform Advisor's obligations and business under this Agreement. The parties further acknowledge that any and all rights not expressly granted pursuant to this Agreement are reserved to the respective party and that neither will have any right, power or authority to obligate the other to any contract, term or condition not expressly authorized herein. This Agreement is not to be construed as creating in any way an agent/principal or employee/employer relationship between Advisor and OL.

5.2 **No Third Party Interest.** Neither this Agreement, nor any provision set forth herein, except as expressly stated, is intended to or shall create any rights in or confer any benefits upon any person other than the parties hereto; provided, however, that lender(s) in transactions with RCs may enforce rights granted to them hereunder

5.3 **Notices.** All notices, requests and other communications hereunder shall be delivered in writing and shall be deemed to have been duly given at the time of receipt if delivered by hand or by electronic transmission ("Facsimile"), or, if mailed, three (3) days after mailing registered or certified mail, return receipt requested, with postage prepaid to the names and addresses in the contract.

5.4 **Written Modifications.** This Agreement may only be amended with the written consent of the parties, and no oral waiver or amendment shall be effective under any circumstances whatsoever.

5.5 **Successors and Assigns.** This Agreement may not be assigned by Advisor without OL's prior written consent.

OL_____   Advisor_____   RFA040601-O

13/F SILVER FORTUNE PLAZA  ONE WELLINGTON STREET  CENTRAL  HONG KONG
TEL: (852) 2530.9007  FAX: (852) 2530.9100  info@hk-optech.com  www.hk-optech.com

OPTECH001_005_000380



**REFERRAL FEE AGREEMENT**  PAGE 6 OF 7

**5.6 Termination and Survivability of Certain Covenants.**

a) This Agreement will terminate automatically, without notice from OL, six months from the date of this Agreement if none of Advisor's RCs has closed a loan transaction through OL or with one of the lenders referred by OL during that six-month period. Provided that one or more of Advisor's RCs close one or more loan transactions in the initial six month term, this Agreement shall be renewable, upon execution of a new Agreement between OL and Advisor, for a subsequent six month term at OL's prevailing terms and conditions at the time of renewal. The Agreement shall be eligible for renewal for subsequent six-month terms thereafter at OL's prevailing terms and conditions at the time of the subsequent renewals, so long as Advisor's RCs have closed at least one loan transaction in each six-month term immediately preceding each such renewal, unless either party cancels the Agreement by providing written notice of such cancellation to the other party.

b) OL reserves the right to terminate this Agreement at any time for cause (as determined by OL in its discretion), at its sole discretion. In the event of termination for cause, OL shall not be obligated to pay Advisor on any future business from any RC previously referred to OL by Advisor.

c) The provisions of Articles 2.2, 3, 4 and 5 of this Agreement shall survive the expiration or termination hereof.

**5.7 Confidentiality.** The parties will hold the terms and conditions of this Agreement in confidence, and, with the exception of the provisions under Section 2.2(c), neither party will, without the prior consent of the other party, disclose any of such terms and conditions to other persons except as may be necessary in order for a party to enforce its rights hereunder or as may be required by law or order of a court of competent jurisdiction.

**5.8 Exclusivity.** During the term of this Agreement, Advisor shall not directly or indirectly engage in, be employed by, consult for, perform services for or refer any of Advisor's Contacts or Registered Contacts to any organization or person, whether as lender, agent, broker, independent contractor, finder or other, that makes, markets, offers, provides, or is otherwise involved in making, marketing, offering, or providing any services similar to OL Services, including but not limited to making, marketing, offering, or providing non-recourse stock loans and/or floating rate note loans.

**5.9 Applicable Law.** This Agreement will be governed by and construed in accordance with the internal substantive laws of the State of New York, without giving effect to its conflicts of law rules.

**5.10 Arbitration.** The parties to this Agreement, and their respective owners, employees, officers, principals, directors, members, partners, attorneys and agents hereby agree to submit to final and binding arbitration any and all claims, disputes and controversies between them in any way relating to this Agreement or the transactions contemplated hereby. It is further agreed that such arbitration shall take place in New York, New York, United States of America, and shall be conducted in accordance with the Commercial Arbitration Rules of JAMS Endispute ("**JAMS**"). Arbitration hereunder shall be before a single neutral arbitrator, who shall be an attorney who has practiced in the area of commercial law for at least ten years or a retired judge at the U.S. District Court or Appellate Court level, selected in accordance with the rules of the Commercial Rules of JAMS. Each party shall bear its own costs and expenses and an equal share of the arbitrator's fees

OL _____ -                                                                                                         Advisor _____          RFA040601-O

13/F SILVER FORTUNE PLAZA  ONE WELLINGTON STREET  CENTRAL  HONG KONG
TEL: (852) 2530.9007  FAX: (852) 2530.9100  info@hk-optech.com  www.hk-optech.com

OPTECH001_005_000381

 **REFERRAL FEE AGREEMENT**   PAGE 7 OF 7

and administrative fees of arbitration. The award of the arbitrator hereunder shall be in writing, shall be binding on the parties named in the proceeding, and may be entered for enforcement with a court of competent jurisdiction.

**5.11 Severability.** If any provision of this Agreement shall be determined finally to be unenforceable, then such provision shall be deemed to be severed from this Agreement and every other provision of this Agreement shall remain in full force and effect.

**5.12 Signatures.** Signatures of this Agreement via facsimile shall be acceptable, but must be followed by an original sent by registered mail. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**5.13 Complete Agreement.** This Agreement sets forth the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior discussions, letters of intent, agreements, covenants, arrangements, communications, representations, understandings or warranties, of any kind between them whether oral or written, by any officer, employee, or representative of either party relating thereto.

**IN WITNESS WHEREOF,** each party caused this Agreement to be executed by its duly authorized representative(s). The duly authorized representatives of the parties acknowledge and agree they have carefully read and understand all of the foregoing and have executed this Agreement effective as of the date first written above.

FOR: Optech Limited
c/o Veridia Solutions, LLC
One Poston Road, Suite 120
Charleston, SC 29407
Tel: 843 725 1120
Fax: 843 725 1121

FOR: [redacted]

_____   30 May 2005
Authorized Signatory        Date

_____   4/28/05
Authorized Signatory        Date

RFA040601-O

13/F SILVER FORTUNE PLAZA   ONE WELLINGTON STREET   CENTRAL   HONG KONG
TEL: (852) 2530.9007  FAX: (852) 2530.9100  info@hk-optech.com  www.hk-optech.com

OPTECH001_005_000382