# FINANCIAL SERVICES
# REPRESENTATION/ADMINISTRATION AND PROCESSING
# AGREEMENT

### Between

## OPTECH LIMITED

(a Private Limited Company organized under the laws of the Hong Kong Special
Administrative Region of the People's Republic of China)

*and*

## VERIDIA SOLUTIONS, L.L.C.

(a Limited Liability Company organized in South Carolina, USA)

*as of*
**1 January 2003**

NAGY_045_005197

**THIS FINANCIAL SERVICES REPRESENTATION/ADMINISTRATION AND PROCESSING AGREEMENT** (the "Agreement") is entered into as of this 1st day of January, 2003, by and between **OPTECH LIMITED**, a Private Limited Company organized and existing under the laws of the Hong Kong Special Administrative Region of the People's Republic of China (the "Company"), and **VERIDIA SOLUTIONS, LLC**, a limited liability company organized and existing under the laws of the State of South Carolina, USA ("Veridia").

## WITNESSETH:

**WHEREAS,** the Company and its affiliates are in the business of providing non-recourse loans ("Loans") to borrowers in an amount up to a pre-determined percentage of the established hedge value of the stock or securities and up to a pre-determined percentage of the face value of floating rate notes owned by such borrowers and pledged by them in connection with such loan(s) (the **"Collateral"**); and

**WHEREAS,** neither the Company nor its subsidiaries conducts or anticipates conducting substantial, regular or continuous business in the territory of North America ("Territory"), and therefore will require the contracted services of a representative/agent located within the Territory for the purpose of supplying incidental clerical and administrative services in connection with the Loans; and

NAGY_045_005198

**WHEREAS,** Veridia is in the business of and has expertise in providing administrative services in connection with complex financial products, such as the Loans, and employs skilled administrative personnel in the Territory; and

**WHEREAS,** the Company wishes to engage Veridia hereunder to act as its independent representative/agent in the Territory for the purposes of (i) acting as collection, disbursing, reporting and escrow representative/agent in connection with the Loans and the Collateral, (ii) executing certain trades and transfers of the Collateral (the "Hedging Transactions") for the Company's own account, on instructions from the Company or its affiliates; and

**WHEREAS,** in exchange for the services and activities to be conducted by Veridia for the Company hereunder, the Company will compensate Veridia with Representation/Agency Fees (as defined herein) based on the services it will render hereunder.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

## ARTICLE I

## NATURE OF THE RELATIONSHIP

3

1.    <u>Legal Significance of Recitals and Definitions</u>.    The definitions contained above in the recitals to this Agreement are intended by the parties to form a part of this Agreement and to be legally binding.

2.    <u>Representative/agent</u>. The terms Representative/agent, representation/agency (as herein defined) may be used interchangeably, however, always with the same singular meaning of an entity that has no authority to negotiate or conclude agreements, contracts or understandings of any kind in the name of or on behalf of the Company.

3.    <u>Appointment</u>. The Company hereby engages and appoints Veridia, during the Term of this Agreement (as hereinafter defined), as the Company's independent representative/agent for the limited purposes of acting as collecting, disbursing, reporting and escrow representative/agent in connection with the Loans; executing, based on instructions received from the Company or its duly authorized and appointed agents, Hedging Transactions relating to the Collateral; and otherwise administering the Loans, all as further provided herein, and Veridia accepts such engagement in such capacity by the Company subject at all times to the terms and conditions hereof.

4.    <u>No Partnership</u>.    Veridia, as an independent representative/agent of the Company, shall at all times relevant hereto be an independent contractor and not an employee, partner, subsidiary or dependent agent of the Company.    Nothing in this

NAGY_045_005200

Agreement shall be construed as creating any relationship between Veridia and the Company other than that of representative/agent and principal.

5.    <u>Representation/Agency/Administration</u>.  Veridia has no authority to and shall not negotiate or conclude agreements, contracts or understandings of any kind, between borrowers, financial institutions including securities brokerage firms, banks or other counterparties and the Company, unless the Company has provided to Veridia in advance express, written, specific pre-authorized parameters for the conclusion of such agreements, contracts or understandings.

## ARTICLE II

### STOCK LOAN AND ACCOUNT ADMINISTRATION

1.    <u>Account Administration</u>.  Veridia agrees to use the standard of care, skill and attention that one would reasonably expect of a professional in its position to conduct, solely at the written direction of the Company, the following activities:

    a.    administer, and assist the Company in monitoring borrowers' performance under, any and all agreements, notes, charge and security agreements and such other documentation evidencing borrowers' obligations under the Loans (collectively, the "Loan Documentation");

5

NAGY_045_005201

b.    immediately notify the Company in writing of any potential default by a borrower and provide the Company with a copy of all notices of any such defaults received by Veridia with respect to any Loan;

c.    act as the Company's representative/agent, administering accounts at banks and other custodial institutions as may be held in the name of the Company in connection with the Loans, including accounts to which Collateral may be transferred, accounts containing the interest and principal paid pursuant to the Loans, and accounts from which the Loans have been disbursed;

d.    timely execute and deliver such notices, directions and other instruments as may be necessary or appropriate to cause all monies, credits or other property involved in the Loans to be paid, distributed or delivered as may be required by the Company from time to time;

e.    coordinate the delivery of all original Loan Documentation to the Company for storage at the Company's offices, and maintain copies of same; and

f.    transmit to the Company on a monthly basis such accurate and current information as will enable the Company to produce reliable budgets and financial statements as to the Loans, as further provided herein.

NAGY_045_005202

2.    <u>Nature of Performance</u>.    Veridia shall perform only ministerial and clerical functions as a representative/administrative agent of the Company, and not as an owner or principal, notwithstanding that the Company may provide Veridia and/or its officers with one or more powers of attorney to act in its behalf as to Company accounts containing Collateral pledged, owned or held in connection with Loans.

3.    <u>No Authority to Negotiate.</u> Veridia has no authority to negotiate or conclude agreements, contracts or understandings of any kind in the name of or on behalf of the Company. Veridia shall at all times and in every instance reserve to the Company the policy decisions, qualitative evaluation, quantitative evaluation and final decision-making authority as to the matters referenced in Article III, Paragraph 1 herein.

## ARTICLE III

## HEDGING TRANSACTIONS

1.    <u>General Understandings</u>.    The parties to this Agreement understand that neither is in the business of buying, selling or advising on the purchase or sale of stock, securities, commodities or other investments for third parties, and that neither is a broker or dealer in stocks, securities, commodities or other investments either in or outside of the Territory. Furthermore, the parties understand and agree that any activities with respect to the purchase or sale of securities or other investments in connection with Loans and/or Collateral as are contemplated by this Agreement are to be conducted by the Company (on its own advice, or the written advice of its authorized agents) for its own account, with

7

NAGY_045_005203

Veridia only offering administrative and logistical assistance as needed in connection therewith under the terms and prescriptions of this Agreement.

2.    <u>Veridia's Activities</u>.    Veridia agrees to execute, promptly and strictly in accordance with the precise instructions of the Company as they are communicated by the Company to Veridia from time to time, such Hedging Transactions in connection with Collateral as the Company (or its duly authorized agents) may direct to Veridia from time to time. Veridia agrees to use the standard of care, skill and attention that one would reasonably expect of a professional in its position to execute the Hedging Transactions. Veridia further agrees to transmit to the Company on a quarterly basis such accurate and current information as will enable the Company to monitor its own accounts, as further provided in Article XIII herein.

3.    <u>No Investment Advice</u>.    Veridia shall not act as an investment manager or investment advisor for purposes of this Article III or otherwise in connection with the transactions and activities contemplated by this Agreement. Veridia shall at all times and in every instance reserve to the Company all investment and policy decisions, trading decisions, qualitative and quantitative evaluation and final decision-making authority with respect to the Hedging Transactions, including but not limited to the decision to engage in any Hedging Transaction, the timing of the Hedging Transactions, and the selection of the stock, assets and other securities that will be purchased, held or sold in the Hedging Transactions.

8

NAGY_045_005204

4.    <u>No Tax Advice.</u>    Veridia does not and shall not hold itself out to be a Tax Advisor and thus will not respond to borrower's tax related inquiries either verbal or written.

5.    <u>No Accounting Advice.</u>    Veridia does not and shall not hold itself out to be an Accountant and thus will not respond to borrowers' accounting related inquiries either verbal or written.

## ARTICLE IV

## LOAN AGREEMENTS WITH BORROWERS

Veridia understands and agrees (i) that the Loans shall continue to be subject exclusively to the Loan Documentation developed and utilized by the Company and approved by the lender in each Loan transaction at the time such Loans were closed, without modification; (ii) that all Loan Documentation is the exclusive property of the Company, and that Veridia shall not have or acquire any rights in or to such Loan Documentation or the information contained therein or the relationships represented thereby, (iii) that Veridia may make no representations, warranties or statements that are inconsistent with the express terms and conditions of the Loan Documentation, and (iv) that Veridia will hold itself out only as an independent representative/agent of the Company under the terms of this Agreement.

9

## ARTICLE V

## VERIDIA ACTING AS NON-EXCLUSIVE, INDEPENDENT

### REPRESENTATIVE/ AGENT

1.    <u>Non-Exclusivity</u>.  Nothing herein shall prohibit Veridia from representing persons

or entities other than the Company, including persons and entities engaged in the same

business or substantially the same business as that of the Company, for the purpose of

administering their products or services.

2.    <u>Independence of Veridia</u>.  The Company shall have no right or authority to direct

or control Veridia whatsoever, other than as provided pursuant to this Agreement with

respect to Veridia's specific duties and performance hereunder.  Veridia shall be solely

responsible for the effective management and operation of its offices, and the Company

shall have no responsibility therefor or control thereof.  Nor shall the Company have any

right or authority to own, rent or use the offices of Veridia, or to direct Veridia in its use

of its offices, or to use any Veridia address as its return address.

## ARTICLE VI

## LIMITATION OF REPRESENTATIVE'S/AGENT'S AUTHORITY

1.    <u>Administrative Representation/Agency</u>.  Veridia has no authority to and shall not

(i) reduce, increase or otherwise vary or modify the amount of borrowers' payment

obligations as set out in the Loan Documentation, (ii) accelerate, postpone or otherwise

vary or modify any date fixed under the Loan Documentation, for the payment of

principal or interest or other sums, (iii) make any other temporary or permanent

10

NAGY_045_005206

modification to the Loan Documentation, or (iv) negotiate or conclude agreements, contracts or understandings of any kind, between borrowers and the Company, or between the Company and any custodian of Collateral held by the Company in connection with the Loans or Hedging Transactions associated therewith.

2.    Fiscal Agency.    Veridia, as an independent fiscal representative/agent of the Company, but not as principal or dependent agent, shall as necessary disburse the proceeds of the Loans to borrowers; collect and receive from borrowers the periodic installments of principal and interest and other sums payable under the Loan Documentation; and collect and receive from borrowers the Collateral pledged pursuant to the Loan Documentation, using accounts belonging to the Company (the "Company Accounts").    Veridia shall exercise only such rights, powers and privileges over such Company Accounts, as may be the subject of express, written and limited authorization from the Company to Veridia.    Veridia shall receive and deposit into appropriate Company account, as soon as practical, all monies received by Veridia on behalf of the Company under or pursuant to any provision of the Loan Documentation as fiscal representative/agent for the Company solely for the purpose for which they were paid.

3.    General Limitations.    Veridia understands and agrees that as an independent, non-exclusive representative/agent of the Company it has only the limited authority to act in the manner and capacity expressly and precisely defined herein, and further that:

NAGY_045_005207

a.      Under no circumstances shall Veridia have the right or authority to bind or obligate the Company or any of its affiliates to or under any contract, understanding, or agreement, including without limitation, any Loan Documentation or any amendment thereto;

b.      Veridia has no authority to negotiate or conclude agreements, contracts or understandings of any kind in the name or on behalf of the Company;

c.      Veridia has no authority to re-pledge, sell, margin or otherwise transact with the pledged Collateral Securities, or to engage in any other investment activity on behalf of the Company, except as may be expressly provided in writing by the Company on a case-by-case basis;

d.      Veridia shall not warrant, represent or otherwise hold itself out as having the authority defined in this Article VII, Paragraph 3, Sub-paragraphs a – c.

## ARTICLE VII

## COMPENSATION

The parties hereby agree that Veridia shall receive income from the Company on a bi-weekly basis, at rates and on such terms as more particularly set out in a schedule (the "Agency Fee Schedule") agreed by the Company and Veridia from time to time and as attached hereto as <u>Annex A</u>.

12

In addition, the parties hereby agree that the Company will reimburse Veridia for the direct expenses that Veridia incurs on behalf of the Company.

## ARTICLE VIII

## ACTIONS UPON DEFAULT BY BORROWERS

If either party has actual knowledge of an Event of Default (as such term is defined in the Loan Documentation) by a borrower under the Stock Loan Documentation, it shall promptly notify the other party thereof in writing.  As used in this Agreement, "actual knowledge" shall mean the actual knowledge of the President, any Senior Vice President, or any Vice President of Veridia or a director or manager of the Company.  Thereupon, the parties shall consult as to the action to be taken as a result of the occurrence of the Event of Default, but the ultimate decision as to the action to be taken shall belong solely to the Company.

## ARTICLE IX

## INDEMNIFICATION / LIMITATION OF LIABILITY

1.      Indemnification. Veridia shall indemnify, defend, and hold harmless the Company, including the present and former employees, officers, and directors of the Company, from and against any and all liability, loss, damage or expense (including attorneys' fees) which any of them may incur or suffer resulting from, arising out of, relating to, or in connection with any act or omission by Veridia in connection with its performance of this Agreement (including without limitation any breach or violation of the representations or warranties of Veridia contained herein), or any other agreement, instrument or document delivered

13

NAGY_045_005209

by Veridia in connection with this Agreement and/or the transactions contemplated hereby; provided that Veridia shall not be liable for any of the foregoing to the extent they arise solely from the Company's gross negligence or willful misconduct. This indemnity shall survive the termination of this Agreement.

2. Limitation of Liability. Veridia undertakes to perform as independent representative/agent on behalf of the Company such duties and only such duties as are specifically set forth herein and no implied covenants or obligations shall be read into this Agreement against Veridia. Except as otherwise provided in this Agreement, the Company is entitled to use its discretion in respect to exercising or refraining from exercising any rights, or taking or refraining from taking any action which may be vested in the Company under the Loan Documentation, or which the Company may be entitled to take or assert under same or other agreements or instruments, and the Company shall not be liable to Veridia for any action taken or omitted to be taken by it hereunder or pursuant hereto, except for the failure to make available promptly (after receipt and final collection) to Veridia such sums as are required to be remitted as compensation to Veridia hereunder or for the gross negligence or willful misconduct of the Company. The Company may exercise its powers and perform its duties by or through such attorneys, agents, and servants as it shall appoint, and it shall be entitled to the advice of counsel in anything done or omitted to be done in accordance with such advice; and the Company shall not be required to take any action nor shall any provision herein set forth be deemed to impose a duty on the Company to take any action, if the Company shall have been advised by counsel that such action is contrary to the terms of the Loan Documentation or is otherwise contrary to the law.

14

## ARTICLE X

## COSTS

Veridia shall be responsible for any and all costs and financial liabilities in the performance of any of its duties as non-exclusive, independent representative/agent for the Company hereunder and in the operation of its business, except for any normal billing, collection, operating and overhead costs of Veridia under or in relation to the Loan Documentation and incurred in the ordinary course of business which are properly a cost to be borne by the Company as agreed between the parties ("Out of Pocket Costs"). Out of Pocket Costs incurred by Veridia shall be reimbursed by the Company pursuant to Schedule A hereof.

## ARTICLE XI

## STATUS OF PARTIES

The relationship between Veridia and the Company is and shall remain that of an independent, non-exclusive representative/agent and principal respectively, and not that of a dependent representative/agent and principal, employee and employer, or borrower and creditor, and Veridia does not assume and shall not have any liability to the Company for the failure of any borrower under the Loan Documentation to pay to the Company any amount which may be due under the Loan Documentation. The Company acknowledges that it will make an independent, informed judgment with respect to the Collateral pledged by the borrowers, the pricing and other terms of the Loans, and the

15

NAGY_045_005211

adequacy of the remedies contained in the Loan Documentation; and the Company assumes all risk of loss with respect thereto except as otherwise may be provided herein to the contrary.   None of the execution of this Agreement, the obligations and benefits conferred under the Loan Documentation, the Collateral pledged thereunder, or any agreement for compensation hereunder resulting from the administration of the Loans, is intended to be, nor shall it be construed to be, the formation of a partnership or joint venture between the Company and Veridia.

## ARTICLE XII

## REPRESENTATIONS AND WARRANTIES

1.    The Company's Representations, Warranties and Certain Agreements.   The Company accepts the full risk of nonpayment by borrowers under the Loan Documentation and agrees that Veridia shall not be responsible for the performance or observance by any borrower of any of the terms of the Loan Documentation, so long as such non-performance or default is not occasioned by a representation or warranty by Veridia or its representative/agents in breach of this Agreement.   The Company acknowledges that Veridia has made no representation or warranty and has no responsibility of research or recommendation with respect to the suitability or creditworthiness of any borrower.

16

NAGY_045_005212

2.    <u>Veridia's Representations, Warranties and Certain Agreements</u>.    Veridia hereby represents and warrants to the Company, and agrees with the Company with respect to the Loan Documentation, as follows:

    a.    neither the Loan nor the Company's interest in the pledged Acquired Securities will be pledged as collateral by Veridia for its own account or for any other purpose except as may be expressly allowed hereunder or pursuant to the Loan Documentation;

    b.    in the event that original Loan Documentation signed by the borrowers is received from the borrowers, Veridia will provide the Company with the original Loan Documentation signed by borrowers as received by Veridia from time to time hereafter, and will maintain a true, correct and complete copy of the same;

    c.    the execution of this Agreement on its behalf and its participation in the transaction specified herein is in its ordinary course of business and within the scope of its existing corporate authority; and

    d.    except to the extent that such costs are the subject of repayment/compensation obligations pursuant to this Agreement, any costs incurred by Veridia resulting from this Agreement shall be solely at Veridia's expense without right of setoff against the borrowers, the Loans, or the Company.

17

NAGY_045_005213

## ARTICLE XIII

## CONFIDENTIAL INFORMATION

Veridia and the Company each acknowledge that all information relating to this Agreement and transactions contemplated hereby, the Loans, the Collateral and the borrowers is privileged and confidential and is deserving of the same professional standard of care and attention typically afforded customers by responsible financial institutions. All such information which is not generally available to the public is provided to Veridia solely for Veridia's internal use in meeting its obligations under this Agreement, and therefore Veridia agrees not to use or share it in any way with any other party who is not an officer, employee, counsel to, bank examiner, outside accounting firm, or authorized agent of Veridia, unless otherwise required by applicable law or regulation or subpoena issued by a court of competent jurisdiction. In the event that Veridia is requested or required (by interrogatory, request for information or documents, subpoena, deposition, civil investigative demand or other process) to any of Veridias' or Companies' CONFIDENTIAL INFORMATION Veridia will provide the Company with the prompt notice of such request or requirement so that the Company may seek an appropriate protective order or waive its compliance with the provisions of this Agreement. If failing the entry of a protective order or the receipt of waiver under this Agreement Veridia is in the opinion of Veridias' counsel, compelled to disclose Companies' CONFIDENTIAL INFORMATION, Veridia may only disclose that portion of the Companies' CONFIDENTIAL INFORMATION that Veridias' counsel advises Veridia that Veridia

18

NAGY_045_005214

is compelled to disclose. In any event, each party will cooperate with the other to obtain an appropriate protective order or other reliable assurance that the confidential treatment will be accorded to Companies' CONFIDENTIAL INFORMATION, and neither party will oppose any action by the other to obtain such an order or assurance.

**ARTICLE XIV**

**BOOKS and RECORDS**

1.    <u>Reports Required</u>.    In furtherance of its duty to provide ministerial and clerical administrative services hereunder, Veridia hereby agrees to provide the Company, on a monthly basis, in such form as the Company may specify, such true and accurate information as the Company may require in order to draft reliable budgets and financial statements, including but not limited to a description of all Loans (the "Loan Portfolio"), pledged Collateral (the "Collateral Portfolio") and stock, securities, commodities or other investments purchased, held or sold in the Hedging Transactions relating to the Collateral (the "Hedge Portfolio") for the immediately preceding month and for the Fiscal Year to date and other such relevant information.  Within sixty (60) days after the end of each Fiscal Year, Veridia shall deliver to the Company a statement including a description of the Loan Portfolio for the entire Fiscal Year, and containing such other information as may be required from time to time by the Company in order for the Company to conduct its annual audit in accordance with Hong Kong law.  Veridia shall keep full and adequate books of account and other records reflecting the Loan Portfolio, the Collateral Portfolio and the Hedge Portfolio (the "Records") on an accrual basis, all in accordance with generally accepted accounting practices in the industry, as determined by an independent certified accountant selected by the Company.  Veridia shall make its Records available to the Company at Veridia's offices for the purposes of inspection by an audit team selected by the Company.  The original Records shall be stored at the offices of the Company.

NAGY_045_005215

## ARTICLE XV

## NOTICES

All notices and other communications hereunder shall be in writing, personally delivered, sent by facsimile transmission (with confirmation of receipt) or sent by certified mail, return receipt requested, addressed to the other party at its respective address stated below the signature of such party as it appears in this Agreement or at such other address as such party shall from time to time designate in writing to the other party, and shall be effective from the date received.

## ARTICLE XVI

## EVENTS OF DEFAULT

1.     The following shall constitute an Event of Default for the purposes of this Agreement:

      a.     The failure of the Company to pay or reimburse any amount to Veridia as required hereunder after receiving notice of said failure;

      b.     The filing of a voluntary or involuntary petition in bankruptcy or insolvency or a petition for reorganization under any bankruptcy law by or as to either the Company or Veridia;

20

NAGY_045_005216

c.     The entering of an order, judgment, or decree by any court of competent jurisdiction, or the application of a creditor, adjudicating either the Company or Veridia as bankrupt or insolvent or approving a petition seeking reorganization or appointing a receiver, trustee, or liquidator of all or a substantial part of such party's assets; and

d.     The failure of either the Company or Veridia to perform, keep or fulfill any of the other material covenants, undertakings, obligations, or conditions set forth in this Agreement, after receiving notice of such failure.

2.     In any such Event of Default, the non-defaulting party must give to the defaulting party thirty (30) days opportunity to cure the defect.  Upon expiration of such period the non-defaulting party must give to the defaulting party thirty (30) days notice of its intention to terminate the Agreement and, upon the expiration of such period, the Agreement shall expire.  The right to terminate granted hereunder shall not be in substitution of, but shall be in addition to, any and all rights and remedies for breach of contract granted by any applicable provision of law.

## ARTICLE XVII

## TERM AND TERMINATION

NAGY_045_005217

1.    <u>Term and Termination</u>. This Agreement shall commence on the date it is executed by both parties hereto, and shall terminate five (5) years thereafter, unless sooner terminated as hereinafter provided.

(a)    Either party may terminate this Agreement if the other breaches any of the material provisions of this Agreement and fails to remedy such breach within thirty (30) days after receipt of written notice of such breach.

(b)    If either party enters into or is placed in bankruptcy or receivership, is nationalized, becomes insolvent or makes assignment for the benefit of its creditors, the other may immediately terminate this Agreement by written notice.

(c)    Veridia may immediately terminate this Agreement upon a change in the ownership or management of the Company that Veridia in its sole discretion deems adverse to its interests.

(d)    The Company may immediately terminate this Agreement upon a change in the ownership or complete replacement of the current management of Veridia that the Company in its sole discretion deems adverse to its interests.

(e)    Either party to this Agreement shall have the right to terminate this

NAGY_045_005218

Agreement at any time, for any reason, upon ninety (90) days prior written notice to the other party.

2.    <u>Duties Upon Termination</u>.   Upon termination of this Agreement, Veridia shall:

a.    immediately take any and all action reasonably necessary to return to the Company or its designated agent(s) (as directed by the Company in writing to Veridia), possession, control, authority and custody of any and all Records, Loan Portfolios, Collateral Portfolios, Hedge Portfolios, and all other stock, securities and investments held in Company's accounts administered by Veridia on behalf of the Company at such date of termination, as well as any property received by Veridia after such date;

b.    immediately provide the Company with a list of all Veridia's authorized representatives/agents authorized to act on behalf of the Company for all the Company accounts, in order for the Company to cancel such authorizations.

## ARTICLE XVI

## MISCELLANEOUS

1.    <u>Applicable Law</u>.  Except where otherwise expressly noted herein, this Agreement shall be governed by and construed in accordance with, and all disputes arising hereunder shall be finally settled under, the laws of the Hong Kong Special Administrative Region,

NAGY_045_005219

without regard to that body of its law that contains rules relating to the conflicts of law. Any dispute, controversy or claim arising out of or relating to this Agreement or to the breach, termination or validity thereof, shall be settled by binding, confidential arbitration in Hong Kong, at the Hong Kong International Arbitration Centre, and conducted in accordance with its rules. Nothing herein shall limit or restrict the ability of either party hereto to obtain temporary, equitable relief from a court of competent jurisdiction pending the outcome of arbitration hereunder.

2.    Entire Agreement.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and shall not be amended or altered in any manner except by a document in writing executed by both parties.

3.    Titles.  Section titles are for convenience of reference only and shall not be of any legal effect.

4.    Assignment.  This Agreement, and any rights, interest obligations and duties thereunder, may not be assigned or otherwise conveyed by any party hereto except upon express approval in writing by the other party.

5.    Agreement for Benefit of Certain Parties Only.  Nothing herein, whether express or implied, shall be construed to give any person other than the Company, Veridia, and their successors and assigns, any legal or equitable right, remedy or claim under or in

NAGY_045_005220

respect of this Agreement, and this Agreement shall be held to be for the sole and exclusive benefit of the Company, Veridia, and their successors and assigns.

6.    Modification.  Any modification or amendment of any provision of this Agreement must be in writing and bear the signatures of the duly authorized representative of both parties.

7.    Exercise of Rights and Remedies.  No delay on the part of either party in exercising any right, power or remedy under this Agreement shall operate as a waiver thereof, and no single or partial exercise of any right, power or remedy by any party hereunder shall preclude any further exercise thereof.

8.    Severability.  If any provision of this Agreement is determined to be in violation of any applicable law or otherwise invalid or unenforceable, such provision shall, to such extent as it shall be determined to be illegal, invalid, or unenforceable under such law, be deemed null and void, but this Agreement shall otherwise remain in full force and effect.

IN WITNESS WHEREOF, the Company and Veridia have caused this Agreement to be duly executed under seal by their duly authorized officers as of the date first above written.

25

**OPTECH LIMITED**

By: J̲a̲m̲e̲s̲ C̲.̲ S̲u̲t̲h̲e̲r̲l̲a̲n̲d̲
Its: D̲i̲r̲e̲c̲t̲o̲r̲

**VERIDIA SOLUTIONS, LLC**

By: Yurij Debevc
Its: Managing Director

26

NAGY_045_005222

## ANNEX A

## AGENCY FEE SCHEDULE

### (Article VII)

### (2003)

Out of Pocket Costs. Any out-of-pocket costs incurred by Veridia will be invoiced (and reimbursed by) to the Company at standard rates. However, Veridia may not incur or pay any singular out-of-pocket expense in excess of Two Thousand Five Hundred United States Dollars (USD $2,500.00) without the consent of the Company.

Transaction Fees.    Veridia will be paid Origination Fees and Annual Fees, which shall be due when earned. Each transaction will be assessed based on an Origination Fee and an Annual Fee, as set forth below.

(a)    Origination Fee shall be Fifty (50) Basis Points of the value of the Collateral (as defined in Loan Agreements) per transaction. In the case of equities used as collateral the Collateral Value is the "Hedged Value" as reported on the Activity Confirmation, and in the case where Floating Rate Notes are used as Collateral for the Loan, the Collateral Value is the "Face Value" of the Floating Rate Notes as reported on the Valuation Confirmation to the Borrower.

(b)    Annual Fee shall be Ten (10) Basis Points charged on the Collateral Value, as described in (a), of each transaction per year thereafter, or portion thereof.

i

NAGY_045_005223