1  FARLEY J. NEUMAN, ESQUIRE - State Bar #100021
   TOM PROUNTZOS, ESQUIRE - State Bar #209409
2  JENKINS GOODMAN NEUMAN & HAMILTON LLP
   417 Montgomery Street, 10th Floor
3  San Francisco, California  94104
   Telephone:  (415) 705-0400
4  Facsimile:  (415) 705-0411

5  Attorneys for ROBERT J. NAGY

6

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12  UNITED STATES OF AMERICA,            Case No. C-07-4762-PJH

13                      Plaintiff,       **NOTICE OF MOTION AND MOTION
                                         OF DEFENDANT ROBERT J. NAGY
14  vs.                                  TO SEVER ALL CLAIMS AND
                                         TRANSFER VENUE PURSUANT TO 28
15  CHARLES CATHCART, et al.,            U.S.C. 1404(a)**

16                      Defendants.      Date:    June 25, 2008
                                         Time:    9:00 A.M.
17                                       Dept.:   Room 3, 17th Floor

18                                       Trial Date:  March 23, 2009

19

20        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

21        PLEASE TAKE NOTICE that on June 25, 2008 at 9:00 a.m., or as soon thereafter

22  as the Court shall allow, Defendant ROBERT J. NAGY will move the Court to sever all

23  claims against him pursuant to Federal Rule of Civil Procedure 21 and to transfer venue to

24  the District of South Carolina pursuant to 28 U.S.C. 1404(a).

25

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION.................................................................................... 1

II.     STATEMENT OF FACTS....................................................................... 2

    A.      Robert J. Nagy..................................................................... 1

    B.      Penalty Assessment Proceedings ........................................ 2

    C.      Derivium............................................................................... 3

    D.      Evidentiary Documents ....................................................... 4

    E.      Witnesses.............................................................................. 4

    F.      Dockets in Respective Districts ........................................... 5

III.    ARGUMENT ......................................................................................... 6

    A.      The Motion Should Be Granted Because Transfer to South Carolina
        Is More Convenient for the Parties and Witnesses and Is In the Interest
        of Justice ............................................................................. 6

        1.      This Action Might Have Been Brought in the District of
            South Carolina Because a Substantial Part of the Events
            Giving Rise to the Claim Occurred There .............................7

        2.      The Balance of Factors for Determining Convenience and
            the Interest of Justice Weigh in Favor of Transfer to
            South Carolina.....................................................................7

            a.  Relative ease of access to proof ......................................... 8
            b.  Judicial economy and the fair administration of justice .... 8
            c.  Convenience of witnesses and availability of compulsory
                process................................................................................ 10
            d.  Convenience of the parties ............................................... 14
            e.  Plaintiff's choice of forum ............................................... 15
            f.  The connections between the forum and the parties and
                cause of action.................................................................. 15
            g.  Difference in cost of litigation between forums ............... 16
            h.  Court congestion .............................................................. 16
            i.  Monitoring and enforcement of injunction...................... 17
            j.  State most familiar with governing law........................... 17

        3.      Severing All Claims Against Robert J. Nagy Pursuant to
            F.R.C.P. 21 Is Appropriate to Effectuate Transfer Under
            28 U.S.C. 1404(a) .............................................................. 18

VI.     CONCLUSION ................................................................................... 19

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-ii-

1

## TABLE OF AUTHORITIES

2

<u>CASES</u>                                                       <u>PAGE</u>

3    *Chrysler Credit Corp. v. Country Chrysler, Inc. (1991 10th Cir.)*
       928 F.2d 1509, 1518...................................................................... 17,18

4

   *Costo Wholesale Corp. v. Liberty Mutual Ins. Co. (2007 S.D. Cal.)*
5       472 F.Supp.2d 1183, 1195 ........................................................8-9,13,15-16

6    *CVi/Beta Ventures v. Custom Optical Frames (1995 S.D.Md.)*
       896 F.Supp. 505, 506 ...................................................................... 18

7

   *Dealtime.com Ltd. V. McNulty (2000 S.D.N.Y.)*
8       123 F.Supp.2d 750, 757 .................................................................. 17

9    *Decker Coal Co. v. Commonwealth Edison Co. (1986) 9th Cir.)*
       805 F.2d 834, 843 ........................................................................... 7

10

   *Goodyear Tire & Rubber Co.,. v. McDonnell Douglas Corp. (1992 C.D. Cal)*
11      820 F.Sup. 503, 506 .......................................................................6-7

12    *In re: Eastern District Repetitive Stress Injury Litigation (1994 E.D.N.Y.)*
       850 F.Supp. 188, 195 ...................................................................... 8

13

   *Jones v. GNC Franchising, Inc. (2000 9th Cir.)*
14      211 F.2d 495, 498-499 .................................................................... 7

15    *Khanna v. State Bar of California (2007 N.D. Cal.)*
       2007 WL 2288116,2........................................................................ 18

16

   *Law Bulletin Publishing Co. v. LRP Publications, Inc. (1998 N.D. Illinois)*
17      992 F.Supp.1014, 1019 ....................................................................8,17

18    *Pfieffer v. Himax Tech., Inc. (2008 C.D. Cal.)*
       530 F.Supp.2d 1121, 1124 .............................................................. 14

19

   *Piper Aircraft Co. v. Reyno (1981)*
20      454 U.S. 235, 253 ........................................................................... 6

21    *Ravelo Monegro v. Rosa (2000 9th Cir.)*
       211 F.3d 509, 512-513 .................................................................... 6

22

   *Stewart Org., Inv. v. Ricoh Corp. (1988)*
23      487 U.S. 22, 29.............................................................................6-7

24    *United States v. Estate Preservation Services (2000 9th Cir.)*
       202 F.3d 1093, 1098, 1103............................................................. 10

25

   *United States v. Nordbrock (1991 9th Cir.)*
26      941 F.2d 947, 949.......................................................................... 8

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-iii-

*Van Dusen v. Barrack (1964)*
    *376 U.S. 612, 616* .................................................................... 6-7

*Wyndham Assoc. v. Bintliff, supra*
    398 F.2d at 618 ............................................................... 17,18

**STATUTES**

Internal Revenue Code §7402 (26 U.S.C. 7402) ................................. 1
Internal Revenue Code §7408 (26 U.S.C. 7408) ................................. 1
Internal Revenue Code §6700 (26 U.S.C. 6700) ..................... 1-4,8,10-11
26 U.S.C. 6703(c)(2) ............................................................. 2-3,8
28 U.S.C. 1404(a)    .................................................... 1,6-8,17-19
28 U.S.C. 1391(b)(2) .......................................................... 7
Federal Rule of Civil Procedure 21 ................................... 1, 17-18
Federal Rule of Civil Procedure 26(a)(1) .......................... 3-4,8-9
Federal Rule of Civil Procedure 45(b)(2) ........................... 12

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-iv-

NOTICE OF MOTION AND MOTION OF DEFENDANT ROBERT J. NAGY TO SEVER ALL
CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

# I. INTRODUCTION

The UNITED STATES OF AMERICA ("United States") has filed a claim for an injunction against ROBERT J. NAGY ("Mr. Nagy") and Co-Defendants pursuant to Internal Revenue Code ("IRC") §§ 7402 and 7408 (26 U.S.C. 7402, 7408) in the United States District Court for the Northern District of California. To serve the interests of justice and the convenience of the parties and witnesses, Mr. Nagy now moves for a transfer of venue from the Northern District of California to the District of South Carolina pursuant to 28 U.S.C. 1404(a). To effectuate this transfer, Mr. Nagy simultaneously moves the Court to sever all claims against him from those against all other Co-Defendants pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 21.

While this request for a transfer of venue is supported by the typical issues relevant to *forum non conveniens*, the request is also supported by the extraordinary actions of the United States, which is pursuing dual attacks on Mr. Nagy—one in South Carolina and the other in this California action—based upon the same underlying facts. This action for injunction by the United States is based primarily upon alleged violations of IRC §6700 (26 U.S.C. 6700). The Internal Revenue Service ("IRS") is contemporaneously pursuing the assessment of penalties against Mr. Nagy in South Carolina under IRC §6700. These dual actions by the government have already inexcusably caused Mr. Nagy to endure increased expenses and efforts spent on defending the same issue on opposite sides of the country. This double-bind will soon worsen when the penalty assessments inevitably lead to parallel litigation in South Carolina over Mr. Nagy's claims for refund. Unless the present action is transferred to the District of South Carolina, where it can eventually be consolidated with the refund action, Mr. Nagy, the United States, and the federal court system will be forced to waste more time, money, and resources while the same parties litigate the same issue in both California and South Carolina.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-1-

NOTICE OF MOTION AND MOTION OF DEFENDANT ROBERT J. NAGY TO SEVER ALL
CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

## II. STATEMENT OF FACTS

### A. Robert J. Nagy

Mr. Nagy is domiciled in Charleston, South Carolina. Declaration of Robert J. Nagy, Exhibit A, ("Nagy Declaration") ¶3. He is a certified public accountant licensed in the State of South Carolina and has practiced in South Carolina from 1974 through the present. *Id.* He has never lived in California, nor has he ever had a business office in California. Mr. Nagy has only been to California a total of three times. *Id.* ¶21. One instance was in his capacity as outside accountant for Co-Defendant Derivium Capital, LLC ("Derivium"); during that trip, Mr. Nagy did not meet or communicate with any Derivium borrowers. *Id.* The other two trips to California were for business wholly unrelated to Derivium and a personal trip, respectively. *Id.* Contrary to the United States' assertion in the Complaint, Mr. Nagy has never had regular and systematic contacts with California. Complaint at ¶2; Dkt. No. 1.

### B. Penalty Assessment Proceedings

In addition to the present injunction action, in December 2007 the IRS assessed penalties against Mr. Nagy in South Carolina under IRC §6700 in the approximate amount of $8.2 million for the tax years 1997 to 2005. Nagy Declaration ¶5. The IRS also filed a notice of federal tax lien against Mr. Nagy based on these penalty assessments. *Id.* In response to these penalty assessments, on January 23, 2008 Mr. Nagy filed claims requesting refund and abatement of the penalties. *Id.* ¶6. The basis of Mr. Nagy's claims for refund is that he did not violate IRC §6700 by promoting abusive tax transactions and that he never made false statements in connection with the promotion of an abusive transaction. Whether Mr. Nagy violated IRC §6700 is also a central issue in the present injunction action against him. Thus, IRC §6700 is central to both Mr. Nagy's claims for refund currently pending before the IRS and the instant injunction action.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-2-

1    Pursuant to 26 U.S.C. 6703(c)(2), if the IRS denies Mr. Nagy's refund and

2    abatement requests or fails to act on them within six months from the date they were filed,

3    Mr. Nagy will file a claim in United States district court in Charleston, South Carolina for

4    a determination of his liability for the assessed penalties.  Mr. Nagy is represented by

5    counsel in connection with the penalty assessments.  *Id.* ¶8.  His counsel has been in

6    communication with the IRS regarding action on the refund claims.  *Id.* ¶16.  But the IRS

7    has, to date, refused to either deny or grant Mr. Nagy's claims despite its knowledge of the

8    ongoing injunction action, which in fact was instigated by the IRS.  *Id.*  It is Mr. Nagy's

9    express intention to file a claim in United States District Court for the District of South

10    Carolina at the earliest possible time pursuant to 26 U.S.C. 6703(c)(2) for a determination

11    of liability on the §6700 penalty assessments.  *Id.* ¶7.  Once this is done, Mr. Nagy will

12    also move for a stay of the present injunction action in this Court in order to preserve his

13    right to a jury trial on the core issue of alleged violations of IRC §6700.  *Id.* ¶14.

14    **C. Derivium**

15    Derivium is a South Carolina limited liability company, with its principle place of

16    business in Charleston, South Carolina.  Complaint at ¶10; Dkt. No.1.  Mr. Nagy prepared

17    Derivium's tax returns and provided advice on tax aspects of its financial products.  Nagy

18    Declaration ¶18.  He did not make sales calls for Derivium.  *Id.*  He was never a manager

19    or member of Derivium, never had any ownership interest in Derivium, and was never a

20    Derivium employee.  *Id.* ¶17.  Charles Cathcart was a Derivium manager who resided in

21    South Carolina and with whom Mr. Nagy primarily interacted.  *Id.* ¶19.  Derivium has

22    filed for bankruptcy and this proceeding is taking place in South Carolina.  Complaint at

23    ¶12; Dkt. No.1; Nagy Declaration ¶20.  The bankruptcy trustee, moreover, has all of

24    Derivium's company records and documents in Charleston, South Carolina.  Nagy

25    Declaration ¶20.

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-3-

NOTICE OF MOTION AND MOTION OF DEFENDANT ROBERT J. NAGY TO SEVER ALL
CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

**D. Evidentiary Documents**

All documents in Mr. Nagy's possession that relate to the present action are in Charleston, South Carolina. Mr. Nagy identified these documents in his initial disclosure pursuant to Rule 26(a)(1) of the F.R.C.P. These documents include memoranda prepared by Mr. Nagy regarding tax aspects of Derivium's financial products; documents regarding payment to Mr. Nagy from Co-Defendants; documents regarding the 1998 IRS audit of Derivium; examination change reports for taxpayers participating in stock loans that show no penalties were assessed; and stock loan documents. Initial Disclosure of Defendant Robert J. Nagy Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Exhibit B, ("Nagy Disclosure") at 3.

In its initial disclosures pursuant to F.R.C.P. 26(a)(1) the United States lists documents in its possession, but does not indicate the locations of these documents. The United States' Initial Disclosures, Exhibit C, ("United States' Disclosure") at 6-7.

**E. Witnesses**

In their Rule 26(a)(1) initial disclosures, Mr. Nagy and the United States also list several persons with evidence relevant to claims and defenses at issue in this action. Many of these people are located in South Carolina, while fewer are in California. The remaining potential witnesses are spread out across the country and some are even in foreign countries.

Four out of the eleven witnesses disclosed by Mr. Nagy are located in South Carolina. Nagy Disclosure at 2-3. Three are located in California. *Id.* Two are in New York. *Id.* Montana and Virginia each have one. *Id.* These witnesses have information on topics including the extent of Mr. Nagy's participation in Derivium's transactions, the previous IRS audit of Derivium, and the on-going §6700 penalty assessments against Mr. Nagy. *Id.*

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-4-

1    The United States discloses a list of persons with information regarding the

2  promotion, execution, and extent of any tax fraud scheme allegedly promoted or organized

3  by Defendants, or regarding the role of any entity related to any defendant in promoting or

4  organizing any aspect of any alleged tax fraud scheme.  United States' Disclosure at 2-3.

5  Nearly half of these witnesses, nine of the twenty, are in South Carolina.  *Id.*  Five are in

6  foreign countries.  *Id.*  New York and California each have two.  *Id.*  Arizona and Montana

7  each have one.  *Id.*

8    The United States' disclosures also set forth several other groups of witnesses:  two

9  groups of unidentified "current or former employees" of entities purportedly with

10 information about the involvement of those entities with alleged tax fraud schemes;

11 individuals with information regarding banks, broker-dealers and financial institutions

12 allegedly involved in the promotion, organization or execution of tax fraud schemes; and

13 individuals purportedly with information concerning false or fraudulent statements

14 allegedly made by Defendants.  *Id.* at 3-6.  None of these lists of potential witnesses

15 provided by the United States specify which witnesses have information regarding which

16 Defendants.  *See id.* at 2-6.

17 **F. Dockets in Respective Districts**

18    The District of South Carolina is significantly less congested than the Northern

19 District of California.  The difference in the docket congestion between the two is

20

21

22

23

24

25

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

NOTICE OF MOTION AND MOTION OF DEFENDANT ROBERT J. NAGY TO SEVER ALL
CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

illustrated by the following table:

| 2007 | Northern District of California | District of South Carolina |
|---|---|---|
| Overall Filings | 7970 | 5508 |
| Overall Cases Pending | 9005 | 3877 |
| Filings per Judgeship | 569 | 551 |
| Cases Pending per Judgeship | 643 | 388 |
| Median time from filing to disposition | 6.7 months | 8 months |
| Median time from filing to trial | 24.9 months | 18.5 months |
| Number of civil cases over 3 years old | 393 | 35 |

U.S. District Court – Judicial Caseload Profiles, Exhibit D.

## III. ARGUMENT

### A.    TRANSFER TO SOUTH CAROLINA IS MORE CONVENIENT FOR THE PARTIES AND WITNESSES AND IS IN THE INTEREST OF JUSTICE

Section 1404(a) of Title 28, United States Code, is based on the common law doctrine of *forum non conveniens*.  It revises that doctrine, however, and does not simply codify it.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253(1981); rehearing denied Jan. 25, 1982, 455 U.S. 928.  Whereas the common law doctrine mandated dismissal of an action, 28 U.S.C. 1404(a) calls for transfer of an action when the alternative forum is within the territory of the United States.  *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512-513 (2000 9th Cir.).  The purpose of this statute is to prevent the waste of time, energy, and money, as well as to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  Judges are given greater discretion in applying 28 U.S.C. 1404(a) than *forum non conveniens* traditionally allowed. *Stewart Org., Inc. v. Ricoh Corp*. 487 U.S. 22, 29 (1988); *Piper Aircraft Co. v. Reyno*,

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-6-

1  *supra*, 454 U.S. at 253.  Application of 28 U.S.C. 1404(a) requires case-by-case

2  consideration of convenience and fairness.  *Van Dusen v. Barrack, supra*, 376 U.S. at 622.

3      Even though venue may be proper, a case should be transferred under 28 U.S.C.

4  1404(a) if 1) the transferee district is one where the action might have been brought; and 2)

5  the transfer will serve the convenience of the parties and witnesses, and will promote the

6  interest of justice.  *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.,* 820

7  F.Supp. 503, 506 (1992 C.D. Cal.).

8  **1.    This Action Might Have Been Brought in the District of South Carolina**
**       Because a Substantial Part of the Events Giving Rise to the Claim**
9  **       Occurred There**

10     Section 1404(a) limits possible transferee venue options to those where an action

11  "might have been brought." 28 U.S.C. 1404(a).  The Supreme Court has ruled that this

12  language refers to federal rules of venue, not state laws.  *Van Dusen v. Barrack, supra*, 376

13  U.S. at 624.  Pursuant to 28 U.S.C. 1391, in a case involving a federal question, venue is

14  appropriate in "a judicial district in which a substantial part of the events or omissions

15  giving rise to the claim occurred." 28 U.S.C. 1391(b)(2).  In this case the overwhelming

16  majority of all conduct that gave rise to this action occurred in South Carolina.  For

17  example, Mr. Nagy lived and practiced accounting in South Carolina during the time in

18  question.  Nagy Declaration ¶3.  Derivium was based in South Carolina.  Complaint ¶10;

19  Dkt. No.1.  Mr. Nagy provided tax advice to Derivium in South Carolina.  Nagy

20  Declaration ¶18.  Venue is therefore appropriate in South Carolina pursuant to 28 U.S.C.

21  1391(b)(2) and this action might have been brought there.

22  **2.    The Balance of Factors for Determining Convenience and the Interest of**
**       Justice Weighs in Favor of Transfer to South Carolina**
23

24     To determine whether a transfer would serve the convenience of the parties and

25  witnesses, and would be in the interest of justice, the court applies a multi-factor balancing

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-7-

1    test. *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, *supra*, 820 F.Supp. at

2    507. These flexible factors address not only the parties' private interests, but also the

3    public's interest. *Stewart Org. Inc. v. Ricoh Corp.*, *supra*, 487 U.S. at 29. Factors a court

4    may consider in deciding whether to transfer a case pursuant to 28 U.S.C. 1404(a) include:

5    relative ease of access to sources of proof; judicial economy and the fair administration of

6    justice; convenience of the witnesses and the availability of compulsory process;

7    convenience of the parties; plaintiff's choice of forum; the connections between the forum

8    and the parties and cause of action; the difference in cost of litigation between forums;

9    docket congestion; ease of monitoring and enforcing injunction; the state most familiar

10   with governing law; and other practical problems that make trial of a case easy,

11   expeditious, and inexpensive. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499

12   (2000 9th Cir.); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (1986

13   9th Cir.).

14                    **a.        Relative ease of access to proof**

15            Under this factor courts consider the location of records and documents. *Costco*

16   *Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472 F.Supp.2d 1183, 1195 (2007 S.D. Cal.).

17   All documents over which Mr. Nagy has control that may be relevant to this action are in

18   South Carolina. Nagy Disclosure at 3. All of Derivium's corporate documents, moreover,

19   are also in South Carolina in the possession of the bankruptcy trustee. Nagy Declaration

20   ¶20. The United States did not list the locations of documents it identified in its initial

21   disclosures pursuant to F.R.C.P. 26(a)(1). United States' Disclosure at 6-7. As such, this

22   factor must weigh in favor of transfer to South Carolina.

23                    **b.        Judicial economy and the fair administration of justice**

24            Courts may consider judicial economy when determining whether to transfer a case

25   pursuant to 28 U.S.C. 1404(a). *In re: Eastern District Repetitive Stress Injury Litigation,*

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

26                                              -8-

1  850 F.Supp. 188, 195 (1994 E.D.N.Y.); *see also Law Bulletin Publishing Co. v. LRP*

2  *Publications, Inc.,* 992 F.Supp. 1014, 1019 (1998 N.D. Illinois).  When the IRS either

3  denies Mr. Nagy's refund claims or fails to act on them within six months of filing, Mr.

4  Nagy will file a claim in the District of South Carolina for a determination of his liability

5  under IRC §6700 pursuant to 28 U.S.C. 6703(c)(2).  Nagy Declaration ¶7.  At this point

6  there will not just be duplicative proceedings, but there will be duplicate actions on

7  opposite coasts between Mr. Nagy and the United States both involving the issue of

8  alleged violations of IRC §6700.

9       Furthermore, Mr. Nagy will move to stay the present injunction action based on his

10  right to a jury trial in the refund action.  *Id.* ¶14.  The Court of Appeal for the Ninth Circuit

11  has held that a non-jury trial cannot proceed and cannot decide a dispositive issue where a

12  defendant has a constitutional right under the Seventh Amendment to a jury trial on that

13  same issue in a parallel action.  *United States v. Nordbrock*, 941 F.2d 947, 949 (1991 9th

14  Cir.).  Because the same issue will be presented in both actions, this Court will not be able

15  to proceed with the injunction action until after the refund action in South Carolina is

16  resolved by dismissal, settlement or a jury trial.

17       This quagmire that has already forced increased expenditures on all parties and the

18  Court, and that threatens to engulf even more of this Court's and the Parties' resources

19  while failing to resolve anything, is a direct result of the government's decision to first

20  initiate injunction litigation in the Northern District of California, then assess §6700

21  penalties against Mr. Nagy, and then refuse to act on Mr. Nagy's requests for refunds or to

22  agree to transfer this injunction action to South Carolina.  Transfer of the instant matter to

23  South Carolina, however, would resolve the wastefulness of the dual-coast proceedings.

24  Once Mr. Nagy files a refund action in South Carolina, the injunction and refund matters

25  may be consolidated.  This would eliminate the duplicative litigation and would prevent

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St
10th Floor
San Francisco, CA
94104
(415) 705-0400

NOTICE OF MOTION AND MOTION OF DEFENDANT ROBERT J. NAGY TO SEVER ALL
CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

1    the injunction action from being indefinitely postponed.  In that case Mr. Nagy would also

2    be relieved of the undue burden of litigating the same issue twice on opposite sides of the

3    country.  Considerations of fairness and judicial economy clearly favor transfer to South

4    Carolina.

5                    **c.        Convenience of witnesses and availability of compulsory process**

6           In weighing the convenience of the witnesses, courts do not simply count up the

7    total number of witnesses and weigh this factor in favor of the forum holding the greatest

8    number.  Rather, courts look to the expected testimony of the witnesses and its relative

9    importance to the case.  *Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, *supra*, 472

10   F.Supp.2d at 1193.  A party, moreover, must identify the witnesses, state their location,

11   and explain their potential testimony and its relevance.  *Id.*

12          In his initial disclosures pursuant to F.R.C.P. 26(a)(1), Mr. Nagy disclosed four

13   potential witnesses in South Carolina.  Neva Gadsden and Frank Guida both have

14   information pertaining to the prior IRS audit of Derivium.  Nagy Disclosure at 2.  This is

15   relevant because the audit resulted in a "no change" letter to Derivium, proof that the IRS

16   concluded that Derivium was engaging in bona fide, not fraudulent, transactions.  This is

17   extremely important to Mr. Nagy's defense insofar as he pleaded as an affirmative defense

18   that the government is estopped from asserting that the 90% Stock Loan Program was

19   fraudulent by virtue of the completion of the audit and issuance of the "no change" letter in

20   2003.  Nagy Answer at ¶102; Dkt. No. 3.

21          Robert Brandenburg and Co-Defendant Yuri Debevc are also located in South

22   Carolina.  Both can testify as to the extent of Mr. Nagy's participation in Derivium and the

23   alleged conduct underlying the Complaint.  Nagy Disclosure at 3.  Such testimony is

24   relevant to prove that Mr. Nagy did not engage in activities alleged by the United States,

25   which has indiscriminately characterized Mr. Nagy's activities as identical to those of the

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-10-

1    Co-Defendants despite the fact that Mr. Nagy was never an owner, member, or employee

2    of Derivium or any of the other Co-Defendants.  Nagy Declaration ¶17.  The extent of Mr.

3    Nagy's activities is key aspect of this case because the United States must prove scienter,

4    which may be proven based on the extent of activities and level of comprehension. *United*

5    *States v. Estate Preservation Services,* 202 F.3d 1093, 1098, 1103 (2000 9th Cir.).

6        Also at issue in the present action is whether Mr. Nagy engaged in promotional

7    activities regarding the 90% Stock Loan Program and whether Mr. Nagy made statements

8    regarding purported tax benefits of this program, both of which the United States alleges.

9    Testimony tending to show the extent of Mr. Nagy's involvement is relevant to both of

10   these issues.  Furthermore, such testimony is extremely important given that the United

11   States must prove as a prima facie element that Mr. Nagy made false or fraudulent

12   statements concerning tax benefits to be derived from participation in the program.  *Id.* at

13   1093.

14       Mary S. Socks, who resides in Virginia, is disclosed as a potential witness with

15   information regarding the prior IRS audit of Derivium that resulted in the issuance of the

16   2003 "no change" letter.  Nagy Disclosure at 2.  This is relevant and important for the

17   reasons given above.  Furthermore, given the proximity of South Carolina and Virginia,

18   South Carolina is a more convenient forum for Mary Socks.

19       Lori Dixon and Charles Cathcart are in New York.  *Id.*  Charles Cathcart is the

20   Derivium member with whom Mr. Nagy mainly worked.  Nagy Declaration ¶19.  Charles

21   Cathcart can testify as to Mr. Nagy's level of participation in Derivium's transactions.

22   Nagy Disclosure at 3.  This is relevant and very important for many reasons, including

23   those listed above.  Lori Dixon is an IRS employee who has information pertaining to the

24   IRS examination and assessment of penalties against Mr. Nagy with respect to IRC §6700.

25   *Id.* at 2.  This is relevant and important because the same issue will be presented in both

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

26

-11-

1  the current injunction action and the imminent refund action. Nagy's Declaration ¶8. The

2  refund action, however, will be commenced by Mr. Nagy in South Carolina regardless of

3  whether the injunction action is transferred. *Id.* ¶7. Maintaining this action in California,

4  therefore, does not mean Lori Dixon will not be involved in litigation in South Carolina.

5  Furthermore, insofar as South Carolina is closer to New York than California is, South

6  Carolina is a more convenient forum for Charles Cathcart and Lori Dixon.

7      Marie Allen and Robert Gee are IRS employees located in California and involved

8  with the IRS examination and assessment of penalties against Mr. Nagy based on IRC

9  §6700. Nagy Disclosure at 2; Nagy Declaration ¶16. For the reasons given above, Marie

10  Allen and Robert Gee will inevitably be involved in the refund action in South Carolina.

11  In the absence of a transfer, they will be forced to be involved in parallel cases on opposite

12  coasts. Transfer would allow both cases to be consolidated and would enable these

13  witnesses to be involved with one case rather than two.

14      Scott Cathcart is located in California and has information regarding Mr. Nagy's

15  alleged participation in Derivium's transactions. Nagy Disclosure at 3. His location,

16  however, must be balanced against the locations of Yuri Debevc, Robert Brandenburg, and

17  Charles Cathcart who can testify to the same issues and are all on the East Coast.

18      The final witness disclosed by Mr. Nagy is Timothy Scrantom, who resides in

19  Montana. Timothy Scrantom is not within subpoena range of either the Northern District

20  of California or the District of South Carolina pursuant to F.R.C.P. 45(b)(2) which

21  provides for service within a judicial district or 100 miles of the place of trial. Should

22  Timothy Scrantom volunteer, he would have to travel a substantial distance to either

23  forum.

24      Both in quantity and in quality, on balance the witnesses disclosed by Mr. Nagy

25  would find South Carolina the more convenient forum.

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-12-

1    The United States disclosed witnesses that may have information regarding the

2    promotion, execution, mechanics, history, scope and extent of any tax fraud schemes

3    allegedly promoted and/or organized by Defendants and/or regarding the role of any entity

4    by or related to any Defendant in promoting and/or organizing any aspect of any alleged

5    tax fraud scheme. United State's Disclosure at 2-3. The United States does not specify in

6    any more detail what information these witnesses possess and they must therefore be

7    treated as qualitatively equal. *See id.* Quantitatively, on the other hand, nine of the twenty

8    witnesses disclosed reside in South Carolina. Five reside in foreign countries and are

9    obviously not subject to any kind of process from a United States District Court. Two

10   reside in New York. Two are in California. Arizona and Montana have one each. *Id.*

11   Because approximately half are in South Carolina, it is clearly the more convenient forum.

12   The United States attempts, but fails to disclose the identities of current or former

13   employees of a number of entities allegedly connected with the promotion or organization

14   of stock loans. *Id.* at 3-4. Because no witnesses are identified this disclosure cannot be

15   considered in weighing this factor. *See Costco Wholesale Corp. v. Liberty Mutual Ins.*

16   *Co., supra,* 472 F.Supp.2d at 1193. Even if it were considered, however, it would weigh in

17   favor of transfer to South Carolina because none of the listed entities are in California,

18   whereas two are in South Carolina, two are in foreign countries, two are in Nevada, one is

19   in New York, and one's location is unknown. United States' Disclosure at 3-4.

20   The United States additionally discloses four individuals with information regarding

21   banks and financial institutions purportedly with connections to the alleged tax fraud

22   schemes. *Id.* at 4. One of them is in California, while the other three are in states closer to

23   South Carolina (Tennessee, Virginia, and Pennsylvania).

24   The United States also lists unidentified current or former employees of a number

25   of entities allegedly involved with the transactions underlying this action. United States'

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-13-

1   Disclosure at 4-5. Again, due to the lack of identified witnesses, this cannot be considered

2   when weighing this factor. *See Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, *supra*,

3   472 F.Supp.2d at 1193.

4       The last potential witnesses the United States lists are sixteen individuals

5   purportedly with information regarding false statements allegedly made by Defendants.

6   United States' Disclosure at 5-6. The United States does not specify which witnesses have

7   information about statements allegedly made by which Defendants, however. *Id*. This list

8   of names is of little use in evaluating which potential witnesses may be relevant to Mr.

9   Nagy and for which ones South Carolina would be a more convenient forum.

10              **d.    Convenience of the parties**

11      South Carolina is obviously a more convenient forum for Mr. Nagy. He lives and

12  works in South Carolina presently, as he did at the time Derivium was his client. Nagy

13  Declaration ¶3. All of the relevant documents in Mr. Nagy's possession are in South

14  Carolina. Nagy Disclosure at 3. South Carolina is also a convenient forum for the United

15  States insofar as the United States has representatives and agents in every state, including

16  South Carolina, and is able to litigate in any forum.

17      The United States, moreover, will inevitably be involved in litigation with Nr. Nagy

18  in South Carolina regarding some of the same issues in the present case. Nagy Declaration

19  ¶7. This makes South Carolina a *more* convenient forum for *both* parties because the two

20  actions could be consolidated in South Carolina thereby saving both time and resources.

21      Finally, the preponderance of evidence and witnesses in South Carolina also inures

22  to the convenience of the parties upon transfer of the injunction action to a venue in South

23  Carolina insofar as both evidence and witnesses will then be closer to hand.

24

25  Jenkins Goodman
    Neuman & Hamilton
    LLP
    417 Montgomery St.
    10th Floor
    San Francisco, CA
    94104
    (415) 705-0400

26

NOTICE OF MOTION AND MOTION OF DEFENDANT ROBERT J. NAGY TO SEVER ALL
CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

e.    **Plaintiff's choice of forum**

A plaintiff's choice of forum is not given deference where the operative facts did not primarily occur in the district, the forum has no particular interest in the action, and the plaintiff does not reside in the district. *Pfeiffer v. Himax Tech., Inc.*, 530 F.Supp.2d 1121, 1124 (2008 C.D. Cal.). In this case the operative facts primarily occurred in South Carolina. Mr. Nagy's alleged conduct occurred in South Carolina. Nagy Declaration ¶¶18-21. Co-Defendant Charles Cathcart, with whom Mr. Nagy primarily communicated, resided and worked in South Carolina at the time of the alleged conduct. *Id.* ¶19. Derivium was headquartered in Charleston, South Carolina. Complaint ¶10; Dkt. No. 1.

In a case where some facts occurred in California, but more significant facts occurred in another forum, the court found that California did not have an interest in the case. *Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, *supra*, 472 F.Supp.2d at 1191. The vast majority of conduct by all Defendants underlying the current action occurred in South Carolina. More importantly, all of Mr. Nagy's relevant conduct occurred in South Carolina. Nagy Declaration ¶¶18-21. Furthermore, the action is based on a federal tax statute and is being pursued by the United States, not the State of California. Based on these considerations, California does not have an interest in keeping the action against Mr. Nagy in the Northern District of California.

For these reasons, the Plaintiff's choice of forum cannot be given deference here.

f.    **The connections between the forum and the parties and cause of action**

Mr. Nagy has no significant contacts with California. He has never regularly or systematically conducted business in California. *Id.* ¶21. He has only been physically present in California three times. *Id.* In contrast, Mr. Nagy has substantial contacts with South Carolina, where he has lived and worked for more than thirty years. *Id.* ¶3. On the other hand, the United States is ubiquitous and has contacts with all forums equally.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-15-

The cause of action against Mr. Nagy also has substantial contacts with South Carolina, but lacks any significant contacts with California. All of Mr. Nagy's relevant conduct allegedly underlying this action occurred in South Carolina. *Id.* ¶¶18-21. Mr. Nagy's accounting practice is located in South Carolina. *Id.* ¶3. Mr. Nagy provided advice to Derivium, which was located in Charleston, South Carolina. *Id.* ¶18. Mr. Nagy primarily dealt with Co-Defendant Charles Cathcart, who lived and worked in South Carolina at the time of the alleged conduct. *Id.* ¶19. In contrast, Mr. Nagy never had an office in California. *Id.* ¶21. Mr. Nagy never met with Derivium clients in California. *Id.* In fact, Mr. Nagy has only ever been to California three times in his entire life. *Id.*

### g.    Difference in cost of litigation between forums

South Carolina will be a less expensive forum in which to litigate the present action for several reasons. Because Mr. Nagy resides in South Carolina, transferring this action there will eliminate his need to travel across the country. The preponderance of evidence and witnesses in South Carolina will be less expensive to access from a venue within South Carolina than it will be from California. Transfer to South Carolina will also allow for consolidation of the injunction action with the impending refund action, saving both parties and the federal court system from duplicative and unnecessary expenses.

As it stands now, Mr. Nagy is being forced to double his expenditures in defending two separate actions, both essentially concerning the same issue, but on opposite sides of the country. Mr. Nagy has had to retain counsel in both forums, likely doubling his legal fees. It is not merely inconvenient, but is a substantial burden for Mr. Nagy to be forced to continue in this manner. *Id.* ¶23.

### h.    Court congestion

The key inquiry under this factor is whether a trial may be quicker in another district because of its less crowded docket. *Costco Wholesale Corp. v. Liberty Mutual Ins.*

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

NOTICE OF MOTION AND MOTION OF DEFENDANT ROBERT J. NAGY TO SEVER ALL
CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

1   *Co., supra*, 472 F.Supp.2d at 1196. The docket of the Northern District of California is

2   substantially more crowded than the docket of the District of South Carolina. *See* U.S.

3   District Court – Judicial Caseload Profiles. The Northern District of California received

4   over 2400 more filings in 2007 than did the District of South Carolina. *Id*. The Northern

5   District of California has more than twice as many cases currently pending as does the

6   District of South Carolina. *Id*. Per Judgeship, California also has more cases filed and

7   currently pending. *Id*. The only category in which the Northern District of California's

8   docket congestion is better than South Carolina's is the median time from filing to

9   disposition, which is a mere 1.3 months less in California. (*Id*.) South Carolina's

10  significantly less crowded docket unarguably weighs in favor of transfer.

11          **i.        Monitoring and enforcement of injunction**

12          The type of relief sought may be relevant to whether an action should be

13  transferred. In a case where the plaintiff sought an injunction, the court ruled that this

14  weighed in favor of transferring the case to the state where compliance with the injunction

15  would be monitored and enforced, because a district court in that state would be "closer to

16  the action." *Law Bulletin Publishing, Co. v. LRP Publications, Inc.*, *supra*, 992 F.Supp. at

17  1020-1021. Similarly in the present case, it would be an onerous and difficult task for this

18  Court to monitor and enforce an injunction in South Carolina, whereas it would be much

19  easier for a South Carolina court to do so.

20          **j.        State most familiar with governing law**

21          This action deals with a question of federal law arising under the Internal Revenue

22  Code. As such, neither state is more familiar with the governing law. *See Dealtime.com*

23  *Ltd. v. McNulty*, 123 F.Supp.2d 750, 757 (2000 S.D.N.Y.) ("To the extent this action raises

24  questions of federal law, either forum is equally capable of hearing and deciding those

25  questions").

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-17-

NOTICE OF MOTION AND MOTION OF DEFENDANT ROBERT J. NAGY TO SEVER ALL
CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

### 3.  Severing All Claims against Robert J. Nagy Pursuant to F.R.C.P. 21 Is Appropriate to Effectuate Transfer under 28 U.S.C. 1404(a)

There are no "partial" transfers under 28 U.S.C. 1404(a). *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1518 (1991 10th Cir.); *Wyndham Assoc. v. Bintliff,* 398 F.2d 614, 618 (1968 2nd Cir.); cert. denied Dec. 9, 1968, 89 S.Ct. 444. Where there are multiple defendants, a court must either transfer or retain the entire action. *Chrysler Credit Corp. v. Country Chrysler, Inc., supra,* 928 F.2d at 1518. Severing all claims against one defendant pursuant to F.R.C.P. 21, however, creates a separate and distinct action. *Id.* at 1518; *see also Khanna v. State Bar of California,* 2007 WL 2288116, 2 (2007 N.D. Cal.). The court, pursuant to 28 U.S.C. 1404(a), may then transfer this separate action to another United States District Court while retaining the original action against the remaining defendants. *Chrysler Credit Corp. v. Country Chrysler, Inc., supra,* 928 F.2d at 1518; *Wyndham Assoc. v. Bintliff, supra,* 398 F.2d at 618.

F.R.C.P. 21 provides that the "court may also sever any claim against a party." Severance is appropriate where there is an improper joinder or other sufficient reason. *Wyndham Assoc. v. Bintliff, supra,* 398 F.2d at 618. The interest of justice and the prompt and efficient handling of litigation have been found to be sufficient reasons to sever. *CVi/Beta Ventures v. Custom Optical Frames,* 896 F.Supp. 505, 506 (1995 S.D.Md.). Effectuating transfer pursuant to 28 U.S.C. 1404(a) has also been found to be a sufficient reason to server. *Chrysler Credit Corp. v. Country Chrysler, Inc., supra,* 928 F.2d at 1518; *Wyndham Assoc. v. Bintliff, supra,* 398 F.2d at 618.

In the present case severance of all claims against Mr. Nagy is necessary to effectuate transfer of this injunction action to the District of South Carolina pursuant to 28 U.S.C. 1404(a). As has been shown above, this transfer serves the interest of justice, as well as the convenience of the parties and witnesses. Severance pursuant to F.R.C.P. 21 is therefore appropriate.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10ᵗʰ Floor
San Francisco, CA
94104
(415) 705-0400

-18-

# VI. CONCLUSION

At the behest of the IRS this action for injunction was commenced in the United States District Court for the Northern District of California.  Complaint ¶4; Dkt. No. 1.  Shortly thereafter the IRS assessed penalties on Robert J. Nagy in South Carolina for the same alleged conduct that forms the basis of the injunction action.  Nagy Declaration ¶5.  This two-sided attack has forced Mr. Nagy to hire counsel in both California and South Carolina, and will inevitably force him to litigate the same issue twice on opposite sides of the country.  For the reasons shown above, in order to increase the convenience of the parties and witnesses, to serve the interest of justice, and to avoid costly duplicative litigation, Mr. Nagy's Motion to Sever All Claims and Transfer Venue Pursuant to 28 U.S.C. 1404(a) must be granted.

DATED:  May 2, 2008

JENKINS GOODMAN NEUMAN
& HAMILTON LLP

By: _____
    FARLEY J. NEUMAN
    Attorneys for ROBERT J. NAGY

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-19-

NOTICE OF MOTION AND MOTION OF DEFENDANT ROBERT J. NAGY TO SEVER ALL
CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)