JOSEPH P. RUSSONIELLO
United States Attorney
THOMAS MOORE (ASBN 4305-O78T)
Assistant United States Attorney
Chief, Tax Division
9th Floor Federal Building
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-6935
HUONG T. BAILIE (NYBN 4035739)
300 E. 8th Street, Suite 601
Austin, TX 78701
Telephone: (512) 499-5759
ALLYSON B. BAKER (DCBN 478073)
FREDERICK N. NOYES
Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 202-353-8031
Telephone: (202) 305-3083
Facsimile: (202) 514-6770
Email: Frederick.N.Noyes@usdoj.gov
Email: allyson.b.baker@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CHARLES CATHCART *et al.*, <br><br> Defendant. | Civil No. 07-4762-PJH <br><br> UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT ROBERT NAGY'S MOTION TO SEVER ALL CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) <br><br> *Hearing: June 25, 2008, 9:00 AM* |

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues to be Decided . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      I. Severance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            *1. Severance is inconsistent with the purposes of Fed. R. Civ. P. 21* . . . . . . . . . . . 3

            *2. The relief sought by Nagy's Motion is an impermissible partial transfer
                unauthorized by 28 U.S.C. § 1404(a)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      II. Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            *1. The Jones Factors do not weigh in favor of transfer* . . . . . . . . . . . . . . . . . . . . . 9

            *2. Nagy's motion rests upon a hypothetical event occurring at some point in the
                future* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allen v. Scribner*, 812 F.2d 426 (9th Cir. 1987) .............................. 10

*Burroughs Corp. v. Newark Electronics Corp.*, 317 F. Supp. 191 (N.D.Ill. 1970) ................................................................. 7

*Carolina Asphalt Paving, Inc. v. Balfour Beatty Const., Inc.*, 225 F.R.D. 522 (D.S.C. 2004) ........................................................ 5

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991) ............................................................... 5, 6

*Costco Wholesale Corp. v. Liberty Mutual Insurance Co.*, 472 F. Supp. 2d 1183 (S.D.Cal. 2007) ............................................. 8, 10, 11

*Decker Coal Co. v. Commonwealth Edison Co*, 805 F.2d 834 (9th Cir. 1986) ........ 9

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503 (C.D.Cal. 1992) ..................................................... 8

*Hess v. Gray*, 85 F.R.D. 15, 22 (N.D.Ill. 1979) .............................. 7

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ................. 8

*Leesona Corp. v. Cotwool Manufacturing Corp., Judson Mills Division*, 308 F.2d 895 (4th Cir. 1962) ........................................... 7

*Levin v. Mississippi River Corp.*, 289 F. Supp. 353 (S.D.N.Y. 1968) .......... 7, 9

*Mymail, Ltd. v. America Online, et al.*, 223 F.R.D. 455 (E.D. Tex. 2004) ....... 4

*Pratt v. Rowland*, 769 F. Supp. 1128 (N.D.Cal. 1991) ........................ 10

*Puyallup Indian Tribe v. Port of Tacoma* 717, F.2d 1251 (9th Cir. 1983) ........ 5

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ........................... 3

*United States v. Anchor Line Ltd.*, 232 F. Supp. 379 (S.D.N.Y. 1965) .......... 4

*United States v. Arnaiz*, 842 F.2d 217 (9th Cir. 1988) ....................... 4

*Wyndham Associate v. Bintliff*, 398 F.2d 614 (2nd Cir. 1968) ......... 4, 5, 6, 7, 8

## DOCKETED CASES

*Schlachte v. United States*, Case No. 3:07-cv-06446-PJH (N.D.Cal.) ............ 10

*The People of the State of California v. Derivium Capital, LLC, et al.*, Case No. 02AS05849 (Super. Ct. Santa Barbara 2002) .......................... 11

**FEDERAL STATUTES**

26 U.S.C. § 6700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 11

26 U.S.C. § 6703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 7, 13

Fed. R. Civ. P. 20(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

**INTRODUCTION**

Defendant Robert Nagy moves the Court to sever the claims against him pursuant to Rule 21 of the Federal Rules of Civil Procedure and to transfer venue, as to those claims only, to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1404(a). Nagy offers no justification for severing the claims against him from those against the other defendants, other than as a means to effectuate the partial transfer to South Carolina that he seeks. Furthermore, in analyzing the factors that the Court should consider in ruling upon his motion to transfer, Nagy completely ignores that the severance of the claims against him from those against the other defendants would also impact judicial economy, convenience to witnesses, and the interests of justice. By piggybacking his motion to sever onto arguments in favor of transfer that ignore the impact of severance, Nagy fails in his burden to demonstrate why a transfer to South Carolina of the claims against him is in the interests of justice. Nagy's motion to sever and his motion to transfer should therefore be denied.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether there are grounds for severing the claims against Robert Nagy from the claims against the other defendants.
2. If there are grounds for severing the claims against Robert Nagy, whether the balance of factors justifies transferring those severed claims to the District of South Carolina.

**STATEMENT OF FACTS**

On September 17, 2007, the United States brought suit to permanently enjoin Charles Cathcart, Scott Cathcart, Yuri Debevc, Robert Nagy, Derivium Capital LLC, Derivium USA, and Veridia Solutions, LLC from continuing to promote the 90% Loan and the ESOP-QRP Loan programs. (Docket No. 1, Complaint, ¶ 5). On March 13, 2008, the United States moved to amend its complaint to add three additional defendants: Optech Limited and two of its principals, Charles Hsin, and Franklin Thomason as well as to clarify several factual allegations in the complaint. . (Docket No. 47, United States' Motion to Amend Complaint, p. 1). That motion

1  was granted, and the amended complaint was filed on April 23, 2008. (Docket No. 56, Order
2  Granting Motion to Amend, and Docket No. 57, First Amended Complaint).

3        The Complaint alleges that since 1997, defendants, including Nagy, have promoted 90%
4  loan programs, including the 90% Stock Loan program, and more recently, the ESOP-QRP
5  program. (Docket No. 57, Amended Complaint, ¶ 17.) The defendants are alleged to promote
6  the 90% Stock Loan program to customers with highly-valued, low-basis stock, and defendants
7  promote the ESOP-QRP program to customers who have sold qualified securities to ESOPs and
8  then reinvested the sale proceeds in qualified replacement property (QRP) in stocks or floating
9  rate note loans. (Am. Compl., ¶¶ 49-50). Defendants promote both of these programs as
10 transfers of securities that serve as collateral for loans equal to 90% of the securities' value. The
11 complaint further alleges that defendants falsely tell customers that (i) this transaction is a loan;
12 (ii) that customers who transfer their securities to defendants will incur no tax liability, because
13 the transfer is collateral for a loan and not a sale of the taxpayers' securities; and (iii) that
14 defendants will help preserve the value of the taxpayers' transferred securities through the use of
15 sophisticated hedging techniques. (Am. Compl., ¶¶ 51-52). The complaint alleges that these
16 loan programs are abusive tax shelters that involve the actual sale of assets, which are disguised
17 as loans, in order to evade the payment of taxes. *Id.*

18       The complaint alleges that Robert Nagy, along with the other defendants, actively
19 marketed the 90% loan program. (Am. Compl., ¶ 32). The complaint alleges that Nagy, a CPA
20 and long-time associate of Charles Cathcart, served as Derivium Capital's "outside accountant,"
21 and represented Derivium customers before the Internal Revenue Service and other
22 administrative bodies. (Am. Compl., ¶¶ 29-30). Most important, Nagy is alleged to have
23 prepared written tax advice concerning Derivium's 90% loan program, and to have provided that
24 advice to persons promoting the 90% loan program on behalf of, or in association with,
25 Derivium. (Am. Compl., ¶ 32).

26       Nagy asserts that penalties were assessed against him by the Internal Revenue Service
27 pursuant to 26 U.S.C. § 6700 in December of 2007, and that he filed an administrative claim for

28

-2-

1  refund on January 23, 2008. (Docket No. 66, Nagy Notice and Motion to Transfer, p. 2).
2  Pursuant to 26 U.S.C. § 6703, the IRS has until July 23, 2008 to act on that administrative claim
3  for refund before any United States District Court will have subject matter jurisdiction to
4  consider Nagy's claims.

**ARGUMENT**

**I.    Severance**

Since Nagy does not move the Court to transfer this case as a whole, his motion to transfer is contingent on the Court's willingness to sever the claims against him from the claims against the other defendants. The analysis must therefore begin, not end, with severance, and the impacts of severance on judicial economy, convenience to witnesses, and the risk of undue delay, duplication of litigation, and inconsistent verdicts.

*1.    Severance is inconsistent with the purposes of Fed. R. Civ. P. 21.*

There is no suggestion, nor could there be, that Nagy was improperly joined to this case. A plaintiff may join defendants in one action if there is asserted against them a right to relief "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and there will arise in the action "any question of law or fact common to all defendants." Fed. R. Civ. P. 20(a). Since Nagy is alleged to have marketed the same 90% loan program as the other defendants, and because he is alleged to have provided the accounting and tax advice underlying the marketing of that program, the conditions of Rule 20(a) are satisfied and joinder is indisputably proper.

Rather, Nagy's motion to sever relies on the discretion of the Court to "sever any claim" in the interests of justice, pursuant to Fed. R. Civ. P. 21. The difficulty with this argument is that severance in this case is utterly inconsistent with the policies and purposes underlying both Rules 19 and 20 concerning joinder as well as Rule 21, concerning misjoinder and severance. Under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

-3-

1  The Ninth Circuit has found that "the policy of efficient litigation is fostered by permitting the
2  Federal Rules their intended scope to avoid burdensome litigation in different forums over
3  related issues." *United States v. Arnaiz*, 842 F.2d 217, 224 (9th Cir. 1988). Generally, the
4  joinder rules "were created to increase judicial efficiency by allowing related claims against
5  different parties to be tried together." *Mymail, Ltd. v. America Online, et al.*, 223 F.R.D. 455,
6  457-58 (E.D. Tex. 2004).

7  In this case, Nagy seeks to sever claims against him that are identical to the legal claims
8  against Charles Cathcart, Scott Cathcart, Yurij Debevc, Charles Hsin, Franklin Thomason,
9  Derivium Capital (USA), and Optech Limited. Furthermore, as the "outside accountant"
10 responsible for providing the tax advice underpinning the promotion of the 90% loan program,
11 Nagy is unquestionably alleged to be directly connected to the "manipulations that form the main
12 subject matter" of the United States' civil injunction suit. *Wyndham Assoc. v. Bintliff*, 398 F.2d
13 614, 618 (2nd Cir. 1968). The claims against Nagy arise from the same transactions, occurrences,
14 and common nucleus of operative fact as the claims against the other defendants, and the same
15 statutory elements in 26 U.S.C. § 7408 will be proven against Nagy by much the same evidence
16 as against the other defendants.

17 Nagy, in effect, is asking for the same trial to be held twice, at the same time that he
18 claims transfer will avoid duplicative litigation. Severance of the claims would require the
19 United States to seek injunctive relief against the defendants in two different fora, even though
20 the evidence required, the witnesses required, and the legal arguments presented would be
21 practically identical in each injunctive suit. *See United States v. Anchor Line Ltd.,* 232 F.Supp.
22 379, 386 (S.D.N.Y. 1965)(severance inappropriate where different claims would be proven "in a
23 single record by the same witnesses and to a great extent the proof of the violations by the
24 defendants are subject to overlapping documentary proof.")

25 This is particularly true where, as here, the relief sought by the United States is identical
26 as to each of the named defendants. Nagy argues that "IRC § 6700 is central to both Mr. Nagy's
27 claims for refund currently pending before the IRS and the instant injunction action." Docket

28 -4-

No. 66, Nagy Motion, p. 2. While Nagy is correct that the United States will have to establish a violation of 26 U.S.C. § 6700 to establish the grounds for an injunction under 26 U.S.C. § 7408, the latter statute contains additional statutory elements that will be common to the United States' claims against each of the other defendants and not common to any refund action Nagy might file in South Carolina. The appropriateness of an injunction under § 7408, for example, might ultimately turn on the possibility of future recurrence of enjoinable conduct, whereas such a consideration is utterly irrelevant to establishing a violation of § 6700.

The negative impacts of severance, therefore, include duplicative litigation, severe inconvenience to witnesses, and added congestion to the docket of the District of South Carolina *without any relief* for the docket of the Northern District of California. Most important, since resolving the claims against Robert Nagy inherently require judgment to be passed on the validity of the Derivium 90% loan program, and since resolving the claims against the other defendants requires determining the role played by Nagy's erroneous advice, severance creates a substantial risk of inconsistent judgments. *See Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251, 1254 (9th Cir. 1983)(lack of joinder fails to protect parties from inconsistent judgments); *Carolina Asphalt Paving, Inc. v. Balfour Beatty Const., Inc.*, 225 F.R.D. 522, 522 (D.S.C. 2004)(joinder appropriate to minimize risk of inconsistent judgments). The risk of inconsistent judgments is heightened because severing and transferring claims against the various defendants would bring at least some of the defendants out of the subpoena power of each respective court hearing the United States' claims for injunctive relief, affecting what testimony each court hears.

Severing the claims against Nagy is therefore inconsistent with the purposes and policies underlying Rules 19, 20, and 21 of the Federal Rules of Civil Procedure.

### 2. *The relief sought by Nagy's motion is an impermissible partial transfer unauthorized by 28 U.S.C. § 1404(a).*

There is no such thing as a partial transfer, something that Nagy readily concedes. Docket No. 66, Nagy Motion, p. 22. Partial transfers are not authorized by 28 U.S.C. § 1404(a),

-5-

and a court must transfer or retain actions as a whole. *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1518 (10th Cir. 1991); *Wyndham*, 398 F.2d at 618.

A partial transfer, however, is exactly what Nagy is seeking. Nagy moves for a severance pursuant to Fed. R. Civ. P. 21 solely as a means to sidestep the prohibition against partial transfers and to perform a partial transfer disguised as something else. While Nagy is correct that severance creates two distinct actions, either of which could be transferred without running afoul of § 1404(a), he has offered no justification for severance independent of his desire to accomplish indirectly what cannot be done directly - the transfer of the claims against him (and those against him alone) to South Carolina. Doing an end-run-around the prohibition against partial transfers is not sufficient grounds to justify severance.

Nagy argues that "effectuating transfer pursuant to 28 U.S.C. § 1404(a) has been found a sufficient reason to sever." Docket No. 66, Nagy Motion, p. 18. The two cases he cites for that proposition, however, do not support the position he advocates here. One is completely inapposite, and the other runs directly counter to Nagy's position, crafting a narrow exception that explicitly excludes from its embrace the frivolous use of severance as a means of effectuating transfer.

In *Chrysler Credit Corp.,* the court mentioned *in dicta* that where claims are *properly* severed under Fed. R. Civ. P. 21, a district court may transfer one action while retaining jurisdiction over the other. 928 F.2d at 1519. The Tenth Circuit, however, did not have the opportunity to pass judgment on what would constitute proper severance, as the district court had bifurcated, rather than severed, the claims at issue. *Id.* at 1513. In any event, the court was *not* discussing the severance of identical claims made against multiple defendants, as is the case here, but rather the severance of different claims made against the same defendants on the grounds that the district court had found those claims to be unrelated to each other, based on different sets of operative facts, and potentially confusing if tried together. *Id.* In other words, there was *independent* justification for the severance apart from the desire to transfer the claims to a different forum. Nagy has provided no such independent justification here.

-6-

*Wyndham* is similarly inapposite. In that case, the Second Circuit found transfer of the *entire* action appropriate, but affirmed the severance of claims against two defendants because of jurisdictional obstacles that made venue as to those defendants improper in the transferee district. 398 F.2d at 617-18. More critically, the Second Circuit severely limited its holding, stating that severance preceding transfer is permitted, "at least in cases where, as here, the defendants as to whom venue would not be proper in the transferee district are alleged to be *only indirectly connected* to the manipulations which form the main subject matter of the action." *Id*. at 618 (emphasis added). In other words, there must be *independent* justification for the severance apart from the desire to transfer the claims to a different forum. Nagy has provided no such independent justification here.

*Wyndham* clearly cannot be read to support the frivolous use of severance any time transfer would be convenient for one of many defendants. In fact, far from supporting Nagy's position, *Wyndham* has become the seminal case for the proposition (and general rule) that severing a case in order to transfer claims against a particular defendant to a different forum is appropriate only when the defendant to be transferred is only "peripherally involved" in the main subject matter of the lawsuit. *See Burroughs Corp. v. Newark Electronics Corp.*, 317 F.Supp. 191, 193 (N.D.Ill. 1970)(citing *Wyndham* and *Leesona Corp. v. Cotwool Mfg. Corp., Judson Mills Div.*, 308 F.2d 895 (4th Cir. 1962); *Levin v. Mississippi River Corp.*, 289 F.Supp. 353 (S.D.N.Y. 1968)(citing *Wyndham*); *Hess v. Gray*, 85 F.R.D. 15, 22 (N.D.Ill. 1979)("The key element for a court's consideration is the degree of each defendant's involvement in the transactions alleged, for severance will be allowed *only* when the severed but not transferred defendant was only secondarily or peripherally involved in the litigation.")(emphasis added)(citing *Mobile Oil Corp. v. W.R. Grace & Co.*, 334 F.Supp. 117 (S.D.Tex. 1971)).

*Wyndham* justified this narrow exception to the prohibition against partial transfers on the grounds that "otherwise, a plaintiff could preclude the court from considering whether transfer would serve the interests of justice by including a defendant, not subject to suit in the more convenient district, who was in some manner peripherally involved in the alleged

-7-

1  wrongdoing." *Wyndham*, 398 F.2d at 619. It is nowhere suggested that this concern is
2  implicated here, as the United States has very clearly not named to the suit some peripherally
3  involved defendant solely for the purpose of making venue in South Carolina improper.

4  Nagy himself is not alleged to be "only indirectly connected" to the Derivium 90% loan
5  and ESOP QRP programs at issue in this suit. On the contrary, Nagy is alleged to be intimately
6  and centrally involved in the promotion of the Derivium products at issue, providing the tax
7  advice utilized by Derivium and those promoting on behalf of Derivium, in addition to
8  promoting the programs himself. *See* Am. Compl., ¶¶ 29-32.

9  Where, as here, the claims against a defendant are identical to those against the other
10 defendants, and the defendant seeking transfer is intimately connected to and involved in the
11 same machinations as the other defendants, and there is no suggestion that his involvement is
12 merely peripheral, severance followed by transfer is not only inappropriate or inadvisable, but
13 would constitute a partial transfer not permitted by 28 U.S.C. § 1404(a).

14 **II.     Transfer**

15 Since Nagy's motion to transfer the claims against him presumes that the Court has
16 chosen to sever those claims first, the Court need not decide whether Nagy meets his burden in
17 justifying transfer if it determines severance is not warranted.

18 In the event the Court finds severance proper, Nagy, as the party moving for transfer, still
19 carries the burden of showing transfer is appropriate. *Costco Wholesale Corp. v. Liberty Mutual*
20 *Insurance Co.*, 472 F.Supp.2d 1183, 1189 (S.D.Cal. 2007). To satisfy this burden, Nagy must
21 show not only that the action could have been brought in the District of South Carolina, but that
22 transfer "will serve the convenience of the parties and witnesses and will promote the interest of
23 justice." *Id.* at 1189-90 (citing *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820
24 F.Supp. 503, 506 (C.D.Cal. 1992). The Ninth Circuit, in turn, has created an eight-factor test for
25 analyzing a motion to transfer. A district court should consider:

26  (1) the location where the relevant agreements were negotiated and
     executed; (2) the state that is most familiar with the governing law, (3) the
27   plaintiff's choice of forum, (4) the respective parties' contacts with the

28                                               -8-

> forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel the attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

### *1.  The Jones factors do not weigh in favor of transfer.*

The government will not analyze each *Jones* factor seriatim, as Nagy's various arguments in favor of transfer - including his *Jones* analysis - have one fatal flaw in common: Nagy ignores in his analysis all the other parties to this case. As noted above, following severance and transfer of the claims against Nagy, there will still remain an injunction suit in the Northern District of California against the other defendants concerning the Derivium 90% loan scheme.

Therefore, *even if* Nagy's assertions concerning location of relevant evidence and witnesses were correct, *even if* most of the underlying conduct complained of occurred in South Carolina, *even if* California had no interest in Derivium, *even if* the Northern District's docket is significantly more congested and the cost of litigating much less in South Carolina, none of the supposed benefits of transfer for judicial economy and convenience of parties and witnesses would ever materialize, for Nagy has not moved to transfer this entire action but rather only the claims against him alone. While Nagy claims that the consolidation of his yet-unfiled refund suit with the severed injunction suit would eliminate "duplicative litigation," this would be true for no one, except Robert Nagy.

It is impermissible to use transfer to simply shift the inconvenience from one party to another. *Decker Coal Co. v. Commonwealth Edison Co*, 805 F.2d 834, 843 (9th Cir. 1986); *Levin*, 289 F.Supp. at 360. Nagy suggests correctly that this case could have been brought in the District of South Carolina. Had the United States done so, however, it theoretically might now be opposing an identical motion to sever and transfer from another defendant who lives in this or another judicial district, and had penalties assessed against him by the IRS. Such a defendant could easily make the exact same arguments that Nagy does, except in reverse.

While we won't analyze each *Jones* factor in turn, the following considerations are applicable to multiple factors and implicate the interests of justice more generally:

First, the interests of justice include considerations of fairness, and the timeliness in making a motion to transfer can be considered by a court when weighing that motion. This case was filed in the Northern District of California on September 17, 2007, and has been pending in this Court since that time. All of the arguments in Nagy's motion to transfer, with the exception of those related to duplicative litigation resulting from his intention to file a refund claim, could have been made in a more timely motion to transfer eight months ago. This court has developed familiarity with the facts of this case, has ruled on various motions, and there is currently pending in this court a taxpayer refund suit assigned to the same judge and arising from the same Derivium transactions. *See Schlachte v. United States*, Case No. 3:07-cv-06446-PJH (N.D.Cal.) Moreover, the delay inherent in transfer would prejudice the United States, which is seeking injunctive relief to stem what is believed to be an ongoing and continuing harm. Am. Compl., ¶¶ 81-100. The court's familiarity with the case, the late date at which this motion has been filed, and the prejudice of delay to the United States all weigh against transfer. *See Allen v. Scribner*, 812 F.2d 426, 436-37 (9th Cir. 1987)(familiarity with case and delay); *Pratt v. Rowland*, 769 F.Supp. 1128, 1133 (N.D.Cal. 1991)(delay would cause prejudice); *Costco Wholesale*, 472 F.Supp. at 1196 (motions already filed).

Second, while joining all of the defendants in one injunction suit compels the attendance of all of them as parties at the same trial, severing the injunction suit allows key Derivium participants to slip outside the subpoena power of each court in question. It would be to the extreme prejudice of the United States, for example, if Robert Nagy, an intimate participant in the scheme and therefore a key witness, could not be compelled to testify at the injunction suit against the remaining defendants. Similarly, Charles Cathcart, Charles Hsin, Franklin Thomason, and Scott Cathcart would be outside the subpoena power of the District of South Carolina, and therefore could not be compelled to testify at the injunction suit against Nagy. Since one can readily assume that one or more of the other defendants will claim to have acted in good faith

-10-

1  upon Robert Nagy's accounting advice, his testimony concerning that advice and his involvement
2  with Derivium may be critical evidence for this Court.  Severance allows each defendant to
3  effectively "pass the buck" and blame the defendant(s) not present.  This weighs heavily against
4  transfer.  *Costco Wholesale*, 472 F.Supp. at 1193 ("The court considers not simply how many
5  witnesses each side has and the location of each, but also the importance of the witnesses.").

6  Third, while Nagy is correct that Scott Cathcart is the only Derivium principal to have
7  year-round residence in California (Charles Cathcart divides his residence between New York
8  and California), Derivium customers are also relevant witnesses in this case, and they are
9  overwhelmingly not from South Carolina.  Indeed, 6 of the 15 customers listed on the United
10 States' Initial Disclosures, attached to this motion as Exhibit A, are residents of the state of
11 California and none are residents of South Carolina.  Derivium established an office in San
12 Francisco from which Scott Cathcart marketed the Derivium products at issue in this suit.  Am.
13 Compl., ¶ 28.  Derivium customers such as Ted Bush, Donald Hancock, Douglas Hartman, Jing
14 Li and Jong Sun, and David Welch, California residents identified in the United States' Initial
15 Disclosures, can testify specifically to the material statements and representations made by the
16 defendants.

17 Finally, it is flatly incorrect to suggest that California has no interest in this case.
18 California has an interest in companies doing business within the state and marketing tax evasion
19 products to California residents.  The interest of California in Derivium is amply underscored by
20 the lawsuit filed by the California Department of Corporations against Derivium in 2002, of
21 which this Court can take judicial notice.  *See The People of the State of California v. Derivium*
22 *Capital, LLC, et al.*, Case No. 02AS05849 (Super. Ct. Santa Barbara 2002).

23 ***2.    Nagy's motion rests upon a hypothetical event occurring at some point in the***
24 ***future.***

25 There is currently no litigation pending in the District of South Carolina that seeks to
26 determine whether or not Robert Nagy engaged in conduct in violation of 26 U.S.C. § 6700.  The
27 only indication that such litigation will arise is Nagy's self-serving declaration that he intends to
28

-11-

file such a suit. While the government does not consider such a scenario improbable, there are several reasons cautioning against using hypothetical future litigation as justification for transferring a case to another district.

First, 26 U.S.C. § 6703 evidences a Congressional preference for administrative review by the IRS of refund claims prior to the initiation of refund suits in court. The six-month period in which the IRS has exclusive jurisdiction to review those claims would be meaningless if courts made rulings presuming the outcome of that administrative review. While Nagy has already presumed the outcome, practically begging the IRS *to reject* his appeal so that he can get on with the business of creating grounds for transfer of this injunction suit by filing a refund action, (see Docket No. 66-2, Declaration of Robert Nagy., ¶ 16), this Court should respect the preference of Congress and avoid making decisions that assume the outcome of administrative review is a foregone conclusion. 26 U.S.C. § 6703.

Second, the evidence submitted with Nagy's Motion is insufficient to determine if Nagy will have satisfied the jurisdictional prerequisites to filing a refund action at the time the IRS disallows his claim or the six-month period expires. If Nagy fails to fulfill the jurisdictional prerequisites, his refund claim will not ever reach the merits of his § 6700 penalties, and there will be no duplication of litigation.

Third, the penalties assessed against Nagy could become the subject of an offer in compromise. In the event an offer in compromise were submitted and accepted, his refund suit would never be filed or would soon be closed. Once again, the merits of Nagy's § 6700 penalties would not be reached, and there would be no duplicative litigation..

In short, while Nagy may fully intend to file a refund action in the District of South Carolina, that declaration alone does not prove that such a suit will actually be filed, nor does it prove that if filed, such a suit would progress to the point of trial or other judicial adjudication of the merits of Nagy's claim. Therefore, while it is guaranteed that severance would duplicate the United States' injunction suit, which already exists and is moving forward, the risks of

-12-

duplication of litigation because of a refund suit in South Carolina are, at this point, only hypothetical.

## Conclusion

The United States respectfully requests that the Court deny the Motion of defendant Robert Nagy to sever all claims and transfer venue pursuant to 28 U.S.C. § 1404(a).

Dated: June 4, 2008

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


/s/ Frederick N. Noyes
FREDERICK N. NOYES
ALLYSON B. BAKER
Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-3083
Email: Frederick.N.Noyes@usdoj.gov

-13-

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 4, 2008, I electronically filed the foregoing motion, memorandum in support of the foregoing motion, and notice of motion with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Farley J. Neuman (fneuman@jgn.com)
Tom Prountzos (tprountzos@jgn.com)
Jenkins Goodman Neuman & Hamilton LLP
417 Montgomery Street, 10th Floor
San Francisco, CA 94104
*Attorneys for Defendant, Robert Nagy*

David Bujannoff Porter , Jr. (porter@woodporter.com)
Wood & Porter
333 Sacramento Street
San Francisco, CA 94111
*Attorney for Scott Cathcart*

Eric Webb (ewebb@elwlaw.com)
Bartsch & Webb
317 Rosecrans Avenue
Manhattan Beach, CA 90266
*Attorney for Charles Cathcart*

    I further certify that on June 4, 2008, service of the foregoing was made upon the following by depositing a copy in the United States mail, postage prepaid:

Yuri Debevc (*pro se*)
1483 Burningtree Road
Charleston, SC 29412

                                        /s/ Frederick N. Noyes
                                        FREDERICK N. NOYES