

1  FARLEY J. NEUMAN, ESQUIRE - State Bar #100021
   TOM PROUNTZOS, ESQUIRE - State Bar #209409
2  JENKINS GOODMAN NEUMAN & HAMILTON LLP
   417 Montgomery Street, 10th Floor
3  San Francisco, California  94104
   Telephone:  (415) 705-0400
4  Facsimile:  (415) 705-0411

5  Attorneys for ROBERT J. NAGY

6

7

8                    UNITED STATES DISTRICT COURT

9                   NOTHERN DISTRICT OF CALIFORNIA

10

11                      SAN FRANCISCO DIVISION

12

13  UNITED STATES OF AMERICA,

14                              Plaintiff,        Case No. C-07-4762-PJH

15  vs.                                           **DEFENDANT ROBERT NAGY'S
                                                  REPLY IN SUPPORT OF MOTION TO
16  CHARLES CHATHCART, SCOTT                      SEVER ALL CLAIMS AND
    CATHCART, YURIJ DEBEVC, a/k/a                 TRANSFER VENUE PURSUANT TO 28
17  YURI DEBEVC, ROBERT NAGY,                     U.S.C. 1404(a)**
    DERIVIUM CAPITAL, LLC,
18  DERIVIUM CAPITAL (USA), INC.,                 Date:   June 25, 2008
    AND VERIDIA SOLUTIONS, LLC,                   Time:  9:00 A.M.
19
                                Defendants.
20                                                Trial Date: March 23, 2009

21

22

23

24

25

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

## I.    Introduction

Severance and transfer to the District of South Carolina of all claims against Defendant ROBERT J. NAGY ("Mr. Nagy") is the only way to increase the convenience of all parties and best serve the interests of justice.  If this Motion is denied, greater inconvenience will result and Mr. Nagy's liability for the conduct at issue will be adjudicated in the District of South Carolina regardless.

In its Opposition, Plaintiff UNITED STATES OF AMERICA ("United States") ignores the realities of the current circumstances, even though it is largely responsible for them.  The refund litigation in the District of South Carolina is imminent.  Once this is filed, Mr. Nagy will move to stay this injunction action to protect his right to a jury trial on the issues underlying both actions.  This Court will be bound by precedent and the Constitution to grant that stay.  As such, greater inconvenience to both the United States and the Co-Defendants will result if this Motion to Sever and Transfer is not granted.  At the same time Mr. Nagy's refund action will proceed in South Carolina.  The inevitability that Mr. Nagy's liability will be determined in South Carolina makes many of the United States' arguments irrelevant and red herrings.

The remainder of the United States' arguments cannot be sustained as a matter of law.  Although it is true, strictly speaking, that procedurally the Court must sever all claims against Mr. Nagy before it may transfer those claims to the District of South Carolina, it does not follow from this that the Court must analyze the propriety of severance prior to that of transfer.  Neither case nor statutory law requires severance to be analyzed before transfer.  Furthermore, courts in fact do determine the propriety of transfer before addressing that of severance.  More importantly, the propriety of both transfer and severance may be determined simultaneously by determining whether transfer is in the interests of justice.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

1

**II.    The United States Impermissibly Attempts to Add a New Requirement for Severance under FRCP 21 that Is Unsupported by Case or Statutory Law**

The United States argues that severance under Federal Rule of Civil Procedure ("FRCP") 21 requires either misjoinder or some "independent" justification besides the "desire" to transfer. It further argues that this additional requirement is only satisfied where the claim to be severed is merely "peripherally" connected to the main subject of the case. *See* United States' Response in Opposition to Defendant Robert Nagy's Motion to Sever All Claims and Transfer Venue Pursuant to 28 U.S.C. 1404(a), Dkt. 70, ("United States Opposition") at 5-7. The United States' position, however, is unsupported by either case or statutory law.

**A.    FRCP 21 Does Not Require that a Claim Be At Most Tangentially Connected to a Case for Severance to Be Proper**

The language of FRCP 21 is broad and plain on its face. It states: "The court may also sever any claim against a party." FRCP 21. Nowhere does FRCP 21 require that a claim can only be tangentially connected to a case in order for it to be severable.

The United States argues that, in order to be granted, severance must be consistent with the relevant purpose of the FRCP, which is to foster efficient litigation. *See* United States Opposition at 3-5. As a means to this end, the FRCP allow for the broadest possible scope of action but only *so long as that scope is consistent with fairness to the parties*. *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). The United States erroneously concludes that severance and transfer in this case will not foster judicial efficiency due to three considerations. First, the United States claims a transfer to South Carolina will require the same claims to be litigated twice in separate venues, thereby creating duplicative litigation. Second, transfer will not relieve congestion of the docket of the Northern District of California. Third, transfer would create a risk of inconsistent judgments. *See* Untied States Opposition at 3-5.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

2

1    Either outcome of this Motion will not eliminate the concerns raised by the first and

2  third points.  The IRS has made it clear that it will not act on Mr. Nagy's requests for

3  refund.  Nagy Declaration at 4.  Once the statutory waiting period expires, Mr. Nagy will

4  file suit in the District of South Carolina pursuant to Internal Revenue Code §6703(c)(2)

5  for a refund of the assessed penalties, which will involve an adjudication of his liability for

6  the same conduct that forms the basis of the injunction action.  *Id*. at 2.  To preserve his

7  right to a jury trial on the refund action, Mr. Nagy will move to stay the injunction action

8  pursuant to *United States v. Nordbock*.  941 F.2d 947 (9th Cir. 1991).  When the refund

9  action is finally complete and the injunction action resumes, the issue of Mr. Nagy's

10  liability for the conduct in question will be *res judicata* and the United States will not be

11  able to relitigate it.  The United States, however, will still have to litigate the same issues

12  with respect to the Co-Defendants in the injunction action and there will nonetheless still

13  be a chance of inconsistent verdicts.  These concerns pointed out by the United States are

14  red herrings because denying severance and transfer does not eliminate, but only postpones

15  them.

16    The United States, moreover, simply misunderstands the point of docket congestion

17  analysis as a matter of law.  *See* United States Opposition at 5.  It is not whether or not

18  transfer would relieve congestion of the transferor court, but whether the docket of the

19  transferee court is less congested such that a trial would be quicker there.  *Costco*

20  *Wholesale Corp. v. Liberty Mutual Inc. Co.*, 472 F.Supp.2d 1183, 1196 (S.D.C.A. 2007).

21  The impact on the docket of the transferor court is irrelevant.  In the present case, it is

22  undisputed that the docket of the District of South Carolina is less congested and that trial

23  would be quicker there.

24    The policy arguments the United States makes regarding the effect of severance and

25  transfer on judicial efficiency are untenable.  More important, though, is that the purpose

26  behind the FRCP – increased judicial efficiency – is in fact fostered by severance and

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

3

transfer of the claims against Mr. Nagy.  If this motion is denied, the injunction action in
California will necessarily be stayed on motion by Mr. Nagy.  Postponing this matter for
years certainly does not increase judicial efficiency.  On the other hand, if this motion is
granted, the injunction action against the remaining Co-Defendants will be able to proceed
at the same time as Mr. Nagy's consolidated injunction and refund action, and Mr. Nagy
will be relieved of the burden of litigating in two forums.  Therefore, policy considerations
actually weigh in favor of severance and transfer.

**B.    *Wyndham* Does Not Require that a Claim Be At Most Tangentially Connected to a Case for Severance to Be Proper**

*Wyndham Associates v. Bintliff* does not hold that severance to effectuate transfer is
only appropriate where the severed claim is at most tangentially connected to the case.
398. F.2d 614 (2nd Cir. 1968).  *Wyndham* states that FRCP 21 allows for severance in the
absence of improper joinder where there are "sufficient other reasons." *Id.* at 618.  The
Court then states: "We believe that where the administration of justice would be materially
advanced by severance and transfer, a district court may properly sever the claims against
one or more defendants for the purpose of permitting the transfer." *Id.*  In other words,
where severance is necessary to effectuate a transfer that will serve the interests of justice,
a court may sever a claim *for the purpose of* effectuating that transfer.

The *Wyndham* Court goes on to say that such a severance is proper "at least in
cases" such as the one before it where transfer would not be possible without severance
and in which the party to be severed is "only indirectly connected" to the main subject of
the case. *Id.*  The Court does *not* hold that transfer is proper *only where* a party to be
severed is merely tangentially connected to the case.  Rather, it holds that in the case
before it these circumstances are sufficient to warrant severance.  By arguing there can be
no more than a tangential connection between a claim and the rest of a case in order for
severance to effectuate a transfer to be proper, the United States mistakes as a *necessary*

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO SEVER AND TRANSFER VENUE

1  prerequisite a condition the Court in *Wyndham* found merely to be *sufficient* for severance.

2        Indeed, District Courts in the Second Circuit itself do not read *Wyndham* in the

3  narrow fashioned urged by the United States. *In re: Eastern District Repetitive Stress*

4  *Injury Litigation*, for example, begins by analyzing whether transfer pursuant to 28 U.S.C.

5  1404(a) would serve the convenience of the parties and the interests of justice by applying

6  a multi-factor test very similar to that employed by the Ninth Circuit in *Jones v. GNC*

7  *Franchising, Inc.,* 850 F.Supp. 188, 193-96 (E.D.N.Y. 1994). The Court concludes that

8  transfer is appropriate because it would serve the interests of justice. *Id.* at 196. Based

9  solely on that consideration, the Court applies *Wyndham* to sever claims to effectuate

10  transfer. *Id.* The Court does not analyze whether or not the claims to be severed are at

11  most tangentially connected to the main subject of the suit. *See id.* The Court simply

12  states: "In light of this court's determination that transfer is proper and the administration

13  of justice would be materially advanced thereby, severance will be ordered as necessary to

14  effect transfer." *Id.*

15      **C.**    **The Propriety of Both Severance and Transfer May Be Determined**
16             **Simultaneously by Determining Whether Transfer Is in the Interests of**
           **Justice**

17        The United States argues that Mr. Nagy offers no justification for severance besides

18  the desire for transfer. *See* United States Opposition at 6. In doing so, the United States

19  ignores the majority of Mr. Nagy's brief, which shows that transferring the claims against

20  him to the District of South Carolina would be in the interests of justice. As shown above,

21  the fact that a transfer would be in the interests of justice has been found a sufficient

22  ground for severance. *Id.*; *see also CVI/Beta Ventures, Inc. v. Custom Optical Frames,*

23  *Inc.,* 896 F.Supp. 505, 506 (D. Md. 1995) (Severance is proper either where it serves the

24  ends of justice *or* where a claim is based on an entirely separate set of facts). Pursuant to

25  28 U.S.C. 1404(a), transfer is appropriate where it is in the interests of justice. Therefore,

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

5

1    an analysis of the propriety of a transfer that concludes it would be in the interests of

2    justice simultaneously establishes that severance to effectuate that transfer would also be

3    proper.  Contrary to the United States' position, the propriety of severance need not be

4    separately analyzed prior to an analysis of transfer because the two analyses intersect at the

5    interests of justice.

6    **III.    Transfer to the District of South Carolina Will Serve the Convenience of the
         Parties and the Interests of Justice.**

7

8         The United States makes several arguments, none of which may be sustained, in an

9    attempt to show that transfer to the District of South Carolina is not convenient for the

10   witnesses or parties and is not in the interests of justice.  *See* United States Opposition at 8-

11   12. Its arguments do not constitute a full analysis of the *Jones* factors the Court must

12   weigh in determining whether transfer is appropriate.  More fundamentally, the United

13   States fails to recognize the implications of the process it began by initiating the injunction

14   action and subsequently assessing penalties on Mr. Nagy.  Specifically, it does not

15   acknowledge that even if this Motion is denied, Mr. Nagy's liability for the conduct at

16   issue will be adjudicated by a jury in South Carolina and that, furthermore, at the same

17   time the injunction action in California will be stayed indefinitely.

18   **A.    Mr. Nagy Has Adequately Considered the Convenience of the Co-
         Defendants**

19        Contrary to the United States' assertion, Mr. Nagy has not ignored the Co-

20   Defendants in the injunction action.  Unlike the United States, Mr. Nagy does not presume

21   to know what the Co-Defendants consider convenient for themselves.  Based on the fact

22   that none of the Co-Defendants filed an Opposition to Mr. Nagy's Motion to Sever and

23   Transfer, it is apparent that they do not think they will be inconvenienced by a transfer of

24   the claims against Mr. Nagy to the District of South Carolina.

25

26

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO SEVER AND TRANSFER VENUE

Jenkins Goodman Neuman & Hamilton LLP 417 Montgomery St. 10th Floor San Francisco, CA 94104 (415) 705-0400

**B.     The United States Caused Its Own Inconvenience and Will Suffer Even Greater Inconvenience Unless this Motion Is Granted**

The United States argues that transfer is inappropriate where it only serves to shift inconvenience from one party to another. *See id*. at 9. That is not the case here. *All* parties will be severely inconvenienced if this Motion is denied insofar as the injunction action will be indefinitely stayed on Mr. Nagy's motion soon after he files refund claims in the District of South Carolina. At the same time, denying this Motion will not prevent the United States from having to litigate Mr. Nagy's refund claims in South Carolina. The only way to avoid this even greater inconvenience is to sever and transfer the claims against Mr. Nagy to the District of South Carolina.

Furthermore, the United States itself is responsible for creating the extra inconvenience by first filing the injunction action in California – in which Mr. Nagy assented to personal jurisdiction in a good faith attempt to resolve these issues as expediently as possible – and then, months later, assessing penalties on Mr. Nagy and refusing to act on his requests for refunds. The United States' actions necessitate that the same issues be litigated in two different states on opposite coasts. As such, the United States has no grounds for complaining of inconvenience that it caused.

**C.     The United States' Quasi-*Jones* Analysis Does Not Defeat Mr. Nagy's Showing that Transfer to the District of South Carolina Serves the Convenience of the Parties and Witnesses and the Interests of Justice**

The United States' discussion of "considerations" does not suffice as an analysis of the factors enumerated in *Jones v. GNC Franchising, Inc*. and, in any event, fails to demonstrate that transfer to the District of South Carolina is not in the interests of justice or for the convenience of the parties and witnesses.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

7

**1.    The United States' Arguments Regarding Timeliness and Fairness Are Disingenuous and Irrelevant**

Mr. Nagy's Motion to Sever and Transfer was not necessary until after the United States assessed penalties on him at the end of December 2007 and it subsequently became apparent that the United States would not act on his requests for refund within six months of the date of filing.  It is disingenuous of the United States to suggest that Mr. Nagy should have filed this Motion earlier than he did when the United States itself delayed the penalty assessment and then delayed its decision on Mr. Nagy's refund request.

The arguments that transfer will cause a delay prejudicial to the United States and that this Court is familiar with the issues are irrelevant.  If this Motion is denied, this entire injunction action will be stayed while Mr. Nagy's refund action proceeds and the United States will suffer a more severe delay.  Additionally, if this Motion is denied and the injunction action is stayed, this Court will not adjudicate the claims against Mr. Nagy because those claims will be *res judicata* by the refund action. This Court's familiarity with the issues is therefore irrelevant with respect to Mr. Nagy.

**2.    The United States Has the Means to Obtain Evidence from Witnesses in Other Forums**

The United States claims that Mr. Nagy will be a key witness against the Co-Defendants and that he needs to be within the subpoena power of this Court so that it can "compel" him to testify.    Regardless of the outcome of this Motion, Mr. Nagy will not be beyond the subpoena power of this court for purposes of obtaining deposition testimony. Furthermore, even as the United States makes this argument, it is conducting discovery all over the country, demonstrating that it has the means to gather evidence, including witness testimony, despite geographic location.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

8

### 3. The United States Merely Lists Six Potential Witnesses Who Reside in California in an Inadequate Discussion that Does Not Specifically State Their Relevance to Mr. Nagy

Although six potential witnesses listed by the United States reside in California, the United States does not disclose which witnesses have information concerning which statements allegedly made by which Defendants. The United States does not specifically connect any particular witness to Mr. Nagy. Like its entire inadequate quasi-*Jones* analysis, so too here the United States has not presented sufficient information to allow the Court to properly weigh it. *See Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472 F.Supp.2d 1183, 1193 (S.D.C.A. 2007) (witnesses must be identified, their locations given, and their potential testimony and its relevance explained).

### 4. California Does Not Have an Interest with respect to Mr. Nagy

The fact that California previously instigated its own lawsuit against Derivium in 2002 only underscores that it is not relying on the United States or the present action to protect its interests. Likewise, the present action proceeds under federal law and does not seek to vindicate California law. More importantly, California has no interest with respect to Mr. Nagy, who never lived or regularly or systematically conducted business in California and who was not a named defendant in the 2002 suit. Although a Co-Defendant may have lived and worked in California, this does not impart to California an interest in Mr. Nagy.

### D. Refund Litigation in the District of South Carolina Is Imminent

The United States itself, *qua* the IRS, has made it apparent that it will not act on Mr. Nagy's requests for refunds within six months of the date of filing. Nagy Declaration at 4. Mr. Nagy has made it expressly clear that he is going to file a claim for these refunds in the District of South Carolina pursuant to §6703(c)(2) of the Internal Revenue Code. *Id.* at 2. The United States disingenuously characterizes Mr. Nagy's Motion to Sever and Transfer as resting upon a future, hypothetical event, even as it acts to make that event inevitable.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

9

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO SEVER AND TRANSFER VENUE

1 | *See* United States Opposition at 11-12.  Ironically, the United States then resorts to

2 | hypotheticals of its own, arguing that there are several possible ways in which the refund

3 | litigation could not come to fruition.  Additionally, here the United States argues that the

4 | refund litigation has not been filed yet and that this Motion is therefore premature, whereas

5 | previously it argued that this Motion was untimely for being filed too late.  In any event,

6 | this Court may hold its ruling on this Motion until Mr. Nagy has filed refund litigation in

7 | South Carolina, should it conclude such a postponement necessary.

8 | **IV.    Conclusion**

9 |        For the reasons shown above, in order to increase the convenience of the parties and

10 | witnesses, to serve the interests of justice, to relieve Mr. Nagy from the burden of

11 | duplicative litigation caused by the United States, and to avoid costly and long delays for

12 | all parties that will result if this action is stayed, this Court should grant Mr. Nagy's

13 | Motion to Sever All Claims and Transfer Venue Pursuant to 28 U.S.C. 1404(a).

14 |

15 | DATED:  June 11, 2008                  JENKINS GOODMAN NEUMAN
                                           & HAMILTON LLP

16 |

17 |

                                        By: _____
18 |                                         FARLEY J. NEUMAN
                                            Attorneys for ROBERT J. NAGY

19 |

20 |

21 |

22 |

23 |

24 |

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

25 |

26 |

POINTS & AUTHORITIES IN SUPPORT OF MOTION TO SEVER AND TRANSFER VENUE