1  Edward O.C. Ord, Esq. (SBN 52123)
   Ord & Norman
2  233 Sansome Street, Suite 1111
3  San Francisco, CA 94104
   Telephone:  (415) 274-3800
4  Facsimile:  (415) 274-3838

5
   Attorney for Defendants
6  Charles Hsin and Optech Limited

7

8
                    UNITED STATES DISTRICT COURT
9
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11  UNITED STATES OF AMERICA,                Civil No. 07-4762-PJH

12              Plaintiff,
                                             **DEFENDANTS CHARLES HSIN**
13       v.                                  **AND OPTECH LIMITED'S**
                                             **NOTICE OF MOTION; MOTION**
14  CHARLES CATHCART, SCOTT                  **TO DISMISS OR FOR A MORE**
    CATHCART, YURIJ DEBEVC, a/k/a            **DEFINITE STATEMENT**
15  YURI DEBEVC, ROBERT NAGY,                **PURSUANT TO FRCP 8(a), 8(e), 9(b)**
    DERIVIUM CAPITAL (USA), INC.,            **AND 12(e); MEMORANDUM OF**
16  VERIDIA SOLUTIONS, OPTECH                **POINTS AND AUTHORITIES IN**
    LIMITED, CHIHSIU HSIN, a/k/a             **SUPPORT THEREOF**
17  CHARLES HSIN, FRANKLIN
    THOMASON
18
                Defendants.                  **Hearing Date**: **August 27, 2008**
19  _____          **Time:         9 A.M.**
                                             **Courtroom:    3**
20                                           **Judge:        Hon. Phyllis J. Hamilton**

21

22

23

24

25

26

27

28
                                  1

1

## TABLE OF CONTENTS

2

3    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE

4    MOTION4

5    I.    INDUCTION AND FACTUAL BACKGROUND ..................................................4

6    II.   ARGUMENT – The Complaint Does Not Satisfy The Heightened Pleadings

7          Requirements of Rule 9(b) and the Requirements of Rule 12(e) .....................4

8          A.  Plaintiff's Complaint Fails to Meet the Minimum Requirement of

9          Pleading Fraud..................................................................................................6

10         B.  Plaintiff Has Failed to Comply with Rule 9(b) in Respect to Allegations

11         Based on Information and Belief......................................................................12

12         C.  Plaintiff's Complaint Impermissibly Lumps Multiple Defendants

13         Together............................................................................................................14

14   III.  CONCLUSION: .................................................................................................19

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2  **Statutes**

3     1.  **Federal Rules of Civil Procedure (FRCP) 8(a)** ……………………..…… **2, 19**

4     2.  **FRCP 8(e)** ……………………………………………...…………… **2, 19**

5     3.  **FRCP 9(b)** …………………………………………………..……… **2, 4, 5, 19**

6
       4.  **FRCP 12(e)** ……………………………………………............ **2, 4, 5, 19**

7
   **Cases**
8

9     1.  *Vess v. Ciba-Geigy Corp. USA*, **317 F.3d 1097 (9th Cir. 2003)** ……..…..…..**5, 6**

10    2.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, **806 F.2d 1393 (9th**

11        **Cir. 1986)**…………………………………………………………............**5**

12
      3.  *Comwest Inc. v. Am. Operator Services, Inc.*, **765 F. Supp. 1467 (C.D. Cal.**
13
          **1991)** ………………………………………………………….**5**
14

15    4.  *U.S. v. Hempfling*, **96 A.F.T.R.2d (RIA) 6578 (E.D. Cal. 2005)**…………......**6**

16    5.  *U.S. v. Stinson*, **197 U.S. 200 (1905)** ...………………………………….**5**

17
      6.  *Bank Line, Ltd. v. U.S.*, **163 F.2d 133 (2nd Cir. 1947)** …………………..…**5**
18

19    7.  *Hargrove & Constanzo v. U.S.*, **98 A.F.T.R.2d (RIA) 7028 (E.D. Cal. 2006)**…**6**

20    8.  *U.S. v. Hempfling (hereinafter Hempfling II)*, **431 F. Supp. 2d 1069 (E.D. Cal.**

21        **2006).** ………………………………………………………………**7**

22
      9.  *Sanderson v. HCA-The Healthcare Co.* **447 F.3d 873 (6th Cir. 2006), cert.**
23
          **denied, 127 S.Ct. 303 (2006)** …………………………………………..… **12**
24

25    10. *County of Santa Clara v. Astra U.S., Inc.*, **428 F. Supp. 2d 1029 (N.D. Cal.**

26        **2006)**…………………………………………………………….………....**12**

27
      11. *Moore v. Kayport Package Express, Inc.*, **885 F.2d 531 (9th Cir. 1989)**…..…**12**
28

ii

1

12. *Swartz v. KPMG*, 476 F.3d 756 (9th Cir. 2007)………………….……….....…….14

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 27, 2008, at 9 a.m., or as soon thereafter as the matter can be heard in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Charles Hsin ("Hsin") and Optech Limited ("Optech") (collectively, "Defendants") will move this Court, pursuant to Federal Rules of Civil Procedure ("FRCP") 8(a), 8(e), 9(b) and 12(e), to dismiss the Complaint in this matter or, in the alternative, for a more definite statement.

This motion is based on this notice of motion and the following memorandum of points and authorities, and on all the papers, pleadings, and records on file in this action.

Specifically, as grounds for this motion, Defendants note the following:

1.     In the first amended complaint (hereinafter "Complaint") in paragraphs 16, 17, 20, 35, 41, 48, and 49, Plaintiff The United States of America ("Plaintiff") makes bald conclusions without reference to specific facts. The conclusions included a conclusory statement that fraudulent acts or statements were made by the Defendants. The Plaintiff should be required to plead very specific facts that state who, what, when, where, and how the alleged fact or facts constituted fraud and other related conduct concerning any fraud conclusion.

2.     The Plaintiff should also be required to plead facts that show how Defendants administered the loans as claimed therein. And then, explain why and how any administration of the loans by the Defendants is fraudulent or violate other provisions of the Internal Revenue Service ("IRS") Code.

3.     In the Complaint, page 16 paragraph 87 does not state which paragraphs are being incorporated aside from paragraph 86. The Plaintiff should be required to plead which paragraphs are being incorporated.

4.     In paragraphs 19, 43, and 91 of the Complaint, the Plaintiff asserts various conclusions based on "information and belief." The Plaintiff should be required to plead separately, exactly the facts it does or does not actually know.

1        5.    In paragraph 16 of the Complaint, Plaintiff impermissibly lumps multiple

2    defendants together.  The Plaintiff should be required to plead separately what actions

3    each defendant took that leads to the bald conclusion that the defendants work together

4    collectively, especially as to the moving Defendants, who were joined only recently in

5    this action.

6        6.    In paragraph 17 of the Complaint, the Plaintiff impermissibly lumps

7    multiple defendants together.  The Plaintiff should be required to plead separately stated

8    facts for each defendant, what specific transactions each defendant engaged in, when

9    each defendant engaged in transaction, and exactly what the harm was.

10       7.    Similarly, in paragraph 20 of the Complaint, the Plaintiff improperly

11   lumps multiple defendants together.  The Plaintiff should be required to plead separately

12   which company, person, or persons caused the change of an entity's identity.

13       8.    Again, in paragraph 46 the Complaint impermissibly lumps multiple

14   defendants together.  The Plaintiff should be required to plead separately when and

15   which defendant or defendants directed Optech to administer 90% loan products.

16       9.    In paragraph 49, the Plaintiff also impermissibly lumps multiple

17   defendants together.  The Plaintiff should be required to plead separately when and

18   which defendant or defendants initially marketed the 90% stock loan program.

19       10.    In paragraph 53, Plaintiff improperly lumps multiple defendants together.

20   The Plaintiff should be required to allege separately which defendant or defendants

21   caused the brokerage firm to sell the stock or Floating Rates Notes ("FRN").

22       11.    In paragraph 54, the Complaint improperly lumps multiple defendants

23   together.  The Plaintiff should be required to plead separately which defendant or

24   defendants received 10% of the proceeds from the sale of stocks, where the money

25   went, and state the companies and principals behind the companies that are the

26   purported off-shore lenders.

27

28

12.     In paragraphs 74-80, the Plaintiff improperly lumps multiple defendants together.  The Plaintiff should be required to plead separately which false statements each defendant made and when, why, and how the alleged statements created damage.

13.     In paragraphs 81-86 the Complaint impermissibly lumps multiple defendants together.  The Plaintiff should be required to plead separately what exact harms to the government each defendant caused including a factual basis for each and every harm.

If Plaintiff is unable to in good faith plead the above referenced facts with the appropriate level of specificity, the Complaint should be dismissed.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION

## I.     INDUCTION AND FACTUAL BACKGROUND

Plaintiff's Amended Complaint added the two moving parties as defendants.

In the Complaint, the Plaintiff makes sweeping conclusory assertions of wrongdoing based at times only on "information and belief," which indicates that the Plaintiff is not aware of actual facts supporting its claims.  Instead, the Plaintiff is using this civil action as a discovery tool to find justification for filing this action in the first instance.  This is improper.

In particular, the Complaint fails to comply with FRCP Rule 9(b) heightened pleading requirements as to the following paragraphs: 16, 17, 19, 35, 41, 43, 46, 48, 49, 53, 74-87, and 91.  As demonstrated below, the Complaint should either be dismissed, or in the alternative, pursuant to FRCP 12(e), the Plaintiff should be ordered to provide a more definite statement of its claims against Defendants.

///

///

///

///

4

## II.     ARGUMENT – The Complaint Does Not Satisfy The Heightened Pleadings Requirements of Rule 9(b) and the Requirements of Rule 12(e)

Plaintiff has failed to comply with Rule 9(b) in three respects:  (a) failing to plead specific allegations of fraud; (2) improperly pleading "on information and belief"; and (3) lumping all defendants together in allegations.

Rule 9(b) states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FRCP 9(b).  Moreover, under Rule 12(e) "[i]f a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading . . . the court may strike the pleading[]."  FRCP 12(e).

In *Vess v. Ciba-Geigy Corp. USA*, the Ninth Circuit held that Rule 9(b) requires that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. 317 F.3d 1097, 1100 (9th Cir. 2003); *see also Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.,* 806 F.2d 1393, 1401 (9th Cir. 1986) (complaint must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation); *see also Comwest Inc. v. Am. Operator Services, Inc.,* 765 F. Supp. 1467, 1472 (C.D. Cal. 1991) (where allegations have been made against multiple defendants, the complaint must apprise each individual defendant of the specific nature of their participation in the alleged fraud).  Due to the wording of the Complaint, the only response Defendants can make at this time is to plead a lack of information or to deny the allegation.  The allegations are serious, the United States, the most sophisticated party in this court should be held to the highest standard.[1]

---

[1] Once the United States waives sovereign immunity, this Court is required to treat the United States just like any private litigant.  This includes complying with the burden of proof and evidence rules that attend the prosecution of a like action for an individual. *See U.S. v. Stinson*, 197 U.S. 200, 205 (1905) and *Bank Line, Ltd. v. U.S.*, 163 F.2d 133,

1    The case law discussed below, especially the Ninth Circuit precedent, establishes

2    the deficiency of the Complaint.

3    **A.    Plaintiff's Complaint Fails to Meet the Minimum Requirement of
         Pleading Fraud.**

4

5    In *Vess*, the plaintiff brought a class action claiming that three defendants acted

6    illegally to increase sales of the prescription drug Ritalin, in violation of the California

7    Consumers Legal Remedies Act and California's unfair business practice laws. *Id.* at

8    1100. The appellate court reversed in part and affirmed in part the district court's

9    holding. *Id.* at 1111. In particular, the appellate court reversed the district court's

10   holding that all of the Plaintiff's allegations were based on fraud and therefore did not

11   meet the required specificity of Rule 9(b) because some of the Plaintiff's allegations

12   described non-fraudulent conduct. *Id.* at 1106. The court held that averments of fraud

13   must be accompanied by "the who, what, when, where, and how" of the misconduct

14   charged. *Id.* at 1106, *quoting Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

15   In *U.S. v. Hempfling* (hereinafter "*Hempfling I*"), the government argued that

16   Rule 9(b) does not apply to a claim alleging a violation of IRC §6700 for defendant's

17   conduct that included conducting seminars, selling commercial tax products, charging

18   membership fees, and posting advertisements on his website. 96 A.F.T.R.2d (RIA)

19   6578 (E.D. Cal. 2005). The court rejected the government's argument and applied the

20   holding from *Vess* requiring the Plaintiff to plead the who, what, when, where and why

21   of the allegedly fraudulent conduct. *See also Hargrove & Constanzo v. U.S.*, 98

22   A.F.T.R.2d (RIA) 7028 (E.D. Cal. 2006) (Applying Rule 9(b) to a counterclaim

23   pursuant to IRC §6700). The court granted the defendant's motion to dismiss the

24   government's §6700 claim for failure to comply with Rule 9(b) because the government

25   failed to show where the seminars took place and what commercial tax products were

26   sold. Plaintiff's complaint lacked a range of dates during which plaintiff held his

27   138 (2nd Cir. 1947). The United States has waived sovereign immunity over the
28   contents of this civil action by filing the complaint.

6

1    seminars, posted information on his website[2], and sold his products; the court stated,

2    "Whether or not 9(b) applies, Defendant is entitled to know the time frame of the

3    allegedly fraudulent conduct."  The district court also held that requiring allegations of

4    the location of the seminars serves the Rule 9(b) purpose to protect Defendant against

5    the potential pretext for discovery against unknown wrongs.

6        The plaintiff submitted an amended complaint that the District Court held was

7    sufficient to fulfill the requirements of Rule 9(b).  *U.S. v. Hempfling* (hereinafter

8    *Hempfling II*), 431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006).  The plaintiff's amended

9    complaint provided the month, year, and in some instances the date of when the

10   defendant engaged in the promotion and sale of abusive tax shelters.  *Id.* at 1076.  The

11   Plaintiff also provided the location of where the tax shelters were promoted and sold.

12   *Id.*  A general time span from 2003-2005 was used to describe when the defendant

13   promoted and sold information regarding tax shelters through his website.[3]  *Id.*  The

14   amended complaint also listed a date when a customer printed out a copy of materials

15   offered for sale on defendant's website as well as the date when a customer purchased

16   three tax products, including the name of each product purchased, from defendant's

17   website.  *Id.* at  1077.

18       On page 8 paragraph 48, the Complaint makes the bald conclusion that "Optech

19   continues to administer the tax-fraud scheme."  The only factual support in paragraph

20   48 for this assertion is that Optech "maintains a margin account with numerous

21   brokerage firms."  A financial institution maintaining a margin account with brokerage

22   firms is not unreasonable or illegal; it is merely evidence of maintaining a margin

23   account and not that a particular type of loan is being administered.  The only other

24   factual basis purportedly in support of the claim in paragraph 48 is that by 2006, Optech

25   _____

26   [2] The government provided specific examples of statements that the defendant made on
     his website that denied filing income tax returns or paying income tax to the federal
     government is mandatory.  *Id.* at n.1.

27   [3] The defendant's website continues to operate today and promotes a catalog vending
28   anti-tax materials: http://www.welcome.freeenterprisesociety.com.

1    principles Hsin and Thompson were the only two at Optech with trading authorizations.

2    Again, having trading authorization is not illegal or unusual for people who work at a

3    financial institution. Furthermore, a trading authorization in 2006 is irrelevant to

4    whether loans are being promoted unlawfully and administered in 2008. The Complaint

5    does not allege how maintaining a margin account or having a trading authorization is

6    related to fraudulent activity, and lacks any other factual support for the claim stated in

7    paragraph 48. The Plaintiff's allegation is conclusory and therefore is insufficient to

8    fulfill the requirements of Rule 9(b).

9        Unlike the defendant in *Hempfling II*, Optech does not continue to operate a

10    website or conduct any business. Like in *Hempfling I*, the defendant does not have

11    notice as to where the alleged loans were administered or promoted. In paragraph 13,

12    the Complaint states "Optech does business throughout the United States at the internet

13    address located at www.hk-Optech.com." Unlike *Hempfling I*, the Plaintiff does not

14    allege any specific statement made on Optech's website regarding fraudulent activity.

15    The Complaint does not allege that the website was offering the 90% loan program;

16    therefore, pursuant to the holding in *Hempfling I*, the Plaintiff should be required to

17    state what products were being sold through the website. Also, like in *Hempfling I*, the

18    Plaintiff must provide a range of dates during which the fraudulent activity was

19    promoted on the website. The Complaint should specifically plead what wording and

20    when the wording was posted on the website that the Defendants marketed or

21    administered the 90% loan program.

22        The web address listed in paragraph 13 is for a non-functioning website;

23    therefore, the court should reject the allegation that the Defendants continue to do

24    business through a web address. The Defendants request that the Court take judicial

25    notice that the referenced website does not operate, as it is subject to easy verification.

26    Two business addresses are listed in paragraph 13, but neither address is referenced in

27    the Complaint as being a location where loans were administered or promoted. The

28

1   Complaint does not specifically allege a connection between the addresses stated in

2   paragraph 13 to any current promotion or administration of loans.

3        Likewise, on page 8 paragraph 48, the Complaint alleges, "Beginning in 2002,

4   Optech gave trading authorization to the same individuals who previously received

5   trading authorization from FSC, DDA, Derivium, BVL, and WITCO." This allegation

6   is vague as to "the same individuals" and does not put the Defendants on notice as to the

7   identity of the "individuals." No other reference is made in the Complaint to

8   individuals with "trading authorization." And again, giving trading authorizations is a

9   common practice for companies engaging in financial transactions. The Complaint does

10  not allege how giving a trade authorization constitutes fraudulent activity. The

11  allegation in paragraph 48 fails to state "who" was engaged in particular fraudulent

12  conduct and how the conduct was fraudulent; therefore, the allegations in paragraph 47

13  do not fulfill Rule 9(b).

14       On page 7 paragraph 41, the Complaint alleges, "Eventually, Optech became the

15  sole lender for the tax-fraud scheme." Pursuant to the holding in *Hempfling I*, the

16  Defendants should be provided a range of dates for when they allegedly become the sole

17  lenders of the alleged loans. Furthermore, the generalized use of the conclusory phrase

18  "tax-fraud schemes" does not state with the requisite particularity what conduct the

19  Defendants' alleged loans are linked to. The Complaint fails to allege when, how, and

20  where Optech became the sole lender. This inconsistency leaves the allegation of loans

21  open to the pretext of discovery against unknown wrongs. The referenced allegation is

22  too vague to put the Defendants on notice as to what is being alleged.

23       On page 6 paragraph 35, the Complaint alleges, "Hsin has been a member of

24  numerous boards of directors of companies that Charles Cathcart owns…" The

25  Complaint fails to allege when, how, who, and where Hsin was a member of the board

26  of directors for any company, and the business of the company, or how this involvement

27  somehow equates to unlawful conduct. At the very least, following the holding in

28

9

*Hempfling I*, Plaintiff should be required to state when and where Hsin served as a member of a board in order to protect the Defendants against the pretext for discovery against unknown wrongs.  Further, paragraph 35 does not state how serving on a board for unidentified companies is related to fraud.  Paragraph 35 is vague and does not put the Defendants on notice with the level of particularity required by the Ninth Circuit for pleading fraud.

Moreover, on page 4 paragraph 16, the Complaint alleges, "Defendants collectively market and implement various schemes…"  This allegation is vague and does not state the who, when, where, or how that the Ninth Circuit requires for pleading fraud.  What the schemes are should be pled specifically as to each defendant; like in *Hempfling I*, what is being promoted must be pled with particularity.  As discussed below, this allegation also impermissibly lumps together all of the defendants; thus, the Defendants are not on notice as to what harms each defendant caused.

Similarly, on page 4 paragraph 17, the Complaint alleges, "Defendants implemented the scheme for hundreds of customers nationwide, with total transactions worth more than $1 billion resulting in the failure to report and pay hundreds of millions of dollars in federal income taxes."  This allegation does not state the who, when, and where that is required by the Ninth Circuit for pleading fraud.  The Defendants are not on notice as to what transactions each defendant engaged in or what portion of the transaction worth "more than $1 billion" each defendant was connected to or when any of the transactions occurred.  The Defendants also are not on notice as to how "the scheme" was implemented nationwide.  The only reference in the Complaint to Optech operating nationwide is the web address that, as discussed above, should be plead with particularity.  As discussed below, paragraph 17 also does not differentiate between the time periods when the Defendants operated the purported scheme, and this allegation also impermissibly lumps the defendants together.

1   On page 4 paragraph 20, the Complaint alleges, "Defendants have frequently

2   changed the identities of the entities through which they conduct their activities…"  The

3   Defendants are not on notice as to which defendant changed the identity of an entity,

4   when the change occurred, what the entity is, where the change occurred, or how the

5   change occurred.  Companies frequently change names.  Paragraph 20 does not allege

6   how changing the name of a company is related to fraudulent activity.  Paragraph 20

7   should plead the who, what, when, where, why, and how changing the name of a

8   company is fraudulent activity.

9   On page 8 paragraph 49 alleges that "Defendants marketed the 90% Stock Loan

10  initially to people who held appreciated stock."  This paragraph does not put the

11  Defendants on notice as to who promoted the loan program, how, where, or when the

12  loan program was initially promoted.  The Complaint alleges that Optech did not begin

13  administering loans until 2002, but First Security Capital ("FSC") began operating in

14  1997.  Paragraph 49 does not put the Defendants on notice as to which defendant was

15  initially promoting the loan program.  The paragraph should plead, which loan programs

16  were being promoted, when, how and by which defendants as required by the Ninth

17  Circuit.

18  The Plaintiff also does not plead facts that provide Defendants notice as to what

19  the Plaintiff means by "administration of loans."  Issuing loans through a financial

20  institution to various companies involves many different aspects, but the Defendants are

21  not on notice as to what conduct it is responsible for in relation to the vague term

22  "administration."  The Complaint does not allege how or what aspect of the

23  administration of loans constitutes fraudulent activity.  The Complaint also does not

24  allege where the loans were administered.  Instead, the Complaint merely states that

25  defendants administered loans; this statement does not provide notice of fraud and

26  should be pled with particularity as required by Rule 9(b).

27

28

11

1    On page 16 paragraph 87 the Complaint alleges, "The United States incorporates
2    by reference the allegations contained in paragraphs through 86." This allegation does
3    not adequately put the Defendants on notice because the allegation does not state the
4    first incorporated paragraph. The plaintiff should be required to specifically state which
5    paragraphs are being incorporated.

6
7    **B.    Plaintiff Has Failed to Comply with Rule 9(b) in Respect to Allegations Based on Information and Belief.**

8    In *Sanderson v. HCA-The Healthcare Co.*, the Plaintiff charged that the
9    defendants, and its corporate predecessors had violated the False Claims Act. 447 F.3d
10   873, 874 (6th Cir. 2006), *cert. denied*, 127 S.Ct. 303 (2006). The circuit court affirmed
11   the district court's holding pertaining to Rule 9(b) because the Plaintiff was unable to
12   identify a specific fraudulent claim submitted directly to the United States by the
13   defendant. *Id.* at 878. The circuit court held that although courts have permitted
14   allegations of fraud based upon "information and belief," the complaint "must set forth
15   a factual basis for such belief," and the allowance of "this exception 'must not be
16   mistaken for license to base claims of fraud on speculation and conclusory allegations.'"
17   *Id.* at 878, *quoting U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d
18   899, 903 (5th Cir. 1997); *see also County of Santa Clara v. Astra U.S., Inc.*, 428 F.
19   Supp. 2d 1029, 1036 (N.D. Cal. 2006) (Allegations of fraud based on information and
20   belief do not satisfy the particularity requirement unless accompanied by a statement of
21   the specific facts on which the belief is founded); *see also Moore v. Kayport Package
22   Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (Allegations of fraud based on
23   information and belief do not satisfy FRCP 9(b) requirements, and mere conclusory
24   allegations of fraud are insufficient.).
25   The Complaint lacks a factual basis for the allegation on page 4 paragraph 19
26   that "on information and belief, defendants are currently marketing and implementing a
27   90% Loan product involving the use of foreign trust." The Complaint is devoid of

28

12

1  examples or factual support that defendants are currently marketing and implementing a

2  "90% Loan Product." The Plaintiff's complaint fails to plead for whom loans were

3  administered or when loans were administered that warrants an injunction for currently

4  administering loans. Like the Plaintiff in *Sanderson*, the Plaintiff has failed to identify a

5  single specific claim that shows the Defendants engaged in or are currently engaging in

6  fraudulent conduct.

7      The Plaintiff makes the conclusory allegation that based on information and

8  belief the defendants are currently marketing a 90% loan product; therefore, because

9  Optech administered loans in 2006, it is currently administering loans. The Complaint's

10 only reference to current activity is the conclusory allegation that the defendants are

11 currently marketing and implementing a 90% loan product. The Plaintiff's reliance on

12 conclusory allegations and failure to cite any reference or example of fraudulent

13 conduct for the past two years fails to fulfill the specificity requirements of Rule 9(b)

14 because the defendant, Optech, is not on notice as to what type of loan, for whom, or

15 when it administered or promoted a loan.

16     On page 7 paragraph 43, the Complaint also alleges that "on information and

17 belief, Optech and Veridia entered into an arrangement in or around 2002…" This

18 allegation fails to fulfill the Ninth Circuit's requirement that allegations based on

19 information and belief do not satisfy the particularity requirement unless accompanied

20 by a statement of the specific facts on which the belief is founded. The allegation in

21 paragraph 43 alleging that there was an agreement does not refer to any factual support

22 for the allegation.

23     The Complaint refers to Optech and Veridia in paragraphs 46 and 47, pages 7-8,

24 but neither paragraphs allege factual support for pleading on information and belief

25 there was an agreement between Optech and Veridia. Paragraph 46 states, "In 2006

26 Veridia ceased operations, and BVL and Optech began to administer the 90% Loan

27 products…" This allegation is merely evidence of a company ceasing to do business

28

13

1    and alleges other companies began to administer loans, but this does not indicate that

2    there was an agreement between Optech and Veridia four years prior.  Paragraph 47

3    alleges, "Optech has taken over most aspects of the promotion, organization, and

4    operation of the 90% Loan program from Derivium, Veridia, and BVL."  This is a

5    conclusory statement that lumps together business transactions with three companies

6    and does not provide factual support for the allegation stated in paragraph 43.

7          The only other two references in the Complaint to Veridia are paragraphs 12 and

8    45, pages 3 and 7.  Neither paragraph is relevant to the allegation that an agreement was

9    entered between Veridia and Optech.  The Complaint's conclusory allegation that there

10   was an agreement between Veridia and Optech lacks a factual basis to fulfill the

11   requirements of Rule 9(b).

12         On page 16 paragraph 91, the Complaint alleges, "On information and belief

13   defendants promote other schemes and in connection therewith engage in other conduct

14   subject to I.R.C. §6700 penalty."  Though the Complaint provides an inaccurate

15   depiction of "90% loans," there is no reference or factual support in the Complaint that

16   "other schemes" are being promoted or administered.  The Defendants are not on notice

17   as to whether the other schemes involve fraud.  Even if the description of the loan is

18   regarded by the Court as true, two types of loans with various business, is not a factual

19   basis for the allegation on information and belief that the Defendants currently market

20   "other schemes" without more factual support.

21         **C.    Plaintiff's Complaint Impermissibly Lumps Multiple Defendants**
22         **Together.**

23         In *Swartz v. KPMG*, the Plaintiff sued the defendants for damages related to a

24   failed tax shelter.  476 F.3d 756-57 (9th Cir. 2007).  The circuit court affirmed the

25   district court's holding in part and reversed in part. *Id.* at 767.  In particular, the circuit

26   court reversed the district court's denial of leave to amend the complaint to plead more

27   specific details concerning the Plaintiff's allegations of fraudulent conduct. *Id.* at 764.

28

14

1   The Plaintiff made broad allegations against two defendants without any stated factual

2   basis: "knew that [KPMG and B&W] were making . . . false statements to clients,

3   including Swartz, and thus were acting in concert with [KPMG and B&W]" and "were

4   acting as agents [of KPMG and B&W]" and were "active participants in the

5   conspiracy." *Id.*  The court held that Rule 9(b) does not allow a complaint to merely

6   lump multiple defendants together but requires Plaintiffs to differentiate their

7   allegations surrounding the alleged participation in fraud. *Id.*

8        The false statements alleged in connection with the 90% loan program are stated

9   on pages 13-15 paragraphs 74-79.  The statements listed in paragraphs 74-79 are similar

10  to the improperly alleged statements in *Swartz*.  In this case, every paragraph that asserts

11  a false statement lumps all of the defendants together and does not state with specificity

12  who made the statements, when the statements were made, or where the statements

13  were made.  None of the statements in paragraphs 74-79 specifically name Optech,

14  much less Hsin; the only company specifically listed is Derivium.  The Plaintiff has

15  failed to differentiate its allegations surrounding Defendants' alleged participation in

16  fraud.

17       On pages 15-16 paragraphs 81-86 of the Complaint, Plaintiff alleges various

18  harms to the government.  Paragraphs 81-86 again lump all of the defendants together

19  despite the defendants having different roles in administering and promoting loans

20  during different time periods.  Based on the Complaint, Optech did not begin to operate

21  as an off-shore lender until 2002 (pg. 7 paragraph 41), but in 1997 Charles Cathcart

22  founded FSC (pg. 5 paragraph 22).  Based on the Complaint, there is a gap of five years

23  during which the 90% loan program was administered and promoted that does not apply

24  to Optech; therefore, Optech is not responsible for any harm to the government related

25  to the 90% loan program from 1997-2002.

26       The Complaint improperly alleges harm to the government that Optech (and

27  Hsin) could not have possibly caused.  Paragraphs 83, 85, and 86 allege that various

28

15

**1** numbers of customers caused harm to the government from under reported taxes, but

**2** does not differentiate between defendants.  The pleadings in paragraphs 83, 85, and 86

**3** fail to plead with specificity what harm and the amount of harm each defendant could

**4** possibly be responsible for.  Instead, paragraphs 83, 85, and 86 make general allegations

**5** resulting in bloated figures that based on the Complaint cannot possibly apply to all of

**6** the defendants.

**7**        On page 16 paragraph 84 states the only example of harm to government (see

**8** dollar figures alleged in paragraphs 83, 85, and 86) based on a customer is a person

**9** whose federal income tax return was audited in 2001.  The complaint in *Hempfling II*

**10** identified a date and customer who purchased the tax denier products.  Based on the

**11** Complaint, Optech did not begin to administer loans until 2002; therefore, Optech could

**12** not have participated in the only example of a customer who's under reported taxable

**13** income harmed the government.  Furthermore, a transaction seven years ago is not

**14** dispositive that the Defendants or any defendant currently administers any loans.

**15**        Paragraph 81 on page 15 is conclusory and cannot stand alone as a factual

**16** allegation; paragraph 81 does not cite how, when, or who helped the customers.

**17** Paragraph 82 is speculative as to who, how, or when defendants' customers filed

**18** inaccurate returns.  None of the allegedly false statements or harm to government

**19** alleged in paragraphs 74-80 refer to Optech or an address where Optech does business.

**20** The Complaint does not plead where the loans were administered and promoted.

**21**        On page 4 paragraph 16, the Complaint alleges, "Defendants collectively market

**22** and implement various schemes…"  By grouping all of the defendants together, this

**23** allegation does not put the Defendants on notice as to what harms each defendant may

**24** have caused.  Based on the Complaint, in 2005 Veridia and Derivium Capital, LLC filed

**25** for bankruptcy and neither company has done any business since (page 4 paragraphs 10

**26** and 12).  In 2006 Veridia ceased operation (pg. 7 paragraph 46).  The Complaint also

**27** alleges that FSC "continued to be involved with 90% Stock Loans and other

**28**

transactions," yet the Complaint also alleges that in 2000 FSC changed its name to Derivium Capital, LLC- the same company that no longer does any business. It is not possible for all of the defendants captioned to "collectively market and implement various schemes" because various companies have gone out of business or ceased to operate. Paragraph 16 should be pled with more specificity to put the defendants on notice as to which defendants collectively work together.

On page 4 paragraph 17 of the Complaint, Plaintiff alleges that "Defendants implemented the scheme for hundreds of customers nationwide, with total transactions worth more than $1 billion, resulting in the failure to report and pay hundreds of millions of dollars in federal income taxes." The Defendants are not on notice as to which transactions each defendant engaged in or what portion, if any, of the more than $1 billion that each defendant is connect with. As discussed above, there are years in which transactions may have taken place that the defendants could not have possibly in engaged in. Paragraph 17 should be pled with more specificity, requiring the Plaintiff to state the separate transactions each defendant engaged in and what, if any, of the transactions resulted in a failure to report income taxes for each separate defendant.

On page 4 paragraph 20, the Complaint alleges, "Defendants have frequently changed the identities of the entities through which they conduct their activities…" By lumping the defendants together, the defendants are not on notice as to which defendants changed identities. It was not alleged in the Complaint that Defendants ever changed names; therefore, the Defendants should not be grouped with companies that may or may not have "changed the identity" of an entity. The Defendants are not on notice as to what entity's identity it changed. Paragraph 20 should specifically allege which companies changed the identity of an entity and not merely lump all defendants together.

On page 7 paragraph 46, the Complaint alleges "In 2006… Optech began to administer the 90% Loan products, particularly the ESOP QRP Loan, at the direction of

17

the defendants." Because the paragraph lumps the defendants together, the Defendants are not on notice as to which defendants began directing Optech. The Complaint alleges that the only other company cited as a defendant, Derivium Capital, LLC, filed for bankruptcy in 2005 and has not done business since (pg. 3 paragraph 10). Paragraph 46 is confusing and does put the Defendants on notice as to which defendant directed Optech. Paragraph 46 should be pled with particularity, stating which defendant(s) directed Optech to administer loans in 2006.

On page 8 paragraph 49 alleges, "Defendants marketed the 90% stock loan initially to people who held appreciated stock." This paragraph does not put the Defendants on notice as to which defendants initially marketed the 90% Stock Loan program. The Complaint states that Optech did not begin administering and (or) promoting loans until 2002, but FSC began administering loans in 1997. Paragraph 49 is confusing because there is a gap of five years in which the loan programs were first promoted and when Optech allegedly began administering and (or) promoting loans. The paragraph should separately plead which defendants initially marketed the 90% loan program.

On page 9, paragraph 53 alleges "Defendants, either directly or through BVL, Optech, or WITCO then caused the brokerage firm to sell the stock or FRN." By combining all of the defendants, it does not put the Defendants on notice as to which defendant directly or through BVL, Optech, or WITCO caused a brokerage firm to sell stock or FRN. In regard to the two newly amended Defendants, the paragraph alleges that Optech either directly or through Optech caused the brokerage firm to sell the stock or FRN. Paragraph 53 is confusing and does put the Defendants on notice as to which defendant's conduct is being referenced or when the conduct occurred.

On page 9, paragraph 54 alleges, "The remaining 10% was then allocated among the defendants and the purported offshore lenders." The allegation does not distinguish which defendants received 10% of the allocated funds. Furthermore, it is unknown

1  what companies are the purported offshore lenders.  Paragraph 54 does not put the

2  defendants on notice as to which defendants received 10% of the allocated funds or

3  which companies are the off-shore lenders.

4  **III.    CONCLUSION**:

5  Based on the foregoing reasons, Defendants respectfully request pursuant to

6  Federal Rules of Civil Procedure ("FRCP") 8(a), 8(e), 9(b) and 12(e), that the Court

7  dismiss the Complaint in this matter or, in the alternative, issue an order requiring the

8  United States to file a second amended complaint in compliance with the specific fact

9  notice pleading of Rule 9(b) and other applicable rules.

10

11  Dated:  July 15, 2008                     Respectfully Submitted,

12                                                              ORD & NORMAN

13

14                                                 By  /s/ Edward O.C. Ord
                                                        Edward O.C. Ord, Esq.

15                                                 Attorney for Defendants
                                                        Charles Hsin and Optech Limited

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on July 15, 2008, I electronically filed the foregoing with the Clerk

3    of the Court using the CM/ECF System which will send notification of such filing to the

4    following:

5    Joseph P. Russoniello                    Allyson B. Baker
     United States Attorney                   Trial Attorney, Tax Division
6    Thomas Moore                             U.S. Department of Justice
     Assistant United States Attorney          Post Office Box 7238
7    Chief, Tax Division                      Ben Franklin Station
     9th Floor Federal Building          Washington, D.C. 20044
8    450 Golden Gate Avenue, Box 36055        (allyson.b.baker@usdoj.gov)
9    San Francisco, California  94102         *Attorney for Plaintiff*
     *Attorney for Plaintiff*
10

11   HUONG T. BAILIE                           ERIC L. WEBB
     Special Trial Attorney                    BARTSCH & WEBB
12   160 Spear Street, 9th Floor          9157 W. Sunset Boulevard, Suite 310
     San Francisco, California  94105          Los Angeles, California  90069
13   *Attorney for Plaintiff*                  (ewebb@elwlaw.com)
                                               *Attorney for Defendant Charles Cathcart*
14   Farley J. Neuman (fneuman@jgn.com)
15   Tom Prountzos (tprountzos@jgn.com)
     Jenkins Goodma Neuman & Hamilton LLP
16   417 Montgomery Street, 10th Floor
     San Francisco, California  94104
17   *Attorneys for Defendant, Robert Nagy*

18   David Bujannoff Porter, Jr. (porter@woodporter.com)
19   Wood & Porter
     333 Sacramento Street
20   San Francisco, California  94111
     *Attorney for Defendant Scott Cathcart*
21

22   I further certify that on July 15, 2008, service of the foregoing was made upon the following by
     depositing a copy in the Unites States mail, postage prepaid:
23

     Yuri Debevc (*pro se*)
24   1483 Burningtree Road
     Charleston, SC  29412
25

26                                              /s/ Edward O. Ord____
27                                              EDWARD O. ORD

28

MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT