1   FARLEY J. NEUMAN, ESQUIRE - State Bar #100021
    TOM PROUNTZOS, ESQUIRE - State Bar #209409
2   JENKINS GOODMAN NEUMAN & HAMILTON LLP
    417 Montgomery Street, 10th Floor
3   San Francisco, California  94104
    Telephone:  (415) 705-0400
4   Facsimile:  (415) 705-0411

5   Attorneys for ROBERT J. NAGY

6

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  UNITED STATES OF AMERICA,

13                          Plaintiff,          Case No. C-07-4762-PJH

14  vs.                                         **MEMORANDUM OF POINTS AND**
                                                **AUTHORITIES IN SUPPORT OF**
15  CHARLES CATHCART, et al.,                   **DEFENDANT ROBERT NAGY'S**
                                                **MOTION TO STAY THE**
16                          Defendants.         **PROCEEDINGS OR IN THE**
                                                **ALTERNATIVE TO SEVER ALL**
17                                              **CLAIMS AND TRANSFER VENUE**
                                                **PURSUANT TO 28 U.S.C. 1404(a)**

18                                              Date:    September 10, 2008
                                                Time:    9:00 a.m.
19                                              Dept.:   Room 3, 17th Floor

20                                              Trial:   March 23, 2009

21

22

23

24

25

26

DEFENDANT ROBERT NAGY'S MOTION TO STAY THE PROCEEDINGS OR IN THE
ALTERNATIVE SEVER ALL CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

1

**TABLE OF CONTENTS**

2                                                                          <u>PAGE</u>

3  I.   INTRODUCTION ..................................................................................1

4  II.  BACKGROUND ...................................................................................2

5  III. ARGUMENT.........................................................................................3

6       A.   THE PROCEEDINGS MUST BE STAYED TO PRESERVE
            MR. NAGY'S SEVENTH AMENDMENT RIGHT TO A JURY
7           TRIAL ON THE ISSUE OF WHETHER HIS CONDUCT
            VIOLATED 27 U.S.C. 6700 ........................................................3
8
             1.   Staying The Injunction Action Will Preserve Mr. Nagy's
9                 Seventh Amendment Right To A Jury Trial On The Central
                  Issue Of Alleged 26 U.S.C. 6700 Violations By Eliminating The
10                Possibility Of Collateral Estoppel .....................................4

11           2.   Staying The Injunction Action Will Prevent Hardship
                  And Inequity To Mr. Nagy And Will Be In The Interests Of
12                Justice By Preserving The Constitutional Right To A Jury Trial.......7

13      B.   IN THE ALTERNATIVE TO STAYING THE PROCEEDINGS,
            THE COURT SHOULD SEVER AND TRANSFER ALL CLAIMS
14          AGAINST MR. NAGY TO THE DISTRICT COURT OF SOUTH
            CAROLINA .................................................................................8
15
             1.   Transfer To South Carolina Is In The Interests Of Justice
16                And More Convenient For The Parties................................9

17                a. The claims against Mr. Nagy might have been brought in
                     South Carolina ..........................................................9
18
                  b. The factors for determining the interests of justice
19                   and convenience weigh in favor of transfer to
                     South Carolina .........................................................10
20
             2.   The Court May Sever Claims Under F.R.C.P. 21 to
21                Effectuate Transfer pursuant to 28 U.S.C. 1404(a) .........11

22
   IV.  CONCLUSION....................................................................................12
23

24

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400
25

26

-ii-

DEFENDANT ROBERT NAGY'S MOTION TO STAY THE PROCEEDINGS OR IN THE
ALTERNATIVE SEVER ALL CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

# TABLE OF AUTHORITIES

**CASES**                                                           **PAGE**

*Beacon Theatres, Inc. v. Westover (1959)*
    *359 U.S. 500* ......................................................... 4, 6-7

*CMAX, Inc. v. Hall (9th Cir. 1962.)*
    300 F2d 265, 268 ...................................................... 7-8

*Chrysler Credit Corp. v. Country Chryslter, Inc. (10th Cir. 1991)*
    928 F.2d 1509, 1518 .....................................................11

*CVI/Beta Beta Ventures, Inc. v. Custom Optical Frames, Inc. (D.Md. 1995)*
    896 F.Supp. 505, 506 ...................................................11

*Dairy Queen, Inv. v. Wood (1962)*
    369 U.S. 469, 470 ........................................................4

*Dimick v. Schiedt*, (1935)
    293 U.S. 474, 485 ........................................................3

*Goodyear Tire & Rubber Co., v. McDonnell Douglas Corp. (1992 C.D. Cal)*
    820 F.Sup. 503, 506 .................................................. 9-10

*In re: Eastern District Repetitive Stress Injury Litigation (1994 E.D.N.Y.)*
    850 F.Supp. 188, 195 ...................................................11

*Jones v. GNC Franchising, Inc. (2000 9th Cir.)*
    211 F.2d 495, 498-499 ..................................................10

*Landis v. North American Co. (1936.)*
    299 U.S. 248, 254 ........................................................7

*Lytle v. Household Manufacturing, Inc. (1990)*
    494 U.S. 545, 555-6 .................................................... 4-5

*Scott v. Neely (1891)*
    140 U.S. 106 .............................................................4

*United States v. Nordbrock (1991 9th Cir.)*
    941 F.2d 947, 949 ...................................................... 5-6

*Van Dusen v. Barrack (1964)*
    376 U.S. 612, 616..........................................................9

*Wyndham Assoc. v. Bintliff (2nd Cir. 1968)*
    398 F.2d 614, 618 .......................................................11

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-iii-

DEFENDANT ROBERT NAGY'S MOTION TO STAY THE PROCEEDINGS OR IN THE
ALTERNATIVE SEVER ALL CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

1

## STATUTES

26 U.S.C. 6700 .................................................................................1-4, 6-8
26 U.S.C. 6701 ...........................................................................................2
26 U.S.C. 6703(c)(1)...................................................................................2
26 U.S.C. 7402 ............................................................................................2
26 U.S.C. 7408 ............................................................................................2
28 U.S.C. 1404(a) ...............................................................................8-11
28 U.S.C. 1391(b)(2) ..................................................................................9
Federal Rule of Civil Procedure 21 ...............................................8, 11

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

DEFENDANT ROBERT NAGY'S MOTION TO STAY THE PROCEEDINGS OR IN THE
ALTERNATIVE SEVER ALL CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

# I. INTRODUCTION

Plaintiff UNITED STATES OF AMERICA ("United States") filed the present action for injunction ("Injunction Action") against Defendant ROBERT J. NAGY ("Mr. Nagy") and several Co-Defendants on September 17, 2007. This action is primarily based upon alleged violations of 26 U.S.C. 6700. On December 31, 2007 the United States Internal Revenue Service ("IRS") assessed penalties against Mr. Nagy also based on alleged violations of 26 U.S.C. 6700. Mr. Nagy filed claims for refund and abatement of these penalties with the IRS, which were denied on July 8, 2008. Thereafter, on July 15, 2008, Mr. Nagy filed a complaint in the United States District Court for the District of South Carolina seeking a refund of the portions of the penalties paid, abatement of the penalties, a determination that his alleged conduct did not violate 26 U.S.C. 6700, and other relief ("Refund Action"). Mr. Nagy demanded a jury trial in the Refund Action. Based on this, Mr. Nagy now moves the Court to stay the present proceedings to preserve his Seventh Amendment right to a jury trial on the issue of whether his alleged conduct violated 26 U.S.C. 6700, which is common to both the Refund and Injunction Actions.

Mr. Nagy previously moved this Court to sever and transfer all claims against him to the District of South Carolina. On June 27, 2008, the Court denied this motion, without prejudice to renew upon a change of circumstances, primarily due to the fact that Mr. Nagy had not yet filed the Refund Action. Now that Mr. Nagy has filed the Refund Action, in the alternative to a stay of the Injunction Action he moves the Court to sever and transfer all claims against him to the District of South Carolina. Such a transfer is in the interests of justice and would increase the convenience of the parties. It would allow the Refund and Injunction Actions to be consolidated in the District of South Carolina and all claims against Mr. Nagy to be resolved in a single trial. Additionally, a transfer would obviate the need to stay the Injunction Action to preserve Mr. Nagy's right to a jury trial.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-1-

## II. BACKGROUND

1        Mr. Nagy is a certified public accountant who lives and works in Charleston, South

2  Carolina, as he has since 1974. Declaration of Robert J. Nagy ("Nagy Declaration") at ¶3,

3  Exhibit 1. Co-Defendant DERIVIUM CAPITAL, LLC ("Derivium") was a client of Mr.

4  Nagy's, for which he prepared tax returns and to which he provided tax advice. *Id.* at ¶18.

5  Mr. Nagy has never been an employee of Derivium and has never held an ownership

6  interest in Derivium. *Id.* at ¶17.

7        Derivium is a South Carolina limited liability company and its principle place of

8  business is Charleston, South Carolina. The United States First Amended Complaint

9  ("Complaint") at ¶10, Dkt. No. 57. Derivium has filed for bankruptcy and this proceeding

10  is also in South Carolina. *Id.* All of Derivium's records are in the possession of the

11  bankruptcy trustee in Charleston, South Carolina. Nagy Declaration at ¶20.

12        The United States filed this Injunction Action pursuant to 26 U.S.C. 7402 and 7408

13  on September 17, 2007. Complaint, Dkt. No. 57. As grounds for injunction it alleges

14  violations of 26 U.S.C. 6700 and 6701. *Id.* at ¶¶88-95. In order to expedite resolution of

15  these allegations, Mr. Nagy chose not to challenge this Court's jurisdiction over him

16  despite his lack of contacts with California and filed his Answer to the Complaint on

17  November 19, 2007. Answer of Robert J. Nagy, Dkt. No. 3. Then, late in December 2007,

18  the United States, *via* the IRS, assessed penalties against Mr. Nagy of more than $8 million

19  also based on alleged violations of 26 U.S.C. 6700. Nagy Declaration ¶5. Pursuant to 26

20  U.S.C. 6703(c)(1) Mr. Nagy paid a portion of these penalties and filed claims for refund on

21  January 23, 2008. *Id.* at ¶6. The IRS denied Mr. Nagy's refund claims on July 8, 2008, a

22  mere two weeks before expiration of the six-month deadline for acting on these claims;

23  one week later, on July 15, 2008, Mr. Nagy filed a complaint in the District of South

24  Carolina for refund of the portions of the penalties paid, abatement of the penalties, a

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-2-

DEFENDANT ROBERT NAGY'S MOTION TO STAY THE PROCEEDINGS OR IN THE
ALTERNATIVE SEVER ALL CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

1     determination that his alleged conduct did not violate 26 U.S.C. 6700, and other relief.

2     Complaint of Robert J. Nagy, No. 2:08-cv-02555-MNS, Exhibit 2. Mr. Nagy demanded a

3     jury trial in the Refund Action. *Id.*

4         As a result of the United States' decision to first initiate the Injunction Action in

5     California and then months later assess penalties, Mr. Nagy is now forced to

6     simultaneously litigate the identical issue of whether his alleged conduct violated 26

7     U.S.C. 6700 in both California and South Carolina. This two-fronted assault on Mr. Nagy

8     has already increased the time and expense he has had to expend in dealing with both

9     cases. He has had to retain counsel in both California and South Carolina. Nagy

10     Declaration ¶8. Mr. Nagy's resources will continue to be unduly depleted as long as both

11     cases proceed in parallel.

12

13                        **III. ARGUMENT**

14     **A. THE PROCEEDINGS MUST BE STAYED TO PRESERVE MR. NAGY'S**

15        **SEVENTH AMENDMENT RIGHT TO A JURY TRIAL ON THE ISSUE OF**
           **WHETHER HIS CONDUCT VIOLATED 26 U.S.C. 6700**

16         Under the Seventh Amendment to the Constitution a party's right to a jury trial shall

17     be preserved in suits at common law where the value exceeds $20. United States

18     Constitution, Amendment VII. This right has been described as "the glory of the English

19     law" and "the most transcendent privilege" that one may enjoy. *Dimick v. Schiedt*, 293

20     U.S. 474, 485 (1935) quoting Blackstone (Bk. 3, p. 379). The Supreme Court has noted

21     that trial by jury is the preferable way to dispose of issues of fact in civil cases at law. *Id.*

22     at 485-86. Furthermore, because the right to a jury trial "is of such importance and

23     occupies so firm a place in our history and jurisprudence," any attempt to limit it must "be

24     scrutinized with the utmost care." *Id.* at 486.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

25

26

                              -3-

1

**1. Staying the Injunction Action Will Preserve Mr. Nagy's Seventh Amendment Right to a Jury Trial on the Central Issue of Alleged 26 U.S.C. 6700 Violations by Eliminating the Possibility of Collateral Estoppel**

2

3

Where an action involves both equitable and legal claims, the legal claims and

4

factual issues underlying them must be determined by a jury prior to the determination of

5

the equitable issues. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959). The right to

6

a jury trial cannot be impaired by blending an equitable claim with a legal claim. *Scott v.*

7

*Neely*, 140 U.S. 106, 109-10 (1891). *Beacon Theatres* involved claims for declaratory

8

relief, injunction, and damages. 359 U.S. at 502-3. The trial court decided the equitable

9

claims first and Beacon applied to the Court of Appeals for a writ of mandamus to vacate

10

the trial court's findings and orders based thereon. *Id*. at 501, 503. Beacon argued that in

11

deciding the equitable issues before the jury determined the legal issues, the trial court

12

violated its Seventh Amendment right to a jury trial. *Id*. at 504. The Supreme Court held

13

that Beacon had a right to a jury trial on the issue of damages and that this right was

14

violated when the trial court decided the equitable claims first. *Id*. at 504, 508. It found

15

that a trial court must use its discretion to preserve a party's Seventh Amendment right to a

16

jury trial "wherever possible." *Id*. at 510.

17

Where legal and equitable claims are presented simultaneously, a court cannot

18

circumvent its obligation to try the legal issues to a jury first by characterizing those issues

19

as "incidental" to the equitable issues. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 470

20

(1962). Similarly, a court cannot avoid the *Beacon Theatres* rule by erroneously

21

dismissing the legal claims and then deciding the equitable claims itself. *Lytle v.*

22

*Household Manufacturing, Inc.*, 494 U.S. 545, 555-6 (1990). In *Lytle* a worker sued his

23

former employer for monetary and injunctive relief and demanded a jury trial. *Id*. at 548.

24

The district court dismissed the issues on which Mr. Lytle was entitled to a jury trial and

25

then conducted a bench trial on the remainder. *Id*. at 548-9. The Court of Appeals ruled

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-4-

DEFENDANT ROBERT NAGY'S MOTION TO STAY THE PROCEEDINGS OR IN THE
ALTERNATIVE SEVER ALL CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

1   that the dismissal of the legal claims was erroneous, but that Mr. Lytle was nonetheless

2   unable to litigate those issues before a jury because the verdict in favor of the defendant

3   from the bench trial collaterally estopped him. *Id*. at 549. The Supreme Court found that

4   but for the erroneous dismissal of some of Mr. Lytle's claims, the case would be

5   indistinguishable from *Beacon Theatres*. *Id*. at 552. As such, the bench trial usurped the

6   determination of issues that was properly left to a jury. *Id*. Rather than simply hold that

7   Mr. Lytle was not collaterally estopped from trying the erroneously dismissed claims

8   before a jury, however, the Court ordered that the district court's decision be vacated and

9   that the case in its entirety be tried before a jury. *Id*. at 555-6. The Court noted that in

10  cases where a party's right to a jury trial has been wrongfully denied, its practice is to

11  reverse and remand for trial of all issues before a jury. *Id*. at 552-3.

12      The Ninth Circuit Court of Appeals addressed the issue of preserving a party's

13  Seventh Amendment right to a jury trial in a case very similar to the instant case. *United*

14  *States v. Nordbrock*, 941 F.2d 947 (9th Cir. 1991). Mr. Nordbrock prepared tax returns and

15  was allegedly a participant in an illegal tax shelter scheme. *Id*. at 948. The IRS sought

16  from him copies or a list of all returns he had prepared, which Mr. Nordbrock refused to

17  provide. *Id*. The IRS filed an action to enjoin Mr. Nordbrock from preparing tax returns.

18  *Id*. It also assessed penalties against him for failure to produce the requested documents.

19  *Id*. Mr. Nordbrock paid part of the assessment and then filed an action for refund of that

20  payment and for abatement of the remainder of the penalty assessment, also demanding a

21  jury trial. *Id*. at 948-9. The two separate actions were eventually consolidated and the trial

22  court conducted a bench trial with regard to the dispositive issue common to both claims of

23  whether Mr. Nordbrock's refusal to provide the information was willful. *Id*. at 949.

24  Before the bench trial Mr. Nordbrock filed a continuing demand for a jury trial and also

25  moved to stay the injunction action until after a jury trial of the refund action. *Id*. The trial

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-5-

DEFENDANT ROBERT NAGY'S MOTION TO STAY THE PROCEEDINGS OR IN THE
ALTERNATIVE SEVER ALL CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

1  court denied both a jury trial and a stay. *Id*. The Ninth Circuit Court of Appeals held that

2  Mr. Nordbrock's continuing demand for a jury trial was sufficient to preserve it and to

3  preclude any waiver. *Id*. at 950. It further held that the bench trial of the dispositive issue

4  common to both claims violated Mr. Nordbrock's Seventh Amendment right to a jury trial,

5  citing to *Lytle*. *Id*. at 949. It then reversed and remanded the case. *Id*. at 950.

6  　　　　The circumstances of the present case with respect to Mr. Nagy are governed by the

7  *Beacon Theatres* rule and are remarkably similar to those of *Nordbrock*. As in *Nordbrock*,

8  so too here there are two separate actions, one for injunction and the other for refund and

9  abatement of penalty assessments. Similar to Mr. Nordbrock, Mr. Nagy is also entitled to

10  and has also demanded a jury trial with respect to the Refund Action. Complaint of Robert

11  J. Nagy, No. 2:08-cv-02555-MNS, Exhibit 2. Trying the dispositive issue in *Nordbrock* at

12  a bench trial violated the Seventh Amendment. Based upon this Motion, trying the

13  Injunction Action first would permit collateral estoppel to apply to the Refund Action,

14  denying Mr. Nagy his right to a jury trial in that action. The fact that the two actions

15  involving Mr. Nagy are presently distinct does not change the conclusion that the common,

16  dispositive issue of whether his alleged conduct violated 26 U.S.C. 6700 must be tried to a

17  jury before the court may decide the claim for injunction. All the same reasons in *Beacon*

18  *Theatres* and *Nordbrock* as to why the legal claims must be heard by a jury before the

19  court determines the equitable claims also apply to the present situation where the legal

20  and equitable claims happen to be in contemporaneous parallel actions.

21  　　　　There are at least two ways in which a trial court may preserve a party's right to a jury

22  trial where both legal and equitable claims are involved. It may grant a jury trial with

23  respect to all issues, or it may stay the equitable claims until the legal claims are decided

24  by a jury. In either case, pursuant to the rule in *Beacon Theatres*, the court is obligated to

25  allow a jury to decide the common issues "wherever possible." *Beacon Theatres, Inc. v.*

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

26

-6-

1    *Westover, supra*, 359 U.S. at 510.  In the present case it is certainly possible for the Court

2    to stay the Injunction Action to allow the issues of alleged violation of 26 U.S.C. 6700 to

3    be tried before a jury in the Refund Action.

4    **2. Staying the Injunction Action Will Prevent Hardship and Inequity to Mr. Nagy
        and Will Be in the Interests of Justice by Preserving the Constitutional Right to
        a Jury Trial**

5

6          This Court has the power to stay the proceedings incident to its power to control the

7    disposition of cases on its docket in an economic and timely manner.  *Landis v. North*

8    *American Co.*, 299 U.S. 248, 254 (1936).  Exercising this power requires the Court to use

9    its discretion.  *Id.* at 259.  In deciding whether to grant a stay, a court must weigh the

10   competing interests that will be affected by the stay or lack thereof.  *CMAX, Inc. v. Hall*,

11   300 F.2d 265, 268 (9th Cir. 1962).  This analysis involves consideration of the harm that

12   may result from the granting of a stay, the hardship or inequity a party may suffer if the

13   case continues without a stay, and the orderly course of justice insofar as issues may be

14   simplified or complicated as a result of a stay.  *Id.*

15         In a case where a freight forwarding company instituted an action for payment of

16   tariffs under a contract, a stay was proper once the enforcement arm of the Civil

17   Aeronautics Board brought an action against the freight forwarding company on the

18   grounds that it was charging improper tariffs.  *Id.* at 266.  The freight forwarding company

19   was simultaneously pursuing numerous actions for collection of tariffs.  *Id* at 267.  The

20   district court granted the stay, reasoning that resolution of the enforcement action by the

21   Civil Aeronautics Board would likely affect all the pending cases, including the one before

22   it.  *Id.*  The Court of Appeals upheld the stay because the freight forwarding company

23   failed to show that the stay would irreparably harm it or constitute a miscarriage of justice.

24   *Id.* at 268-9.  The only potential prejudice the company could suffer as a result of the stay

25   stems from the results of the enforcement action, which may adversely affect its contract

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-7-

DEFENDANT ROBERT NAGY'S MOTION TO STAY THE PROCEEDINGS OR IN THE
ALTERNATIVE SEVER ALL CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

1  claim. *Id.* at 269. But this type of prejudice, the Court of Appeals notes, does not form a

2  basis for denying a stay. *Id.* In fact, justice will be served insofar as any weakness in the

3  contract action is exposed prior to trial of that claim. *Id.* In other words, the stay will

4  allow the propriety of the tariffs to be determined in the enforcement action, which will

5  advance the orderly course of justice by simplifying that issue in the contract action. This

6  effect, therefore, although potentially adverse to the company, actually weighs in favor of

7  the stay. *See id.*

8       In the present case a stay is likewise appropriate. If a stay is not granted and the

9  issue of whether Mr. Nagy's conduct violated 26 U.S.C. 6700 is decided in the Injunction

10  Action, Mr. Nagy may be collaterally estopped from trying that issue before a jury in the

11  Refund Action. This would constitute a violation of his Seventh Amendment right to a

12  jury trial pursuant to *Beacon Theatres* and *Nordbrock*. Certainly the violation of a

13  constitutional right qualifies as hardship or inequity sufficient to overcome any adverse

14  affects of a stay on the United States. Furthermore, as in *CMAX*, granting a stay in this

15  case will advance the orderly course of justice by simplifying an issue. If a stay is granted,

16  the dispositive issue of whether Mr. Nagy's alleged conduct violated 26 U.S.C. 6700 will

17  be resolved in the Refund Action, thereby simplifying that issue for this Court.

18  **B. IN THE ALTERNATIVE TO STAYING THE PROCEEDINGS, THE COURT
       SHOULD SEVER AND TRANSFER ALL CLAIMS AGAINST MR. NAGY TO**
19     **THE DISTRICT OF SOUTH CAROLINA**

20       As an alternative to staying the present proceedings to preserve Mr. Nagy's Seventh

21  Amendment right to a jury trial, this Court may sever all claims against him under Federal

22  Rule of Civil Procedure ("FRCP") 21 and transfer them to the District of South Carolina,

23  Charleston Division pursuant to 28 U.S.C. 1404(a). This transfer would serve the interests

24  of justice by enabling the Injunction Action to be consolidated with the Refund Action and

25  allowing the issue of whether Mr. Nagy's conduct violated 26 U.S.C. 6700 to be

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-8-

1  determined by a jury in the consolidated action. Transfer of the claims against Mr. Nagy

2  to the District of South Carolina would also serve the convenience of the parties insofar as

3  it would obviate the need to stay the present proceedings to protect Mr. Nagy's Seventh

4  Amendment right.

5  **1. Transfer to South Carolina Is in the Interests of Justice and More Convenient**
   **for the Parties**

6

7        28 U.S.C. 1404(a) provides for transfer of an action to another venue. The purpose

8  of this statute is to foster efficiency and to protect against unnecessary inconvenience and

9  expense. *Van Dusen v. Barrack*, 376 U.S. 612, 626 (1964). This section is a revision of

10 the common law doctrine of *forum non conveniens* that gives judges broader discretion and

11 requires case-by-case consideration of convenience and fairness. *Id.* at 622. A case should

12 be transferred pursuant to 28 U.S.C. 1404(a) if (1) the transferee district is one where the

13 action might have been brought, and (2) it will serve the convenience of the parties and

14 witnesses and will promote the interests of justice. *Goodyear Tire & Rubber Co. v.*

15 *McDonnell Douglas Corp.*, 820 F.Supp. 503, 506 (C.D. Cal. 1992).

16     **a. The claims against Mr. Nagy might have been brought in South Carolina**

17        The requirement that transfer is only appropriate to a venue where a case might

18 have been brought refers to federal rules of venue. *Van Dusen v. Barrack, supra*, 376 U.S.

19 at 624. Venue is appropriate in a federal question case in a judicial district in which a

20 substantial part of the events giving rise to the claim occurred. 28 U.S.C. 1391(b)(2). The

21 majority of events in the present case giving rise to the Injunction Action occurred in

22 South Carolina. Derivium was a South Carolina company with its principle place of

23 business in Charleston. Mr. Nagy lived and work in South Carolina at all times relevant to

24 this matter. Mr. Nagy provided tax advice to Derivium in South Carolina. As such, South

25 Carolina is a venue where this case might have been brought.

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-9-

DEFENDANT ROBERT NAGY'S MOTION TO STAY THE PROCEEDINGS OR IN THE
ALTERNATIVE SEVER ALL CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

**b. The factors for determining the interests of justice and convenience weigh in favor of transfer to South Carolina**

Courts apply a multi-factor balancing test to determine whether the convenience of the parties and the interests of justice favor transfer. *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, *supra*, 820 F.Supp. at 507. These factors include: relative ease of access to sources of proof; judicial economy and the fair administration of justice; convenience of the witnesses and the availability of compulsory process; convenience of the parties; plaintiff's choice of forum; the connections between the forum and the parties and cause of action; the difference in cost of litigation between forums; docket congestion; ease of monitoring and enforcing injunction; the state most familiar with governing law. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000).

In Mr. Nagy's previous Motion to Sever All Claims and Transfer Venue Pursuant to 28 U.S.C. 1404(a) each *Jones* factor was individually analyzed to demonstrate that transfer to South Carolina is in the interest of justice and serves the convenience of the parties and witnesses. *See* Dkt. No. 66 at 8-17. Such an analysis would be superfluous at present, however, because the main change of circumstances between the prior Motion and the instant Motion makes it readily apparent that transfer to the District of South Carolina is in the interest of justice and serves the convenience of the parties. As shown above, now that the Refund Action has commenced in South Carolina, pursuant to *Beacon Theatres* it is necessary to stay the Injunction Action to preserve Mr. Nagy's Seventh Amendment right to a jury trial on the common issue of whether his alleged conduct violated 26 U.S.C. 6700.

All parties will be inconvenienced if the present action is stayed, notwithstanding the fact that this inconvenience is out-weighted by the paramount importance of safeguarding Mr. Nagy's right to a jury trial. Further, it is also obviously in the interest of justice to preserve a party's constitutional right to a jury trial. Transfer of the Injunction

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-10-

1  Action against Mr. Nagy to South Carolina relieves the United States and remaining Co-

2  Defendants of the inconvenience that will result if the entire Injunction Action is stayed by

3  allowing the Injunction Action to continue against those Co-Defendants.  Transfer also

4  preserves Mr. Nagy's right to a jury trial by allowing the Refund and Injunction claims to

5  be consolidated in one trial that may then be heard by a jury.  These reasons alone are

6  sufficient to warrant transfer of the injunction claims against Mr. Nagy to the District of

7  South Carolina.

8      **2. The Court May Sever Claims under F.R.C.P. 21 to Effectuate Transfer**
          **pursuant to 28 U.S.C. 1404(a)**
9

10         A court must generally retain or transfer an entire action because partial transfer is

11  not authorized by 28 U.S.C. 1404(a).  *Chrysler Credit Corp. v. Country Chrysler, Inc*. 928

12  F.2d 1509, 1518 (10th Cir. 1991).  A separate and distinct action is created when claims are

13  served under FRCP 21, however.  *Id.*  This new action may then be transferred pursuant to

14  28 U.S.C. 1404(a).  *Id.*; *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2nd Cir. 1968) cert.

15  denied Dec. 9, 1968, 89 S.Ct. 444.  FRCP 21 plainly states that "The court may also sever

16  any claim against a party."  This broad language gives the court wide discretion to sever

17  claims.  No published case in the Ninth Circuit restricts a court's ability to sever a claim in

18  order to effectuate a transfer pursuant to 28 U.S.C. 1404(a).

19         Courts in other Circuits have exercised their discretion to sever claims under FRCP

20  21 to effectuate transfer.  The Second Circuit Court of Appeals, for example, has found

21  that where the interests of justice would be advanced by transfer, a court may sever claims

22  to make that transfer possible.  *Wyndham Assoc. v. Bintliff, supra*, 398 F.2d at 618; *see*

23  *also In re: Eastern District Repetitive Stress Injury Litigation*, 850 F.Supp. 188, 193-96

24  (E.D.N.Y. 1994).  In the Third Circuit a district court has also noted that severance is

25  appropriate where it will serve the ends of justice.  *CVI/Beta Ventures, Inc. v. Custom*

26  *Optical Frames, Inc.*, 896 F.Supp. 505, 506 (D.Md. 1995).  Insofar as the interests of

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-11-

1  justice are served by preserving a party's right to a jury trial and by avoiding

2  inconvenience to all parties, severing the claims against Mr. Nagy in the instant case to

3  effectuate transfer also contributes to the ends of justice.

### IV. CONCLUSION

5  The Court must preserve Mr. Nagy's right to a jury trial one way or another.  A stay

6  of the Injunction Action will preserve this right, but will also unavoidably result in

7  inconvenience to the parties.  Severing all claims against Mr. Nagy and transferring them

8  to the District of South Carolina, where they may be consolidated with the Refund Action,

9  also preserves Mr. Nagy's right to a jury trial, but does not increase the inconvenience of

10  the parties because it obviates the need for a stay.  For these reasons and others given

11  above, the Court must grant this Motion.

13  DATED:  July 30, 2008

JENKINS GOODMAN NEUMAN
& HAMILTON LLP

By:_____

TOM PROUNTZOS
Attorneys for ROBERT J. NAGY

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-12-