1  FARLEY J. NEUMAN, ESQUIRE - State Bar #100021
   TOM PROUNTZOS, ESQUIRE - State Bar #209409
2  JENKINS GOODMAN NEUMAN & HAMILTON LLP
   417 Montgomery Street, 10th Floor
3  San Francisco, California  94104
   Telephone:  (415) 705-0400
4  Facsimile:  (415) 705-0411

5  Attorneys for ROBERT J. NAGY

6

7

8                  UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  UNITED STATES OF AMERICA,

13                          Plaintiff,     Case No. C-07-4762-PJH

14  vs.                                    **DECLARATION OF TOM
                                           PROUNTZOS IN SUPPORT OF
15  CHARLES CATHCART, et al.,              DEFENDANT ROBERT J. NAGY'S
                                           MOTION TO STAY THE
16                          Defendants.    PROCEEDINGS OR IN THE
                                           ALTERNATIVE TO SEVER ALL
17                                         CLAIMS AND TRANSFER VENUE
                                           PURSUANT TO 28 U.S.C. 1404(a)**

18                                         Date:   September 10, 2008
                                           Time:   9:00 a.m.
19                                         Dept.:  Room 3, 17th Floor

20                                         Trial:  March 23, 3009

21

22       I, TOM PROUNTZOS, am an attorney duly licensed in the courts of the State of

23  California and am an attorney at Jenkins Goodman Neuman & Hamilton LLP, attorneys of

24  record for Defendant ROBERT J. NAGY.

25       1.     Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

26                                       -1-

DECLARATION OF FARLEY J. NEUMAN IN SUPPORT OF DEFENDANT ROBERT J. NAGY'S
MOTION TO STAY THE PROCEEDINGS OR IN THE ALTERNATIVE TO SEVER ALL
CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

1   Robert J. Nagy.

2       2.    Attached hereto as Exhibit 2 is a true and correct copy of the Complaint of

3   Robert J. Nagy filed in the District of South Carolina, Charleston Division (No. 2:08-cv-

4   02555-MNS) on July 15, 2008.

5

6   DATED:  July 30, 2008                JENKINS GOODMAN NEUMAN
                                         & HAMILTON LLP
7

8                                        By: _____
9                                            TOM PROUNTZOS
                                             Attorneys for ROBERT J. NAGY
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-2-

DECLARATION OF FARLEY J. NEUMAN IN SUPPORT OF DEFENDANT ROBERT J. NAGY'S
MOTION TO STAY THE PROCEEDINGS OR IN THE ALTERNATIVE TO SEVER ALL
CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)

# EXHIBIT 1

1  FARLEY J. NEUMAN, ESQUIRE - State Bar #100021
   TOM PROUNTZOS, ESQUIRE - State Bar #209409
2  JENKINS GOODMAN NEUMAN & HAMILTON LLP
   417 Montgomery Street, 10th Floor
3  San Francisco, California 94104
   Telephone: (415) 705-0400
4  Facsimile: (415) 705-0411

5  Attorneys for ROBERT J. NAGY

6

7

8                    UNITED STATES DISTRICT COURT
                    NOTHERN DISTRICT OF CALIFORNIA
9                      SAN FRANCISCO DIVISION

10

11  UNITED STATES OF AMERICA,          Case No. C-07-4762-PJH

12                      Plaintiff,     **DECLARATION OF ROBERT J. NAGY
                                       IN SUPPORT OF MOTION TO SEVER
13  vs.                                ALL CLAIMS AND TRANSFER
                                       VENUE PURSUANT TO 28 U.S.C.
14  CHARLES CHATHCART, SCOTT           1404(a)**
    CATHCART, YURIJ DEBEVC, a/k/a
15  YURI DEBEVC, ROBERT NAGY,
    DERIVIUM CAPITAL, LLC,             Date:  June 25, 2008
16  DERIVIUM CAPITAL (USA), INC.,      Time:  9:00 a.m.
    AND VERIDIA SOLUTIONS, LLC,        Dept.: Room 3, 17th Floor
17
                        Defendants.    Trial Date: March 23, 2009
18

19       I, Robert J. Nagy, under 28 U.S.C. § 1746, declare as follows:

20       1.     I am a named defendant in the above-captioned lawsuit pending in the

21  United States District Court for the Northern District of California.

22       2.     This Declaration is submitted in conjunction with a Motion to Sever All

23  Claims and Transfer Venue Pursuant to 28 U.S.C. 1404(a), which seeks to transfer all

24  claims against me in the present suit from the United States District Court for the Northern

25  District of California to the United States District Court for the District of South Carolina.

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

- 1 -

DECLARATION OF ROBERT J. NAGY IN SUPPORT OF MOTION TO TRANSFER VENUE

3.     I currently reside in Charleston County, South Carolina. I am a licensed certified public account in the State of South Carolina and maintain an accounting practice located at 180 East Bay Street, Suite 201, Charleston, South Carolina. I was licensed in 1977, and have been a practicing accountant in South Carolina from 1974 to the present.

4.     The current action for injunction against me by the United States is based in part on alleged violations of Section 6700 of the Internal Revenue Code[1] ("Section 6700"). This action was commenced on September 17, 2007.

5.     After the IRS initiated this injunction action and after I answered the Complaint, the IRS then assessed me on December 27 and 28, 2007 with approximately $8.2 million in penalties under Section 6700 for the 1997 to the 2005 tax years. A notice of federal tax lien was also filed against me based on these Section 6700 penalties. A true and correct copy of the notice of assessments and notice of federal tax lien is attached as Exhibit 1.

6.     Within 30 days of being given notice of the assessments, and pursuant to section 6703(c) of the Internal Revenue Code, I timely filed claims for refund with the IRS on January 23, 2008 requesting that the IRS abate the $8.2 million in Section 6700 penalties for the 1997 to the 2005 tax years. The basis for my claims for refund is that I did not violate Section 6700.

7.     If the claims for refund are allowed, the Section 6700 penalties will be abated, and I will not be liable to the IRS. If the claims for refund are denied, I will promptly file refund litigation against the United States in the United States District Court for South Carolina under section 6703(c)(2) of the Internal Revenue Code and section 7422 of the Internal Revenue Code. Alternatively, if the IRS does not act on my claims for refund within six months of the date I filed them, I will also file refund litigation against the United States in the United States District Court for South Carolina pursuant to section

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

---

[1] Title 26 of the United States Code.

- 2 -

DECLARATION OF ROBERT J. NAGY IN SUPPORT OF MOTION TO TRANSFER VENUE

1    6703(c)(2) of the Internal Revenue Code ("South Carolina Refund Litigation").

2        8.    I have retained Lindsey W. Cooper, Jr., an attorney in South Carolina, to

3    represent me with respect to the Section 6700 penalties and to file the South Carolina

4    Refund Litigation if my claims for refund are denied.  It is my understanding that the

5    issues in the South Carolina Refund Litigation would be the same as those in the present

6    injunction action, as the activity or activities in which the IRS alleges I engaged are the

7    basis for both the injunction action and the penalty assessments.  Nonetheless, because the

8    United States has pursued the injunction action in California, I am now compelled to deal

9    with these issues in two separate states, with two separate attorneys, resulting in

10   considerable additional time and expense.

11       9.    I am informed and believe that if I pursue the South Carolina Refund

12   Litigation, I will be entitled to a trial by jury under the Seventh Amendment to the

13   Constitution.  I intend to avail myself of this right to a jury trial.

14       10.    I am also informed and believe that such refund litigation will involve a

15   determination of whether I violated Section 6700 of the Internal Revenue Code, which is

16   also an issue in the present injunction action.

17       11.    I am further informed and believe that if the issue of whether I violated

18   Section 6700 is adjudicated in the present injunction action first, that I will be precluded or

19   estopped or otherwise prevented from litigating this issue in the refund action.

20       12.    I am further informed and believe that I have no right to a jury trial in the

21   present action for injunction.

22       13.    I am further informed and believe that if the issue of whether I violated

23   Section 6700 is adjudicated in the present injunction action and I am estopped from

24   litigating it in the South Carolina Refund Litigation, that I will be denied my right to a jury

25   trial with regard to that issue in violation of the Constitution.

26       14.    Based on this potential deprivation of my constitutional right to a jury trial, I

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

- 3 -

DECLARATION OF ROBERT J. NAGY IN SUPPORT OF MOTION TO TRANSFER VENUE

1    intend to file a motion to stay the present injunction action immediately after I file the

2    South Carolina Refund Litigation.

3        15.    I am informed and believe that this Court will be bound to grant a motion to

4    stay the proceedings pursuant to the precedent of *United States v. Nordbrock* (1991 9th

5    Cir.) 941 F.2d 947.

6        16.    I have taken steps to try to expedite the apparent inevitable need to file the

7    South Carolina Refund Litigation, including requesting that the IRS deny my refund

8    claims immediately so that I may immediately file a refund action. I have also sent a

9    waiver of notice of disallowance to the IRS so my claims for refund could immediately be

10   denied. A copy of the Waiver of Statutory Notification of Claim Disallowance and cover

11   letter are attached as Exhibit 2. Mr. Cooper has also attempted to prompt the IRS to act.

12   None of our efforts, however, have resulted in action on my refund claims. I have been

13   informed by Mr. Cooper that he was told by Marie Allen, a Revenue Agent with the IRS,

14   that the IRS would not act on my refund claim "for a long time".

15       17.    I have never been a member, manager or had any direct or indirect

16   ownership in Derivium Capital, LLC ("Derivium"). I have never been an employee of

17   Derivium.

18       18.    Derivium was a client of my accounting firm for which I prepared tax returns

19   and provided tax advice regarding the 90% loan transactions. The advice I provide

20   concerning the 90% loan transactions was to my client Derivium.

21       19.    In providing advice to Derivium, I mainly communicated with Charles

22   Cathcart who was a manager of Derivium and lived in Charleston, South Carolina. The

23   individuals with whom I communicated at Derivium were located in South Carolina as

24   Derivium is a South Carolina limited liability company.

25       20.    Derivium's ongoing bankruptcy proceeding is in South Carolina, and its

26   corporate documents are in the possession of the trustee in Charleston, South Carolina.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

- 4 -

DECLARATION OF ROBERT J. NAGY IN SUPPORT OF MOTION TO TRANSFER VENUE

21.    I traveled to California one time in my capacity as Derivium's outside accountant or tax advisor. I never met or communicated with any Derivium borrowers while in California. I can only recall traveling to California two other times over the course of my life prior to the filing of this lawsuit. One trip was for business wholly unrelated to Derivium, and one trip was entirely personal.

22.    In my answer to the United States' complaint, I denied that venue was appropriate in California for the reasons stated above. (Nagy Answer ¶¶1-2.)

23.    The IRS assessed the Section 6700 penalties against me after filing the present injunction action, and I will be required to file my refund claim in South Carolina to dispute the assessments. It is a substantial burden and hardship to me to have to litigate the same Section 6700 issue in two separate proceedings and in two separate jurisdictions on opposite coasts. The IRS unilaterally caused this burden and procedural issue by waiting to assess the Section 6700 penalties until after it initiated the filing of the present lawsuit and by refusing to expeditiously act on my claims for refund.

24.    By refusing to act quickly on my claim for refund, the IRS is causing me unnecessary time and expense, as well as interfering with the judicial economy of the Court's time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 2⁴, 2008.

Robert J. Nagy
180 East Bay Street, Suite 201
Charleston, SC 29401

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10ᵗʰ Floor
San Francisco, CA
94104
(415) 705-0400

- 5 -

DECLARATION OF ROBERT J. NAGY IN SUPPORT OF MOTION TO TRANSFER VENUE

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| ROBERT J. NAGY, | ) | |
| | ) | No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Robert J. Nagy, through undersigned counsel, brings this complaint

against defendant, the United States of America, and alleges as follows:

### JURISDICTION AND VENUE

1.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331,

1340 & 1346, as well as 26 U.S.C. §§6703, 7431 & 7433.

2.     Venue is proper in this district under 28 U.S.C. §§1391 & 1396.

### PARTIES

3.     Plaintiff, Robert J. Nagy, is a natural person who resides

within Charleston County, South Carolina.

4.     Defendant, the United States of America, is the sovereign.

- 1 -

## CLAIM I
### (Erroneous & Illegal Assessment of Section 6700 Penalties)

5.      Nagy incorporates paragraphs 1 to 4 above as if realleged verbatim herein.

6.      On or about March 16, 2006, the Internal Revenue Service ("IRS") began to send letters to Nagy notifying him that the IRS was considering penalties against him for his alleged participation in a tax avoidance transaction.  In accordance with the Internal Revenue Manual ("I.R.M."), the letter indicated that Nagy would be afforded the opportunity to present any facts or legal arguments before any assessment would be made.

7.      Under 26 U.S.C. §6700(a), the IRS maintains the burden of proof in any proceeding to establish that any person is liable under Section 6700.

8.      On December 31, 2007, the IRS made the following assessments against Nagy under 26 U.S.C. §6700:

| Tax Period | Assessment Date | Assessment Amount |
|---|---|---|
| 1997 | 12.28.2007 | $16,000 |
| 1998 | 12.28.2007 | $119,000 |
| 1999 | 12.28.2007 | $388,000 |

| Tax Period | Assessment Date | Assessment Amount |
|------------|-----------------|-------------------|
| 2000 | 12.28.2007 | $749,000 |
| 2001 | 12.28.2007 | $519,000 |
| 2002 | 12.28.2007 | $270,000 |
| 2003 | 12.28.2007 | $231,000 |
| 2004 | 12.28.2007 | $2,929,620 |
| 2005 | 12.28.2007 | $2,873,188 |
| | Total Amount | $8,094,808 |

9.    The IRS, acting on behalf of the United States, erroneously and improperly assessed Nagy for civil promoter penalties under 26 U.S.C. §6700.

10.    Prior to making the assessments under 26 U.S.C. §6700, Nagy was never afforded the opportunity to present any facts or legal arguments before any assessment was made, in contradiction to the IRS's affirmative representation in its notification letters and in contradiction to the I.R.M.'s requirements.

11.    The pre-assessment deficiency procedures that apply to assessment and collection of other taxes and penalties do not apply to Section 6700 assessments under 26 U.S.C. §6703(b).  Thus, the IRS is

excused from giving notice to a taxpayer before making a Section 6700 assessment. As a result, the taxpayer is not afforded the procedures to challenge the IRS's determinations before the IRS makes its assessments and begins collection.

12.     Nagy made written requests on four separate occasions asking the IRS to provide information in support of the its assertion that Nagy was promoting a tax shelter transaction. The IRS never responded or provided Nagy with a basis for the Section 6700 assessments against him prior to December 28, 2007.

13.     On January 23, 2008, Nagy paid 15% of the penalties assessed against him for the 1997 to 2005 tax years and filed claims for refund as required by 26 U.S.C. §6703(c)(1). (Ex. 1.)

14.     For Section 6700 penalty assessments made after October 22, 2004, the penalty was amended from being $1,000 per activity to 50% of the income to be or expected to be derived from the activity on which the penalty assessment is predicated.

15.     Because the IRS did not timely provide Nagy with the underlying assessment information for the 2005 tax year, Nagy was prohibited from paying 15% of a penalty assessment for the 2005 tax year so he paid 15% of the $1,000 consistent with the other claims for refund.

- 4 -

16.     Once the IRS provided the underlying assessment computations, on January 28, 2008, Nagy supplemented his 2005 claim for refund by paying an additional $596.63 to meet the 15% of a penalty requirement.  (Ex. 2.)

17.     On February 12, 2008, Nagy sent the IRS a Form 2297, Waiver of Statutory Notification of Claim Disallowance.  (Ex. 3.)

18.     On July 8, 2008, IRS denied Nagy's claims for refund for the 1997 to 2005 tax years. (Ex. 4.)

19.     The IRS's wrongfully and incorrectly determined that, for the 1997 to the 2005 tax year, Nagy is liable for promoting abusive tax shelters under 26 U.S.C. §6700.

20.     Due to the IRS's wrong, incorrect and reckless determinations that Nagy was promoting abusive tax shelters under 26 U.S.C. §6700, the assessments made against Nagy are illegal, and Nagy is entitled to a refund for the taxes paid for the 1997 to 2005 tax years.

## CLAIM II
### (Damages for Unauthorized Collection Actions)

21.     Nagy incorporates paragraphs 1 to 20 above as if realleged verbatim herein.

22.     Prior to making the assessments under 26 U.S.C. §6700, Nagy was never afforded the opportunity to present any facts or legal arguments

before any assessment was made, in contradiction to the IRS's affirmative

representation in its notification letters and in contradiction to the I.R.M.'s

requirements.

23.     In November 2001, the IRS began an examination of

Derivium's 1998 partnership tax return.  One of the issues under

examination was whether the stock loans were actually sales of stock.  IRS

Financial Products Specialists, Mary S. Socks conducted the analysis of

stock loan transaction "using Key and Benefits/Burdens of Ownership"

analysis.

24.     During the examination, the IRS sent Derivium IDRs,

Derivium provided responses to the IDRs, and in an August 13, 2002 letter

authored by Nagy to Mary Socks, Derivium disclosed the details of the

stock loans transaction and the hedging activities that were conveyed to

Nagy.  Mary Socks spent no less than 67 hours on her portion of the

examination.

25.     After the IRS analyzed the stock loan transaction, the IRS

issued a no change letter dated June 16, 2003 for Derivium's 1998 income

tax return.  Additionally, Mary Socks, or anyone else at the IRS, never

informed Derivium or Nagy that it was facilitating, administering or

promoting an allegedly abusive transaction as a result of the examination.

26.    As an example, Nagy was unable to assert the IRS's previous examination as a defense to the IRS's assessment of Section 6700 penalties because the IRS failed to adhere to its procedures and provide Nagy with a pre-assessment conference to raise any factual or legal defenses.

27.    On January 22, 2008, the IRS filed a notice of federal tax lien against Nagy based upon the Section 6700 penalty assessments. On February 22, 2008, Nagy requested a collection due process ("CDP") hearing under 26 U.S.C. §6320 by submitting a Form 12153, which was sent by certified mail, return receipt requested and was received by the IRS on February 28, 2008.

28.    The IRS's I.R.M. requires that a taxpayer's CDP request, such as Nagy's, be forwarded to the appropriate appeals office within 30 days from receiving the CDP request. As of the end of May 2008, the IRS's internal records indicate that Nagy's CDP request had not been forwarded to an appeals office, even though 3 months elapsed.

29.    For the 1997 to 2004 tax years, the IRS assessed Nagy with a $1,000 penalty under Section 6700 for all 2,765 alleged abusive transactions that Derivium Capital, LLC ("Derivium") administered. (Ex. 5.) Even though the IRS maintains the burden of proof, the IRS fails to identify the

alleged conduct that violates Section 6700 and how Nagy's alleged conduct
is connected to any of these 2,765 transactions that Derivium administered.

30.    Subsequent to October 22, 2004 and the 2005 tax years, the IRS
assessed Nagy in the amount of $5,428,808.  Again, the IRS fails to identify
the alleged conduct that violates Section 6700 and how Nagy's alleged
conduct is connected to any of these post-October 22, 2004 transactions
that Derivium administered.

31.    The IRS computed the post-October 22, 2004 assessments by
calculating 50% of the alleged gross income that IRS alleges Nagy derived
or was expected to derive from the transactions that Derivium
administered.  The IRS computed the assessment by calculating 10% of the
fair market value of borrowers' collateral securities, and then took 50% of
that. (Ex. 5.)

32.    Derivium's tax returns and return information demonstrate
that Nagy never directly or indirectly owned an interest in Derivium, and
was not a member or manager of Derivium.

33.    Nagy was an outside advisor to Derivium, and the IRS knew
from Derivium's return information submitted to the IRS that Nagy never
directly or indirectly owned an interest in Derivium, was not a member or
manager of Derivium and was unaffiliated.

34.    Nagy's compensation paid by Derivium was not contingent upon or related to Derivium's revenue or sales derived from the alleged promotion and/or administration of any alleged abusive transaction.

35.    The IRS's assessment of $5,428,808 is an intentional, reckless or negligent disregard of 26 U.S.C. §6700 because no factual basis exists for Nagy to derive or expect to derive this large amount of gross income from the transactions that Derivium administered.

36.    In connection with the assessments and subsequent collection activities of the Section 6700 penalties, the IRS recklessly, intentionally or negligently disregarded the Internal Revenue Code, the regulations and the IRS's procedures.

37.    Under 26 U.S.C. §7433(b), Nagy is entitled to be awarded damages in an amount to be no less than $100,000, and the costs of bringing this action.

38.    Nagy exhausted the administrative processes before bringing this action.  In fact, Nagy was not afforded the protections of the administrative process with regard to the Section 6700 assessments because the pre-assessment and pre-collection procedures to not apply. When Nagy was afforded administrative processes, the IRS failed to

comply with its procedures and refused to take action forcing Nagy to seek

Court intervention.

## CLAIM III
### (Unlawful Disclosure and Inspection of Return Information)

39.     Nagy incorporates paragraphs 1 to 38 above as if realleged

verbatim herein.

40.     Under 26 U.S.C. §7431, Nagy can recover damages when any

officer or employee of the United States knowingly or negligently inspects

or discloses any return or return information in violation of 26 U.S.C.

§6103.

41.     Subsequent to the IRS notifying Nagy that he was being

investigated but before the IRS made assessments against Nagy under

Section 6700 on December 28, 2007, the IRS sent a letter dated September

12, 2006 to a client of Nagy's disclosing that Nagy was under investigation

by the IRS.

42.     An IRS supervisor admitted that an unauthorized disclosure

occurred.  (Ex. 6.)

43.     IRS Revenue Agents Marie Allen and Lori Dixon were the

only two revenue agents who were assigned to investigate Nagy with

regard to the alleged tax avoidance transactions related to Derivium and to

investigate Nagy's personal income tax returns.

44.     Nagy was retained by taxpayers to represent them in connection with IRS's examinations of the taxpayers' returns.  IRS agents not assigned to investigate Nagy, but conducting examinations of taxpayers' returns, were advised that Nagy was personally the subject of an investigation regarding an alleged tax avoidance transaction, that Nagy's personal returns were being examined, and that Nagy prepared the tax returns for Derivium, individuals related to Derivium and other entities allegedly related to Derivium.

45.     IRS Revenue Agents Paul Doerr, Richard Embusch, Sandra Fanelli, Dora Diaz and Theresa Alvarez all sent Nagy letters indicating that Nagy's return information was disclosed to them and/or inspected by them in connection with these revenue agents' investigations of third-party taxpayers.  Nagy's return information being disclosed to and/or inspected by these revenue agents was an unauthorized and unlawful disclosure in violation of 26 U.S.C. §6103.

46.     Upon information and belief, the IRS made additional unauthorized disclosures and permitted the unauthorized and unlawful inspection of Nagy's return information to other persons in violation of 26 U.S.C. §6103.

47.    Under 26 U.S.C. §7431, Nagy seeks statutory, actual and/or special damages in an amount to be no less than $1,000 per disclosure, plus any punitive damages.  In additional, Nagy seeks his costs and attorney's fees for bringing this claim under 26 U.S.C. §7431.

WHEREFORE plaintiff, Robert J. Nagy, hereby prays that the Court:

A.  Determine that Robert J. Nagy did not engage in conduct that violates 26 U.S.C. §6700, and the Section 6700 penalties assessed against Nagy are illegal and erroneous;

B.  Order the United States to refund any payments made by Nagy against the Section 6700 penalties assessed against him for the tax years 1997 to 2005;

C.  Order the United States to pay Nagy an amount no less than $100,000 for engaging in unauthorized collection activities under 26 U.S.C. §7433;

D.  Order the United States to pay Nagy an amount no less than $1,000 for each unauthorized inspection or disclosure of Nagy's return information under 26 U.S.C. §7431, plus any punitive damages;

E.  Grant to Nagy his attorney's fees and costs of prosecuting this action under 26 U.S.C. §§7430, 7431 & 7433; and

F.  Grant such other and further relief as may be deemed just and

proper under the circumstances.

Respectfully submitted,


/s/ Lindsey W. Cooper Jr.
LINDSEY W. COOPER JR. (No. 9909)
The Law Offices of L.W. Cooper Jr., LLC
36 Broad Street
Charleston, SC 29401
Telephone: 843.723.5152
Facsimile: 843.577.4570

*Counsel for Robert J. Nagy*

Dated:  July 15, 2008
Charleston, South Carolina

**JURY TRIAL DEMANDED**

- 13 -