JOSEPH P. RUSSONIELLO
United States Attorney
THOMAS MOORE (ASBN 4305-O78T
Assistant United States Attorney
Chief, Tax Division
9th Floor Federal Building
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-6935
HUONG T. BAILIE (NYBN 4035739)
300 E. 8th Street, Suite 601
Austin, TX 78701
Telephone: (512) 499-5759
ALLYSON B. BAKER (DCBN 478073)
FREDERICK N. NOYES
Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 353-8031
 Facsimile: (202) 514-6770
 Email: allyson.b.baker@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 07-4762-PJH |
| | ) | UNITED STATES' MEMORANDUM |
| CHARLES CATHCART *et al*. | ) | IN OPPOSITION TO CHARLES |
| | ) | HSIN'S AND OPTECH LIMITED'S |
| Defendants. | ) | MOTION TO DISMISS |
| | ) | |
| | ) | *Hearing*: September 10, 2008, 9:00 AM |

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    The Government's Complaint Meets All Requirements For Pleading
      Fraud And Defendant's Motion To Dismiss Necessarily Fails . . . . . . . . . . . . . . 3

      A.    Motions To Dismiss Rarely Succeed . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Rule 9(b) Is Construed In Harmony With The
            General Notice Pleading Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.   The Complaint Adequately Alleges "The Circumstances Of Fraud" . . . . . . . . . 6

      A.    The Complaint Pleads the "Who, What, When,
            Where and How" of Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    Contrary To Hsin's and Optech's Assertions, The First Amended
            Complaint Provides Them With More Than Adequate Notice Of The
            Alleged Fraudulent Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1.    *Hsin and Optech ignore the actual factual averments and
                  causes of action alleged in the complaint.* . . . . . . . . . . . . . . . . . 10

            2.    *Contrary to Hsin and Optech's assertions, the complaint does not
                  impermissibly "lump together" all of the defendants.* . . . . . . . . 13

            3.    *Contrary to Hsin and Optech's assertions, the complaint's
                  allegations based on information and belief comply with Rule 9(b)
                  pleading standards.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            4.    *Contrary to defendant's assertions, neither the government nor
                  any other plaintiff is required to provide a calculation of the harm
                  stemming from a defendant's alleged conduct* . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**CASES**

*Anthony v. Yahoo! Inc.*, 421 F. Supp. 2d 1257 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Deutsch v. Flannery,* 823 F.2d 1361(9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F. Supp. 720 (N.D. Ill. 1993) . . . . . . . . . . . . . . . . . 4

*Gottreich v. San Francisco Investment Corp.,* 552 F.2d 866 (9th Cir.1977) . . . . . . . . . . . . . . . 4

*In re Emulex Corp. Securities Litig.,,* 210 F.R.D 714 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . 5

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) . . . . . . . . . . . . . . . 13, 14

*Ozark Management, Inc. v. Spare Backup, Inc.*, 2008 WL 539311, at *1 (W.D. Mo. 2008) . . . 10

*Payne v. United States*, 247 F. 2d 481 (8th Cir. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Temple v. Haft*, 73 F.R.D. 49 (D. Del. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Thompson v. Davis,* 295 F.3d 890 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Hempfling* , 2005 WL 2334713 (E.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Hempfling* , 431 F. Supp. 2d 1069 (E.D. Cal. 2006) . . . . . . . . . . . . . . . . . . 5, 11

*United States ex rel. Wison v. Maaxan Inc.*, 2007 WL 2781169 at * 8 (N.D. Cal. 2007) . . . . 5, 10

*Wood v. Apodaca*, 375 F. Supp. 2d 942 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATUTES**

Federal Rules of Civil Procedure

7.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
8(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
8(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Internal Revenue Code (26 U.S.C.)

§6700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§6701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§7402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§7408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1    Pursuant to Rule 12(b)(6) and Local Rule 7.1, the United States respectfully submits its

2    memorandum opposing defendants, Charles Hsin's ("Hsin") and Optech Limited's ("Optech")

3    Motion to Dismiss the First Amended Complaint.

## INTRODUCTION

4

5    The United States filed this case to enjoin defendants under 26 U.S.C. §7408 from

6    engaging in conduct that is subject to penalty under 26 U.S.C. §§ 6700 and 6701[1] and under 26

7    U.S.C. § 7402[2] on September 17, 2007. Four defendants answered the complaint, two

8    defendants signed consent orders agreeing to entry of a final permanent injunction against them,

9    and one defendant has defaulted. *See* Answers to Compl. filed by C. Cathcart, S. Cathcart, Y.

10   Debevc, R. Nagy, Dkt Nos. 41, 28, 4, 3; Orders Granting Entry of Final Permanent Injunction

11   Against Derivium Capital LLC and Veridia Solutions, LLC, Dkt. Nos. 9, 12; Entry of Default as

12   to Derivium USA, Dkt. No. 19.

---

[1] Section 7408 grants the United States the authority to bring actions "to enjoin specified conduct related to tax shelters and reportable transactions." 26 U.S.C. § 7408.
    The relevant portion of 26 U.S.C. § 6700 states that "any person who (1) (A) organizes (or assists in the organization of) (i) a partnership or other entity, (ii) any investment plan or arrangement, or (iii) any other plan or arrangement or (B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and (2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale) – (A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter."
    Section 6701 imposes a penalty on "[a]ny person who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document, (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person, shall pay a penalty with respect to each such document in the amount determined under subsection (b)." 26 U.S.C. § 6701.

[2] Section 7402 grants the district courts "jurisdiction to make and issue in civil actions, writs and orders of injunction. . . as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402. This provision of the Internal Revenue Code does not require that the United States plead fraud in order to move for and obtain an injunction against defendants.

-1-

On April 23, 2008, the United States amended its complaint to join Charles Hsin, Optech Limited and Franklin Thomason[3] as defendants in this action. In response, Charles Cathcart, Yuri Debevc, and Robert Nagy have answered the amended complaint, and Scott Carthcart, has indicated his intention to file an answer. *See* Answers to First Am. Compl., filed by C. Cathcart, Y. Debevc, R. Nagy, Dkt. Nos. 67, 68, 65.

In response to the First Amended Complaint (hereinafter the "complaint"), Hsin and Optech initially sought a six week extension for responding to the complaint so that their counsel, who had entered a limited appearance only for purposes of seeking an extension of time, could complete a conflicts check before representing them in this action. *See* Stip. for Enlargement of Time to File an Answer to the United States' First Am. Compl., Dkt. No. 69. The United States consented to this request for an extension. *Id.* Shortly before this extended time was scheduled to run, Hsin and Optech, through counsel, who were still authorized only to enter a limited appearance, sought a second extension of time with the possibility of obtaining a third extension of time, on grounds that the conflicts check required additional time, because ethics counsel had been on vacation. *See* Hsin and Optech's Admin. Mot. for Extension of Time in Which To File an Answer to the United States' First Am. Compl., Dkt. No. 75. The Court granted their extension but ordered that it was the final extension of time for responding to the complaint. *See* Order, dated June 30, 2008, Dkt. No. 83.

On July 15, the last day of the second extension of time, Hsin and Optech moved to dismiss the government's complaint, alleging that the United States has not pled fraud with sufficient particularity.[4] *See* Mem. in Support of Charles Hsin's and Optech Limited's Motion to Dismiss the Complaint Under Federal Rules of Civil Procedure 12(b)(6) and Rule 9(b) (hereinafter "Defts.' Mem."), Dkt. No. 85.

---

[3] The United States is still unable to serve Franklin Thomason.

[4] Hsin and Optech's counsel have still not entered an appearance in this case.

-2-

1    Hsin and Optech make baseless arguments in their motion to dismiss.  They ignore the

2    actual facts averred in the complaint and the actual Rule 9(b) pleading standards.  Most

3    significantly, they overlook one key fact:  that the so-called 90% Loan program has never

4    involved any loans.  Rather, the so-called 90% Loan program is alleged to be a tax-fraud scheme

5    that actually involves the sales of securities that are disguised as loans to avoid tax

6    consequences.   Section 6700 of the Internal Revenue Code prohibits organizing, helping to

7    organize, or selling directly or indirectly any investment plan or arrangement that results in the

8    making or furnishing of a false or fraudulent statement, such as the 90% Loan program alleged in

9    the complaint.

10    Furthermore, contrary to Hsin's and Optech's arguments, Rule 9 does not require that

11    every single paragraph in a complaint alleging fraud reference the "who, what, when, where and

12    how," of the alleged fraudulent conduct.  A complaint's paragraphs are read as being part of a

13    larger pleading, not as discrete, isolated parts that are divorced from each other, which is how

14    Hsin and Optech read the complaint.  *See generally*, Fed. R. Civ. P. 8(e). Thus, a complaint that

15    pleads fraud is not deficient because several of its paragraphs include conclusory language that

16    introduces the framework for an alleged fraudulent scheme that is described in greater detail in

17    subsequent paragraphs of the complaint.  Contrary to Hsin's and Optech's arguments, the

18    government's complaint meets all pleading requirements mandated by the Federal Rules of Civil

19    Procedure.  *See* Fed. R. Civ. P. 8, 9(b).

20    The United States respectfully requests that the Court enter the attached proposed order,

21    and deny Hsin's and Optech's motion to dismiss and order that Hsin and Optech file an answer

22    to the complaint no later than seven days after the Court issues an order denying their motion.

**ARGUMENT**

I.    **The Government's Complaint Meets All Requirements For Pleading
      Fraud And Defendant's Motion To Dismiss Necessarily Fails**

A.    **Motions To Dismiss Rarely Succeed**

-3-

1    Rule 12(b)(6) motions to dismiss are granted only in the most unusual of circumstances.

2    A motion to dismiss is only granted when a complaint fails to plead averments that are "enough

3    to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct.

4    1955, 1965 (2007).  Furthermore, in construing a complaint on a motion to dismiss, "[a]ll

5    allegations of material fact are taken as true and construed in a light most favorable to the

6    nonmoving party."  *Thompson v. Davis*,  295 F.3d 890, 895 (9th Cir. 2002).  Given these

7    standards, alone, Hsin's and Optech's motion necessarily fails.[5]

8         **B.    Rule 9(b) Is Construed In Harmony With The General Notice
              Pleading Standard**

9

10   Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with

     particularity, the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).   A plaintiff

11   pleading fraud must show the "who, what, when where, and how" of the fraud.   A pleading "is

12   sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the

13   defendant can prepare an adequate answer from the allegations.' "*Deutsch v. Flannery,* 823 F.2d

14   1361, 1365-66 (9th Cir.1987) (quoting *Gottreich v. San Francisco Investment Corp.,* 552 F.2d

15   866, 866 (9th Cir.1977)); *see also Anthony v. Yahoo! Inc*., 421 F. Supp. 2d 1257, 1264 (N.D.

16   Cal. 2006).  Accordingly, Rule 9(b)'s pleading requirements are *not* intended to provide a

17   defendant with all facts that might otherwise be revealed through the discovery process.  Nor is

18   the standard for pleading fraud under Rule 9(b) equivalent to a movant's burden for bringing a

19   successful motion for summary judgment.  *See Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F.

20   Supp. 720, 726 (N.D. Ill. 1993) ("Read together, these rules require that a complainant plead

21   time, place, and contents of fraud be pleaded, but the complainant need not plead evidence.").

22

23

24   _____

25      [5]  Hsin's and Optech's motion for a more definite statement also fails.  A motion for a more
     definite statement "is only appropriate where the complaint is so indefinite that the defendant cannot
26   ascertain the nature of the claim being asserted.  A Rule 12(e) motion is not a substitute for
     discovery; such a motion attacks unintelligibility in a pleading, not mere lack of detail."  *Wood v.*
27   *Apodaca*, 375 F. Supp. 2d 942, 949 (N.D. Cal. 2005) (citation omitted).  Hsin and Optech similarly
     fail to argue that the complaint presents unascertainable, unrecognizable claims.

28                                          -4-

1      Moreover, because Rule 9(b) serves a notice function, the level of particularity required

2  when pleading fraud depends upon a variety of factors, including the relative complexity of the

3  alleged transactions and "'the relationship of the parties.'" *Payne v. United States,* 247 F. 2d

4  481, 486 (8th Cir. 1957) (citation omitted).  For example, "Rule 9(b)'s particularity requirement

5  is not as stringently applied where fraud is alleged to have occurred over a longer period of

6  time." *United States v. Hempfling* , 431 F. Supp. 2d 1069, 1074 (E.D. Cal. 2006); *see also,*

7  *Temple v. Haft,* 73 F.R.D. 49, 53 (D. Del. 1976) ( "When the issues are complicated, or the

8  transactions cover a long period of time, courts tend to require less of a pleader.'" (citation

9  omitted)).  Rule 9(b) pleading standards also are relaxed when the allegations in the pleadings

10  are "exclusively within the opposing party's knowledge," that is when they are facts about which

11  "plaintiffs can not be expected to have personal knowledge." *United States ex rel. Wison v.*

12  *Maaxan Inc.*, 2007 WL 2781169 at * 8 (N.D. Cal. Sept. 20, 2007) (citations omitted).  Similarly,

13  relaxed pleading standards apply when the alleged fraud involves a corporation's conduct, and in

14  those instances, courts also "may presume the officers of the corporation are collectively

15  responsible for the corporation's misrepresentations." *In re Emulex Corp. Securities Litig*., 210

16  F.R.D 714, 716 (C.D. Cal. 2002).

17      The government's complaint meets even the most stringent interpretation of Rule 9(b)

18  pleading standards.  More relaxed Rule 9(b) pleading standards, however, arguably pertain in

19  this instance.  The 90% Loan program alleged in the complaint spans more than a decade, is

20  complicated, and involves numerous corporations that are owned by the same individuals or

21  related-groups of individuals.  *See e.g.*, Compl. ¶¶ 7-48.  For example, one of the allegations in

22  the complaint is that the entities effecting the alleged tax-fraud scheme have changed their

23  identities a number of times between 1997 and 2008, even though the alleged fraudulent conduct

24  remains constant.  *See id.* ¶ 20.  The complaint also alleges facts that would be, if they are true,

25  uniquely within the possession of Hsin, who is or was a principal of three entities, including

26  Optech (of which Hsin is currently a principal), that are alleged to have played a key role in

27  promoting, organizing or facilitating the 90% Loan program.  *See id.*¶¶ 14, 35, 38 .

28

1  Notwithstanding the appropriateness of applying a more relaxed pleading standard in this

2  instance, the complaint meets the strictest pleading standards under Rule 8 and Rule 9(b).

**II.    The Complaint Adequately Alleges "The Circumstances Of Fraud"**

      **A.    The Complaint Pleads the "Who, What, When, Where and How" of Fraud**

*Who*

      The complaint clearly and expressly alleges that Hsin and Optech have promoted, organized and facilitated the 90% Loan program, an alleged tax-fraud scheme.  The complaint describes each of the defendants, including Hsin and Optech, providing background information about their education, work histories, and the nature and length of their professional relationships with each other.  *See e.g.*, Compl. ¶¶ 21-48.  With respect to Charles Hsin, the complaint explains that he is "a principal and the executive director of Optech Limited."  *Id*.¶14.  The complaint also avers that:

> Charles Hsin is a long-time business associate of Charles Cathcart and Yuri Debevc.  He first became acquainted with them at Citibank.  Hsin was a principal for FSC (Canada), from which he received approximately $276,000 in compensation from his work with FSC (Canada).  In addition, Hsin has been a member of numerous boards of directors of companies that Charles Cathcart owns and controls and through which Cathcart has funneled proceeds from the 90% Stock Loans.

*Id*. ¶35.  The complaint further notes that FSC was the predecessor company to Derivium, that it was founded in 1997, and that it initially marketed the 90% Stock Loan scheme described throughout the complaint.  *See id.*  ¶¶ 22-24.  In addition, the complaint alleges that Hsin also was a principal of Diversified Design Associates (DDA) in 1997 and 1998, and that starting in 1997 until 2000, DDA was the "offshore lender" for the 90% Loan program described throughout the complaint.  *See id*. ¶ 38.

      In numerous paragraphs describing the 90% Loan program, there are detailed descriptions of how FSC, DDA, and Optech, all companies of which Hsin was or is a principal, coordinated, established, and/or directed the coordination and establishment of the differing parts of the alleged tax-fraud scheme.  *See id.* ¶¶ 22-24, 35, 38-48.  For example, the complaint alleges that starting in 2002 and continuing into the present, Optech has been an offshore lender for the 90% Loan program, that starting in 2005, it took over the loans then funded by the other offshore

1    lender, making Optech the primary offshore lender (*id*. 41, 44, 47), and that since 2006, Optech

2    also has administered the alleged tax-fraud scheme. *See id.* ¶¶ 46-47.

3         The complaint's allegations clearly identify Hsin and Optech as promoting, organizing

4    and helping to facilitate the 90% Loan program, an alleged tax-fraud scheme. In this way, the

5    complaint meets the "who" pleading requirement of Rule 9(b).

6         *What and How*

7         The complaint also describes the "what" and "how" of the alleged 90% Loan program

8    and of Hsin's and Optech's role in promoting, organizing and facilitating this alleged tax-fraud

9    scheme. For example, the complaint describes the customers to whom defendants are alleged to

10    have marketed the 90% Stock Loan and ESOP QRP Loan (Employee Stock Ownership Plan,

11    Qualified Replacement Property) program. Compl. ¶¶ 49-50. The complaint explains how the

12    alleged 90% Loan scheme was implemented (*id.* ¶53), the type and length of purported loan

13    terms offered to customers (*id.* ¶54), and the options customers have after the purported loan

14    terms expire (*id.* ¶¶ 58-68).

15         The complaint also lists numerous false and fraudulent statements that defendants are

16    alleged to have made, furnished, or caused other to make about the nature and tax consequences

17    stemming from the 90% Loan program (*id.* ¶¶ 75-80), including the following statements:

18           Generate liquidity without triggering a taxable event. . .. You don't have to sell
            your shares and trigger a tax liability (because loans are not taxable events). In
19             fact, depending on your individual tax situation, the 90% Stock Loans may even
            enable you to generate more cash than selling the position outright, net of capital
20             gains tax liabilities.

21    *Id.*¶ 76(a) and

22           With the tax season upon us, you might be tempted to sell stock to pay capital
            gains taxes. Instead, let us suggest using our 90% Stock Loan as a better way to
23             generate the cash needed. After all, there's no sense in triggering another tax hit
            that you'll then have to contend with next year. Our unique structures can help
24             you achieve the liquidity you need while you maintain upside potential with
            downside protection. And they don't nibble away at principal. *Id.* ¶77(a).
25

26         The complaint also describes why the 90% Loan program is an alleged tax-fraud scheme.

27    It alleges that "[d]efendants told customers that an offshore lender would lend the customers

28                                           -8-

1  funds equal to 90% of their securities' value and then hold the securities as collateral while

2  defendants used purported sophisticated 'proprietary hedging techniques' to preserve the

3  securities' value." *Id.* ¶51.  The complaint continues, explaining that

> there were no sophisticated hedging techniques.  Defendants simply caused the
> securities to be sold, remitted 90% of the sales proceeds to their customers, and
> then retained the remaining 10% of the sales proceeds for themselves and their
> associates, who facilitated the tax-fraud scheme.  The 90% Loan transactions
> were in substance and in fact, simply sales of customers' securities disguised as
> loans so as to evade income tax on the capital gains from the sales.

8  *Id.* ¶52.  In addition, as discussed above, the complaint states the specific sections of the Internal

9  Revenue Code that the defendants are alleged to have violated, because they promote, organize

10 and facilitate the 90% Loan program.  *Id.* ¶¶ 3, 4, 5, 87-100.

11    Finally, the complaint also alleges specific examples of the value of the shares of stock

12 transferred to defendants as purported collateral.  *See* Compl. ¶¶ 66, 84.  The complaint more

13 than adequately pleads the "what" and "how" of Hsin's and Optech's involvement in the 90%

14 Loan program, which is an alleged tax-fraud scheme.

15    *When*

16    The complaint adequately pleads when Hsin and Optech became involved in the 90%

17 Loan program, and when they assumed specific roles in promoting, organizing and facilitating

18 this alleged tax-fraud scheme.  *See* Compl. ¶¶21-24.  As noted above, the complaint alleges that

19 Hsin was a principal of DDA in 1997 and 1998, that the 90% Loan program was first marketed

20 in 1997, and that DDA was the offshore lender for the 90% Loan program from 1997-2000.  *See*

21 *infra* at 7-8; compl. ¶38.  Hsin is a principal of Optech, which is alleged to be the current

22 offshore lender, administrator and main organizer of the 90% Loan program.  *See* compl. ¶¶ 41,

23 46-47.

24    With respect to Optech's offshore lending activities, as discussed above, the complaint

25 alleges that between 2002 and 2005, Optech was one of the offshore lenders for the 90% Loan

26 programs, and that starting in 2005, Optech became the primary offshore lender for the 90%

27 Loan program and that by 2006, it was the only offshore lender for the 90% Loan program.  *See*

28    -9-

1

*id*. ¶¶ 41, 43, 44.  The complaint also avers that starting in 2002, Optech "had taken over most

2

aspects of the promotion, organization and operation of the 90% Loan programs from Derivium,

3

Veridia and BVL," using the same "procedures, forms, processes, brokerage firms, and

4

personnel as these [three] companies previously used to promote and administer the 90% Loan

5

programs." *Id*.¶ 47.  Starting in 2006, Optech "began to administer the 90% Loan products,

6

particularly the ESOP-QRP loan."  *See id.* ¶¶ 41, 46.

7

The complaint clearly pleads the specific span of time in which Hsin and Optech are

8

alleged to be organizers, promoters and facilitators of the 90% Loan program.

9

*Where*

10

The complaint adequately describes where Hsin and his company, Optech, have engaged

11

in the alleged conduct.  First, the complaint states that Optech does business in Hong Kong,

12

throughout the United States and that it has a registered agent in California. *Id.* ¶13.  The

13

complaint also states that Hsin resides in New York, which is where he was served with the

14

complaint on behalf of himself and Optech.  *See id*. ¶14.  *See also*, Affid. of Service of C. Hsin,

15

Dkt. No. 74.  Second, the complaint describes in detail the mechanics of the alleged tax-fraud

16

scheme and where key conduct occurred, noting that Derivium Capital, LLC established offices

17

in South Carolina and in San Francisco and that Optech took over the administration and day-to-

18

day operations of the 90% Loan program.  *See* Compl. ¶¶23, 28.  Finally, the complaint alleges –

19

properly – that Optech does business at the Internet address, located at www.hk-optech.com.

20

Hsin and Optech contend that Optech no longer operates and that it no longer operates its

21

website located at www.hk-optech.com and asks the Court to take judicial notice of this fact.

22

*See* Defts.' Mem. at 8.  In response, the United States respectfully requests that the Court take

23

judicial notice of the fact that at least as recently as February 28, 2008, the Internet address

24

located at www.optech-hk.com was an active website, apparently owned and operated by

25

defendant, Optech.  The United States encloses print-outs from Optech's Internet website, which

26

are dated December 11, 2007, and which state that Optech Limited "was registered in California

27

for the purpose [of doing business in] California under the name of HK Optech Limited in 2002.

28

The firm was formed [for] the special purpose of providing loans against securities." *See* print-outs of the Internet website located at www.hk-optech.com, collected and attached as Exhibit A. Finally, Hsin's specific location when he promotes, organizes and facilitates the alleged tax-fraud scheme, is a fact that is within his exclusive knowledge. The United States can only allege the places where Hsin is known to live and work and where Optech is known to do business. *See United States ex rel. Wison*, 2007 WL 2781169 at * 8. *See also, Ozark Management, Inc. v. Spare Backup, Inc*., 2008 WL 539311, at *1 (W.D. Mo. Feb. 26, 2008) (the "nature of the case and the relationship between the parties" obviated the need for defendant to plead the specific place of the false representation in its counterclaim under Rule 9(b)).

The complaint more than meets the Rule 9(b) pleading requirements.

> **B.    Contrary To Hsin's And Optech's Assertions, The First Amended Complaint Provides Them With More Than Adequate Notice Of The Alleged Fraudulent Conduct**
>
> > 1.    *Hsin and Optech ignore the actual factual averments and causes of action alleged in the complaint.*

Hsin's and Optech's arguments fail to apply the actual Rule 9(b) pleading requirement. For example, they contend that there is no support for the allegation in paragraphs 47 and 48 of the complaint that Optech continues to promote and administer the 90% Loan programs. *See* Defts.' Mem. at 7-8; Compl. ¶¶47-48. They argue that because paragraph 48 alleges that Optech maintains margin accounts and gives trading authorizations to its employees and that neither of these activities is *per se* unlawful, the complaint insufficiently pleads the allegation that Optech promotes the 90% Loan program. *See* Defts.' Mem. at 7-8. Hsin and Optech miss this point. The United States does not allege that maintaining margin accounts and trading authorization is *per se* unlawful; rather the fact of these accounts and trading authorizations provide additional support for the other 98 paragraphs in the complaint which support the allegations that Hsin, Optech and the other defendants promote, organize and facilitate an unlawful tax-fraud scheme.

Hsin and Optech also inaccurately analogize cases with facts that have no resemblance to the ones in this case. For example, Hsin and Optech incorrectly rely on *Hempfling v. United States*, 2005 WL 2334713 (E.D. Cal. Sept. 23, 2005) for the assertion that the complaint is

-11-

deficient because the government has not pled "what products were being sold through the [Optech] website," or "what wording and when the wording was posted on the website." *See* Defts.' Mem at 8. There are a few problems with this argument. Most significantly, the complaint in this case contains one factual averment that mentions Optech's website, and it alleges that "Optech does business throughout the United States" at its internet website, located at www.hk-optech.com, not that Optech uses its website primarily or exclusively for purposes of promoting the 90% Loan program.[6] Comp. ¶13. By contrast, in *Hempfling*, plaintiff was alleged to use his website as a forum on which to sell "commercial tax products," books, and other materials that articulated his views as to why individuals did not have to file federal income tax returns. *Hempfling*, 2005 WL 2334713 at *2. In that case, he also held seminars that professed to provide customers with legitimate bases for evading the federal income tax laws. *See id.* In reviewing the government's counterclaim, the *Hempfling* court found that the government's initial claim did not adequately plead fraud, because it neglected to provide the location of where the plaintiff's specific seminars took place and where the commercial products were sold or "even a range of dates during which plaintiff held seminars, posted information on his website, and sold his products." *See id.* at *7. In a subsequent opinion, the court held that the government's amended counterclaim adequately pled fraud, because, among other things, the counterclaim "allege[d] generally that the fraudulent conduct occurred" between a range of years. *Hempfling v. United States*, 431 F. Supp. 2d 1069, 1073 (E.D. Cal. 2006). Here, the government's complaint already alleges the range of years during which Hsin and Optech engaged in specific conduct. If anything, both *Hempfling* cases militate in favor of denying Hsin's and Optech's motion.

    Hsin and Optech also contend that the complaint neglects to state with particularity when and where Hsin "was a member of the board of directors for any company." Defts.' Mem. at 9. This contention, too, misses the point. The complaint describes the companies that Hsin is

---

    [6] Although as the Internet website print-outs from Optech's website indicate, Optech's website has posted information about the 90% Loan program. *See* Exhibit A.

alleged to have been related to as a means of showing his relationship to Charles Cathcart who first established the 90% Loan program and who has used a number of these companies as a mechanism for funding and promoting the 90% Loan program. *See* Compl. ¶35. Furthermore, the complaint does allege with particularity Hsin's corporate affiliations. For example, the complaint alleges that Hsin was a principal of DDA in 1997 and 1998, that DDA was an "offshore lender," and that Charles Cathcart owned DDA whole or in part. *See id*. ¶¶ 38-39. The complaint also states that Hsin was a principal of FSC (Canada) and is a principal of Optech. *See id.* ¶¶ 14, 35.

Hsin and Optech also argue that the complaint should allege "the who, what, when, where, why and how changing the name of [a] company is fraudulent activity." Defts.' Mem. at 9. Again, Hsin and Optech miss the point and misstate the pertinent allegation in the complaint. Specifically, the complaint alleges that "defendants have frequently changed the identities of the entities through which they conduct their activities, without fundamentally changing the nature of those activities." *Id.* ¶20. The complaint does not allege that companies have changed their names; it alleges that the identities of the entities engaged in alleged fraudulent conduct have changed, even as the conduct and cast of characters have remained constant . The complaint also does not allege that "frequently changing the identities" of entities is *per se* unlawful conduct. Rather, the allegation that these companies frequently change their identities demonstrates the difficulty of tracking defendants' alleged fraudulent conduct, and it also provides an introduction for the next section of the complaint which describes in detail the history of the companies and individuals who are alleged to have promoted the 90% Loan program.

Finally, unbelievably, Hsin and Optech argue that 'the generalized use of the conclusory phrase 'tax-fraud schemes' does not state with the requisite particularity what conduct the defendants' alleged loans are linked to." Defts.' Mem. at 9. This statement, like so many others in their brief, reads as if Hsin and Optech choose to ignore the 100 paragraphs of factual averments in the complaint.

-13-

1

2.    *Contrary to Hsin and Optech's assertions, the complaint does not impermissibly "lump together" all of the defendants.*

2

3    Hsin and Optech argue incorrectly that the First Amended Complaint "lumps together"

4    all of the defendants.  Their argument fails for a number of reasons.  First, the only case upon

5    which they rely is *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007), which rejects their

6    argument that it is necessary to "state with specificity who made the statements."  Defts.' Mem.

7    at 15.  The *Swartz* court explained that "there is no absolute requirement that where several

8    defendants are sued in connection with an alleged fraudulent scheme, the complaint must

9    identify *false statements* made by each and every defendant. Participation by each conspirator in

10    every detail in the execution of the conspiracy is unnecessary to establish liability, for each

11    conspirator may be performing different tasks to bring about the desired result." *Swartz,* 476

12    F.3d at 764 (citation omitted).  Indeed, here, the complaint does delineate, with the specific

13    business role of each individual and corporate defendant. Compl. ¶¶16-48.  As described above,

14    the complaint describes Hsin's initial involvement in the alleged tax-fraud scheme; his work

15    with Charles Cathcart, who initially promoted and marketed the alleged tax-fraud scheme ( *id.*¶

16    35); Hsin's participation in the governance of three separate companies, each responsible for a

17    discrete aspect of the alleged 90% Loan scheme, including FSC, DDA and Optech (*id.* ¶¶ 14, 35,

18    38); and that Optech, of which Hsin is a principal continues to promote, market, and administer

19    the 90% Loan program (*id.* ¶¶ 41, 47, 48).  Similarly, the complaint describes Optech's alleged

20    role as a secondary lender, then as the primary lender of the 90% Loan program and then as the

21    main entity through which the alleged tax-fraud scheme is administered.  Hsin and Optech,

22    however, ignore all of these averments.

23    Hsin and Optech also argue that they are not on notice about specific facts that, if true,

24    are exclusively within their knowledge.  The Ninth Circuit has rejected the argument that Rule

25    9(b) requires that a plaintiff plead with particularity those facts that remain within the exclusive

26    knowledge of a defendant, especially a corporate defendant.  *See Moore v. Kayport Package*

27    *Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989) ("Instances of corporate fraud may make it

28

-14-

difficult to attribute particular fraudulent conduct to each defendant as an individual.") . For example, Hsin and Optech contend that they are not "on notice as to which defendant directed Optech" to administer the 90% Loan products, "as to which defendants initially marketed the 90% Stock Loan program," as to which "defendant directly or through BVL, Optech, or WITCO caused a brokerage firm to sell stock or FRN, " and as to whether Hsin or Optech received proceeds from the 10% of securities' sales distributed among defendants and their off-shore lenders. Defts.' Mem. at 17-18. These facts, however, are clearly within the exclusive knowledge of Optech and its principals, including Hsin. Moreover, the complaint's descriptions of each defendant's specific role provide more than sufficient notice as to which defendant is alleged to have engaged in what conduct and when. *See Swartz,* 476 F.3d at 764 (citation omitted).

> 3.      *Contrary to Hsin and Optech's assertions, the complaint's allegations based on information and belief comply with Rule 9(b) pleading standards.*

Hsin and Optech also assert incorrectly that the complaint includes averments that improperly rely "on information and belief." A complaint that pleads fraud may include allegations made "on information and belief, " if the alleged facts are uniquely within a defendant's knowledge or if the allegations concern corporate fraud and the " plaintiffs will not have personal knowledge of all of the underlying facts." *Moore*, 885 F.2d at 540 (9th Cir. 1989)[7]. In such instances, allegations based "on information and belief" are appropriate so long as they are accompanied by a statement of the facts on which the belief is founded. *Id.* The complaint complies with this rule.

For example, paragraph 43 contains the allegation that "on information and belief, Optech and Veridia entered into an arrangement in or around 2002 similar to the arrangements between (1) DDA and Derivium and (2) BVL and Derivium, by which Optech agreed to serve as

---

[7] Hsin and Optech improperly cite to *Moore* for the proposition that "[a]llegations of fraud based on information and belief do not satisfy FRCP 9(b) requirements, and mere conclusory allegations of fraud are insufficient." Defts.' Mem. at 12. Hsin and Optech ignore the rest of the *Moore* holding which delineates those instances when it is permissible to plead fraud using an allegation based on information and belief. *See Moore* 885 F.2d at 540.

the "offshore lender" for 90% Loans marketed by Veridia." Compl. ¶43. This allegation is accompanied by statements of the facts on which this belief is founded. First, paragraph 40 describes the arrangements between Derivium and BVL, including mention of a "Stock Loan Administration Agreement, by which BVL acquired all of DDA's 90% Stock Loans, and (2) a Stock Loan Marketing & Administration, by which Derivium Capital agreed to market 90% Stock Loans for BVL. Second paragraph 41 alleges that "[i]n 2002, Optech became an offshore lender for tax-fraud scheme," establishing Optech's involvement in the alleged tax-fraud scheme in 2002. Third, paragraph 42 explains Veridia's role in the alleged tax-fraud scheme. It alleges that "in 2002, Debevc formed Veridia Solutions, Inc." and that "[f]rom the time of its formation, Veridia took over the administrative functions of Derivium Capital with respect to 90% Stock Loans and the other transactions which are subject to this Complaint." These three paragraphs 40, 41, and 42, provide a statement of facts that accompanies the "on information and belief" allegation in Paragraph 43 of the complaint.

Hsin and Optech also attempt to read "on information and belief" into allegations that do not contain this phrase. They contend that "the plaintiff makes the conclusory allegation that *based on information and belief* the defendants [Hsin and Optech] are currently marketing a 90% loan product." Defts.' Mem. at 13 (emphasis added). Rather, paragraph 47 of the complaint actually reads as follows:

> Indeed, since 2002, Optech has taken over most aspects of the promotion, organization and operation of the 90% Loan programs from Derivium, Veridia, and BVL. Optech uses the same procedures, forms, processes, brokerage firms and personnel as these companies previously used to promote and administer the 90% Loan programs.

*Id*. ¶47. This paragraph specifically pleads that Optech (of which Hsin is a principal) currently promotes, organizes and facilitates the 90% Loan program, which is the alleged tax-fraud scheme that is the subject of the complaint. Hsin and Optech ignore the actual factual averments pled in the complaint, the relevant case law and the actual Rule 9(b) pleading standard.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*4.    Contrary to defendant's assertions, neither the government nor any other plaintiff is required to provide a calculation of the harm stemming from a defendant's alleged conduct.*

The government is not required to allege any, much less a "to-the-penny" calculation of the harm it alleges in order to meet the Federal Rules' pleading requirements, as Hsin and Optech suggest in their brief. *See* Defts.' Mem. at 15-17. As discussed above, Rule 9(b) has no such requirement, and Rule 8's notice pleading requirements mandate only that a complaint include "a demand for the relief sought." Fed. R. Civ. P. 8(a)(3). The complaint seeks an injunction against defendants and clearly states why it seeks this remedy. *See* Compl. ¶¶ 87-100. Furthermore, as noted above, the complaint provides specific examples of the tax liabilities incurred by customers who participated in one or more of the defendant's alleged tax-fraud schemes. *See infra* at 2; Compl. ¶¶ 66, 84.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court deny Hsin's and Optech's Motion to Dismiss the Complaint and Motion for a More Definite Statement, and that the Court require that Hsin and Optech each file an answer to the First Amended Complaint no later than seven days after the Court issues an order denying their motion to dismiss.

-17-

Dated: August 6, 2008

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


/s/ Allyson B. Baker
ALLYSON B. BAKER
FREDERICK N. NOYES
Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 353-8031

-18-

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2008 I electronically filed the foregoing Memorandum In Response to Hsin's and Optech's Motion to Dismiss with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Farley J. Neuman (fneuman@jgn.com)
Tom Prountzos (tprountzos@jgn.com)
Jenkins Goodman Neuman & Hamilton LLP
417 Montgomery Street, 10th Floor
San Francisco, CA 94104
Attorneys  for Defendant, Robert Nagy

David Bujannoff Porter , Jr. (porter@woodporter.com)
Wood & Porter
333 Sacramento Street
San Francisco, CA 94111
Attorney for Scott Cathcart

Eric Webb
Bartsch & Webb
9157 West Sunset Boulevard, Suite 310
Los Angeles, CA 90069
ewebb@elwlaw.com
*Attorney for Charles Cathcart*

Edward O.C. Ord (ordeoc@sbcglobal.net)
Ord & Norman
233 Sansome Street, Suite 1111
San Francisco, CA 94104
*Attorney for Charles Hsin and Optech Limited*

I further certify that on August 6, 2008, service of the foregoing was made upon the following by depositing a copy in the United States mail, postage prepaid:

Yuri Debevc (*pro se*)
1483 Burningtree Road
Charleston, SC 29412
ydebevc@attglobal.net

s/ Allyson B. Baker
ALLYSON B. BAKER

-19-