JOSEPH P. RUSSONIELLO
United States Attorney
THOMAS MOORE (ASBN 4305-O78T)
Assistant United States Attorney
Chief, Tax Division
9th Floor Federal Building
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-6935
HUONG T. BAILIE (NYBN 4035739)
300 E. 8th Street, Suite 601
Austin, TX 78701
Telephone: (512) 499-5759
ALLYSON B. BAKER (DCBN 478073)
FREDERICK N. NOYES
Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 202-353-8031
Telephone: (202) 305-3083
Facsimile: (202) 514-6770
Email: Frederick.N.Noyes@usdoj.gov
Email: allyson.b.baker@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CHARLES CATHCART *et al*. <br><br> Defendant. | Civil No. 07-4762-PJH <br><br> UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT ROBERT NAGY'S MOTION TO STAY THE PROCEEDINGS OR IN THE ALTERNATIVE TO SEVER ALL CLAIMS AND TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) <br><br> *Hearing: September 10, 2008, 9:00 AM* |

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues to be Decided . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I. The Motion to Stay the Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        *1. Robert Nagy's Seventh Amendment right to a jury trial is not implicated by this equitable action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        *2.* Nordbrock *is inapposite to the question before this Court, and should not control this Court's decision* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        *3. Even if Nagy's Seventh Amendment rights were implicated by this action, there are countervailing equitable considerations that would outweigh his jury right* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    II. Nagy's Motion in the Alternative to Sever and Transfer . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Beacon Theatres v. Westover*, 359 U.S. 500 (1959) . . . . . . . . . . . . . . . . . . . 6, 7, 9, 12, 13

*Benjamin v. Traffic Executive Association Eastern Railroads*,
   869 F.2d 107 (2nd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*In re Tureaud*, 70 B.R. 818 (Bankr. N.D. Okla. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Johnson v. Manhattan Ry. Co.*, 289 U.S. 479 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Katchen v. Landry*, 382 U.S. 323 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Landis v. North American Co.*, 299 U.S. 248 (1936) . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Lytle v. Household Manufacturing Inc.*, 494 U.S. 545 (1990) . . . . . . . . . . . . . . . . . . . 6, 7

*Newfound Mgmt. Corp. v. Lewis*, 131 F.3d 108 (3rd Cir. 1997) . . . . . . . . . . . . . . . . . . . . 8

*Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322 (1979) . . . . . . . . . . . . . . . . . . . *passim*

*Perkins v. Spivey*, 911 F.2d 22 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Ross v. Bernhard*, 396 U.S. 531 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. Nordbrock*, 941 F.2d 947 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Nordbrock*, 828 F.2d 1401 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . 8

## FEDERAL STATUTES

26 U.S.C. § 6700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 6

26 U.S.C. § 7402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

26 U.S.C. § 7408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 15

**INTRODUCTION**

Defendant Robert Nagy moves the Court to stay the proceedings or in the alternative to sever the claims against him and to transfer venue, as to those claims only, to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1404(a). Nagy argues that a stay of the proceedings is necessary to safeguard his Seventh Amendment right to a jury trial in a related § 6700 penalty refund suit in South Carolina. However, Nagy's Seventh Amendment rights are not implicated by this action, and the United States would suffer irreparable harm by a stay in the proceedings. Moreover, Nagy's motion in the alternative, to sever the claims against Nagy and transfer those claims to South Carolina has already been heard and rejected by this Court, and the only change in circumstances that Nagy highlights does not have an appreciable impact on the balance of factors considered by the Court in deciding and rejecting his first motion to sever and transfer. Nagy's motion to stay, as well as his motion in the alternative, should therefore be denied.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether defendant Robert Nagy's Seventh Amendment right to a jury trial is implicated by this equitable action proceeding at the same time as a related legal action in South Carolina, and if so, whether there are countervailing equitable considerations that outweigh Nagy's Seventh Amendment right.

2. If there are significant changes of circumstance that would justify the Court reconsidering its decision to deny Nagy's motion to sever the claims against him and transfer those claims alone to the District of South Carolina.

**STATEMENT OF FACTS**

On September 17, 2007, the United States brought suit to permanently enjoin Charles Cathcart, Scott Cathcart, Yuri Debevc, Robert Nagy, Derivium Capital LLC, Derivium USA, and Veridia Solutions, LLC from continuing to promote the 90% Loan and the ESOP-QRP Loan programs. (Docket No. 1, Complaint, ¶ 5). On March 13, 2008, the United States moved to amend its complaint to add three additional defendants: Optech Limited and two of its principals,

1 Charles Hsin, and Franklin Thomason as well as to clarify several factual allegations in the
2 complaint. (Docket No. 47, United States' Motion to Amend Complaint, p. 1). That motion was
3 granted, and the amended complaint was filed on April 23, 2008. (Docket No. 56, Order
4 Granting Motion to Amend, and Docket No. 57, First Amended Complaint).

5 The Complaint alleges that since 1997, defendants, including Nagy, have promoted 90%
6 loan programs, including the 90% Stock Loan program, and more recently, the ESOP-QRP
7 program. (Docket No. 57, Amended Complaint, ¶ 17.) The defendants are alleged to promote
8 the 90% Stock Loan program to customers with highly-valued, low-basis stock, and defendants
9 promote the ESOP-QRP program to customers who have sold qualified securities to ESOPs and
10 then reinvested the sale proceeds in qualified replacement property (QRP) in stocks or floating
11 rate note loans. (Am. Compl., ¶¶ 49-50). Defendants promote both of these programs as
12 transfers of securities that serve as collateral for loans equal to 90% of the securities' value. The
13 complaint further alleges that defendants falsely tell customers that (i) this transaction is a loan;
14 (ii) that customers who transfer their securities to defendants will incur no tax liability, because
15 the transfer is collateral for a loan and not a sale of the taxpayers' securities; and (iii) that
16 defendants will help preserve the value of the taxpayers' transferred securities through the use of
17 sophisticated hedging techniques. (Am. Compl., ¶¶ 51-52). The complaint alleges that these
18 loan programs are abusive tax shelters that involve the actual sale of assets, which are disguised
19 as loans, in order to evade the payment of taxes. *Id.*

20 The complaint alleges that Robert Nagy, along with the other defendants, actively
21 marketed the 90% loan program. (Am. Compl., ¶ 32). The complaint alleges that Nagy, a CPA
22 and long-time associate of Charles Cathcart, served as Derivium Capital's "outside accountant,"
23 and represented Derivium customers before the Internal Revenue Service and other
24 administrative bodies. (Am. Compl., ¶¶ 29-30). Most important, Nagy is alleged to have
25 prepared written tax advice concerning Derivium's 90% loan program, and to have provided that
26 advice to persons promoting the 90% loan program on behalf of, or in association with,
27 Derivium. (Am. Compl., ¶ 32).

28

1    On July 15, 2008, Robert Nagy filed a complaint in the United States District Court for
2 the District of South Carolina seeking a refund of tax penalties assessed and partially paid.
3 (Docket No. 86-3, Declaration of Tom Prountzos, p.2).  According to the complaint, the IRS
4 assessed penalties pursuant to 26 U.S.C. § 6700 against Nagy on December 31, 2007.  (Docket
5 No. 86-3, Ex. B, Complaint, ¶ 8.)  The complaint in the South Carolina suit seeks a
6 determination from the court that Nagy did not engage in conduct that violates 26 U.S.C. § 6700,
7 a refund of payments made by Nagy in partial satisfaction of the penalties assessed against him,
8 $100,000 from the United States for alleged unauthorized collection activities, and damages for
9 alleged unauthorized inspection and disclosure of Nagy's return information by the IRS.  (*Id.*,
10 p. 12).

**ARGUMENT**

**I.    The Motion to Stay the Proceedings**

Nagy moves to stay this action on the grounds that to do so is necessary to preserve his right to a jury determination of his liability for penalties under 26 U.S.C. § 6700 in a related tax penalty refund suit in South Carolina.  Nagy Memorandum in support of motion, p. 1.

This Court has inherent power to control its docket, including by staying a proceeding in the interests of justice.  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  However, in exercising its discretion, the Court must balance the competing interests which will be affected by the stay, including the possible damage which may result from granting the stay, the hardship a party may suffer in being required to go forward, and the orderly administration of justice.  *Id*. (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)).  Because Nagy's Seventh Amendment rights are not implicated by this action moving forward, and because of the importance of the countervailing equitable concerns, Nagy's motion should be denied.

### *1.      Robert Nagy's Seventh Amendment right to a jury trial is not implicated by this equitable action.*

Nagy argues that "trying the Injunction Action first would permit collateral estoppel to apply to the Refund Action, denying Mr. Nagy his right to a jury trial in that action." Nagy Memorandum, p. 6. While Nagy is correct that fact-finding by this Court in the instant proceeding could have preclusive effect in Nagy's refund suit in South Carolina, he is flatly incorrect that such collateral estoppel effect would violate the Seventh Amendment.

The controlling case on the question is *Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322 (1979). While *Parklane Hosiery* is best known for permitting the offensive use of collateral estoppel even absent mutuality of parties, a critical holding of *Parklane Hosiery* was that such use of collateral estoppel did not offend the Seventh Amendment, even when the issue found to be preclusively determined in an earlier bench trial would have been submitted to the jury in the later legal proceeding. *Id.* at 337 ("Thus if, as we have held, the law of collateral estoppel forecloses the petitioners from relitigating the factual issues determined against them in the SEC action, *nothing in the Seventh Amendment dictates a different result*.")(emphasis added).

The facts of *Parklane Hosiery* are strikingly similar to those of the instant case. In *Parklane Hosiery*, stockholders brought a class action against the company on the basis of a supposedly false and misleading proxy statement issued in connection with a merger. *Id.* at 324. After that action was filed, but before it went to trial, the Securities and Exchange Commission brought an equitable suit seeking injunctive relief against Parklane Hosiery Company, Inc. on the basis of the same allegedly false and misleading proxy statement. *Id.* After the SEC won injunctive relief in a four day bench trial, the stockholders moved for partial summary judgment arguing that the company was collaterally estopped from relitigating issues conclusively determined in the SEC action. *Id.* at 324-25.

Parklane Hosiery argued that giving preclusive effect to the result of the equitable action would violate the company's Seventh Amendment right to a jury trial in the legal action against the stockholders. *Id.* at 333. The Supreme Court, however, found that "the Seventh Amendment

-4-

has never been interpreted in the rigid manner advocated by [Parklane Hosiery]." *Id.* at 336. Noting that the Court had approved of a number of procedural devices "that have diminished the civil jury's historic domain," including directed verdicts, summary judgment, and setting aside only part of a jury's verdict, the Court concluded that collateral estoppel should be treated no differently. *Id.* The Court effectively held that the Seventh Amendment rights of a litigant were not implicated by the use of collateral estoppel in a parallel proceeding because:

> the party against whom estoppel is asserted has litigated questions of fact, and has had the facts determined against him in an earlier proceeding. In either case there is no further factfinding function for the jury to perform, since the common factual issues have been resolved in the previous action.

*Id.* at 335-36.

In a footnote, the Supreme Court addressed the precise question before this Court. Although Parklane Hosiery had not sought a stay of the injunction proceeding, the Circuit Court of Appeals had mentioned in *dicta* that a stay was a possible resolution to the Seventh Amendment dilemma. The Supreme Court flatly rejected the suggestion:

> The petitioners did not have a right to a jury trial in the equitable injunctive action brought by the SEC... *And the petitioners were not in a position to expedite the private action and stay the SEC action. The Securities Exchange Act provides for prompt enforcement actions by the SEC unhindered by parallel private actions*. 15 U.S.C. § 78u(g).

*Id*. at 337, n. 24 (emphasis added).

*Parklane Hosiery* has been found to be the controlling case for the question before this Court in a number of other federal decisions. *Benjamin v. Traffic Executive Association Eastern Railroads*, 869 F.2d 107, 114 (2nd Cir. 1989); *Perkins v. Spivey*, 911 F.2d 22 (8th Cir. 1990); *Temple of the Lost Sheep, Inc. v. Abrams*, 930 F.2d 178, 185 (2nd Cir. 1991).

Thus, the case law makes clear that "preclusion may not be defeated simply by showing that there was no right to trial by jury in the first action and that there is a constitutional right to trial by jury in the second action, no matter what anguish that may cause to those who believe in juries." *Benjamin*, 869 F.2d at 114 (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4465, at 600 (1981)).

The holding of *Parklane Hosiery* is consistent with the earlier decisions in *Beacon Theatres v. Westover*, 359 U.S. 500 (1959) and *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962). Nagy cites *Beacon Theatres* for its central thesis that "where an action involves both equitable and legal claims, the legal claims and factual issues underlying them must be determined by a jury prior to the determination of the equitable issues." Nagy Memorandum, p. 4. Nagy downplays, however, the critical premise underlying the *Beacon Theatres* result - before the right to a jury trial extends to all common issues between legal and equitable claims, those claims must be "joined in the same action." *Ross v. Bernhard*, 396 U.S. 531, 537-38 (1970)(summarizing the holdings of *Beacon Theatres* and *Dairy Queen*).

Anticipating this fatal weakness in his argument, Nagy suggests that "the fact that the two actions involving Mr. Nagy are presently distinct does not change the conclusion that the common, dispositive issue of whether his alleged conduct violated 26 U.S.C. § 6700 must be tried to a jury before the Court may decide the claim for injunction." Nagy Memorandum, p. 6. Nagy offers neither authority nor analysis to support this broad assertion, however, and the argument is irreconcilable with the Supreme Court's careful efforts to limit the *Beacon Theatres* rule to situations where equitable and legal claims are joined in the same action, and the argument is directly contradicted by *Parklane Hosiery*, which Nagy does not even cite.[1]

Nagy also cites *Lytle v. Household Manufacturing, Inc.,* 494 U.S. 545 (1990), as an example of a case where collateral estoppel was found to implicate the Seventh Amendment. *Lytle* offers no support for Nagy's position, however. Far from over-ruling *Parklane Hosiery*, the *Lytle* Court cited *Parklane Hosiery* favorably, proceeded to explain why Lytle's situation was distinguishable, and left the *Parklane Hosiery* holding - that "an equitable determination can have collateral-estoppel effect in a subsequent legal action and that this estoppel does not violate the Seventh Amendment" - completely intact. *Id.* at 550-51. The only reason the Seventh Amendment rights of Lytle were implicated by the use of collateral estoppel in that case is that

---

[1] The reasons why the Supreme Court did not extend the *Beacon Theatres* rule to situations such as the instant case are explored in subsection 3 below.

-6-

Lytle, as in *Beacon Theatres* and *Dairy Queen*, had originally joined legal and equitable claims *in the same action*, and it was only the erroneous dismissal of those legal claims that allowed the District Court judge to conduct a bench trial of the equitable claims. *Id.* at 551. *Lytle* clearly has no applicability to the instant case, as at no time here have legal and equitable claims been joined in a common action. *Parklane Hosiery* remains the controlling authority. *See also Perkins v. Spivey*, 911 F.2d 22, 34 (8th Cir. 1990)(*Beacon Theatres* and *Dairy Queen* inapposite because "Perkins' (sic.) legal claim against Spivey was not joined in the same action with her equitable claim against GM.")

### 2.  **Nordbrock *is inapposite to the question before this Court, and should not control this Court's decision.***

Nagy argues that the Court's decision on his motion to stay is controlled by *United States v. Nordbrock*, 941 F.2d 947 (9th Cir. 1991)(*Nordbrock (II)*).

*Nordbrock (II)*, however, is inapposite to the situation before this Court. Specifically, *Nordbrock* involved a *consolidated* case in which the judge erroneously conducted a simultaneous bench trial on *both* the equitable and legal claims in the action. *Id.* at 949. On appeal, the ruling was reversed and remanded, not because giving an equitable proceeding preclusive effect in a later legal proceeding would violate the Seventh Amendment, but because a simultaneous bench trial on both equitable and legal claims violated the Seventh Amendment. *Id.* There is no question that if Nagy's legal claim for a refund was joined in the same action as the government's equitable claim for an injunction, this Court would be obligated to provide a jury trial on all common issues between the legal and equitable claims. *Ross v. Bernhard*, 396 U.S. 531, 537-38 (1970). That is not the case, however. Here, the question is whether this Court ruling on an equitable claim *only* would violate Nagy's Seventh Amendment rights in a later-in-time legal

1 action proceeding in a different Court. That question was never before the court in *Nordbrock*, and is not controlled by *Nordbrock*'s holding.[2]

Interestingly, the *Nordbrock* ruling cited by Nagy was the second appeal in the case to reach the Ninth Circuit. In the first appeal (*Nordbrock (I)*), the equitable and legal actions were not consolidated, and two different District Court judges issued rulings on the government's and Nordbrock's claims. *United States v. Nordbrock*, 828 F.2d 1401, 1403 (9th Cir. 1987). The equitable proceeding occurred first in time, and District Court Judge Browning granted summary judgment to the government. *Id.* Then, for reasons of collateral estoppel, District Court Judge Broomfield found the grant of summary judgment in the equitable suit had preclusive effect in the legal proceeding and granted summary judgment on that basis. *Id.* The decisions were reversed, because the grant of summary judgment in the equitable proceeding was found to be erroneous. *Id.* at 1404. Significantly, however, there was not the slightest hint from the Ninth Circuit that there was anything improper from a Seventh Amendment standpoint in Judge Broomfield granting preclusive effect in the legal proceeding to an earlier, equitable decision that concerned common issues that would have been sent to a jury in the legal proceeding. *Id.* at 1403-04. Presumably, had the grant of summary judgment by the judge in the equitable proceeding been found proper, so too would the use of collateral estoppel by the judge in the legal proceeding have been proper.

It is the first *Nordbrock* appeal that bears closer resemblance to this case, and the Ninth Circuit's silence on the Seventh Amendment question strongly suggests that the Seventh Amendment wasn't implicated by collateral estoppel in the context of parallel but separate legal and equitable proceedings.

---

[2] The decision in *Nordbrock (II)* has also been criticized for failing to distinguish between consolidated and joined claims. *Newfound Mgmt. Corp. v. Lewis*, 131 F.3d 108, 117 (3rd Cir. 1997). In *Johnson v. Manhattan Ry. Co.*, the United States Supreme Court explained that consolidation is permitted as a matter of convenience, but it "does not merge the [consolidated] suits into a single cause or change the rights of the parties." 289 U.S. 479, 496-97 (1933). *Nordbrock (II)* did not cite *Johnson*. *Newfound Mgmt.*, 131 F.3d at 117.

-8-

### *3. Even if Nagy's Seventh Amendment rights were implicated by this action, there are countervailing equitable factors that would outweigh his jury right.*

The Seventh Amendment right to a jury trial, like most constitutional rights, is not absolute. *See Parklane Hosiery*, 439 U.S. at 336 (Seventh Amendment not rigid). Instead, the Seventh Amendment preserves the right to jury trial as it existed in 1791 at common law, where it was not an absolute right, but a right qualified by the usages of equity. *See In re Tureaud*, 70 B.R. 818, 819 (Bankr. N.D.Okla. 1987)("In that sense, the Seventh Amendment constitutionalizes not only the legal right to have a jury trial, but the equitable right to dispense with jury trial." and quoting 27 AM.JUR.2d "Equity" § 6 p. 525 for proposition that "the right to have equity controversies dealt with by equitable methods is as sacred as the right of trial by jury.").

Similarly, even *Beacon Theatres* recognized that:

> If there should be cases where the availability of declaratory judgment or joinder in one suit of legal and equitable cause would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first.

359 U.S. at 510.

The United States Supreme Court considered the reach of the Seventh Amendment right to a jury trial again in *Katchen v. Landy*, 382 U.S. 323 (1966). That case, arising under Bankruptcy law, considered whether a bankruptcy judge could, consistent with the Seventh Amendment, summarily order the surrender of voidable preferences asserted by the trustee in response to a claim filed by the creditor receiving the preference, even though the creditor would have a right to a trial by jury if the issue of preferences was first raised by the trustee in a plenary proceeding. 382 U.S. at 325, 328. The Supreme Court held that it did not violate the Seventh Amendment for the bankruptcy judge to summarily order the return of preferences asserted in response to a creditor's claim, noting that the delay and expense entailed in having a jury trial "in every case where a s 57, sub. g objection is interposed... is not consistent with the equitable purposes of the Bankruptcy Act, nor with the rule of Beacon Theatres and Dairy Queen, which is itself an equitable doctrine." *Id.* at 339. The Court continued:

-9-

> In neither Beacon Theatres nor Dairy Queen was there involved a specific statutory scheme contemplating the prompt trial of a disputed claim without the intervention of a jury. We think Congress intended the trustee's s 57, sub. g objection to be summarily determined, and to say that... [the trustee] is not entitled to have his statutory objection to the claim tried in the bankruptcy court in the normal manner *is to dismember a scheme which Congress has prescribed...*
>
> Both Beacon Theatres and Dairy Queen recognize that there might be situations in which the Court could proceed to resolve the equitable claim first even though the results might be dispositive of the issues involved in the legal claim...

*Id.* at 339-40 (emphasis added).

The instant case is a suit for injunctive relief authorized by sections 7402 and 7408 of the Internal Revenue Code. This equitable cause of action is rooted in a statute passed by Congress because the ability to seek injunctive relief against the promoters of fraudulent tax schemes was deemed necessary by Congress to prevent interference with the administration of the Internal Revenue laws. As in *Katchen v. Landy*, 26 U.S.C. § 7408 is part of a statutory scheme that would be eviscerated by Nagy's broad and absolute view of the Seventh Amendment. As in *Parklane Hosiery*, 26 U.S.C. § 7408 is a law enforcement statute through which Congress intended "prompt enforcement actions by the [Justice Department] unhindered by parallel private actions." *Parklane Hosiery*, 439 U.S. at 337, n. 24. While the Seventh Amendment right to a jury trial is a cornerstone of the American juridical tradition, it has never been so absolute as to command the suspension of law enforcement actions specifically authorized by statute simply because an incidental effect of those law enforcement actions is that certain issues of fact otherwise tried by jury may be conclusively determined by a court acting on an equitable claim.

If Nagy's view of the law were correct, the government would essentially have to choose between assessing penalties (and running the risk of having any action for injunctive relief stayed pending the outcome of a later refund suit) or seeking an injunction (and forgoing penalties). In either case, the intent of Congress to provide the government with an array of tools to ensure compliance with the Internal Revenue laws would be stymied. The Seventh Amendment does not

-10-

command a result so at odds with the intentions of Congress and so damaging to the equitable goals of the statutes providing the government's cause of action in this case.

Furthermore, the United States will suffer irreparable harm from any stay entered in this action. The United States has alleged that the promotional activities of the defendants in regards to the fraudulent 90% loan program continue to the present. The United States is seeking the equitable remedy of an injunction precisely because it is suffering ongoing and continuing harm, in the form of losses to the Treasury, the waste of scarce resources of the Internal Revenue Service, and diminished confidence in the Internal Revenue System. The Seventh Amendment right to a jury trial is inherently limited by considerations of equity, and here, the irreparable harm to the United States caused by a stay outweighs Nagy's interest in having common issues of facts submitted to a South Carolina jury.

For this reason, *CMAX, Inc. v. Hall*, cited by Nagy, is easily distinguished from the instant case. While the Ninth Circuit declined to find a District Court judge's granting of a stay in *CMAX* to be an abuse of discretion, it emphasized that it might have reached the opposite conclusion if CMAX had "made a strong showing in support of its assertion that it [would] suffer irreparable damage and a miscarriage of justice" as a result of the stay. *CMAX*, 300 F.2d at 268. Only because CMAX was seeking monetary damages alone and therefore had not made such a showing was the stay found to be appropriate. *Id.* at 268-69. In fact, the Ninth Circuit quoted the following admonition from the United States Supreme Court:

> [T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.

*Id.* (citing *Landis*, 299 U.S. at 255).

Nagy responds that "certainly the violation of a constitutional right qualifies as hardship or inequity sufficient to overcome any adverse affects of a stay on the United States." Nagy Memorandum, p. 8. That argument, however, assumes its premise - it presupposes that allowing the government's injunctive action to move forward implicates Nagy's Seventh Amendment rights in the first place. As noted above, the

-11-

Seventh Amendment is not absolute - if the United States is able to demonstrate irreparable harm resulting from granting a stay in these circumstances, then the denial of a jury determination on Nagy's liability for § 6700 penalties in the refund action is neither a constitutional violation nor a hardship or inequity sufficient to overcome the adverse effects of the stay on the United States.

Finally, Nagy's suggestion that the *Beacon Theatres* rule should "also apply to the present situation where the legal and equitable claims happen to be in contemporaneous parallel actions" creates unique equitable hazards, which undoubtedly explains, at least in part, why the United States Supreme Court rejected the identical argument in *Parklane Hosiery*. Nagy Memorandum, p. 6.

First, contrary to Nagy's assertion, the actions at issue are not truly contemporaneous. This equitable action for injunctive relief was filed over one year ago. Discovery is currently scheduled to be concluded next month, and the case is set for trial on March 23, 2009. By contrast, the government has not yet even filed an answer in Nagy's South Carolina refund action. Prejudice to an equitable claimant in a *Beacon Theatres* situation where equitable and legal claims are joined in the same action is minimized by the fact that the claims are truly contemporaneous, and allowing the legal claims to be tried by jury first does not require discovery and prosecution of the equitable claim to come grinding to an abrupt halt. Nagy ignores this important distinction.

Second, unlike a *Beacon Theatres* situation where equitable and legal claims are joined in the same action, here the equitable and legal claims are not even being heard in the same Court. Nagy's motion to stay rests on this Court's inherent power to control its *own* docket. This Court has no control over the docket of the District Court in South Carolina. While the government does not deny that this Court has the discretion to stay cases pending on its docket, to argue that it is compelled by the Seventh Amendment to do so, when a stay would allow this Court's docket to be

-12-

1 dictated by the pace of a proceeding in another court over which this Court has no
2 control is to enter waters never charted by the Supreme Court, and vastly beyond the
3 scope of the holding in *Beacon Theatres*. It also turns the entire concept of "inherent
4 power" over the Court's docket on its head, by making this Court's ability to proceed
5 with pending cases hinge on the progress of another court, greatly diminishing this
6 Court's ability to dispense equity when required.

7 Thus, even if this Court's decision were not controlled by *Parklane Hosiery*,
8 principles of equity would lead to the same conclusion - in the face of irreparable
9 harm to the United States, and a statutory scheme from Congress demanding prompt
10 enforcement action by the government, the Seventh Amendment does not require a
11 first-filed equitable action to be stayed in favor of a later-filed legal action in a
12 different Court.

13 **II.    Nagy's Motion in the Alternative to Sever and Transfer**

14 Nagy moves in the alternative to sever all claims against him and transfer those
15 claims alone to the District of South Carolina, in anticipation of consolidation of those
16 claims with his penalty refund suit. Nagy Memorandum, p. 8.

17 Nagy has made this motion previously, and while he is correct that the motion
18 was denied without prejudice to refiling, he mischaracterizes the nature of the Court's
19 order by stating that the motion was denied without prejudice "primarily due to the
20 fact that Mr. Nagy had not yet filed the refund action." Nagy Memorandum, p.1. In
21 fact, the Court's order makes clear that the motion was denied primarily because Nagy
22 was not a peripherally involved defendant and severing the claims against Nagy to
23 facilitate transfer of those claims alone to South Carolina would constitute an
24 impermissible partial transfer unauthorized by 28 U.S.C. § 1404. (Docket No. 81,
25 Order denying Motion to Sever and Transfer, ¶¶ 1-2.)

26 Moreover, while Nagy's filing of his penalty refund suit in South Carolina is
27 undoubtedly a changed circumstance, it does not have any impact on the Court's

28                                                    -13-

1  reasoning in denying Nagy's motion to sever and transfer. Severing all claims against
2  Nagy and transferring those claims alone to South Carolina would still constitute, in
3  essence, an impermissible partial transfer, just as much as when the Court first denied
4  his motion.

5  Nagy's only argument against this conclusion is that a severance and transfer
6  is now necessary to preserve Nagy's Seventh Amendment rights without delaying this
7  proceeding through a stay. Nagy Memorandum, p. 10. In other words, his arguments
8  in favor of severance and transfer are predicated on the same assumptions as his
9  motion to stay. Nagy's motion fails as a motion in the alternative because if the Court
10 finds that Nagy's Seventh Amendment rights are not implicated by this action
11 proceeding in parallel with his penalty refund suit in South Carolina, and therefore
12 there is no need to stay the injunction suit, then the Court will necessarily find that
13 Nagy has not presented any argument in favor of severance and transfer beyond those
14 already rejected by the Court in its June 27, 2008 order. Since those arguments were
15 already adequately briefed in the government's response to that motion (Docket
16 No. 70), the government will not rehash those arguments here.

**Conclusion**

The United States respectfully requests that the Court deny the Motion of defendant Robert Nagy to stay the proceedings and Nagy's motion in the alternative to sever all claims and transfer venue pursuant to 28 U.S.C. § 1404(a).

Dated: August 20, 2008

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

/s/ Frederick N. Noyes
FREDERICK N. NOYES
ALLYSON B. BAKER
Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-3083
Email: Frederick.N.Noyes@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2008, I electronically filed the foregoing motion, memorandum in support of the foregoing motion, and notice of motion with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Farley J. Neuman (fneuman@jgn.com)
Tom Prountzos (tprountzos@jgn.com)
Jenkins Goodman Neuman & Hamilton LLP
417 Montgomery Street, 10th Floor
San Francisco, CA 94104
Attorneys for Defendant, Robert Nagy

David Bujannoff Porter, Jr. (porter@woodporter.com)
Wood & Porter
333 Sacramento Street
San Francisco, CA 94111
Attorney for Scott Cathcart

Eric Webb (ewebb@elwlaw.com)
Bartsch & Webb
9157 West Sunset Boulevard, Suite 310
Los Angeles, CA 90069
*Attorney for Charles Cathcart*

Edward O.C. Ord (ordeoc@sbcglobal.net)
Ord & Norman
233 Sansome Street, Suite 1111
San Francisco, CA 94104
*Attorney for Charles Hsin and Optech Limited*

I further certify that on August 20, 2008, service of the foregoing was made upon the following by depositing a copy in the United States mail, postage prepaid:

Yuri Debevc (*pro se*)
1483 Burningtree Road
Charleston, SC 29412

/s/ Frederick N. Noyes
FREDERICK N. NOYES