1 zFARLEY J. NEUMAN, ESQUIRE - State Bar #100021
  TOM PROUNTZOS, ESQUIRE - State Bar #209409
2 JENKINS GOODMAN NEUMAN & HAMILTON LLP
  417 Montgomery Street, 10th Floor
3 San Francisco, California 94104
  Telephone: (415) 705-0400
4 Facsimile: (415) 705-0411

5 Attorneys for ROBERT J. NAGY

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11

12 UNITED STATES OF AMERICA,

13                          Plaintiff,        Case No. C-07-4762-PJH

14 vs.                                        **ROBERT J. NAGY'S REPLY TO
                                              UNITED STATES' OPPOSITION TO
15 CHARLES CATHCART, et al.,                  HIS MOTION TO STAY THE
                                              PROCEEDINGS OR IN THE
16                          Defendants.       ALTERNATIVE TO SEVER ALL
                                              CLAIMS AND TRANSFER VENUE
17                                            PURSUANT TO 28 U.S.C. 1404(a)**

18                                            Date:   September 10, 2008
                                             Time:   9:00 a.m.
19                                            Dept.:  Room 3, 17th Floor

20                                            Trial:  March 23, 2009

21

22

23

24

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.    25
10th Floor
San Francisco, CA
94104
(415) 705-0400         26

ROBERT J. NAGY'S REPLY TO THE UNITED STATES' OPPOSITION

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ............................................................................... 1

II.   PURSUANT TO BEACON THEATRES MR. NAGY'S SEVENTH
      AMENDMENT RIGHT TO A JURY TRIAL IS THE CENTRAL
      ISSUE BEFORE THE COURT AND IT IS NECESSARY TO STAY THE
      PROCEEDINGS TO PRESERVE IT ........................................................... 1

      A.   Beacon Theatres Controls the Present Circumstances ...................... 1

      B.   Beacon Theatres Controls the Present Circumstances Regardless
           of the Existence of Two Distinct Actions ......................................... 6

           1.   Beacon Theatres controls under the present
                circumstances in order to prevent an anomalous and
                unfair result pursuant to Lytle ............................................. 6

           2.   Other cases cited by the United States do not
                support the application of Parklane to the circumstances
                of the present case ........................................................... 8

III.  THERE ARE NO COUNTERVAILING EQUITIES THAT
      OUTWEIGH MR. NAGY'S CONSTITUTIONAL RIGHT
      TO A JURY TRIAL ............................................................................ 10

      A.   Katchen v. Landy is Inapposite to the Present Circumstances ......... 11

      B.   The United States Has Not Shown Irreparable Harm And Also
           Confuses The Relevance Of Irreparable Harm Under Beacon
           Theatres With The Standard For Granting A Stay ......................... 12

      C.   There Are No Additional Hazards Created By Applying Beacon
           Theatres To The Present Case That Outweigh Mr. Nagy's Seventh
           Amendment Right ............................................................................ 14

IV.   THIS COURT HAS THE AUTHORITY PURSUANT TO F.R.C.P. 21
      TO SEVER ALL CLAIMS AGAINST MR. NAGY AND TO TRANSFER
      THOSE CLAIMS TO THE DISTRICT OF SOUTH CAROLINA
      PURSUANT TO 28 U.S.A., 1404(a) ...................................................... 14

V.    CONCLUSION ................................................................................ 15

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                         <u>PAGE</u>

*Beacon Theatres, Inc. v. Westover (1959)*
    359 U.S. 500  ............................................................................ 1-7, 10-13

*Benjamin v. Traffic Executive Association Eastern Railroads*
    869 F2d 107 (2nd Cir.1898)............................................................ 8-9

*CMAX, Inc. v. Hall*
    300 F.2d 265, 268 (9th Cir. 1962) ............................................... 13-14

*Dairy Queen, Inc. v. Wood*
    369 U.S. 469, 470 (1962).................................................................... 4

*Katchen v. Landy ("Katchen")*
    382 U.S. 323, 325 (1966) .............................................................. 11-12

*Lytle v. Household Manufacturing, Inc. (1990)*
    494 U.S. 545, 555-6 ......................................................................... 6-8

*Parklane Hosiery Co. v. Shore ("Parklane")*
    439 U.S. 324  ................................................................................ 1-8, 10

*Perkins v. Spivey*
    911 F.2d 22 (8th Cir.1990) ............................................................. 9-10

*Ross v. Bernard*
    Id. at 532-33, 542 ................................................................................ 8

*Temple of the Lost Sheep, Inc. v. Abrams*
    930 F.2d 178, 185 (2nd Cir.1991)....................................................... 9


<u>STATUTES</u>

15 U.S.C. 78u(g)      ...........................................................................5
26 U.S.C. 6700 ...................................................................................1
359 U.S. 500, 502 (1959).....................................................................2
396 U.S. 531 (1970) ...........................................................................8
439 U.S. 322, 324 (1979)......................................................................2
494 U.S. 545, 547-49 (1990) ...............................................................6

f:\docs\fjn\u.s. v. nagy\motions\motion to stay the proceedings or sever & transfer\table of authorities.contents.2.doc

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

# I. INTRODUCTION

In its Opposition the United States overlooks several key facts that implicate Mr. Nagy's Seventh Amendment right to a jury trial and warrant a stay of the proceedings to preserve that right. The United States continues to ignore the fact that *it caused the present predicament* insofar as the Internal Revenue Service first directed the Attorney General to initiate the present action and then for months delayed assessing penalties against Mr. Nagy for the same conduct, and then also delayed acting on Mr. Nagy's refund requests. The United States, moreover, is involved in both the injunction and refund actions because *the parties to both actions are identical*. Additionally, there has been *no final adjudication* of the present action. Mr. Nagy *has acted to preserve his right to a jury trial* by bringing this Motion as soon as possible after filing his refund litigation. Furthermore, the position advocated by the United States would allow it to *systematically circumvent the Seventh Amendment* by filing an equitable action first and delaying the grounds for a legal action. These circumstances call for application of *Beacon Theatres* and a stay of the proceedings or, in the alternative, severing and transferring all claims against Mr. Nagy to the District of South Carolina.

## II. PURSUANT TO *BEACON THEATRES* MR. NAGY'S SEVENTH AMENDMENT RIGHT TO A JURY TRIAL IS THE CENTRAL ISSUE BEFORE THE COURT AND IT IS NECESSARY TO STAY THE PROCEEDINGS TO PRESERVE IT

### A. *Beacon Theatres* Controls the Present Circumstances

The United States argues that Mr. Nagy's Seventh Amendment right to a jury trial on the issue of whether his alleged conduct violated 26. U.S.C. 6700 is not implicated by its dual attack on him pursuant to *Parklane Hosiery Co. v. Shore* ("*Parklane*"). It ignores the clear distinctions between that case and the present matter, as well as the similarities between the present matter and *Beacon Theatres, Inc. v. Westover* ("*Beacon Theatres*"). The present case is in fact more like *Beacon Theatres* than it is like *Parklane*, and the former controls whether through direct application or through extension.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-1-

1   In *Parklane* a group of shareholders brought a class action against the petitioner

2   based a materially false proxy statement. 439 U.S. 322, 324 (1979). In a separate action

3   the Securities and Exchange Commission ("SEC") requested injunctive relief against

4   Parklane based on the same proxy statement. *Id.* The SEC action was adjudicated first,

5   with the court finding that the proxy statement was materially false and issuing the

6   injunction. *Id.* at 325. Subsequently plaintiffs in the class action moved for partial

7   summary judgment, arguing that Parklane was collaterally estopped from relitigating the

8   issue of whether the proxy statement was materially false. *Id.*

9   Parklane argued that its Seventh Amendment right to a jury trial would be violated

10  if it were collaterally estopped from litigating this issue in the class action. *Id.* at 335. It

11  argued that it could not have been collaterally estopped in 1791, when the Seventh

12  Amendment was adopted, and therefore that collaterally estopping it would violate its right

13  to a jury trial as it existed at the time of the adoption of that right. *Id.* The Supreme Court

14  reasoned, however, that the Seventh Amendment was not intended to arrest all subsequent

15  procedural developments. *Id.* at 336. It held that application of collateral estoppel in that

16  case was "not repugnant to the Seventh Amendment simply for the reason that [non-

17  mutual collateral estoppel] did not exist in 1791." *Id.* at 337.

18  In *Beacon Theatres* a movie theater owner (Fox) sued a competitor (Beacon

19  Theatres) seeking a declaration that its agreements with distributors for exclusive rights to

20  first-run movies did not violate antitrust laws and an injunction against Beacon Theatres.

21  359 U.S. 500, 502 (1959). Beacon Theatres counter-claimed against Fox seeking treble

22  damages for antitrust violations and demanding a jury trial. *Id.* at 503. The district court

23  ordered that the issues in the original complaint be tried to it before a jury determination of

24  the counterclaims. *Id.* at 503-504. But there were common issues amongst the various

25  claims. *Id.* at 504. Beacon Theatres therefore sought a mandamus to require the district

26  court to grant its request for a jury trial on Seventh Amendment grounds. *Id.* at 501.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-2-

ROBERT J. NAGY'S REPLY TO THE UNITED STATES' OPPOSITION

1    The Supreme Court reasoned that a determination by the district court of the

2   common issues could operate by way of collateral estoppel or *res judicata* to prevent a jury

3   determination of those issues. *Id.* at 504. It ruled that such a result was impermissible

4   under the Seventh Amendment. *Id.* at 508-510. In doing so it held open the possibility

5   that there may be a circumstance where equitable and legal claims clash such that trying

6   the legal issue to a jury first may irreparably harm the party seeking equitable relief, and

7   trying the equitable issue to the court first would deprive the party seeking relief at law of

8   its right to a jury trial. *Id.* at 510. In such a case the Court did *not* say the say the equitable

9   issue should typically be tried to the court first. *Id.* Rather, the Court stated that the trial

10  court will have to use its discretion to decide which issue to try first in such a case. *Id.* It

11  further stated, however, that because the right to a jury trial is a *constitutional* right,

12  whereas trial by the court is not, "that discretion is *very narrowly limited and must,*

13  *wherever possible, be exercised to preserve jury trial*." *Id.* (emphasis added).

14    *Parklane* involved three distinct parties: the shareholders, Parklane, and the SEC.

15  *Beacon Theatres* involved the same two parties with respect to both the legal and equitable

16  actions. Like *Beacon Theatres*, the present circumstances involve the same two parties,

17  Mr. Nagy and the United States, in both the injunction and the refund actions. Therefore,

18  there is no basis for granting the injunction action priority over the refund action based on

19  the identities of the parties and to the extent *Parklane* may suggest that a public action

20  takes precedence over a parallel private action, such a justification does not exist in the

21  present circumstances.

22    Furthermore, the United States' conduct guaranteed that Mr. Nagy could not bring

23  an action at law against it until almost a year after the present case was initiated. The IRS

24  initiated the present injunction action by requesting the Attorney General to file suit.

25  United States's First Amended Complaint ("Complaint"), Dkt. 57, ¶4. It then postponed

26  bringing the penalty assessments against Mr. Nagy for months until after he had answered

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-3-

1  the Complaint and assented in good faith to this Court's jurisdiction. Mr. Nagy was then

2  forced to wait several more months while the IRS delayed acting on his requests for refund

3  in connection with the penalty assessments. From the time the Complaint was filed until

4  Mr. Nagy could file a claim at law for refund and abatement of the penalty assessments ten

5  months – almost a full year – passed. *See* Complaint of Robert J. Nagy, Exhibit 2. The

6  United States held all the procedural cards; it should not be reward for its procedural

7  gamesmanship by denying Mr. Nagy his constitutional right to a jury trial.

8       Another similarity between *Beacon Theatres* and the present situation is that the

9  petitioner in that case attempted to preserve its right to a jury trial prior to the resolution of

10 the equitable claim. *Beacon Theatres, Inc. v. Westover, supra*, 359 U.S. at 501. This is

11 unlike *Parklane* where the petitioner waited until after final adjudication of the equitable

12 claim before raising the issue of its Seventh Amendment right to a jury trial. *Parklane*

13 *Hosiery Co., Inc. v. Shore, supra*, 439 U.S. at 324. In *Dairy Queen*, another case where

14 the district court struck a demand for jury trial by ruling the entire action was purely

15 equitable or alternatively characterizing the legal claims as merely incidental, the petitioner

16 also sought to preserve its right to a jury trial. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469,

17 470 (1962). The Supreme Court held that the case involved legal claims. *Id.* at 476-77,

18 479. It also held that the Seventh Amendment could not be circumvented by

19 characterizing legal claims as "incidental" to equitable ones. *Id.* at 470-73. Both *Beacon*

20 *Theatres* and *Dairy Queen* involve situations where in the course of the proceedings the

21 parties took steps to preserve their Seventh Amendment right to jury trials. In the present

22 case as well, Mr. Nagy is attempting to preserve his right to a jury trial. Mr. Nagy has not

23 waited for the completion of the injunction action to raise the issue of the preservation of

24 his right to a jury trial, unlike the parties in *Parklane* and other cases cited by the United

25 States where the non-jury adjudication of an issue was already complete when each party

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

26

-4-

1   first raised an argument that it had been denied its right to a jury trial.[1]

2           The United States disingenuously argues that the Supreme Court in *Parklane*

3   addressed the precise issue before this Court and rejected the possibility of staying an

4   injunction action to preserve a party's right to a jury trial in a separate legal action.  United

5   States' Response in Opposition ("Opposition"), Dkt. 98, at 5.  The United States cites to

6   footnote twenty-four, which states that Parklane was not entitled to stay the SEC action

7   and that the Securities and Exchange Act provides for prompt enforcement by the SEC

8   without interference by parallel private actions.  *Parklane Hosiery Co, Inc. v. Shore, supra*,

9   at 337, n. 24.  In support of its assessment, the Supreme Court cites to 15 U.S.C. 78u(g).

10  *Id.*  This Code section states that no action for equitable relief instituted by the SEC shall

11  be consolidated or coordinated with any other action not brought by the SEC,

12  notwithstanding the existence of common questions of fact, without the consent of the

13  SEC.  15 U.S.C. 78u(g).  The United States has identified no comparable section of the

14  Internal Revenue Code ("IRC") that is applicable here.  Furthermore, this issue was not

15  before the Court in *Parklane* and was apparently neither briefed nor argued.  The lack of

16  full argument on and consideration of this issue leaves it undecided whether a statutory

17  restriction on consolidation and coordination precludes the possibility of staying an action

18  on constitutional grounds.  Regardless, the lack of comparable IRC section makes this

19  statement inapplicable to the present situation.  Furthermore, the present case does not

20  involve a "parallel private action."  Unlike the SEC in *Parklane*, the United States is a

21  party to both the injunction and the refund actions and will participate in the resolution of

22  the common questions in the refund action as well.  In the present case staying the

23  injunction action will not deprive the United States of its role in the litigation, unlike in

24  *Parklane* where staying the SEC action would have resulted in the common question being

25  determined in the private class action.  Thus the fact that the United States is a party to

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

26  _____

[1] See section B(2) below.

-5-

1   both actions is a relevant distinction between the present case and *Parklane* that makes the

2   latter inapplicable to the former.

3       **B. *Beacon Theatres* Controls the Present Circumstances Regardless of the**
        **Existence of Two Distinct Actions**

4

5       The single similarity the United States points out between the instant matter and

6   *Parklane* is that *Parklane* involved separate law suits and the present injunction and refund

7   claims are also in separate actions.  Opposition at 6.  The United States argues that legal

    and equitable claims must be joined in one action for *Beacon Theatres* to apply.  *Id.*  The

8   corollary is that where there are separate equitable and legal actions involving a common

9   party, *Parklane* applies and that party's right to a jury trial cannot be violated if the

10  equitable action is adjudicated first.  Pursuant to *Lytle v. Household Manufacturing*,

11  however, *Beacon Theatres* is not so limited and *Parklane* is not so broad.  *See* section B(1)

12  *infra*.  Rather, *Beacon Theatres* may apply where equitable and legal claims are in separate

13  actions if rigid application of *Parklane* would produce an anomalous and unfair result.  *Id*.

14  Further, other cases the United States cites (none of which are from the Ninth Circuit) do

15  not support its argument that *Parklane* applies to the present circumstances.

16

17      **1. *Beacon Theatres* controls under the present circumstances in order to**
        **prevent an anomalous and unfair result pursuant to *Lytle***

18      In *Lytle v. Household Manufacturing, Inc.* ("*Lytle*") the Supreme Court addressed

19  the question of whether *Beacon Theatres* or *Parklane* applies to a situation where an action

20  involved both legal and equitable claims, but the legal claims were dismissed and the

21  equitable claims were thereafter decided by the court.  494 U.S. 545, 547-49 (1990).  The

22  Court of Appeals noted that the dismissal of the legal claims was erroneous, but

23  nonetheless ruled that the plaintiff was collaterally estopped from relitigating those issues.

24  *Id*. at 549.  Before the Supreme Court, the defendant argued that *Parklane* applies because

25  the district court decided the common issues when there were no legal claims pending and

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-6-

1   if the erroneously dismissed legal claims were reinstated, at that point they would

2   constitute a separate action. *Id.* at 551. The Supreme Court rejects the argument that

3   *Parklane* should apply to this case, but it does not base its holding on the fact that the legal

4   and equitable claims were once joined. *Id.* at 551-52. It apparently does not even dispute

5   that reinstating the legal claims, without vacating the district court's decision as to the

6   equitable claims, would constitute a separate action. *See id.* Rather, the Court reasons that

7   it would be "anomalous" to prohibit a court from denying a party its right to a jury trial by

8   deciding an equitable claim before a legal claim and then applying collateral estoppel to

9   the legal claim, but to allow a denial of that right by erroneously dismissing all legal

10   claims and then deciding the equitable claims. *Id.* at 552. The Court further notes that in

11   the case before it such a result would be "particularly unfair" insofar as the plaintiff could

12   not have brought suit for his legal claims prior to the equitable claims because he was

13   required to join them in the same action. *Id.* Based on the anomalous and unfair result that

14   would obtain if *Parklane* applied, the Court declines to extend *Parklane* and finds that

15   *Beacon Theatres* controls. *Id.* at 552, 555.

16      *Lytle* demonstrates that *Beacon Theatres* is not narrowly limited to situations in

17   which equitable and legal claims are contemporaneously joined in one action. It also

18   demonstrates that *Parklane* does not rigidly apply to all situations in which legal and

19   equitable claims between the same parties are in distinct actions. Rather, *Beacon Theatres*

20   controls where the parties are the same and rigid application of *Parklane* would result in

21   unfairness insofar as the party with a legal claim was unable to bring it prior to the

22   equitable claim. As in *Lytle*, in the instant case the parties to the equitable and legal claims

23   are identical. Also as in *Lytle*, here Mr. Nagy was unable to bring his legal claim against

24   the United States prior to its equitable claim against him. United States forced Mr. Nagy

25   to wait ten months after it filed its Complaint before he could file his claims for refund. It

26   would be "particularly unfair" to Mr. Nagy to deprive him of his right to a jury trial when

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St
10th Floor
San Francisco, CA
94104
(415) 705-0400

-7-

1   the United States caused the legal claims to be filed after the equitable claims. *See*

2   Declaration of Robert J. Nagy, Exhibit 1, ¶¶4-6, 16; Complaint of Robert J. Nagy, Exhibit

3   2. Furthermore, whereas the result in *Lytle* would have been anomalous if *Parklane* had

4   applied, so too it would be anomalous to permit the United States to circumvent Mr.

5   Nagy's Seventh Amendment right to a jury trial simply by first filing an injunction action

6   and then postponing penalty assessments for the identical conduct so as to prevent Mr.

7   Nagy from filing a legal claim against the United States. The Supreme Court in *Lytle*

8   declined to extend *Parklane* where the result would be unfair and anomalous. The Court

9   in this case must also decline to extend *Parklane* and instead must find that *Beacon*

10  *Theatres* controls.

### 2. Other cases cited by the United States do not support the application of *Parklane* to the circumstances of the present case

11
12      The United States cites *Ross v. Bernard* to support its argument that *Beacon*

13  *Theatres* only applies where legal and equitable claims are joined in the same action and

14  that *Parklane* applies otherwise. 396 U.S. 531 (1970). That was not the issue before the

15  Court, however. Rather, *Ross* only holds that there is a right to a jury trial in a shareholder

16  derivative suit if the corporation suing in its own right would have been entitled to a jury

17  trial. *Id*. at 532-33, 542. This holding, moreover, does not depend in any way on the

18  proposition that *Beacon Theatres* applies only to joined legal and equitable claims.

19      The United States also cites *Benjamin v. Traffic Executive Association Eastern*

20  *Railroads*. 869 F.2d 107 (2nd Cir. 1989). That case takes place under the Staggers Act and

21  involves the issue of whether the plaintiffs were rate bureau employees. *Id*. at 109, 115.

22  The court rules that the plaintiffs' cause of action is purely statutory and, pursuant to the

23  statute, the issue of whether they qualify as rate bureau employees is to be determined by

24  an arbitration board. *Id*. As such, this is not a cause of action as to which the plaintiffs

25  have a Seventh Amendment right to a jury trial. *Id*. at 116. *Benjamin* is therefore wholly

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-8-

1   inapplicable to the instant matter.  Whereas in *Benjamin* the plaintiffs *never* had a right to a

2   jury trial, it is undisputed that Mr. Nagy has a right to a jury trial with respect to his claims

3   for refund.  The United States admits as much: "There is no question that if Nagy's legal

4   claim for a refund was joined in the same action as the government's equitable claim for

5   injunction, this Court would be obligated to provide a jury trial on all common issues

6   between the legal and equitable claims."  Opposition at 7.

7          The United States also cites *Temple of the Lost Sheep, Inc. v. Abrams,* in which the

8   court summarily cites to *Parklane* to support its conclusion that collateral estoppel does

9   not violate the appellant's Seventh Amendment right.  930 F.2d 178, 185 (2nd cir. 1991).

10  In reaching this conclusion the court does not rely on the fact that there were two separate

11  cases.  *See id.*  Rather, the court emphasizes that, not only did the appellant not take any

12  steps to preserve its right to a jury trial in the federal proceedings it initiated, but in

13  proceedings before a state court judge it affirmatively raised and tried issues common to

14  the federal proceedings.  *Id.* at 184-85.  In essence the court says the appellant waived its

15  right to a jury trial on those issues.  *See id.*  The court bolsters this conclusion with

16  reference to a New York state law that a party will be prevented from relitigating an issue

17  before a jury if it affirmatively sought a prior ruling on that issue in a non-jury tribunal.  *Id.*

18  at 185.  Unlike the appellant in *Temple of the Lost Sheep*, Mr. Nagy has not waived his

19  right to a jury trial and is taking steps to preserve his right to a jury trial on the issues

20  common to the injunction and refund actions.  As such, the instant case is distinguishable.

21         The final case the United States cites is *Perkins v. Spivey*.  911 F.2d 22 (8th Cir.

22  1990).  *Perkins* involves two actions between one plaintiff (Perkins) and two different

23  defendants (General Motors and Spivey), but no common claims between defendants.  *Id.*

24  at 26-27, 35.  The claims against GM were tried first at a bench trial resulting in favor of

25  GM.  *Id.* at 25.  In the subsequent action against Spivey summary judgment was granted in

26  his favor on the basis that Perkins was collaterally estopped from relitigating common

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St
10th Floor
San Francisco, CA
94104
(415) 705-0400

-9-

1  issues determined adversely to her in the GM action. *Id.* at 26. During the pendency of

2  both actions Perkins did not take steps to protect her right to a jury trial in the action

3  against Spivey. *See id.* at 34-35. Perkins did try to join the claims against Spivey with

4  those against GM, but she waited eighteen months after filing to attempt joinder and,

5  moreover, she admitted this was motivated by a last minute change in strategy, not to

6  protect her Seventh Amendment right. *Id.* at 34. Additionally, joinder was denied by the

7  trial court because the resulting delay would unduly prejudice both defendants and because

8  there would probably have to be two separate trials in any event as there were no claims

9  common to both defendants and two trials would be necessary to avoid prejudice and

10  confusion. *Id.* at 35. Based on these circumstances the court applied *Parklane* and held

11  that Perkin's right to a jury trial was not violated by application of collateral estoppel. *Id.*

12      Unlike Perkins, Mr. Nagy did not bring three lawsuits involving two different

13  defendants. The injunction and refund actions involve identical parties. Both actions were

14  instigated by the IRS, moreover. Also unlike Perkins, Mr. Nagy is acting presently to

15  preserve his right to a jury trial and he brought this Motion as soon as possible after he

16  filed the refund litigation in South Carolina. The only similarity between *Perkins* and the

17  instant matter is that they both involve separate equitable and legal actions. As we have

18  seen above, however, this alone is insufficient to warrant application of *Parklane* over

19  application of *Beacon Theatres* to the present circumstances.

20  **III. THERE ARE NO COUNTERVAILING EQUITIES THAT OUTWEIGH MR.
    NAGY'S CONSTITUTIONAL RIGHT TO A JURY TRIAL**

21

22      If in this case trying the legal claims to a jury before trying the equitable claims to

23  the Court will irreparably harm the United States, the Court must use its discretion to

24  determine which claims should be tried first. *Beacon Theatres, Inc. v. Westover, supra,*

25  359 U.S. at 510. The discretion of the court here, however, is "very narrowly limited and

26  must, wherever possible, be exercised to preserve jury trial." *Id.* In this case there is no

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-10-

1   principled reason for denying Mr. Nagy his Seventh Amendment right to a jury trial.

2       **A. *Katchen v. Landy* Is Inapposite to the Present Circumstances**

3       The United States attempts compare the present matter to *Katchen v. Landy*

4   ("*Katchen*") to argue that the mere presence of a Congressional scheme suffices to

5   overcome a litigant's Seventh Amendment right.  Opposition at 9-10.  Obviously the mere

6   fact that Congress passed a law does not make the law or its application in a particular

7   instance constitutional.  Regardless, *Katchen* is inapplicable to this case.

8       *Katchen* involved bankruptcy proceedings in which a creditor filed a claim against

9   the bankrupt and the bankruptcy trustee objected to the claim and sought from the creditor

10  surrender of voidable preferences.  382 U.S. 323, 325 (1966).  The court ruled in favor of

11  the trustee and ordered the preferences surrendered.  *Id.*  The creditor argued the court

12  violated his right to a jury trial on the issue of the preferences because to recover the

13  preferences the trustee would typically have to file a plenary action in which there is a

14  right to a jury trial.  *Id.* at 328.  In rejecting this argument, the Court notes that by making a

15  claim, the creditor subjected himself to all the consequences that attach to an appearance,

16  including adjudication of the preferences issue.  *Id.* at 335-36.  Furthermore, bankruptcy

17  proceedings convert legal claims into equitable claims.  *Id.* at 336.  Thus converted, there

18  simply is no right to a jury determination of the issue.  *Id.* at 337.  In *Katchen* there simply

19  *was no legal claim* after the creditor made his claim against the bankrupt.

20      The creditor also argued that the mere possibility there could have been a legal

21  claim, insofar as the preferences issue could have been tried in a plenary action, implicates

22  his Seventh Amendment right.  *Id.* at 338.  He argues that this possibility should require

23  the bankruptcy court to stay its proceedings and direct the trustee to commence a plenary

24  suit so as to preserve the creditor's right to a jury trial.  *Id.*  The Court also rejects this

25  argument, finding that it is beyond the purview of the Seventh Amendment to require an

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

26

-11-

ROBERT J. NAGY'S REPLY TO THE UNITED STATES' OPPOSITION

1  equity court to order the commencement of a proceeding not initiated by the parties. *Id.* at

2  339. It notes that *Beacon Theatres* does not require a court to order a new, legal action be

3  commenced so that an issue common to an equity action may be tried to a jury. *Id.* As

4  shown above, *Beacon Theatres* applies where both legal and equitable claims actually

5  *exist*. The rule suggested by the creditor would require a court to *create* a legal claim any

6  time the mere *possibility* exists. The Court rules that this finds no support in the Seventh

7  Amendment, *Beacon Theatres*, or the Bankruptcy Act. *Id.*

8       The instant matter does not involve a bankruptcy proceeding. There is no

9  conversion of legal claims into equitable claims. As the United States admits, moreover,

10  Mr. Nagy has an actual legal claim against it in his refund action. Opposition at 7. Unlike

11  the creditor in *Katchen*, Mr. Nagy does not argue that this court should order the creation

12  of a legal claim not otherwise instituted by one of the parties. Rather, Mr. Nagy argues

13  that he already has a legal claim in a separate action that he was forced by the conduct of

14  the United States to bring almost a year after it filed the injunction action and that based on

15  this the Court should stay the proceedings so that issues common to both actions may be

16  resolved by a jury in the refund action thereby preserving his Seventh Amendment right.

17  *Katchen* provides no guidance as to this argument and, therefore, is inapposite here.

18  **B. The United States Has Not Shown Irreparable Harm and Also Confuses the
19      Relevance of Irreparable Harm under *Beacon Theatres* with the Standard
        for Granting a Stay**

20       The United States claims that it will suffer irreparable harm if the proceedings are

21  stayed. *Id.* at 11. This is merely an allegation, however, that is not buttressed by any

22  evidence or declaration or offer of proof. *See id.* The Court should not countenance naked

23  allegations. Additionally, the harm alleged consists of monetary losses and "diminished

24  confidence in the Internal Revenue System." *Id.* Not withstanding that no irreparable

25  harm has been established, the United States may recover monetary losses through

26

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St.
10th Floor
San Francisco, CA
94104
(415) 705-0400

-12-

ROBERT J. NAGY'S REPLY TO THE UNITED STATES' OPPOSITION

1  taxpayer audits and penalty assessments, which it in fact has already attempted against Mr.

2  Nagy. It is doubtful, moreover, that diminished confidence is a cognizable harm.

3       Furthermore, for purposes of Seventh Amendment analysis, irreparable harm to the

4  party seeking equitable relief is only relevant insofar as it requires the court to use its "very

5  narrowly limited" discretion to decide whether the equitable or legal claim should be

6  decided first. *Beacon Theatres, Inc. v. Westover*, *supra*, 359 U.S. at 510. Even a showing

7  of irreparable harm, therefore, does not by itself defeat a party's right to a jury trial. *Id.*

8  Contrary to the United States' argument (Opposition at 11-12), under *Beacon Theatres* a

9  showing of irreparable harm is the beginning of the analysis of which claim should be tried

10  first, not the conclusion. *Id.*

11       In determining whether a stay should be granted, the Court must weigh the harm

12  that may result from a stay against the hardship and inequity that may result from denial of

13  a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). In other words, the

14  irreparable harm the United States alleges it will suffer must be weighed against the

15  hardship and inequity Mr. Nagy will suffer if deprived of his Seventh Amendment right to

16  a jury trial. The United States does not argue that irreparable harm to it outweighs the

17  hardship and inequity Mr. Nagy will suffer; nor does it cite to any authority for such a

18  conclusion. *See* Opposition at 11-12. Rather, it argues that "if" it can demonstrate

19  irreparable harm, then denying Mr. Nagy a jury trial is not a violation of the Seventh

20  Amendment. *Id.* at 12. A showing of irreparable harm in the Seventh Amendment context

21  only requires the court to use its discretion in deciding whether a legal or an equitable

22  claim must be tried first, however. *Beacon Theatres, Inc. v. Westover*, *supra*, 359 U.S. at

23  510. In the context of analyzing whether a stay should be granted, a showing of

24  irreparable must be weighed against the hardship and inequity that will be suffered if the

25  stay is not granted. *CMAX, Inc. v. Hall*, *supra*, 300 F.2d at 268. Again, this is something

26  the United States fails to do. *See* Opposition at 11-12.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St
10th Floor
San Francisco, CA
94104
(415) 705-0400

-13-

**C. There Are No Additional Hazards Created by Applying *Beacon Theatres* to the Present Case that Outweigh Mr. Nagy's Seventh Amendment Right**

The United States argues that staying the proceedings will cause discovery and prosecution of the equitable claim to stop and that it will therefore be prejudiced. *Id.* at 12. Aside from merely restating what constitutes a stay, this is simply an alternate formulation of the argument that the United States will suffer harm if the proceedings are stayed. *See id.* But the United States yet again fails to weigh this alleged harm against the hardship and inequity Mr. Nagy will suffer if his Seventh Amendment right is curtailed. *CMAX, Inc. v. Hall*, *supra*, 300 F.2d at 268.

The United States also argues that staying the proceedings pending resolution of the refund action is a perversion of this Court's power to grant a stay insofar as the stay would be dependent on proceedings in another court. Opposition at 13. In *CMAX, Inc. v. Hall* the Ninth Circuit Court of Appeals upheld a district court decision staying the proceedings before it pending resolution of an enforcement action before the Civil Aeronautics Board. *CMAX, Inc. v. Hall*, *supra*, 300 F.2d at 266-67. Pursuant to *CMAX*, therefore, staying proceedings pending the outcome of an action in another tribunal is permissible. Furthermore, this Court would retain control over the Order staying the proceedings and would be able to modify it as warranted by changing circumstances.

**IV. THIS COURT HAS THE AUTHORITY PURSUANT TO F.R.C.P. 21 TO SEVER ALL CLAIMS AGAINST MR. NAGY AND TO TRANSFER THOSE CLAIMS TO THE DISTRICT OF SOUTH CAROLINA PURSUANT TO 28 U.S.C. 1404(a)**

Pursuant to Federal Rule of Civil Procedure ("FRCP") 21, the Court may "sever any claim against a party." The statutory language is plain and broad on its face without any inherent limitations. Although courts in other Circuits may have read additional conditions into their ability to sever claims to effectuate transfer, no court in the Ninth Circuit has done so. This Court's ability to sever claims is thus unconstrained by precedent.

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St
10ᵗʰ Floor
San Francisco, CA
94104
(415) 705-0400

-14-

1    Furthermore, this case raises the issue of Mr. Nagy's Seventh Amendment right to a

2 jury trial.  This constitutional concern changes the calculus from the prior Motion to Sever

3 and Transfer Venue.  The United States admits that insofar as Mr. Nagy's Seventh

4 Amendment right to a jury trial is implicated by the parallel proceedings of equitable and

5 legal claims, and a stay is necessary to preserve that right, then severance and transfer of

6 all claims against Mr. Nagy may be proper.  Opposition at 14.  Paragraph three of the

7 Court's prior Order Denying Motions to Sever and Transfer, moreover, also suggests that

8 it would be proper to sever all claims and transfer them to South Carolina in lieu of staying

9 the proceedings now that Mr. Nagy has filed his refund action and his Seventh

10 Amendment right to a jury trial is implicated.  Severing all claims against Mr. Nagy and

11 transferring them to South Carolina will accomplish the dual goals of preserving Mr.

12 Nagy's Seventh Amendment right and allaying the United States' fears about harm it will

13 suffer if the proceedings are stayed.

14 **V. CONCLUSION**

15    For the foregoing reasons this Motion must be granted to preserve Mr. Nagy's

16 Seventh Amendment right to a jury trial.

17 DATED:  August 27, 2008             JENKINS GOODMAN NEUMAN
                                       & HAMILTON LLP
18

19

20                                     By: _____
                                       TOM PROUNTZOS
21                                     Attorneys for ROBERT J. NAGY

Jenkins Goodman
Neuman & Hamilton
LLP
417 Montgomery St
10th Floor
San Francisco, CA
94104
(415) 705-0400

-15-

ROBERT J. NAGY'S REPLY TO THE UNITED STATES' OPPOSITION