Steven Soulios, Esq.
Ruta & Soulios
1500 Broadway, 21st Floor
New York, NY 10036
Telephone: (212) 997-4500
Facsimile:   (212) 768-0649
Attorney for Debtor
Derivium Capital LLC

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re DERIVIUM CAPITAL LLC,           No. 05-37491 (CGM)

    Debtor,
_____/       DECLARATION OF EDWARD O.C. ORD IN OPPOSITION TO THE TRUSTEE'S MOTION TO CONVERT THE CHAPTER 11 PROCEEDING TO CHAPTER 7

1. I am Edward O.C. Ord, Esq. a lawyer duly admitted to the District of Columbia and the California State Bar.

2. Formerly, I spent many years as a trial attorney in the Tax Division of the U.S. Department of Justice in Washington, D.C. During those years, I represented the Internal Revenue Service ("IRS") in the Federal Courts in various parts of the United States and sometimes abroad. Subsequently, I was an Assistant U.S. Attorney for civil tax litigation. Attached is a partial list of some of the cases I have handled during my career while with the U.S. Department of Justice or subsequently in private practice.

3. I also have a Masters Degree in Taxation from New York University law school in New York, New York.

1

4. I have been representing the debtor prior to the Chapter 11 filing in the IRS investigation known as the Internal Revenue Code Section 6700 investigation.

5. The investigation has mainly been run out of the Sacramento, California office of the IRS. The investigation started when the Franchise Tax Board ("FTB") referred Debtor information and Debtor documents to the IRS.

6. The IRS took that information, including customer lists and appears to intend to assess and collect income taxes from borrowers who participated in borrowing under the 90% service marked loan transaction.

7. The 90% service marked loan transaction is very similar to a margin loan and collar-loan transactions provided by brokerage firms, and the related loan document is similar to collar-loan and margin-loan agreements used by the major brokerage houses on Wall Street. Basically, under such standard stock loan agreements, the borrower puts up publicly traded stock as security. Then, the borrower borrows a substantial amount of money based on the value of the stock at a rate of interest. Under the standard brokerage firm loan arrangement, the brokerage house is free to loan, hypothecate, pledge, transfer, or sell the publicly traded stock and to use the proceeds from such transactions for its (the brokerage firm's) own benefit. The loan agreement requires that when the loan term ends, after any extensions, and upon repayment of the loan balance, the brokerage house has to return to the borrower the collateral, which would be the same number of shares of the stock that were originally pledged by the borrower adjusted for stock splits or other distributions. This would be the normal settlement, unless the

2

borrower does not want the stock back and the loan is non-recourse to the borrower. Then, if the fair market value of the stock is less than the loan balance, the borrower may elect to surrender his claim to the stock. Since the loans are non-recourse, the liability of the borrower on his debt is limited to the value of the security. During the period of the loan, for book entry purposes, the stock is still treated as being owned by the borrower. Any dividends on the stock are treated as being owned by the borrower and are usually credited to his account in one way or another and/or used to offset interest.

8. The IRS for decades has recognized any margin loan transaction as a bona fide loan transaction and is not a sale in the year the loan is taken out, despite the fact that the secured shares may be sold or hypothecated or otherwise disposed of by the brokerage house during the loan term. Instead, the transaction is recognized for what it is, i.e., a loan transaction. At the end of the loan term, when the stock is required to be returned, if the stock has gone down in value below the amount of the loan, then a default on the loan would be treated as a sale or an exchange in that last year.

9. The IRS has issued Revenue Ruling 57-451, 1957-2 C.B. 295, which recognizes that the transfer of stock to a broker, giving the broker the ability to lend or engage in other transactions with the stock, does not constitute a disposition of the stock by the taxpayer. The Revenue Ruling concludes that even though all incidents of ownership (and not merely legal title) were transferred, as long as the broker satisfies the obligation to replace such certificates, ultimately restoring the stockholder to the same economic position he/she would have been in if the transaction had not taken place, a disposition will not have taken

place period. The transaction is within the scope of Internal Revenue Code §1036, which bars a sale. The IRS is estopped from taking positions contrary to positions in published revenue rulings. See for instance *Brooke v. U.S.*, 292 F.Supp. 571, (D.Mont. 1968), amended 300 F.Supp. 465, affirmed 468 F.2d 1155 (9th Cir. 1972). The above Revenue Ruling has been in place and operative for almost fifty years, and is relied upon by the brokerage industry.

10. Attached is a true and correct copy of one of the service marked loan transaction loan documents.

11. The IRS is now taking the position, including in the U.S. Tax Court against borrowers that, under this agreement or similar forms of this agreement, in the year that the loan is taken out there is a sale. Then, in the year that the stock is required to be returned that this is just an option for the borrower to reacquire the shares if he chooses. Besides being apparently inconsistent with the above stated Revenue Ruling, the IRS is really attempting to rewrite a bona fide loan agreement. This is going to prove difficult for the IRS to maintain in Federal Court. See for instance, *Stern v. Comm'r*, 747 F.2d 555, 558 (9th Cir. 1984)[written annuity contract cannot be rewritten by the IRS and must be recognized as such]. Moreover, as indicated above, the IRS for decades has agreed that these types of stock loan agreements are not a sale in the year that the loan is taken out.

12. In my opinion, I do not believe it will be likely that the IRS will prevail in the declaratory relief civil action that the Debtor is going to file under U.S.C. Section 505 to determine that this is a bona fide loan transaction and is not a sale transaction in the year of the loan with a right to reacquire the stock at the end of the loan term.

13. As the court can see, this is not a complicated transaction but a very straightforward situation that should be promptly determined.

14. Moreover, I believe that the IRS will have great difficulty in prevailing under their assertion that this type of transaction is even covered by Section 6700 at all. This is verified in part by the evidence provided below in paragraphs 20-26.

15. The undersigned asks the court to take judicial notice of a petition that has been filed in the U.S. District Court for the Southern District of New York seeking to enforce an administrative summons[1] against the Debtor.

16. This petition and declaration sets out the theories that the IRS is planning to advance in the Section 505 litigation. We believe that such theories are incorrect. The petition also discloses that these efforts would interfere with the Chapter 11 proceeding, including the effort to seek an injunction to terminate the operations of Derivium Capital, LLC.

17. Accordingly, I believe the court should not convert this matter to a Chapter 7 proceeding and allow the litigation to proceed and give the debtor an opportunity to demonstrate that this is a bona fide loan transaction, which is exempt from Section 6700.

18. Moreover, the filing and service of this Section 505 action transfers this matter from the jurisdiction of the IRS, which is part of the Treasury Department to the U.S. Department of Justice, Tax Division, which will then have the independent statutory authority to resolve this matter. I have a reasonable belief that there may be a way we can resolve this matter without litigation. I believe that a sophisticated independent

---

[1] A Notice of Related Case seeking to assign this matter to the Bankruptcy Court has been filed. Until the undersigned is hired by the Court, the LLC has no counsel who can respond to the show cause order or appear at the hearing so it appears that other due process and constitutional rights of the Debtor appear to be in jeopardy without a stay being granted.

review by the Justice Department may result in the Department of Justice agreeing that this is a bona fide loan transaction. With respect to the marketing of the transaction, we would look forward to working with the Department of Justice to arrive at an amicable written arrangement so that the debtor could start up a new loan operation with the support of a new lender with some reassurance that as long as the debtor stays within the parameters of an agreement that the operation could proceed. This would also give more comfort to the lender. I believe this is a currently viable option.

19. Since the Debtor is the target of this investigation and is in Chapter 11, it is only the Debtor that has standing to get prompt declaratory relief concerning the loan transaction.

20. There are other indications made by the IRS that indicate the current position is not valid.

21. On or about November 27, 2001, the IRS initiated a very detailed examination of the activities of the Debtor's via of an audit of the 1998 Form 1065 informational return filed by the Debtor with the IRS.

22. The IRS requested and received copies of the Form 1065 for the Debtor for the years 1999 and 2000. These returns and activities in the years 1999 and 2000 were also reviewed.

23. As part of the audit team, an IRS Financial Products Examiner Specialist was assigned to the audit. This Specialist spent at least 67 hours on this examination. The Financial Products Examiner Specialist expended these 67 hours by examining the loan transaction(s), the marketing of the loan transaction(s) and the Loan administration as well as the other financial services of the Debtor. This specialist is a highly trained agent with expertise in conducting Section 6700 tax shelter

infractions and an ability to spot abusive tax transactions and challenge them. The specialist did not instigate a 6700 investigation or challenge the transactions as other than bona fide loans.

24. After this extensive review, the IRS issued a final agency action stating that no changes were required. This final agency action was made under the Administrative Procedures Act, 5 U.S.C. §551(13), which includes taking a no-change action. The final agency action was based in part on an acceptance and final administrative determination that the marketing of the loan transaction was not an abusive transaction, that the loan transaction was a bona fide loan transaction, and that the Debtor was not marketing an abusive tax shelter under 26 U.S.C. §6700 or in violation of Section 6700. This final agency action[2] occurred on or about June 16, 2003.

25. Since the trained specialist spent 67 hours going over the loan transactions, the marketing of the transaction and the IRS closed the investigation with a no-change final agency action, this is a strong indication that the IRS will not prevail. The years covering the final agency action are the same years the IRS is now investigating under Section 6700.

26. A further indicia of the questionableness of the loan being a sale of stock in the year the loan is taken out is the summary judgment and related decision entered against the California Department of Corporations by the Superior Court in the State Capital of Sacramento. The California Department of Corporations sued the Debtor on the basis that the Debtor was engaging in securities transactions without a license from the State of California. A true and correct copy of the summary

---

[2] Each tax or calendar year is a separate cause of action. See *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948). These same years are involved in the current new section §6700 investigation as set out in the IRS Summons sought to be enforced.

1  judgment decision is attached as Exhibit A. It has been my experience that Superior Court Judges give great deference to State agencies in court proceedings. Even so, the Superior Court rejected the sale arguments. The Superior Court also sanctioned the California Department of Corporations. A true and correct copy of the sanction decision is attached as Exhibit B.

27. I believe the above are important facts and factors as to why this Court should not convert and allow the Debtor to litigate these matters promptly.

I declare under penalty of perjury under the U.S. Code that the foregoing is based on personal knowledge and is true and correct.

Executed this 2nd day of November, 2005, at San Francisco, California.

/s/ Edward O.C. Ord
Edward O.C. Ord

T:\Clients\6932\Pleadings\Decl Ord Oppos to Convert.doc