United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>     v.<br><br>CHARLES CATHCART, ET AL,<br><br>              Defendants.<br>_____/ | **No. C-07-4762 PJH  (JCS)**<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTIONS TO COMPEL DISCOVERY AND DOCUMENTS [Docket Nos. 145 & 158]** |

## I.     INTRODUCTION

Defendant Robert Nagy ("Defendant") has filed two motions related to discovery disputes in the above-entitled action. On November 20, 2008, Defendant filed a motion to compel Plaintiff United States ("Plaintiff") to respond to his First Set of Interrogatories numbers 2, 3, and 4 as well as his First Set of Requests for Production of Documents number 5 ("Def.'s Mtn. I"). On December 22, 2008, Defendant filed a motion to compel the depositions of Marie Allen, Ronald Cunningham, and Mary Socks ("Def.'s Mtn II"). Plaintiff opposes the motions. The District Court referred discovery matters in this case to this Court. On February 6, 2009, the Court held argument on the motions. The Court issued an oral ruling, which is now memorialized by this Order. Defendant's motions to compel are GRANTED IN PART AND DENIED IN PART. The Court concludes that, under Rule 26, a portion of the information sought may be relevant and should be produced at this time. If that discovery produces relevant results, Defendant may seek additional information on the responses. The Plaintiff is ordered to answer two questions listed below, and to produce Agent Socks for deposition.

1

## II. ANALYSIS

### A. Background

The present action was filed by the Plaintiff United States of America in 2007 alleging that Defendants are subject to penalty under Internal Revenue Code 26 U.S.C. §§ 6700 and 6701, and seeking an injunction pursuant to §§ 7402 and 7408 against Defendant Robert Nagy (hereafter "Defendant") and co-defendants Charles Cathcart and Derivium USA[1] based upon their alleged participation in a 90% stock loan program. Plaintiff alleges that the stock loan program is a tax-fraud scheme and that Defendant, a certified public accountant who performed accounting services for co-defendant Derivium, knew or should have known that his statements with respect to the securing of tax benefits by participating in the the stock loan program, were false or fraudulent. Complaint ¶¶ 31, 32, 89.

In August 2004, the IRS began investigating the program and its promoters in this case. According to the Plaintiff, IRS counsel was "directly involved at every stage of the § 6700 investigation." Plaintiff's Opp. at 1. According to Defendant, the IRS also began investigating and auditing certain taxpayers who were borrowers in Derivium's 90% stock loan program. Def.'s Opp. at 3. Plaintiff does not dispute this claim. According to Defendant, the IRS imposed penalties against some of these taxpayers due to understatement of income. *Id.* Thereafter, the penalties were abated for certain of the taxpayers. *Id.*[2]

Defendant Nagy now seeks discovery from Plaintiff regarding the conclusions of IRS personnel who participated in the 2001 audit and in the audits of borrower taxpayers who participated in the 90% stock loan program. Specifically, he seeks discovery related to the IRS agents' earlier conclusions that the loan program at issue in the present case was not an illegal tax shelter. He has propounded interrogatories that seek information about the taxpayers engaged in a 90% stock loan program administered by Derivium who were assessed penalties, and information

---

[1] Derivium Capital was formerly a defendant in this action, but has since agreed to a permanent injunction. Derivium Capital was a predecessor of Derivium USA. Both will be referred to hereafter as "Derivium."

[2] Previously, in 2001, the IRS conducted an audit of the 1998 tax returns of co-defendant Derivium Capital, one of the entities involved in the marketing and promoting the 90% loan program. *Id.*

2

1  regarding every taxpayer whose penalties were abated.[3] Declaration of Tom Prountzos in Support of
2  Defendant Robert Nagy's Motion to Compel Discovery Responses from Plaintiff United States, Exh.
3  A., at 4.  Defendant also requests documents related to IRS' counsel's approvals of the penalty
4  abatements identified in response to Interrogatory No. 4. *Id.,* Exh. B at 4.

5  Defendant notified Plaintiff that he intended to depose three Internal Revenue Service
6  ("IRS") employees, Marie Allen, Ronald Cunningham and Mary Socks.  These individuals were all
7  involved in the audits and investigations of the taxpayers who were involved in the loan program at
8  issue in this case.   Defendant's Motion to Compel Depositions ("Def.'s Mot. 2") at 1.

9  Plaintiff has refused to provide answers to Defendant's interrogatories, 2, 3 and 4, produce
10 documents in response to RFPD 5, and has indicated that it will refuse to produce Allen, Socks and
11 Cunningham for deposition on five principal grounds:  1) the information sought is not relevant to
12 Nagy's defense or any other issue in the case; 2) the request calls for information containing legal
13 conclusions as to an "ultimate fact" and therefore is not discoverable; 3) the information is protected
14 from disclosure under 26 U.S.C. § 6103; 4) the information constitutes work product[4]; and finally, 5)
15 it is protected from disclosure under the "deliberative process privilege."

16 Defendant argues that the requested discovery is highly relevant to his defense because of the
17 scienter requirements in the statutory penalty provisions at issue in the case against him. 26 U.S.C.
18 §§ 6700-6701.  Specifically, Plaintiff will be required to prove that Defendant "knew or reasonably
19 should have known" that the 90% stock loan program was fraudulent or an illegal tax shelter in

---

[3] **Interrogatory No. 2**: Identify every taxpayer in response to Interrogatory No. 1 who was assessed penalties resulting from the 90% loan transaction and provide the statutory basis for the assessment of penalties.
**Interrogatory No. 3:** For every taxpayer identified in response to Interrogatory No. 2, identify every taxpayer whose penalty assessments were abated and provide the statutory or regulatory provisions for abating the penalties.
**Interrogatory No. 4**: For every taxpayer identified in response to Interrogatory No. 3, identify the IRS counsel who authorized the abatement of the penalties.

[4] Plaintiff clarifies that it is not asserting work product privilege "over the other items in Nagy's motion to compel, namely the IRS documents prepared in connection with any audit of the 90% stock loan clients or the 2001 Derivium audit, and the depositions of IRS Agent Mary Socks and Appeals Officer Ronald Cunningham." Pl.'s Opp. at 21.  Rather, Plaintiff argues that Allen's deposition testimony is protected to the extent that it reveals IRS' "internal preparations in connection with the § 6700 investigation." *Id.*

order to be subject to penalty. Defendant argues that the IRS employees' conclusion that it was not a tax shelter with respect to other taxpayers involved in the same stock program is relevant to Defendant's defense. If IRS personnel believed that the program was not an illegal tax shelter, then it makes it less likely that a reasonable person in Defendant Nagy's position should have known it was illegal or fraudulent. Def.'s Mtn. I at 6.

### B. Relevance of the Requested Information

In opposition to Defendant's motions, Plaintiff advances three principal arguments that relate to relevance. First, Plaintiff argues that the requested information and testimony are not relevant due to the "well-settled" principle of federal tax law that the opinions, conclusions and analysis of IRS personnel are neither relevant nor discoverable. Second, Plaintiff argues that the requested information constitutes evidence concerning the "ultimate fact" of the case and is therefore not discoverable. Third, Plaintiff argues that the requested evidence is not relevant to the defense because Defendant has misstated the legal requirements for the scienter defense.

In order to resolve the question of relevance, it is necessary to review the applicable provisions of law set forth in Plaintiff's complaint. Sections 6700 and 7408 of the Internal Revenue Code were added to the tax code by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97-248, 96 Stat. 324.

Under the applicable penalty provision, § 6700(a), entitled "Promoting abusive tax shelters, etc.", there are two elements that the government must prove. First, the government must prove that the defendant was involved in abusive tax shelter. Second, the government must prove that defendant made statements about the tax benefits investors would receive if they participated in the tax shelter[5] that the defendant knew or had reason to know were false or fraudulent.[6]

---

[5] The term "tax shelter" is defined as a partnership or other entity, any investment plan or arrangement, or any other plan or arrangement, whose 'principal purpose . . . is the avoidance or evasion of income tax." 26 U.S.C. § 6661(b)(2)(C)(ii).

[6] A penalty will be imposed against anyone who –

(1) (A) organizes (or assists in the organization of) –

    (I) a partnership or other entity,
    (ii) any investment plan or arrangement, or

4

In addition to the scienter requirement related to false or fraudulent statements under 26 U.S.C. § 6700, there are two scienter requirements set forth in 26 U.S.C. § 6701. First, in order to be subject to penalty under § 6701, the defendant must have known or had reason to believe that a document or a portion thereof would be used in connection with a "material matter." 26 U.S.C. § 6701(a)(2). Second, the defendant must have known that if the document were used in connection with a material matter, that it would result in an understatement of a tax liability of another person. *Id.* at § 6701(a)(2).

Under § 7408, conduct may be enjoined if the court finds: 1) that the person has engaged in any conduct subject to penalty under section 6700 (relating to penalty for promoting abusive tax shelters, etc.) or section 6701 (relating to penalties for aiding and abetting under-statement of tax liability), and (2) that injunctive relief is appropriate to prevent recurrence of such conduct. 26 U.S.C. § 7408(a).

In the present case, Plaintiff's complaint alleges that the 90% loan program was fraudulent or an illegal tax shelter, and as stated above, Plaintiff will be required to prove that Defendant knew "or reasonably should have known" that the program was fraudulent in order for a penalty to be imposed. This scienter requirement applies an objective standard: what a reasonable person in Defendant's position should have known. *See e.g., United States v. Estate Preservation Services,* 202 F.3d 1093, 1103 (2000 9th Cir). Defendant argues that if in prior audits, IRS agents concluded that the same loan program at issue in this case was not an abusive tax shelter, then it is less likely

---

(iii) any other plan or arrangement, or

(B) participates . . . in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale) –

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement *which the person knows or has reason to know is false or fraudulent as to any material matter*, or

(B) a gross valuation overstatement as to any material matter. . . .

26 U.S.C. § 6700 (emphasis supplied).

that Defendant should have known that the program was fraudulent or an abusive tax shelter. Def.'s Mtn. II at 6.

With respect to the first relevancy argument, Plaintiff cites a long list of cases arguing that, categorically, IRS conclusions and analyses are not discoverable in tax cases. Pl.'s Opp. at 3-4. This general rule is based upon the nature of disputes involving court reviews of the propriety of IRS decisions. *See e.g., Vons. Cos. v. United States*, 51 Fed. Cl. 1, 6 (2001) (trial court's "determination of plaintiff's tax liability must be based upon the facts and merits presented to the court and does not require (or even ordinarily permit) this court to review findings or a record previously developed at the administrative level"). Because federal tax disputes are resolved by a district court's *de novo* review of the application of the Internal Revenue Code to the underlying facts in dispute, there is no need for the underlying administrative thought processes or IRS agent analyses. Courts have therefore routinely held that the IRS opinions, conclusions and analyses are entitled no deference and given no weight in a district court *de novo* review in a tax dispute. Plaintiff argues "What the Commissioner's agents may have thought or said about the transaction thus is not at issue here." Pl.'s Opp. at 5. *See also*, *Xcel Energy*, *Inc. v. United States of America*, 237 FRD 416 (D. Minn. 2006) (The court will be required to look at the facts and law independently in its *de novo* review and therefore the IRS employee's legal analysis is not relevant to any of the issues in the case and thus is not discoverable.)

While this is indeed the general rule, it is far from absolute. *See Timken Roller Bearing Co. v. United States*, 38 F.R.D. 57 (N.D. Ohio 1964) (documents memoranda and reports of agents, control cards and communications with third parties concerning allowance for tax purposes of taxpayers advertising expenditures were "reasonably calculated to lead to the discovery of admissible evidence" because they would clarify the Government's defense).

The relevance determination here must be made with respect to the particular elements of the claim at issue the case. The cases cited by Plaintiff are therefore inapposite and the Court is not

1   persuaded by them.[7]  In this case, the question raised by scienter is *not* whether based on a *de novo*
2   review, a prior IRS determination with respect to Defendant Nagy was correct.  There has been no
3   such determination on this issue.  Def.'s Reply at 4.

4   Plaintiff's second argument, which is essentially another argument concerning relevance, is
5   that the requested information would produce "incompetent" evidence because it goes to scienter,
6   which is an "ultimate fact" in the case.  Pl.'s Opp. at 9.  Plaintiff cites *Kentucky Trust* for the
7   proposition that the information Defendant seeks from IRS personnel goes to an opinion regarding
8   an "ultimate fact" in the case – scienter.  *Id.*

9   *Kentucky Trust* is distinguishable.  There, the court held that the testimony of an IRS agent
10  was improper because it went to the ultimate fact in the case and encroached upon the exclusive
11  territory of the jury.  217 F.2d at 467.  As Defendant correctly points out, however, the IRS agent in
12  *Kentucky Trust* was testifying with respect to his earlier opinions and conclusions about the
13  defendant, and the point of the case was to review the propriety of those prior conclusions.  *See id.*
14  Here, Defendant does not seek the information for the purpose of establishing the validity of the
15  90% stock loan program or to argue that the IRS' earlier assessments of the program were correct.
16  Rather, he seeks these conclusions in order to bolster his defense that a reasonable person in his
17  circumstances would not necessarily have known that the program was illegal or fraudulent.  *See*
18  Def.'s Reply at 5.

19  Plaintiff also argues that the information is not relevant to the scienter defense because
20  Defendant misstates the scienter requirement under § 6700.  Plaintiff cites *United States v. Estate*
21  *Preservation Services*, 202 F.3d 1093 (9th Cir. 2000) for the proposition that there are only three
22  factors courts may utilize in order to determine whether a defendant had the requisite scienter to

---

[7] The Court is similarly unpersuaded by Plaintiff's citation to *ISI Corp. v. United States*, 503 F.2d 558, 559 (9th Cir. 1975).  The Ninth Circuit did not hold that "the opinions, conclusions and reasoning of government officials are not subject to discovery" on relevance grounds as Plaintiff suggests.  Pl.'s Opp. at 8.  The Ninth Circuit accepted the statement of the district court below as a "correct rule of law" and although not identified as such in the opinion, the opinion appears to be premised on the qualified deliberative process or "governmental privilege."  It does not stand for the proposition that such information is not relevant in tax cases.  The Plaintiff acknowledges as much in a footnote of its brief:  "Note that the Court's holding appears to have been based on an early formulation of the deliberative process privilege."  Pl.'s Opp. at 8, n. 6.

7

violate § 6700. Plaintiff is correct that in that case, the Ninth Circuit analyzed three factors regarding whether the scienter requirement had been satisfied: 1) the extent of the defendant's reliance upon knowledgeable professionals; 2) the defendant's familiarity with tax matters, and 3) the level of sophistication and education of the defendant. *Id.* at 1103. The Ninth Circuit did not hold, however, that this list of factors is an exclusive one. It is apparent from the opinion that the three factors employed by the court were pertinent to the particular facts of the case. Defendant provides several examples of cases from within the Ninth Circuit that involve the application of other relevant factors based upon the circumstances of the case. *See e.g., United States v. Harkins*, 355 F. Supp.2d 1175, 1180 (D.Oregon 2004) (defendant had requisite scienter because she was uncooperative and used disruptive tactics in litigation). A predetermined list of factors does not make sense in the context of a scienter analysis, and the Court is aware of no authority that supports Plaintiff's position.

Finally, Plaintiff argues that 26 U.S.C. § 6103 prevents disclosure of the requested information. Under 26 U.S.C. § 6103(a), the United States is not permitted to disclose individual taxpayer returns. Section 6103 lists certain exceptions, however. As relevant here, under § 6103, if the tax return information is "directly related to the resolution of an issue in the proceeding" then it can be disclosed. 26 U.S.C. § 6103(h)(4)(B). The "directly related" standard is narrower than the general relevance standard in civil discovery. *Vons. Co. v. United States*, 51 Fed.Cl. 1, 19 (2001) (discussing the "vague" § 6103 standard and legislative history). After a review of the legislative history, the Court in *Vons* declined to "map[] the outer contours of what information is 'directly related' to an issue in litigation." *Id.* at 19. The court found that the requested information at issue in that case was not even related, let alone "directly related" to any issue before the court. The case is therefore not particularly instructive here. Although the case law on this issue is rather murky, Defendant is correct that the taxpayer information he seeks need only affect one issue in the litigation in order to be sufficient under § 6103; it need not be "necessary" to the resolution of the issue. *Lebaron v United States*, 794 F. Supp. 947, 952 (C.D. Cal. 1992). Under this standard, directly relevant information has been ordered produced. *Unites States v. Northern Trust Co.*, 210 F.Supp.2d 955 (N.D. Ill. 2001) (production ordered where, among other things, "the tax return's

contents [are] germane to an element of the claim, not simply used to impeach a witness' credibility, and [] apply to the specific taxpayer's liability, not analogous third parties."); *Beresford v. United States*, 623 F.R.D. 232, 233 (E.D. Mich. 1988) (the information used by the government to arrive at its valuation of the stock was directly relevant to the plaintiff's ability to challenge that valuation in court).

The Court concludes that, under § 6103 standard and the Federal Rules of Civil Procedure, some of the information sought is relevant and discoverable. The conclusions of IRS officials that the 90% loan program was not an abusive tax shelter – but was rather a *bona fide* loan program – is at least discoverable. If the IRS concluded that the program was legitimate when it audited borrowers, that may tend to show that a reasonable person in defendant's position would believe that the program was not an abusive tax shelter. Plaintiff's relevance arguments essentially ask this Court, on a discovery motion, to conclude that none of the information sought by the three interrogatories and document requests – and presumably deposition questions on these matters – would ever be admissible at trial. The Court is reluctant to do so at this stage of the case. The Court is not ruling on the admissibility of these materials. That decision is for the trial court and will involve other considerations in addition to relevance.

The Court, however, is not convinced that all of the material sought by the interrogatories and document requests are relevant. The relevant questions are: 1) whether IRS officials concluded that, with respect to the taxpayers engaged in the 90% loan transaction administered by Derivium, the program was not an abusive tax shelter; and 2) the dates and bases of each of those conclusions.[8]

---

[8] Defendant seeks extensive information and documents regarding whether the borrower taxpayers were penalized – and had those penalties abated. Defendant argues that the IRS necessarily concluded that the loan program at issue was not a tax shelter due to the fact that the IRS abated penalties for certain of the taxpayers involved in the audit. Citing 26 U.S.C. § 6222(d)(2)(C)(I), Defendant argues that penalties cannot be abated by the IRS if the understatement is attributable to an illegal tax shelter. The statutory provision cited by Defendant provides a method of abating tax penalties that have been assessed. The statute provides that if the disputed item is related to a tax shelter, then a § 6662(d)(2)(B) reduction cannot be applied. The provision says nothing about whether the IRS may or may not abate such penalties. Therefore, Defendant's reliance on this provision to argue that because the IRS abated penalties resulting from participation in the loan program, the IRS *must* have necessarily concluded that the program administered by Derivium was not an illegal tax shelter does not appear to be correct. Def's Mtn. at 3. Accordingly, the abatement of penalties is not directly related to an issue in this case.

9

Rule 26 limits discovery to that whose relevance is not outweighed by the burden or expense of its production. Fed.R.Civ.P. 26(b)(2)(c)(iii). Under this standard, and under § 6103, while the answers to these questions are directly relevant, the other information sought by the interrogatories is not. Plaintiff is ordered to answer those two questions under oath.

No other interrogatories or document requests on the subject of the Interrogatories at issue shall be propounded by Defendant until after those questions have been answered. Once the questions are answered, Defendant may seek further discovery, if necessary. If there is a dispute on this or any other discovery matter, the parties are ordered to adhere to the following meet-and-confer process: Before any discovery motion may be filed in this Court, counsel for Plaintiff and counsel for Defendant Nagy are ordered to have an in-person meet and confer session. These meet-and-confer sessions shall alternate locations between Washington D.C. and San Francisco, with the first meeting occurring in Washington D.C. At the conclusion of the meet and confer session, but before filing any discovery motion, the parties are directed to file a joint letter brief that sets forth each party's position and the compromise each side has proposed. The Court will then determine what further proceedings are appropriate.

With respect to depositions, relevance is not generally an appropriate basis on which to issue a blanket refusal to be deposed. However, based on the record here, only the deposition of Agent Socks may proceed. As stated at oral argument, the Court is not permitting discovery at this stage of the proceedings regarding the subject of the borrower taxpayers – other than the two questions listed above. At the hearing on Plaintiff's motions, counsel for Plaintiff could not specify any relevant areas of examination of Officer Cunningham. It appears that Officer Cunningham's only knowledge is the appeals of the audits of borrower tax payers. The Court therefore denies Plaintiff's request to take the deposition of Officer Cunningham at this time. Similarly, the deposition of Marie Allen cannot proceed at this time because counsel could not specify a relevant list of questions. The parties are directed to meet and confer regarding any possible relevance of these depositions after the questions above are answered. With respect to Agent Socks, the deposition may proceed with the caveat that Plaintiff is not permitted to ask any questions on the forbidden subject – the borrower taxpayers.

### D. Work Product Privilege[9]

Plaintiff argues that the work product doctrine protects IRS Agent Allen from participating in a deposition as well as documents created as part of the § 6700 investigation. Pl.'s Opp. at 21. Plaintiff asserts that Agent Allen conducted her investigation in anticipation of litigation, and that therefore, her testimony is privileged. *Id.*

Defendant responds that it would be inappropriate at this stage to issue a blanket ruling regarding the deposition testimony of Agent Allen. He points out that IRS Attorney Huong Baillie states in his declaration that IRS agents conducted a factual investigation with respect to Defendant Nagy. Def.'s Reply at 9, *citing* Declaration of Huong Baillie, Doc. 163-2, ¶9. Therefore, the facts regarding this investigation are discoverable and the privilege should be asserted with respect to specific questions at the deposition; it is not a ground on which to avoid a deposition altogether. *Id*. The Court agrees.

The work product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). Such documents may only be ordered produced where the party seeking the documents demonstrates "substantial need [for] the materials" and "undue hardship [in obtaining] the substantial equivalent of the materials by other means." *Id*. Further, where the documents sought contain opinion work product, such documents may only be discovered "when mental impressions are *at issue* in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (emphasis in original).

The Court concludes that it lacks sufficient information regarding what areas of testimony and which particular documents are being withheld by Plaintiff on work product grounds. The Court therefore orders Plaintiff to provide a privilege log to Defendant. If the depositions of Allen proceeds (after the meet-and-confer process), work product objections must be asserted on a questions-by-question basis.

---

[9] Plaintiff does not assert the work product privilege with respect to the IRS documents prepared in connection with the audit of the 90% stock program clients or the 2001 Derivium audit, and the depositions of IRS Agent Mary Socks and Appeals Officer Ronald Cunningham.

11

### E. Assertion of Deliberative Process Privilege

#### 1. Documents and Testimony at Issue

Plaintiff does not assert the deliberative process privilege with respect to documents Defendant seeks regarding the audits of Derivium's customers or the testimony IRS Agents Allen, Socks and former Appeals Officer Cunningham might give regarding those audits. Pl.'s Opp. at 24. Rather, Plaintiff indicates that it will assert the deliberative process privilege in deposition regarding the § 6700 Investigation and the 2001 audit of Derivium's tax return. If this Court permits the depositions to proceed, Plaintiff will assert the privilege on a question-by-question basis. Defendant responds that Plaintiff has not met the procedural or substantive requirements for asserting the privilege.

#### a. Overview of the Deliberative Process Privilege

The deliberative process privilege has been developed to protect "the decision making processes of government agencies." *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150 (1975). As the Court explained in *NLRB v. Sear Roebuck & Co.*, "the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." The underlying premise of the privilege is that agency decision-making might be impaired if discussions within the agency were subject to public review, thereby discouraging "frank discussion of legal or policy matters." *Id*.

In order to be protected by the deliberative process privilege, a document must be both "predecisional" and "deliberative." *Assembly of the State of California v. United States Department of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). The Ninth Circuit has adopted the D.C. Circuit's definitions of these terms:

> A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," . . . and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" . . . . A predecisional document is a part of the "deliberative process," if "the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."

*Id*. (quoting *Formaldehyde Inst. v. Department of Health and Human Services*, 889 F.2d 1118, 1122 (D.C.Cir.1989) (citations omitted)).

Factual material generally is not considered deliberative, but the fact/opinion distinction should not be applied mechanically. *Id*. at 921-922. Rather, the relevant inquiry is whether "revealing the information exposes the deliberative process." *Id*. at 921. Thus, for example, in *Quarles v. Department of the Navy*, the court held that cost estimates prepared by a special study team of the Navy which were formulated to assist the Navy in selecting a "homeport" for an intended battleship ground, fell under the deliberative process privilege. 893 F.2d 390 (D.C. Cir. 1990). The Court explained:

> cost estimates such as these are far from fixed. . . . They derive from a complex set of judgments - - projecting needs, studying prior endeavors and assessing possible suppliers. They partake of just that elasticity that has persuaded courts to provide shelter for opinions generally.

*Id.* at 392-393. On this basis, the Court declined to order the Navy to produce the full report of the study team. *Id*. (The Navy had produced a redacted version which included only the "truly factual information" and omitted all analysis, conclusions and cost estimates). *Id*. Even where material in a document is purely factual, it may be protected under the deliberative process privilege if it "is so interwoven with the deliberative material that it is not severable." *FTC v. Warner Communications, Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984).

Generally, the deliberative process privilege may be invoked only by the agency head after personally reviewing the documents for which the privilege is asserted. *See United States v. Rozet,* 183 F.R.D. 662, 665 (N.D. Cal. 1998) (citing to *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 516-517 (D. Del. 1980)). As the court explained in *Coastal Corp*., "[t]hat requirement was designed to deter governmental units from too freely claiming a privilege that is not to be lightly invoked . . . by assuring that some one in a position of high authority could examine the materials involved from a vantage point involving both expertise and an overview-type perspective." *Id*. at 517. The requirement that the privilege be invoked by the agency head need not be applied absolutely literally. *Id*. at 517-518. The duty to invoke the privilege, however, cannot be delegated so far down the chain of command that purposes of the requirement are undermined. *Id*.

13

The deliberative process privilege is not absolute. *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). Even if the deliberative process privilege applies, a litigant may obtain discovery of protected material if the need for the documents outweighs the governmental interest in keeping the decision making process confidential. *Id*. "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id*.

Finally, the privilege "must be strictly confined within the narrowest possible limits consistent with the logic of its principles." *K.L. v. Edgar*, 964 F. Supp. 1206, 1208 (N.D. Ill. 1997) (citations omitted); *see also United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998) (stating that deliberative privilege is "narrow privilege" which should not be "indiscriminately invoked").

### b. Applicability of Deliberative Process Privilege

Plaintiff has asserted the deliberative process privilege only with respect to depositions and only with respect to questions that have not yet been asked. Plaintiff has made no showing to justify the assertion of the privilege – let alone to prevent the three depositions entirely. Plaintiff has not made any showing that: 1) the deliberative process privilege has been invoked by an agency head after reviewing the specific information requested; or 2) that such information is predecisional and deliberative. *See United States v. Rozet, supra*, 183 F.R.D. at 665. Accordingly, with respect to any depositions that the Court permits or to which counsel agrees, the deliberative process objection must be asserted on a question-by-question basis.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to compel depositions and discovery responses is GRANTED IN PART and DENIED IN PART.

Dated: February 25, 2009

_____
JOSEPH C. SPERO
United States Magistrate Judge

14