**United States District Court**

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>CHARLES CATHCART, ET AL,<br><br>  Defendants.<br>_____/ | **No. C-07-4762 PJH (JCS)**<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT DERIVIUM USA [Docket No. 400]** |

## I. INTRODUCTION

On December 17, 2007, Plaintiff filed a motion for default judgment as to Defendant Derivium Capital (USA), Inc., which was referred to the undersigned magistrate judge for a report and recommendation. Default against Derivium Capital (USA), Inc. ("Derivium USA") was entered by the Clerk's office on December 21, 2007. Docket No. 19. Subsequently, the owner of Derivium Capital (USA), Inc., Charles Cathcart ("Cathcart"), appeared in this action. Thereafter, Plaintiff agreed to withdraw the Motion without prejudice to refiling it once Plaintiff's claims against Charles Cathcart had been determined in order to avoid the possibility of inconsistent outcomes. Docket No. 60. A trial on stipulated facts against Charles Cathcart was scheduled to begin on November 19, 2009. *See* Order dated November 23, 2009, Docket No. 399. The Court entered a stipulated permanent injunction against Charles Cathcart. *Id.* Derivium USA did not appear or otherwise defend the action.

Plaintiff now renews its motion for Default Judgment ("the Motion") against Defendant Derivium USA. Docket No. 400. The matter was again referred to the undersigned for a report and recommendation. Docket No. 401. A hearing was held on February 12, 2010, at which Plaintiff appeared by telephone. Defendant did not appear. For the reasons set forth more fully below, the

1

Court recommends that the Motion for Default Judgment as to Defendant Derivium USA be GRANTED and a permanent injunction be entered.[1]

**II.   ANALYSIS**

   **A.   Background**

The present action was filed by the Plaintiff United States of America in 2007 alleging that Defendants are subject to penalty under Internal Revenue Code ("I.R.C.") 26 U.S.C. §§ 6700 and 6701, and seeking an injunction pursuant to §§ 7402 and 7408 against, among others, Robert Nagy and co-defendants Charles Cathcart and Derivium USA[2] based upon their participation in a 90% stock loan program. Plaintiff sought to enjoin Defendants from: (1) organizing, promoting, marketing, or selling any tax shelter plan, or any other arrangement that advises or encourages others to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities; (2) engaging in conduct subject to penalty under § 6700, *i.e.*, making or furnishing, in connection with the organization or sale of a shelter, plan, or other arrangement, a gross valuation or overstatement or a statement about securing any tax benefits that they know or have reason to know is false or fraudulent as to any material tax matter; and (3) engaging in any other conduct that interferes with the administration and enforcement of the internal revenue laws. Plaintiff has sought only injunctive relief against Derivium USA.

   **B.   The Stipulated Permanent Injunction Against Charles Cathcart**

On the morning of trial, November 19, 2009, Defendant Charles Cathcart, informed the district court that he would not contest the factual allegations against him. As a result, the district court entered an order, based upon stipulated facts, finding that Cathcart had engaged in conduct covered by 26 U.S.C. § 6700, and ordered an injunction under I.R.C. § 7408 to prevent him from engaging in such further conduct. The court found that, under I.R.C. § 7402(a), injunctive relief against Cathcart was "necessary or appropriate for the enforcement of the Internal Revenue laws." Pursuant to I.R.C. § § 7402(a) and 7408, the court entered the following injunction against

---

[1] Derivium USA is the only remaining defendant to this action. The case has been resolved against every other defendant in the case. *See* Docket Nos. 9, 17, 129, 318, 319, 320, 325, 382, 399.

[2] Derivium Capital was formerly a defendant in this action, but has since agreed to a permanent injunction. Derivium Capital was a predecessor of Derivium USA.

Defendant Cathcart, preventing him from, directly or indirectly, by use of any means or instrumentalities:

    1. Organizing, promoting, marketing, selling, or implementing the "90% Loan" program that is the subject of the complaint herein;

    2. Organizing, promoting, marketing, selling, or implementing any program, plan or arrangement similar to the 90% Loan program that purports to enable customers to receive valuable consideration in exchange for stocks and other securities that are transferred or pledged by those customers, without the need to pay tax on any gains because the transaction is characterized as a loan rather than a sale;

    3. Engaging in any conduct subject to penalty under I.R.C. § 6700, *i.e.*, by making or furnishing, in connection with the organization or sale of a plan or arrangement, a gross valuation overstatement or a statement Cathcart knows or has reason to know to be false or fraudulent as to any material matter under the federal tax laws; and

    4. Selling or organizing, or causing the sale or organization, of any type of corporation, trust, limited liability company, arrangement of business entities, or plan which he knows or has reason to know advocates or facilitates material non-compliance with the federal tax laws.

In addition, the district court ordered that he United States may conduct post-judgment discovery to monitor compliance with the injunction, and also retained jurisdiction over the action for the purposes of implementing and enforcing the final judgment and any additional orders necessary and appropriate to the public interest.

### C.     Jurisdiction

When a plaintiff seeks entry of default judgment against a defendant who has failed to appear or otherwise defend the action, the court has an affirmative duty to determine whether it has jurisdiction over both the claims and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court will therefore assess whether it has subject matter jurisdiction over this action and whether personal jurisdiction over the Defendant Derivium USA exists.

#### 1.     Subject Matter Jurisdiction

District courts have original jurisdiction over civil cases arising under the

Constitution, laws or treaties of the United States. 28 U.S.C. § 1331. As stated in greater detail above, Plaintiff the United States of America has asserted claims against Defendant Derivium USA to enjoin him for alleged violations of the federal tax laws. The district court may therefore properly exercise jurisdiction over this matter.

### 2. Personal Jurisdiction

In the present case, Plaintiff contends that the district court has specific personal jurisdiction over the defendants. Defendant Derivium USA is a Delaware corporation registered to do business in the State of South Carolina. Compl. ¶ 13. Plaintiff alleges that Defendant directed its activities to the forum state, California, by marketing the 90% Loan scheme to customers located in this district. Motion at 4 (Docket 400), *citing Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-07 (9th Cir. 2006) (discussing standards for personal jurisdiction). In addition, Plaintiff alleges that Derivium USA had staff based in San Francisco during its period of active promotion of the 90% Loan scheme. Motion at 2 citing Second Amended Complaint at ¶¶ 2, 28.

Because Defendant had an office and staff in San Francisco and marketed its products to California residents, there is sufficient evidence of systematic and continuous contacts with this forum, as well as sufficient evidence of purposeful availment, for the Court to find that there is both specific and general personal jurisdiction over Defendant Derivium USA in California. *See e.g.*, *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447-49 (1952) (upholding finding of general jurisdiction where the president of a Phillippines-based corporation maintained an office in the forum state, had bank accounts in the forum state, and held several directors' meetings in the forum state).

Moreover, the Court finds that exercising personal jurisdiction over Defendant Derivium USA would be reasonable. Derivium USA purposefully availed itself of the privilege of doing business in California through its substantial, continuous, and systematic contacts with California. Due to its ties with California, including the presence of an office and staff here, the Court concludes that Derivium USA had fair warning that it could be haled into court in California. Accordingly, asserting jurisdiction over Derivium USA is reasonable and does not offend "traditional notions of

fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

### D. Legal Standard Applicable to Default Judgment Motions

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The district court has discretion in its decision to grant or deny relief upon an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956) (affirming district court's denial of default judgment). The Court may consider the following factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d). On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered. *Id*.

### E. Analysis of *Eitel* Factors

#### 1. Possible Prejudice to Plaintiff

Plaintiff would suffer prejudice if default judgment is not entered because Plaintiff would be without another course of recovery. Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor. *See e.g., Phillip Morris, USA, Inc. v. Castworld Prods., Inc.*,

219 F.R.D. 494, 499 (C.D. Cal. 2003). Moreover, the allegations in this case, accepted as true on default, demonstrate that Defendant Charles Cathcart frequently changed the names of the entities or created new entities through which to conduct the loan scheme. Second Amended Compl. at ¶¶ 20, 22-24. Derivium USA was created in order to take over the marketing of the 90% Loan Program. *Id.* at ¶¶ 33-34. Therefore, Plaintiff would be prejudiced by not having an injunction against Derivium USA, similar to that ordered by the district court as to Defendant Cathcart. Without it, Derivium USA could continue with the unlawful scheme.

### 2. Sufficiency of the Complaint and Substantive Merits of Claim

Plaintiff alleges that Charles Cathcart created Derivium USA to take over the responsibility of marketing the 90% Loan program. Second Amended Compl. at ¶33-34. Charles Cathcart is the sole owner of Derivium USA. *Id.* ¶ 11. Derivium USA promoted "the 90% Stock Loan" and other products to people who held appreciated securities with a relatively low basis, promising that the transactions would allow customers to "monetize" their securities without paying taxes on their capital gains. *Id.* ¶¶ 49-52. The Complaint alleges that Derivium USA made numerous false or fraudulent statements to prospective customers with respect to the tax benefits of the 90% Loan program (*id.* at ¶¶ 76-82), including the statement that the transactions were not taxable because they are genuine loans. *Id.* ¶77. The evidence at the trial of this matter against Cathcart provides further support for Plaintiff's allegations against Cathcart's company, Derivium USA.[3] As the district court found previously in this case, the Loan transactions were simply sales of securities disguised as loans in order to avoid taxes. *Id.* ¶54, 82; *see also* Order dated September 22, 2009, Docket 333 (order granting summary judgment to the plaintiff on the loan-versus-sale issue). Derivium USA has failed to respond in any way to the lawsuit, and has not presented any defense, meritorious or otherwise. For the reasons stated more fully below, the Court finds that this factor weighs in favor of granting the motion for default judgment and entering an injunction identical to that ordered as to Defendant Charles Cathcart, Derivium's sole owner.

---

[3] At the trial, Defendant Cathcart stipulated to the majority of the United States' allegations against him. *See* Docket No. 398, 1a & d (Minute entry reflecting Cathcart's stipulation to the majority of the United States' proposed findings of fact).

6

### a. *IRC §§ 6700 and 7408*

Section 7408 authorizes a court to enjoin persons who have engaged in any conduct subject to penalty under § 6700 if the court finds that injunctive relief is appropriate to prevent the recurrence of such conduct. 26 U.S.C. § 7408. Section 6700 penalizes anyone who organizes or assists in the organization of:

> a partnership or other entity, any investment plan or arrangement, or any other plan or arrangement, or participates directly or indirectly in the sale of any interest in an entity or plan or arrangement, . . . and makes or furnishes or causes another person to make or furnish (in connection with such organization or sale) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or a gross valuation overstatement as to any material matter.

26 U.S.C. § 6700.

To establish a violation of § 6700 warranting an injunction under § 7408, the government must prove that defendant: (1) organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) knew or had reason to know that the statements were false or fraudulent; (4) the false or fraudulent statements pertained to a material matter; and (5) an injunction is necessary to prevent recurrence of this conduct. *United States v. Estate Preservation Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000) citing I.R.C. §§ 6700(a), 7408(b). "Under § 6700, any 'plan or arrangement' having some connection to taxes can serve as a 'tax shelter' and will be an 'abusive' tax shelter if the defendant makes the requisite false or fraudulent statements concerning the tax benefits of participation." *United States v. Raymond*, 228 F.3d 804, 811 (7th Cir. 2000). "Congress designed section 6700 as a 'penalty provision specifically directed toward promoters of abusive tax shelters *and other abusive tax avoidance schemes*.'" *United States v. White*, 769 F.2d 511, 515 (8th Cir. 1985) (emphasis in original). The district court has previously found in this case that the Plaintiff need not specifically prove that Defendants were involved in an abusive tax shelter to establish a violation of § 6700 warranting an injunction under § 7408. Rather, the district court concluded that Plaintiff must only prove the five elements set forth by the Ninth Circuit in *Estate Preservation Servs.*, 202 F.3d at

1098. Section 6700 is directed not only toward promoters of abusive tax shelters, but also toward other abusive tax avoidance schemes. *Id.*

Under § 7408, conduct may be enjoined if the court finds: 1) that the person has engaged in any conduct subject to penalty under section 6700 (relating to penalty for promoting abusive tax shelters, etc.) or section 6701 (relating to penalties for aiding and abetting under-statement of tax liability), and (2) that injunctive relief is appropriate to prevent recurrence of such conduct. 26 U.S.C. § 7408(a).

In an order dated September 22, 2009, the district court granted in part and denied in part, Defendants' motions for summary judgment. The court found that the undisputed evidence revealed that[4]: as part of the loan transaction in question, legal title of a customer's securities transfers to Derivium USA (for example) during the purported loan term in question, which vests possession of the shares in Derivium's hands for the duration of the purported loan term; that the customer must transfer 100% of all shares of securities to Derivium USA and that once transferred, Derivium USA sells those shares on the open market, and that once sold, Derivium USA transfers 90% of that sale amount to the customer as the "loan" amount, keeping 10% in Derivium USA's hands; that during the term of the loan, the Master Loan Agreement provides that Derivium USA has the right to receive all benefits that come from disposition of the customer's securities, and that the customer is not entitled to these benefits; that the customer is furthermore prohibited from repaying the loan amount prior to maturity and is not required to pay any interest before the loan maturity date; and that, at the end of the purported loan term, the customer is not required to repay the amount of the loan (but merely allowed to do so as one option at the loan's maturity date) and can exercise the option to walk away from the loan entirely at the maturity date without repaying the principle; and thus, can conceivably walk away from the transaction without paying interest at all on the loan.

The district court concluded that analysis of these and other undisputed facts pursuant to either the benefits/burdens approach outlined in *Grodt & McKay Realty, Inc. v. Commissioner of Internal Revenue*, 77 T.C. 1221, 1236 (Tax Court 1981), or the approach outlined in *Welch v.*

---

[4]The following factual findings are taken directly from Judge Hamilton's Order dated September 22, 2009. Docket No. 333.

*Comm'r*, 204 F.3d 1228, 1230 (9th Cir. 2000), compelled the conclusion that the transactions in question constituted sales of securities, rather than bona fide loan transactions. *See e.g., Grodt*, 77 T.C at 1236-37 (applying multi-factor test to determine point at which the burdens and benefits of ownership are transferred for purposes of qualifying a transaction as a sale); *Welch*, 204 F.3d at 1230 (examining factors necessary to determine whether a transaction constitutes a bona fide loan).

The district court also found that the "substance over form doctrine" further supported the conclusion that, in looking beyond the actual language of the Master Loan Agreement to the totality of the undisputed facts, the substance of the transaction between the parties constituted a sale, and not a bona fide loan. *See, e.g., Harbor Bancorp & Subsidiaries v. Comm'r*, 115 F.3d 722, 729 (9th Cir. 1997) (it is axiomatic that tax law follows substance and not form).

The district court therefore granted the government's motion for partial summary judgment on the issue whether the 90% loan transactions in question constituted sales of securities, as a matter of law. The element of scienter was the primary issue left to the finder of fact. A trial was held on November 19, 2009, at which Defendant Cathcart appeared and did not contest the majority of the factual allegations against him. The court held a trial on stipulated facts and entered a permanent injunction against him.

Reviewing the above evidence and legal authorities cited above, the Court concludes that the evidence against Defendant Derivium USA is strong and that the merits of the case support entry of default judgment here. The Court concludes that an injunction against Derivium is necessary or appropriate for the enforcement of the internal revenue laws. *See e.g., United States v. Thompson*, 395 F.Supp.2d 941, 945-46 (E.D. Cal., 2005) ("Injunctive relief is appropriate if the defendant is reasonably likely to violate the federal tax laws again.")

**3. The Sum of Money at Stake**

In the Complaint, the United States seeks only equitable relief. Therefore, the Court finds that the fourth *Eitel* factor's concern with awarding large sums of money without an adjudication on the merits does not alter the analysis above. This factor supports entry of default judgment. *See e.g., Levi Strauss & Co. v. Toyo Enterprise Co.*, 2009 WL 3353097 at *10 (N.D. Cal. 2009).

### 4. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute concerning the material factors surrounding the case. As detailed above, Plaintiff has sufficiently alleged and has submitted exhibits demonstrating Defendant's violations of the tax laws. In addition, Derivium USA's sole owner, Charles Cathcart, stipulated to the majority of the factual allegations against him at his trial. It is therefore unlikely that Defendant would be able to present facts raising any dispute as to these allegations. Accordingly, this factor favors entry of default judgment.

### 5. Excusable Neglect

There is no indication that Derivium USA's failure to answer or appear was the result of excusable neglect. The Complaint in this action was served on Derivium USA on October 10, 2007.[5] Docket No. 15 (proof of service). There has been no attempt on Derivium USA's part to respond to Plaintiff's allegations. Therefore, the Court concludes that Defendant's failure to respond was not due to excusable neglect.

### 6. Policy for Deciding on the Merits

The last *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment. Default judgments are disfavored, and cases should be decided on the merits when possible. *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). Where, as here, a Defendant's failure to appear "makes a decision on the merits impractical, if not impossible," entry of default judgment is warranted. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal.2002). Despite Defendant Cathcart's decision to litigate this case for years, his company, Derivium USA, has not defended against the action. Derivium USA has had ample notice of the suit and many opportunities to appear. On this record, it is clear to the Court that given that Defendant Derivium USA has failed to appear or respond in this matter, a

---

[5]After entry of default, the United States amended its complaint on two occasions to add defendants and plead more facts concerning those defendants. Docket Nos. 57 & 124. Because the amended complaints did not add new claims against Derivium USA and because Derivium USA was in default, service of the subsequent complaints was not required under the Federal Rules of Civil Procedure. Fed.R.Civ.P. 5(a)(2); *Employee Painters' Trust v. Ethan Enterprises, Inc.*, 480 F.3d 993, 999 & n.6 (9th Cir. 2007)

decision on the merits is impossible. This final factor favors entry of default judgment as well.

### III. CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's Motion for Default Judgment be GRANTED. The Court recommends that the district court find that:

A.  Derivium USA has engaged in conduct covered by 26 U.S.C. § 6700, and that injunctive relief is appropriate under I.R.C. § 7408 to prevent it from engaging in such further conduct; and

B.  under I.R.C. § 7402(a), injunctive relief against Derivium is "necessary or appropriate for the enforcement of the Internal Revenue laws."

In addition, the Court recommends that the district court enter the following injunction:

A.  Pursuant to I.R.C. § § 7402(a) and 7408, Derivium USA is enjoined and restrained from, directly or indirectly, by use of any means or instrumentalities:

    1. Organizing, promoting, marketing, selling, or implementing the "90% Loan" program that is the subject of the complaint herein;

    2. Organizing, promoting, marketing, selling, or implementing any program, plan or arrangement similar to the 90% Loan program that purports to enable customers to receive valuable consideration in exchange for stocks and other securities that are transferred or pledged by those customers, without the need to pay tax on any gains because the transaction is characterized as a loan rather than a sale;

    3. Engaging in any conduct subject to penalty under I.R.C. § 6700, *i.e.*, by making or furnishing, in connection with the organization or sale of a plan or arrangement, a gross valuation overstatement or a statement Derivium USA knows or has reason to know to be false or fraudulent as to any material matter under the federal tax laws; and

    4. Selling or organizing, or causing the sale or organization, of any type of corporation, trust, limited liability company, arrangement of business entities, or plan which he knows or has reason to know advocates or facilitates material non-compliance with the federal tax laws.

Finally, the Court recommends that the United States be permitted to conduct post-judgment

discovery to monitor compliance with the injunction and retain jurisdiction over this action for the purposes of implementing and enforcing the final judgment and any additional orders necessary and appropriate to the public interest.

IT IS SO ORDERED.

Dated: February 12, 2010

_____
JOSEPH C. SPERO
United States Magistrate Judge